UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

KENNARD DESMOND WELLINGTON,
sui-juris, an aggrieved man with full life,

                         Plaintiff,

                                                                    3:24-CV-0477
v.                                                                  (BKS/ML)

BROOME COUNTY DISTRICT
ATTORNEY'S OFFICE; MICHAEL
A. KORCHAK, in his personal capacity,
and all successor or assigns; and
JOSEPH F. CAWLEY, in his personal
capacity, and all successor or assigns,

                         Defendants.
_____

APPEARANCES:                                                        OF COUNSEL:

KENNARD DESMOND WELLINGTON
  Plaintiff, *Pro Se*
Cayuga Correctional Facility
Post Office Box 1500
Moravia, New York 13118


MIROSLAV LOVRIC, United States Magistrate Judge


**<u>ORDER and REPORT-RECOMMENDATION</u>**

        The Clerk has sent a *pro se* complaint in the above captioned action together with (1) an

amended application to proceed *in forma pauperis*, (2) an inmate authorization, (3) an affidavit

of obligation, (4) a submission, (5) a submission in support of the Complaint, (6) a "Default

Affidavit," (7) a letter, (8) a motion to dismiss for failure to supply supporting depositions, and

(9) a "Truth Affidavit" filed by Kennard Desmond Wellington ("Plaintiff") to the Court for

review.  (Dkt. Nos. 1, 4, 7, 8, 9, 10, 11, 12, 13, 14.)  For the reasons discussed below, I grant

Plaintiff's amended *in forma pauperis* application, recommend that Plaintiff's Complaint be dismissed in its entirety without prejudice but without leave to amend, and recommend that Plaintiff's motion to dismiss be denied.  (Dkt. Nos. 1, 7, 13.)

## I.    BACKGROUND

Construed as liberally[1] as possible, Plaintiff's Complaint alleges that defendants Broome County District Attorney's Office, Michael A. Korchak,[2] and Joseph F. Cawley (collectively "Defendants") violated his civil rights.  (*See generally* Dkt. No. 1.)

Plaintiff's Complaint is rambling, nonsensical, and replete with legal jargon.  (*Id*.) Plaintiff's grievances appear to stem from his interactions with Defendants during his New York State criminal prosecution.  (Dkt. No. 1 at 12.)  The Complaint appears to allege that Defendant Korchak is the Broome County District Attorney and Defendant Cawley is a Broome County Supreme Court Judge.  (*Id*.)

Plaintiff appears to assert the following twenty-eight causes of action: (1) a claim of "personage/improper joinder"; (2) a claim of "barratry"; (3) a claim of falsification of accounts; (4) a claim of identity theft; (5) a claim of violation of the truth in lending act; (6) a claim of securities fraud; (7) a claim of failure to subrogate and exonerate; (8) a claim of "misprision of felony"; (9) a claim of conspiracy against rights under color of law; (10) a claim of deprivation of the common law; (11) a claim of deprivation of the Sixth Amendment right to know the nature and cause of the action; (12) a claim that Plaintiff's due process rights were violated pursuant to

---

[1]    The court must interpret *pro se* complaints to raise the strongest arguments they suggest. *Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)).

[2]    The Clerk of the Court is directed to update the docket to reflect the proper spelling of Defendant Michael A. Korchak's name.

the Fifth Amendment and 42 U.S.C. § 1983; (13) a claim of fraudulent concealment; (14) a claim

of misapplication of codes; (15) a claim of prosecution and conviction without jurisdiction; (16)

a claim of unconstitutional codes/lacking required enactment clauses; (17) a claim of knowingly

representing a plaintiff who had no standing to sue; (18) a claim that Defendants violated the

rules of bankruptcy; (19) a claim of involuntary servitude; (20) a claim of dishonest services

through scheme or practice to defraud pursuant to 18 U.S.C. § 1346; (21) a claim of conflict of

interest; (22) a claim of felony misappropriation of funds/theft by conversion; (23) a claim of

sham legal process/fraud upon the court; (24) a claim of racketeering; (25) a claim of felony

perjury; (26) a claim of war against the constitution, which is treason; (27) a claim of violation of

the oaths to uphold the constitution; and (28) a claim of false imprisonment.  (Dkt. No. 1 at 12-

13.)  As relief, Plaintiff seeks damages in the amount of "$10,000 per violation, per actor" and

his release from confinement.  (Dkt. No. 1 at 8, 12.)

       Plaintiff seeks leave to proceed *in forma pauperis* ("IFP").  (Dkt. No. 7.)

## II.    PLAINTIFF'S AMENDED APPLICATION TO PROCEED *IN FORMA PAUPERIS*

       "28 U.S.C. § 1915 permits an indigent litigant to commence an action in a federal court

without prepayment of the filing fee that would ordinarily be charged." *Cash v. Bernstein*, 09-

CV-1922, 2010 WL 5185047, at *1 (S.D.N.Y. Oct. 26, 2010).[3]  "Although an indigent,

incarcerated individual need not prepay the filing fee at the time of filing, he must subsequently

---

[3]     Section § 1915(g) prohibits a prisoner from proceeding *in forma pauperis* where, absent a
showing of "imminent danger of serious physical injury," a prisoner has filed three or more
actions that were subsequently dismissed as frivolous, malicious, or failing to state a claim upon
which relief may be granted.  *See* 28 U.S.C. § 1915(g).  The Court has reviewed Plaintiff's
litigation history on the Federal Judiciary's Public Access to Court Electronic Records
("PACER") Service.  *See* http://pacer.uspci.uscourts.gov.  It does not appear from that review
that Plaintiff had accumulated three strikes for purposes of 28 U.S.C. § 1915(g) as of the date
this action was commenced.

pay the fee, to the extent he is able to do so, through periodic withdrawals from his inmate accounts." *Cash*, 2010 WL 5185047, at *1 (citing 28 U.S.C. § 1915(b); *Harris v. City of New York*, 607 F.3d 18, 21 (2d Cir. 2010)).

Upon review, the Court finds that Plaintiff has submitted a completed IFP application which has been certified by an appropriate official at his facility (Dkt. No. 7 at 2.), and which demonstrates economic need. *See* 28 U.S.C. § 1915(a)(2).  Plaintiff has also filed the inmate authorization required in the Northern District. (Dkt. No. 4.)

Accordingly, Plaintiff's amended application to proceed with this action IFP is granted. (Dkt. No. 7.)

## III.    LEGAL STANDARD FOR REVIEW OF THE COMPLAINT

Having found that Plaintiff met the financial criteria for commencing this action *in forma pauperis*, the Court must consider the sufficiency of the allegations set forth in the Complaint in light of 28 U.S.C. §§ 1915(e).  Section 1915(e) of Title 28 of the United States Code directs that, when a plaintiff seeks to proceed *in forma pauperis*, "the court shall dismiss the case at any time if the court determines that— . . . (B) the action . . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2)(B); *see also* 28 U.S.C. 1915A(a) ("The court shall review . . . as soon as practicable . . . a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.").[4]

Additionally, when reviewing a complaint, a court may also look to the Federal Rules of Civil Procedure.  Rule 8 of the Federal Rules of Civil Procedure provides that a pleading which

---

[4]      To determine whether an action is frivolous, a court must look to see whether the complaint "lacks an arguable basis in either law or in fact."  *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).

sets forth a claim for relief shall contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief." *See* Fed. R. Civ. P. 8(a)(2).  The purpose of Rule 8 "is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable." *Powell v. Marine Midland Bank*, 162 F.R.D. 15, 16 (N.D.N.Y. 1995) (McAvoy, C.J.) (quoting *Brown v. Califano*, 75 F.R.D. 497, 498 (D.D.C. 1977)).

A court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), *rev'd on other grounds*, 682 F. App'x 30.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While the court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft*, 556 U.S. at 678.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555).  Rule 8 "demands more than an unadorned the-defendant-unlawfully-harmed-me accusation." *Id.*  Thus, a pleading that contains only allegations which "are so vague as to fail to give the defendants adequate notice of the claims against them" is subject to dismissal. *Sheehy v. Brown*, 335 F. App'x 102, 104 (2d Cir. 2009).

## IV.    ANALYSIS

In addressing the sufficiency of a plaintiff's complaint, the court must construe his pleadings liberally. *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008).

Having reviewed Plaintiff's Complaint with this principle in mind, I recommend that it be dismissed.

As it currently stands, Plaintiff's Complaint wholly fails to provide fair notice of the claims he attempts to assert.  By way of example, the Complaint states:

> Respondent judge knows the difference between a living man and a fiction, yet did nothing Respondents knowingly, inten[t]ionally and maliciously conspired to prosecute claimant, a sentient being, under a code that was, by definition of the legislature, meant only for artificial entities. . . .
>
> [I]n order to initiate the above-referenced prosecution, Respondents requested a grant from the U.S. treasury using a GSA form 1193-A, using the claimant's name the <u>treasury sent the court a grant in regard to the above-reference case number(s) for the purpose of discharging the criminal case which the court failed to do</u>.  The court stole from the defendant and the federal government when the court sold securities in this regard, and then the debt needed to be settled, the Respondents applied for the funds, therefore, they are liable on the debt, but the court is holding the claimant, the living man who was unlawfully prosecuted as an artificial entity, as surety on the debt, but by what authority?

(Dkt. No. 1 at 15.)

The Complaint continues with run-on sentences containing legal jargon and nonsensical allegations.  By way of example, the Amended Complaint states:

> Broome County Supreme Court and Broome County district attorney's office are private, for-profit corporate entities having nothing to do with the de jure Republic of the people.  The court is merely a for profit corporation as opposed to a de jure court of the people.

(Dkt. No. 1 at 22.)

The Complaint asserts that the legal authority supporting the claims contained therein are pursuant to "universal moral/existential truths/principles, expressed in Judaic (mosaic) orthodox Hebrew/Jewish commercial code, corollary to exodus (chiefly Exodus 20:15, 16).  This is the best known commercial process in America."  (Dkt. No. 1 at 33.)

Given its lack of clarity, the undersigned recommends dismissal of the Complaint

because it is not acceptable under Rules 8 and 10 of the Fed. R. Civ. P. and because Plaintiff's

claim or claims against Defendants are entirely unclear.[5]

The Court also notes that Plaintiff's assertion that he is a "state national recognized by

the United States of America as a clean and proper status a peaceful private American" (Dkt. No.

9 at 9) and arguments that he is entitled to relief as a result have universally been rejected as

---

[5]    In the alternative, Plaintiff's claims are subject to dismissal for the following three
reasons.  First, Defendant Broome County District Attorney's Office is immune from suit.  *See
Campbell v. New York State Police*, 23-CV-1337, 2024 WL 1702010 at *5 (N.D.N.Y. Apr. 19,
2024) (Lovric, M.J.) (citing *Roark v. New York*, 23-CV-1237, 2023 WL 8827185, at *3
(N.D.N.Y. Dec. 21, 2023) (Lovric, M.J.) (citations omitted) (recommending that the plaintiff's
claims against the Watertown District Attorney's Office be dismissed as barred by the Eleventh
Amendment), *report and recommendation adopted by*, 2024 WL 125512, at *1 (N.D.N.Y. Jan.
11, 2024) (Hurd, J.)) (recommending dismissal of the plaintiff's claims against defendant
Broome County District Attorney's Office), *report and recommendation adopted*, 2024 WL
3063674 (N.D.N.Y. June 20, 2024) (Nardacci, J.).  Second, to the extent that Defendant Korchak
is sued in his official capacity, those claims are to be treated as against the Defendant Broome
County District Attorney's Office and thus, subject to dismissal based on Eleventh Amendment
immunity.  *See D'Alessandro v. City of New York*, 713 F. App'x 1, 8 (2d Cir. 2017) ("[I]f a
district attorney or an assistant district attorney acts as a prosecutor, she is an agent of the state,
and therefore immune from suit in her official capacity."); *Rich v. New York*, 21-CV-3835, 2022
WL 992885, at *5 n.4 (S.D.N.Y. Mar. 31, 2022) ("[A]ny claims Plaintiff may raise against the
DA Defendants in their 'official capacity' would be precluded by immunity under the Eleventh
Amendment.").  Moreover, to the extent that Defendant Korchak is sued in his individual
capacity and Plaintiff seeks monetary damages, those claims are barred by the doctrine of
prosecutorial immunity which "is a form of absolute immunity that shields [a] prosecutor acting
in the role of an advocate in connection with a judicial proceeding . . . for all acts intimately
associated with the judicial phase of the criminal process."  *Carroll v. Trump*, 23-CV-1045, 23-
CV-1146, 2023 WL 8608724, at *1 n.4 (2d Cir. Dec. 13, 2023) (quoting *Simon v. City of New
York*, 727 F.3d 167, 171 (2d Cir. 2013)) (internal quotation marks omitted).  Third, I recommend
that any claims against "Defendant Cawley in his official capacity be dismissed pursuant to the
Eleventh Amendment."  *Campbell v. City of Binghamton*, 24-CV-0067, 2024 WL 1701980, at *3
(N.D.N.Y. Apr. 19, 2024) (Lovric, M.J.), *report and recommendation adopted*, 2024 WL
3063674 (N.D.N.Y. June 20, 2024) (Nardacci, J.).  Moreover, I recommend that any "claims
against Defendant Cawley in his individual capacity be dismissed based on the doctrine of
judicial immunity" which provides absolute immunity to judges "from suit for claims seeking
damages for any actions taken within the scope of their judicial responsibilities."  *Campbell v.
City of Binghamton*, 2024 WL 1701980, at *3 (citing *Mireles v. Waco*, 502 U.S. 9, 11-12
(1991)).

frivolous.  *See Miller Ex v. Primo*, 22-CV-0680, 2022 WL 16556060, at *3-4 (N.D.N.Y. Sept.

29, 2022) (recommending dismissal of the plaintiff's claims predicated on a "sovereign citizen"

theory as having no basis in law).  As the Second Circuit has explained, "sovereign citizens are a

loosely affiliated group who believe that the state and federal governments lack constitutional

legitimacy and therefore have no authority to regulate their behavior."  *United States v. Ulloa*,

511 F. App'x 105, n.1 (2d Cir. 2013); *see United States v. McLaughlin*, 949 F.3d 780, 781 (2d

Cir. 2019) (cleaned up) (noting that "so-called 'Sovereign Citizens' seek to clog the wheels of

justice and delay proceedings so justice won't ultimately be done.  They do so by raising

numerous—often frivolous—arguments, many alleging that the Courts or the Constitution lack

any authority whatsoever."); *Muhammad v. Smith*, 13-CV-0760, 2014 WL 3670609, at *2

(N.D.N.Y. July 23, 2014) (D'Agostino, J.) ("Theories presented by redemptionist and sovereign

citizen adherents have not only been rejected by the courts, but also recognized as frivolous and

a waste of court resources.") (collecting cases); *see also Balash-Ioannidou v. Contour Mortg.*

*Corp*, 22-CV-4506, 2022 WL 3358082, at *1 (E.D.N.Y. Aug. 15, 2022) (rejecting claim that

plaintiff "issued a payment through Notary Presentment to Defendants in the amount of

$645,300.00" to satisfy her debt, as well as a "Notary Protest" and a "Certificate of Dishonor.");

*Tyson v. Clifford*, 18-CV-1600, 2018 WL 6727538, at *3 (D. Conn. Dec. 21, 2018) ("Adherents

of [redemptionist] claims or defenses 'believe that they are not subject to government authority

and employ various tactics in an attempt to, among other things, avoid paying taxes, extinguish

debts, and derail criminal proceedings.'"); *Steinkirchner v. Gordon*, 19-CV-1241, 2020 WL

549087, at *2 (W.D. Pa. Feb. 4, 2020) ("While the Court is not in the business of issuing general

advisory opinions, it can say with confidence that the Plaintiff's one-sided effort to discharge her

debts does not create a legal or factual basis for the claims she struggles to assert."); *Stoute v.*

8

*Navient*, 19-CV-11362, 2019 WL 13234780, at *2 (D. Mass. July 2, 2019) (rejecting the plaintiff's claim that Navient could not pursue collection on alleged student loan debt pursuant to U.C.C. § 3-505 because it failed to respond to his correspondence); *McKay v. U.S. Bank*, 14-CV-0872, 2015 WL 5657110, at *2 (M.D. Ala. Sept. 24, 2015) (denying plaintiffs' request for declaratory judgment that the defendant was not the real mortgage holder and to quiet title based upon their mailing of a "notarial presentment" and a "notarial notice of Dishonor" to the defendant bank).

Plaintiff is cautioned that he is beginning to demonstrate a pattern of making duplicative, voluminous, and meritless filings, which serve to harass and/or raise frivolous issues.[6]  The undersigned hereby warns Plaintiff that he cannot continue to engage in these filing practices. Taking into account Plaintiff's *pro se* status and his lack of legal training, the undersigned will not recommend the issuance of a pre-filing injunction at this time.  However, Plaintiff is strongly cautioned that any further frivolous conduct on his part may result in the recommendation that a filing injunction be issued against him.

## V.    OPPORTUNITY TO AMEND

Generally, a court should not dismiss claims contained in a complaint filed by a *pro se* litigant without granting leave to amend at least once "when a liberal reading of the complaint gives any indication that a valid claim might be stated."  *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir. 1991); *see also* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires.").  An opportunity to amend is not required, however, where "the problem

---

[6]    In addition to the voluminous filings Plaintiff has made in this action, he has filed two other actions in this district that were consolidated and dismissed.  *See Wellington v. Foland*, 19-CV-0457, 19-CV-0615, 2020 WL 6822945, at *3 (N.D.N.Y. Nov. 20, 2020) (Suddaby, C.J.) (dismissing Plaintiff's consolidated actions for failure to comply with the Court's orders and his discovery obligations).

with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it."
*Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *see also Cortec Indus. Inc. v. Sum Holding
L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact
sufficient to support its claim, a complaint should be dismissed with prejudice."). Stated
differently, "[w]here it appears that granting leave to amend is unlikely to be productive, . . . it is
not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d
129, 131 (2d Cir. 1993); *accord, Brown v. Peters*, 95-CV-1641, 1997 WL 599355, at *1
(N.D.N.Y. Sept. 22, 1997) (Pooler, J.).[7]

In this instance, I conclude that any amendments to Plaintiff's Complaint are not likely to
be productive and will further clog the wheels of justice. As a result, I recommend that
Plaintiff's Complaint be dismissed without leave to amend. *See Igarashi v. Skull & Bone*, 438 F.
App'x 58, 59-60 (2d Cir. 2011) (finding that the district court "properly dismissed the complaint
without providing an opportunity to amend because any amendment would have been futile in
light of the incredible nature of the allegations.").

## VI.   PLAINTIFF'S ADDITIONAL FILINGS

Plaintiff filed an affidavit of obligation (Dkt. No. 8), submission dated May 22, 2024
(Dkt. No. 9), submission in support of the Complaint (Dkt. No. 10), a "Default Affidavit" (Dkt.
No. 11), letter (Dkt. No. 12), and "Truth Affidavit" (Dkt. No. 14). The undersigned considered
these submissions with the Complaint and reached the conclusion set forth above that Plaintiff's

---

[7]     *See also Carris v. First Student, Inc.*, 132 F. Supp. 3d 321, 340-41 n.1 (N.D.N.Y. 2015)
(Suddaby, C.J.) (explaining that the standard set forth in *Gomez v. USAA Fed. Sav. Bank*, 171
F.3d 794, 796 (2d Cir. 1999)—that the Court should grant leave to amend "unless the court can
rule out any possibility, however unlikely it might be, that an amended complaint would be
successful in stating a claim"—is likely not an accurate recitation of the governing law after *Bell
Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)), *rev'd on other grounds*, 682 F. App'x 30.

filings are frivolous and, in the alternative, that the claims against Defendants should be dismissed based on various immunity doctrines.  These filings (Dkt. Nos. 8, 9, 10, 11, 12, and 14) do not appear to seek any relief from the Court and fail to identify the legal grounds for such relief.

Plaintiff also filed a motion to dismiss for "failure to supply supporting depositions." (Dkt. No. 13.)  In light of the recommended disposition of this case, I recommend that Plaintiff's motion be denied.[8]  (Dkt. No. 13.)

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's amended application to proceed *in forma pauperis* (Dkt. No. 7) is **GRANTED**; and it is further

**ORDERED** that the Clerk of the Court (1) provide the Superintendent of the facility that Plaintiff has designated as his current location with a copy of Plaintiff's inmate authorization form (Dkt. No. 4) and notify that official that Plaintiff has filed this action and is required to pay the Northern District of New York the entire statutory filing fee of $350.00 in installments, over time, pursuant to 28 U.S.C. § 1915; and (2) provide a copy of Plaintiff's inmate authorization form (Dkt. No. 4) to the Financial Deputy of the Clerk's office; and it is further

**ORDERED** that the Clerk of the Court update the docket to reflect the correct spelling of Defendant Michael A. Korchak's name; and it is further respectfully

**RECOMMENDED** that the **COURT DISMISS WITHOUT PREJUDICE BUT WITHOUT LEAVE TO AMEND** Plaintiff's Complaint (Dkt. No. 1) in its entirety pursuant to 28 U.S.C. § 1915(e); and it is further respectfully

---

[8]    The undersigned also notes that Plaintiff's motion appears to be seeking dismissal of the New York State criminal charges against him.  (*See generally* Dkt. No. 13.)

**RECOMMENDED** that Plaintiff's motion to dismiss (Dkt. No. 13) be **DENIED**; and it is further

**ORDERED** that the Clerk of the Court shall file a copy of this Order and Report-Recommendation on Plaintiff, along with copies of the unpublished decisions cited herein in accordance with the Second Circuit's decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

**NOTICE:** Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.[9]  Such objections shall be filed with the Clerk of the Court.  <u>**FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**</u>.  28 U.S.C. § 636(b)(1) (Supp. 2013); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)).


Dated: July 25, 2024
      Binghamton, New York

Miroslav Lovric
Miroslav Lovric
U.S. Magistrate Judge

---

[9]     If you are proceeding *pro se* and served with this report, recommendation, and order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date that the report, recommendation, and order was mailed to you to serve and file objections.  Fed. R. Civ. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.  Fed. R. Civ. P. 6(a)(1)(C).

2010 WL 5185047
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

David J. CASH, Plaintiff,

v.

BERNSTEIN, MD, Defendant.

No. 09 Civ.1922(BSJ)(HBP).
|
Oct. 26, 2010.

*REPORT AND RECOMMENDATION* [1]

PITMAN, United States Magistrate Judge.

**\*1** TO THE HONORABLE BARBARA S. JONES, United
States District Judge,

## I. *Introduction*

By notice of motion dated March 4, 2010 (Docket Item 11),
defendant moves pursuant to 28 U.S.C. § 1915(g) to revoke
plaintiff's *in forma pauperis* ("IFP") status on the ground that
plaintiff has previously had at least three Section 1983 actions
dismissed as frivolous, malicious or failing to state a claim
upon which relief could be granted, and has not shown that he
is in imminent danger of serious physical injury. Defendant
further seeks an order directing that the action be dismissed
unless plaintiff pays the full filing fee within thirty (30) days.
For the reasons set forth below, I respectfully recommend that
defendant's motion be granted.

## II. *Facts*

Plaintiff, a sentenced inmate in the custody of the New
York State Department of Correctional Services, commenced
this action on or about January 12, 2009 by submitting his
complaint to the Court's Pro Se office. Plaintiff alleges, in
pertinent part, that he has "a non-healing ulcer that is gane
green [*sic* ]" and that defendant Bernstein "did not want
to treat the ulcer right" (Complaint, dated March 3, 3009
(Docket Item 2) ("Compl."), at 3).

The action was originally commenced against two defendants
—Dr. Bernstein and Dr. Finkelstein. The action was dismissed
as to Dr. Finkelstein because the complaint contained no
allegations whatsoever concerning Dr. Finkelstein (Order
dated February 18, 2010 (Docket Item 9)).

On March 4, 2010, the sole remaining defendant—Dr.
Bernstein—filed the current motion. Plaintiff failed to submit
a response. Accordingly, on August 20, 2010, I issued an
Order advising plaintiff that if he wished to oppose the
motion, he must submit his opposition by September 15, 2010
and that after that date I would consider the motion fully
submitted and ripe for decision (Order dated August 20, 2010
(Docket Item 15)). The only submission plaintiff has made
in response to my Order is a multi-part form issued by the
New York State Department of Correctional Services entitled
"Disbursement or Refund Request." [2] By this form, plaintiff
appears to request that the New York State Department of
Correctional Services pay the filing fee for this action. The
form is marked "Denied."

## III. *Analysis*

28 U.S.C. § 1915 permits an indigent litigant to commence
an action in a federal court without prepayment of the filing
fee that would ordinarily be charged. Although an indigent,
incarcerated individual need not prepay the filing fee at the
time at the time of filing, he must subsequently pay the fee,
to the extent he is able to do so, through periodic withdrawals
from his inmate accounts. 28 U.S.C. § 1915(b); *Harris v.
City of New York,* 607 F.3d 18, 21 (2d Cir.2010). To prevent
abuse of the judicial system by inmates, paragraph (g) of
this provision denies incarcerated individuals the right to
proceed without prepayment of the filing fee if they have
repeatedly filed meritless actions, unless such an individual
shows that he or she is in imminent danger of serious
physical injury. *See Ortiz v. McBride,* 380 F.3d 649, 658 (2d
Cir.2004) ("[T]he purpose of the PLRA ... was plainly to
curtail what Congress perceived to be substantial abuses of the
judicial process."); *Nicholas v. Tucker,* 114 F.3d 17, 19 (2d
Cir.1997). Specifically, paragraph (g) provides:

> **\*2** In no event shall a prisoner bring
> a civil action or appeal a judgment
> in a civil action or proceeding under
> this section if the prisoner has, on
> 3 or more prior occasions, while
> incarcerated or detained in any facility,
> brought an action or appeal in a court
> of the United States that was dismissed
> on the grounds that it is frivolous,

malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g).

If an inmate plaintiff seeks to avoid prepayment of the filing fee by alleging imminent danger of serious physical injury, there must be a nexus between the serious physical injury asserted and the claims alleged. *Pettus v. Morgenthau,* 554 F.3d 293, 298 (2d Cir.2009).

Section 1915(g) clearly prevents plaintiff from proceeding in this action without prepayment of the filing fee. The memorandum submitted by defendant establishes that plaintiff has had his IFP status revoked on at least four prior occasions as a result of his repeatedly filing meritless actions.

- In 2005, plaintiff commenced an action in the United States District Court for the Northern District of New York seeking to have his infected leg amputated. *Nelson*[3] *v. Lee,* No. 9:05–CV–1096 (NAM)(DEP), 2007 WL 4333776 (N.D.N.Y. Dec. 5, 2007). In that matter, the Honorable Norman A. Mordue, Chief United States District Judge, accepted and adopted the Report and Recommendation of the Honorable David E. Peebles, United States Magistrate Judge, that plaintiff had brought three or more prior actions that had been dismissed for failure to state a claim and that plaintiff's IFP status should, therefore, be revoked. 2007 WL 4333776 at *1–*2.

- In *Nelson v. Nesmith,* No. 9:06–CV–1177 (TJM)(DEP), 2008 WL 3836387 (N.D.N.Y. Aug. 13, 2008), plaintiff again filed an action concerning the medical care he was receiving for his left leg. The Honorable Thomas J. McAvoy, United States District Judge, accepted the Report and Recommendation of Magistrate Judge Peebles, and revoked plaintiff's IFP status and dismissed the action on the ground that plaintiff had previously commenced at least three actions that had been dismissed on the merits. 2008 WL 3836387 at *1, *7.

  - In *Nelson v. Spitzer,* No. 9:07–CV–1241 (TJM) (RFT), 2008 WL 268215 (N.D.N.Y. Jan. 29, 2008), Judge McAvoy again revoked plaintiff's IFP status

on the ground that plaintiff had commenced three or more actions that constituted "strikes" under Section 1915(g) and had not shown an imminent threat of serious physical injury. 2008 WL 268215 at *1–*2.

- Finally, in *Nelson v. Chang,* No. 08–CV–1261 (KAM)(LB), 2009 WL 367576 (E.D.N.Y. Feb. 10, 2009), the Honorable Kiyo A. Matsumoto, United States District Judge, also found, based on the cases discussed above, that plaintiff had exhausted the three strikes permitted by Section 1915(g) and could not proceed IFP in the absence of a demonstration of an imminent threat of serious physical injury. 2009 WL 367576 at *2–*3.

**\*3** As defendant candidly admits, there is one case in which plaintiff's leg infection was found to support a finding of an imminent threat of serious physical injury sufficient to come within the exception to Section 1915(g). *Nelson v. Scoggy,* No. 9:06–CV–1146 (NAM)(DRH), 2008 WL 4401874 at *2 (N.D.N.Y. Sept. 24, 2008). Nevertheless, summary judgment was subsequently granted for defendants in that case, and the complaint was dismissed. Judge Mordue concluded that there was no genuine issue of fact that plaintiff had received adequate medical care for his leg wound and that the failure of the leg to heal was the result of plaintiff's own acts of self-mutilation and interference with the treatment provided. *Nelson v. Scoggy,* No. 9:06–CV–1146 (NAM)(DRH), 2009 WL 5216955 at *3–*4 (N.D.N.Y. Dec. 30, 2009).[4]

In light of the foregoing, there can be no reasonable dispute that plaintiff has exceeded the three "strikes" allowed by Section 1915(g) and that he cannot, therefore, proceed here without prepaying the filing fee unless he demonstrates an imminent threat of serious physical injury. Plaintiff has declined to attempt to make this showing in response to defendant's motion, and the only suggestion in the record of serious physical injury is the bare statement in the complaint that plaintiff "need[s] to go back to a wound speci [a]list before the gane green [*sic* ] kills [him]" (Compl. at 5). "However, unsupported, vague, self-serving, conclusory speculation is not sufficient to show that Plaintiff is, in fact, in imminent danger of serious physical harm." *Merriweather v. Reynolds,* 586 F.Supp.2d 548, 552 (D.S.C.2008), *citing Ciarpaglini v. Saini,* 352 F.3d 328, 330 (7th Cir.2003) *and White v. Colorado,* 157 F.3d 1226, 1231–32 (10th Cir.1998); *see also Martin v. Shelton,* 319 F.3d 1048, 1050 (8th Cir.2003) (imminent danger exception to Section 1915(g) requires "specific fact allegations of ongoing serious physical injury,

or of a pattern of misconduct evidencing the likelihood of imminent serious physical injury"). Given the plaintiff's history, as set forth in the cases described above, I conclude that this vague statement is insufficient to support a finding that plaintiff is in imminent danger of serious physical injury. [5]

### IV. *Conclusion*

Accordingly, for all the foregoing reasons, I find that plaintiff has had three or more prior actions dismissed as being frivolous, malicious or failing to state a claim and that plaintiff's *in forma pauperis* status should, therfore, be revoked. If your Honor accepts this recommendation, I further recommend that the action be dismissed unless plaintiff pays the filing fee in full within thirty (30) days of your Honor's final resolution of this motion.

### V. *OBJECTIONS*

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from receipt of this Report to file written objections. *See also* Fed.R.Civ.P. 6(a). Such objections (and responses thereto) shall be filed with the Clerk of the Court, with courtesy copies delivered to the Chambers of the Honorable Barbara S. Jones, United States District Judge, 500 Pearl Street, Room 1920, and to the Chambers of the undersigned, 500 Pearl Street, Room 750, New York, New York 10007. Any requests for an extension of time for filing objections must be directed to Judge Jones. FAILURE TO OBJECT WITHIN FOURTEEN (14) DAYS ***WILL*** RESULT IN A WAIVER OF OBJECTIONS AND ***WILL*** PRECLUDE APPELLATE REVIEW. *Thomas v. Arn,* 474 U.S. 140, 155 (1985); *United States v. Male Juvenile,* 121 F.3d 34, 38 (2d Cir.1997); *IUE AFL–CIO Pension Fund v. Herrmann,* 9 F.3d 1049, 1054 (2d Cir.1993); *Frank v. Johnson,* 968 F.2d 298, 300 (2d Cir.1992); *Wesolek v. Canadair Ltd.,* 838 F.2d 55, 57– 59 (2d Cir.1988); *McCarthy v. Manson,* 714 F.2d 234, 237– 38 (2d Cir.1983).

### All Citations

Not Reported in F.Supp.2d, 2010 WL 5185047

## Footnotes

1    At the time the action was originally filed, the Honorable Leonard B. Sand, United States District Judge, granted plaintiff's application for *in forma pauperis* status based on plaintiff's *ex parte* submission (Docket Item 1). Although the present application seeking to revoke plaintiff's *in forma pauperis* status is non-dispositive, I address it by way of a report and recommendation to eliminate any appearance of a conflict between the decision of a district judge and that of a magistrate judge.

2    Plaintiff sent this form directly to my chambers, and it has not been docketed by the Clerk of the Court. The form will be docketed at the time this Report and Recommendation is issued.

3    It appears that plaintiff uses the names David J. Cash and Dennis Nelson interchangeably. In his complaint in this matter, plaintiff states that the Departmental Identification Number, or DIN, assigned to him by the New York State Department of Correctional Services ("DOCS") is 94–B–0694 (Compl. at 7). DOCS inmate account records submitted by plaintiff in connection with his application for IFP status indicate that DIN 94– B–0694 is assigned to Dennis Nelson. In addition, the DOCS form described in footnote two bears the docket number of this action, but is signed in the name of Dennis Nelson and was sent in an envelope identifying the sender as Dennis Nelson. A subsequent action has been filed in this Court in which the plaintiff identifies himself as Dennis Nelson but lists his DIN as 94–B–0694, the same DIN used by plaintiff here. Finally, plaintiff has submitted nothing to controvert the assertion in defendant's papers that David Cash and Dennis Nelson are the same person. In light of all these facts, I conclude that David Cash and Dennis Nelson are both names used by plaintiff.

4    Although the form complaint utilized by plaintiff expressly asks about prior actions involving the same facts, plaintiff disclosed only the *Scoggy* action and expressly denied the existence of any other actions relating to his imprisonment (Compl. at 6).

5    Plaintiff has sent me several letters describing his wound and its symptoms in detail, and I have no doubt that the wound is serious. However, in granting summary judgment dismissing an action last year based on the same allegations, Judge Mordue of the Northern District found that there was no genuine issue of fact that plaintiff's own conduct was responsible for the ineffectiveness of the treatment he was provided:

> Furthermore, to the extent that Nelson's medical treatment was delayed, much of the delay was due to his own refusal to cooperate with medical staff and his self-mutilations. Nelson's actions to thwart the medical treatment of his wound cannot be construed as interference or indifference by anyone else.... [T]he medical treatment Nelson received complied with constitutional guarantees as it was appropriate, timely, and delayed only by Nelson's own actions.

> *Nelson v. Scoggy, supra,* 2009 WL 5216955 at *4.

> Given plaintiff's total failure to respond to the pending motion and his failure to even deny that he is actively thwarting treatment of his wound, it would be sheer speculation for me to conclude that he is in imminent danger of a serious injury as a result of defendant's conduct.

---

**End of Document**                                                   © 2024 Thomson Reuters. No claim to original U.S. Government Works.

Case 3:24-cv-00477-BKS-ML   Document 15   Filed 07/25/24   Page 17 of 126

Miller Ex v. Primo, Not Reported in Fed. Supp. (2022)

2022 WL 16556060
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Daishawn-Lavon MILLER EX, Plaintiff,

v.

David PRIMO, Chief Clerk; Karen J Stanislaus-
Fung, Court Attorney Referee; Tylyn L Bozeman,
Attorney for mother; Robert Temple, Attorney for
the child; Salvatore Pavone, Court Attorney Referee;
and Tanerra CC Newton, mother, Defendants.

5:22-CV-0680 (BKS/ML)
|
Signed September 29, 2022

**Attorneys and Law Firms**

DAISHAWN-LAVON MILLER EX, Plaintiff, Pro Se, 2363
James Street, Number 547, Syracuse, New York 13206.

### ORDER and REPORT-RECOMMENDATION

MIROSLAV LOVRIC, United States Magistrate Judge

**\*1**  The Clerk has sent this *pro se* Complaint (Dkt. No. 1)
together with an application to proceed *in forma pauperis*
(Dkt. No. 3) filed by Daishawn-lavon Miller Ex ("Plaintiff")
to the Court for review. For the reasons discussed below, I
grant Plaintiff's *in forma pauperis* application (Dkt. No. 3),
and I recommend that Plaintiff's Complaint (Dkt. No. 1) be
dismissed in its entirety without prejudice (a) in part with
leave to amend, and (b) in part without leave to amend.

### I. BACKGROUND

Liberally construed, [1] Plaintiff's Complaint asserts that
his rights were violated by Defendants David Primo,
Karen Stanislaus, Tylyn Bozeman, Robert Temple, Salvatore
Pavone, Tanerra CC Newton (collectively "Defendants"),
who were all involved in Plaintiff's state court child custody
dispute. (*See generally* Dkt. No. 1.)

In total Plaintiff's Complaint and the ten attachments are 79-
pages long. (*Id.*) The vast majority of Plaintiff's Complaint
and attachments are nonsensical, rambling sentences, that
strongly suggest Plaintiff is proceeding in the present case
on the basis of his purported status as a sovereign citizen.

More specifically, Plaintiff alleges that his due process rights
were violated by Defendants when they failed to take notice
of his attempts to serve them with notice of his "status as the
executor, american national, age of [majority], secured party
creditor" and that Defendants enforced and applied a foreign
and unconstitutional form of law. (*Id.*) In addition, Plaintiff
alleges that Defendants violated his constitutional rights by
determining the custody of his child pursuant to the Family
Court Act, which is "derrived [sic] from the Social Security
Act which was never enacted into positive law." (Dkt. No. 1
at 4.)

Plaintiff alleges that Defendant Primo, the Chief Court Clerk
of Onondaga County Family Court, was present during
Plaintiff's custody trial where he "watched" (1) Plaintiff
question the court's jurisdiction, and (2) Plaintiff's requests
to have his name correctly formatted be ignored. [2]  (*Id.* at
6.) Plaintiff alleges that the court failed to take notice of
"NYS authenticated Power of Attorney and Birth Certificates
[Birth Certification is now Authenticated at Federal Level,
Bill of Complaint in Equity, Declaration of Nationality,
Notice of Restricted Special Appearance, invoices/injunction
[cease and desist order], Uniform Commercial Code Financial
Statements." (*Id.*)

Plaintiff alleges that Defendant Temple, the attorney for the
child in Plaintiff's custody action, did not act in Plaintiff's
child's best interest, failed to "honor [Plaintiff's] injunction
(cease and desist order), failed to take notice of [Plaintiff's]
Bill of Complaint in Equity, NYS authenticated Power of
Attorney and Birth Certificate, Declaration of Nationality,
[and Defendant Temple wa]s also responsible for drafting the
order with the NAMES in all caps." (*Id.*)

**\*2**  Plaintiff alleges that Defendant Stanislaus-Fung, who
was the court attorney referee in his custody dispute, "failed
to take notice of [Plaintiff's] status," "took joint legal custody
away from [Plaintiff] via the FAMILY COURT ACT," failed
to recuse herself despite Plaintiff's requests, and did not act as
an impartial decision maker in the custody dispute. (*Id.*)

Plaintiff alleges that Defendant Bozeman, who represented
the mother of Plaintiff's child in the custody dispute, failed
to take notice of Plaintiff's "status." (*Id.*) In addition, Plaintiff
alleges that Defendant Bozeman was served with invoices,
a private parenting agreement, and an injunction to cease
and desist but that she failed to properly respond to those
documents. (*Id.*)

Case 3:24-cv-00477-BKS-ML   Document 15   Filed 07/25/24   Page 18 of 126

Miller Ex v. Primo, Not Reported in Fed. Supp. (2022)

Although Plaintiff's Complaint contains virtually no factual detail, it appears to assert one claim that Defendants violated his due process rights. [3] (*See generally* Dkt. No. 1.) Plaintiff does not appear to be seeking any relief. (*See generally* Dkt. No. 1.)

Plaintiff also filed an application to proceed *in forma pauperis.* (Dkt. No. 3.)

## II. PLAINTIFF'S APPLICATION TO PROCEED *IN FORMA PAUPERIS*

"When a civil action is commenced in a federal district court, the statutory filing fee, currently set at $402, must ordinarily be paid. 28 U.S.C. § 1914(a). A court is authorized, however, to permit a litigant to proceed *in forma pauperis* status if a party "is unable to pay" the standard fee for commencing an action. 28 U.S.C. § 1915(a)(1). [4] After reviewing Plaintiff's *in forma pauperis* application (Dkt. No. 3), the Court finds that Plaintiff meets this standard. Therefore, Plaintiff's application to proceed *in forma pauperis* is granted. [5]

## III. LEGAL STANDARD FOR INITIAL REVIEW OF COMPLAINT

**\*3** Although the court has a duty to show liberality toward *pro se* litigants, and must use extreme caution in ordering *sua sponte* dismissal of a *pro se* complaint before the adverse party or parties have been served and have had an opportunity to respond, the court still has a responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed. 28 U.S.C. § 1915(e); *Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990) (per curiam); *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983); *see, e.g., Fitzgerald v. First East Seventh St. Tenants Corp.*, 221 F.3d 362, 363 (2d Cir. 2000) (holding that a district court may *sua sponte* dismiss a frivolous complaint, notwithstanding the fact that the plaintiff paid the statutory filing fee). "Legal frivolity ... occurs where 'the claim is based on an indisputably meritless legal theory [such as] when either the claim lacks an arguable basis in law, or a dispositive defense clearly exists on the face of the complaint." *Aguilar v. United States*, 99-MC-0304, 99-MC-0408, 1999 WL 1067841, at \*2 (D. Conn. Nov. 8, 1999) (quoting *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998)); *see also Neitzke v. Williams*, 490 U.S. 319, 325 (1989) ("[D]ismissal is proper only if the legal theory ... or factual contentions lack an arguable basis."); *Pino v. Ryan*, 49 F.3d 51, 53 (2d Cir. 1995) ("[T]he decision that a complaint is based on an indisputably meritless legal theory

for purposes of dismissal under section 1915(d), may be based upon a defense that appears on the face of the complaint.").

When reviewing a complaint under section 1915(e), the court is guided by applicable requirements of the Federal Rules of Civil Procedure. More specifically, Rule 8 of the Federal Rules of Civil Procedure provides that a pleading must contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The requirement that a plaintiff "show" that he or she is entitled to relief means that a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is *plausible* on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasis added) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Determining whether a complaint states a plausible claim for relief ... requires the ... court to draw on its judicial experience and common sense.... [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not shown– that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (internal citation and punctuation omitted). "In reviewing a complaint ... the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

## IV. ANALYSIS

In addressing the sufficiency of a plaintiff's complaint, the court must construe his pleadings liberally. *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008). Having reviewed Plaintiff's Complaint with this principle in mind, I recommend that all causes of action be dismissed.

"Theories presented by redemptionist and sovereign citizen adherents have not only been rejected by the courts, but also recognized as frivolous and a waste of court resources." *Muhammad v. Smith*, 13-CV-0760, 2014 WL 3670609, at \*2 (N.D.N.Y. July 23, 2014) (D'Agostino, J.); *accord, Charlotte v. Hansen*, 433 F. App'x 660, 661 (10th Cir. 2011) (summary order) (noting that "an individual's belief that her status as a 'sovereign citizen' puts her beyond the jurisdiction of the courts has no conceivable validity in American law") (internal quotation marks omitted); *see also United States v. Ulloa*, 511 F. '105, 106 n.1 (2d Cir. 2013) (summary

order) ("The sovereign citizens are a loosely affiliated group who believe that the state and federal governments lack constitutional legitimacy and therefore have no authority to regulate their behavior. The FBI has labeled the sovereign citizens a domestic terrorist group."); *Monroe v. Beard*, 536 F.3d 198, 203 n.4 (3rd Cir. 2008) ("[T]he 'Redemptionist' theory ... propounds that a person has a split personality: a real person and a fictional person called the 'strawman.' The 'strawman' purportedly came into being when the United States went off the gold standard ... and, instead, pledged the strawman of its citizens as collateral for the country's national debt. Redemptionists claim that government has power only over the strawman and not over the live person, who remains free. Individuals can free themselves by filing UCC financing statements, thereby acquiring an interest in their strawman.... Adherents of this scheme also advocate that inmates copyright their names to justify filing liens against officials using their names in public records such as indictments or court papers."); *Branton v. Columbia Cnty.*, 15-CV-0005, 2015 WL 3397949, at *2-4 (N.D.N.Y. May 26, 2015) (Hurd, J., adopting Report-Recommendation of Dancks, M.J., dismissing plaintiff's complaint, which was "a classic example of [the] 'redemptionist' or 'sovereign citizen' theory," and denying leave to amend); *Green v. Pryce*, 15-CV-3527, 2015 WL 4987893, at *3-4 (E.D.N.Y. Aug. 18, 2015) (dismissing plaintiff's complaint on initial review and denying leave to amend, where the complaint was based "on the 'redemptionist' theory," included claims "pursuant to federal criminal statutes that do not provide a private right of action," and "failed to set forth any facts to support" his § 1983 claim).

***4** Here, Plaintiff's Complaint (1) is comprised of repeated references to his status as an "american national ... secured party creditor," (2) is virtually devoid of factual allegations about the incident or incidents at issue (or any other event based in fact), and (3) contains citations to statutes and references to legal concepts that do not provide a private cause of action. (Dkt. No. 1.) Accordingly, I conclude that Plaintiff's Complaint–predicated as it is on a "sovereign citizen" theory that is routinely held to have no basis in law–does not allege facts plausibly suggesting any entitlement to relief.

In addition and in the alternative, I recommend that Plaintiff's Complaint be dismissed because it seeks relief from individuals who are immune from suit and for failure to state a claim upon which relief may be granted. [6]

"To state a valid claim under § 1983, the plaintiff must allege that the challenged conduct (1) was attributable to a person acting under color of state law, and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States." *Whalen v. Cnty. of Fulton*, 126 F.3d 400, 405 (2d Cir. 1997) (citing *Eagleston v. Guido*, 41 F.3d 865, 875-76 (2d Cir. 1994)). Thus, § 1983 does not create any independent substantive right, but rather "provides a civil claim for damages" to "redress ... the deprivation of [federal] rights established elsewhere." *Thomas v. Roach*, 165 F.3d 137, 142 (2d Cir. 1999).

### A. Immunity

#### 1. Defendant Primo

Courts have routinely granted judicial immunity to "government officials, including clerks of court and other court employees, for their acts that assist a judge in the performance of his or her judicial duties." *Mendez v. Johnson*, 22-CV-6811, 2022 WL 3587600, at *2 (S.D.N.Y. Aug. 22, 2022) (citing *Cleavinger v. Saxner*, 474 U.S. 193, 200 (1985); *Montero v. Travis*, 171 F.3d 757, 760 (2d Cir. 1999); *see Ali v. Pollak*, 182 F.3d 898 (2d Cir. 1999) (unpublished opinion) (extending judicial immunity to a pro se law clerk); *Oliva v. Heller*, 839 F.2d 37, 39-40 (2d Cir. 1988) (extending judicial immunity to a judge's law clerk); *Chmura v. Norton, Hammersley, Lopez & Skokos Inverso PA*, 17-CV-2164, 2018 WL 2138631, at *2 (D. Conn. May 9, 2018) (extending judicial immunity to a clerk of court); *Manko v. Ruchelsman*, 12-CV-4100, 2012 WL 4034038, at *2 (E.D.N.Y. Sept. 10, 2012) (same); *Gibson v. Brown*, 12-CV-0622, 2012 WL 1744845, at *4-5 (E.D.N.Y. May 16, 2012) (extending judicial immunity to a pro se writ clerk)).

***5** It appears as though Plaintiff's claim against Defendant Primo arises from actions he took with respect to a case before Defendant Stanislaus-Fung in the Onondaga County Family Court. Plaintiff fails to allege any facts showing that Defendant Primo acted beyond the scope of his judicial responsibilities or outside of his jurisdiction. Because Plaintiff sues Defendant Primo for "acts arising out of, or related to, individual cases before" Defendant Stanislaus-Fung, he is immune from suit for such claims. *Bliven v. Hunt*, 579 F.3d 204, 210 (2d Cir. 2009).

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

Miller Ex v. Primo, Not Reported in Fed. Supp. (2022)

Case 3:24-cv-00477-BKS-ML   Document 15   Filed 07/25/24   Page 20 of 126

## 2. Defendants Stanislaus-Fung and Pavone

"The law is clear that court referees are entitled to absolute judicial immunity from liability with respect to acts taken in the scope of their duties." *Khrapko v. Splain*, 389 F. Supp. 3d 199, 205 (W.D.N.Y. 2019) (citing *Green v. Kadilac Mortg. Bankers, Ltd.*, 936 F. Supp. 108, 115 (S.D.N.Y. 1996); *Weiss v. Feigenbaum*, 558 F. Supp. 265, 272 (E.D.N.Y. 1982)); *accord Witcher v. Moriber*, 21-CV-6168, 2022 WL 1085297, at *2 (E.D.N.Y. Apr. 11, 2022) (citing *Wilson v. Wilson-Polson*, 446 F. App'x 330, 331 (2d Cir. 2011) (allegations that a New York State Family Court referee violated plaintiff's procedural due process rights failed in light of the referee's absolute immunity to suit); *Topolski v. Wrobleski*, 13-CV-0872, 2014 WL 2215761, at *3 (N.D.N.Y. May 29, 2014) ("Judicial immunity is so broad that judges and referees 'are not liable to civil actions for their judicial acts, even when such acts ... are alleged to have been done maliciously or corruptly.' "); *Renner v. Stanton*, 13-CV-1676, 2013 WL 1898389, at *3 (E.D.N.Y. May 7, 2013) (dismissing claims against Family Court Referee based on judicial immunity)).

As a result, I recommend that Plaintiff's claim against Defendants Stanislaus-Fung and Pavone be dismissed based on the doctrine of absolute judicial immunity.

## 3. Defendant Temple

"Absolute immunity may attach to a non-judicial officer where that individual serves as an 'arm of the court,' or acts as an 'integral part[ ] of the judicial process.' " *Holland v. Morgenstern*, 12-CV-4870, 2013 WL 2237550, at *4 (E.D.N.Y. May 20, 2013) (quoting *Scotto v. Almenas*, 143 F.3d 105, 111 (2d Cir. 1998); *Briscoe v. LaHue*, 460 U.S. 325, 335 (1983)). "In New York, courts have regularly found that attorneys for children in custody proceedings (called 'law guardians' until 2010, N.Y. Fam. Ct. Act § 242) enjoy quasi-judicial immunity." *Thomas v. Martin-Gibbons*, 19-CV-7695, 2020 WL 5026884, at *7 (S.D.N.Y. Aug. 25, 2020) (citing *Bey v. New York*, 11-CV-3296, 2012 WL 4370272, at *9 (E.D.N.Y. Sept. 21, 2012)).

Plaintiff's allegations against Defendant Temple arise out of his court-appointed representation of Plaintiff's child during family court proceedings. As a result, I recommend that Plaintiff's claim against Defendant Temple be dismissed pursuant to the doctrine of quasi-judicial immunity. *Thomas v. Martin-Gibbs*, 2020 WL 5026884, at *7 (citing *Yapi v. Kondratyeva*, 340 F. App'x 683, 685 (2d Cir. 2009) (finding that the Children's Law Center and its employees are entitled to quasi-judicial immunity)) (dismissing the plaintiff's claims against the Children's Law Center, which arose out of their court-appointed representation of "J.O." during family court proceedings).

Based on the doctrine of judicial immunity, I recommend that Plaintiff's claim against Defendants Primo, Stanislaus-Fung, Pavone, and Temple be dismissed because the Court lacks subject matter jurisdiction.

## B. Failure to State a Claim Upon Which Relief May Be Granted

### 1. Defendant Primo

**\*6** In the alternative, I recommend that Plaintiff's claim against Defendant Primo be dismissed for failure to state a claim upon which relief may be granted.

"To state a claim for liability under [S]ection 1983 against a government official sued in his or her individual capacity, 'a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.' " *McCluskey v. Roberts*, No. 20-4018, 2022 WL 2046079, at *3 (2d Cir. June 7, 2022) (summary order) (quoting *Tangreti v. Bachmann*, 983 F.3d 609, 616 (2d Cir. 2020)). Failing to allege that a defendant was personally involved in, or responsible for, the alleged constitutional violation renders a complaint "fatally defective on its face." *Alfaro Motors, Inc. v. Ward*, 814 F.2d 883, 886 (2d Cir. 1987) (internal quotation marks omitted); *see Dubois v. Beaury*, No. 21-2096, 2022 WL 1701497, at *4 (2d Cir. May 27, 2022) (stating that "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under [Section] 1983" (internal quotation marks omitted)).

Here, Plaintiff alleges that Defendant Primo "allowed" Plaintiff's rights to be violated "as he sat in on [Plaintiff's custody] Trial and watched [Plaintiff] qu[ ]estion the court['s] jurisdiction, the format of the names in the custodial order." (Dkt. No. 1 at 6.) Plaintiff's allegation that Defendant Primo was present while others allegedly violated his rights, fails to plausibly suggest Defendant Primo's personal involvement in the constitutional violation. *See Roman v. City*

Miller Ex v. Primo, Not Reported in Fed. Supp. (2022)

Case 3:24-cv-00477-BKS-ML    Document 15    Filed 07/25/24    Page 21 of 126

of Mount Vernan, 21-CV-2214, 2022 WL 2819459, at *16 (S.D.N.Y. July 19, 2022) (quoting *Arbuckle v. City of New York*, 14-CV-10248, 2016 WL 5793741, at *13 (S.D.N.Y. Sept. 30, 2016)) (" 'Simply being present at the scene of an arrest does not suffice for personal involvement.' ").

### 2. Defendant Pavone

In the alternative, I recommend that Plaintiff's claim against Defendant Pavone be dismissed for failure to allege Defendant Pavone's personal involvement in any violation of Plaintiff's rights. The Complaint lists Defendant Pavone as a defendant but fails to allege any action taken by Defendant Pavone.

### 3. Defendants Bozeman and Temple

Plaintiff's claim pursuant to 42 U.S.C. § 1983 against Defendants Bozeman and Temple is inadequately pled because he failed to allege that they acted under color of state law. 42 U.S.C. § 1983; *Velez v. Levy*, 401 F.3d 75, 84 (2d Cir. 2005).

"Although appointed by the state, an attorney for the children or law guardian is not a state actor because he or she must exercise independent professional judgment on behalf of the clients they represent." *Parent v. New York*, 786 F. Supp. 2d 516, 538 (N.D.N.Y. 2011) (Hurd, J.). Thus, I recommend that Plaintiff's claim against Defendant Temple be dismissed for failure to state a claim upon which relief may be granted.

Moreover, although it is not clear from the face of the complaint whether Defendant Bozeman was appointed by the court to represent Defendant Newton, or whether Defendant Newton privately retained Defendant Bozeman, the difference is inconsequential. "It is well-settled that attorneys engaged in private practice do not act under color of state law within the meaning of § 1983." *Parent*, 786 F. Supp. 2d at 538 (citing *Polk Cnty. v. Dodson*, 454 U.S. 312, 318 (1981)); *accord Agron v. Douglas W. Dunham Esq. & Assocs.*, 02-CV-10071, 2004 WL 691682, at *3 (S.D.N.Y. Mar. 31, 2004); *see Walker v. Rivera*, 22-CV-0560, 2022 WL 2341544, at *3 (N.D.N.Y. June 29, 2022) (Dancks, M.J.) (recommending dismissal of the plaintiff's Section 1983 claims against the defendant private attorney and defendant attorney for the child because the plaintiff failed to allege facts plausibly suggesting that they acted under color of

state law); *DeRouseau v. Fam. Ct., Westchester Cnty.*, 21-CV-8716, 2022 WL 1747859, at *3 (S.D.N.Y. May 31, 2022) (dismissing the plaintiff's § 1983 claims against "attorneys who were appointed to represent him and his child in the Family Court."); *Cleveland v. Schenectady Cnty. Dep't of Children and Families*, 16-CV-1235, 2016 WL 8193590, at *6 (N.D.N.Y. Dec. 30, 2016) (Stewart, M.J.) ("It is well settled that conduct of private attorneys practicing in family court proceedings, even where they are paid by the State, do not rise to the level of State action.").

**\*7** As a result, I recommend that Plaintiff's claim against Defendants Temple and Bozeman be dismissed.

### 4. Defendant Newton

Plaintiff's Complaint fails to allege facts plausibly suggesting that Defendant Newton—the mother of his child—was a state actor. "[M]ere use, and even misuse, of state courts does not turn private parties into state actors." *Koziol v. King*, 14-CV-0946, 2015 WL 2453481, at *11 (N.D.N.Y. May 22, 2015) (Sharpe, C.J.) (citing *Cramer v. Englert*, 93 F. App'x 263, 264 (2d Cir. 2004) ("[T]he mere invocation of New York legal procedures does not satisfy the state actor requirement under § 1983."); *Dahlberg v. Becker*, 748 F.2d 85, 89-90 (2d Cir. 1984) (dismissing § 1983 action because allegations of "misuse of a state statute" did not give rise to § 1983 action)). Thus, Plaintiff has failed to allege facts plausibly suggesting Defendant Newton was a state actor for purposes of liability pursuant to 42 U.S.C. § 1983. *Koziol*, 2015 WL 2453481, at *11-12 (dismissing the plaintiff's claims against his ex-wife based on the plaintiff's allegations that she "abuse[d] joint custody rights" and filed "false claims" and "specious petitions").

As a result, I recommend that Plaintiff's claim against Defendant Newton be dismissed for failure to state a claim upon which relief may be granted. [7]

### V. OPPORTUNITY TO AMEND

Generally, a court should not dismiss claims contained in a complaint filed by a *pro se* litigant without granting leave to amend at least once "when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir. 1991); *see also* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires."). An opportunity to

Miller Ex v. Primo, Not Reported in Fed. Supp. (2022)

Case 3:24-cv-00477-BKS-ML   Document 15   Filed 07/25/24   Page 22 of 126

amend is not required, however, where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *see also Cortec Indus. Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice."). Stated differently, "[w]here it appears that granting leave to amend is unlikely to be productive, ... it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993); *accord, Brown v. Peters*, 95-CV-1641, 1997 WL 599355, at *1 (N.D.N.Y. Sept. 22, 1997) (Pooler, J.). [8]

*8 Here, better pleading could not cure the Court's lack of subject matter jurisdiction based on the immunities described above, which appear to apply to all claims except those against Defendants Bozeman and Newton.

However, in light of Plaintiff's *pro se* status and out of an abundance of caution, a better pleading—addressing the deficiencies outlined above—could potentially save Plaintiff's claim against Defendant Bozeman and Newton from being *sua sponte* dismissed on initial review. As a result, I recommend that Plaintiff's claim against Defendant Bozeman and Newton be dismissed without prejudice and with leave to amend.

If Plaintiff chooses to file an amended complaint, he should note that the law in this circuit clearly provides that " 'complaints relying on the civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning.' " *Hunt v. Budd*, 895 F. Supp. 35, 38 (N.D.N.Y. 1995) (McAvoy, J.) (quoting *Barr v. Abrams*, 810 F.2d 358, 363 (2d Cir. 1987)); *accord Pourzancvakil v. Humphry*, 94-CV-1594, 1995 WL 316935, at *7 (N.D.N.Y. May 22, 1995) (Pooler, J.). Therefore, in any amended complaint, Plaintiff must clearly set forth facts that give rise to the claims, including the dates, times, and places of the alleged underlying acts, and each individual who committed each alleged wrongful act. In addition, the revised pleading should allege facts demonstrating the specific involvement of any named defendant in the constitutional deprivations alleged in sufficient detail to establish that it was tangibly connected to those deprivations. *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986). Finally, Plaintiff is informed that any such amended complaint will replace the existing Complaint and

must be a wholly integrated and complete pleading that does not rely upon or incorporate by reference any pleading or document previously filed with the Court. *See Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994) ("It is well established that an amended complaint ordinarily supersedes the original and renders it of no legal effect.").

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's IFP application (Dkt. No. 3) is **GRANTED**; and it is further respectfully

**RECOMMENDED** that Plaintiff's Complaint (Dkt. No. 1) be *sua sponte* dismissed in its entirety pursuant to 28 U.S.C. § 1915(e); and it is further respectfully

**RECOMMENDED** that the Court **DISMISS WITHOUT PREJUDICE AND WITH LEAVE TO AMEND** Plaintiff's Complaint (Dkt. No. 1) against Defendants Bozeman and Newton, for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2)(B); and it is further respectfully

**RECOMMENDED** that the Court **DISMISS WITHOUT PREJUDICE AND WITHOUT LEAVE TO AMEND** Plaintiff's Complaint (Dkt. No. 1) against Defendants Primo, Stanislaus-Fung, Temple, and Pavone, because it seeks relief from defendants who are immune from suit pursuant to 28 U.S.C. § 1915(e)(2)(B); and it is further

**ORDERED** that the Clerk of the Court shall file a copy of this Order and Report-Recommendation on Plaintiff, along with copies of the unpublished decisions cited herein in accordance with the Second Circuit's decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

*9 NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. [9] Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. 28 U.S.C. § 636(b)(1) (Supp. 2013); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)).

**All Citations**

Not Reported in Fed. Supp., 2022 WL 16556060

Miller Ex v. Primo, Not Reported in Fed. Supp. (2022)

Case 3:24-cv-00477-BKS-ML    Document 15    Filed 07/25/24    Page 23 of 126

## Footnotes

1    The court must interpret *pro se* complaints to raise the strongest arguments they suggest. *Soto v. Walker,* 44 F.3d 169, 173 (2d Cir. 1995) (quoting *Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir. 1994)).

2    Although unclear from the content of the Complaint, it appears that Plaintiff prefers his name be written in entirely lowercase letters but that the caption in the state court proceedings listed the parties' names in all capital letters.

3    Plaintiff's Complaint also contains an extensive list with several legal terms that do not appear to have any meaning in context. (Dkt. No. 1 at 7.) More specifically, under the paragraph in the form complaint asking what relief Plaintiff seeks, states:

> see invoices attached, Abuse of Power, Abuse of Process, Appearance in Court, Breach of Contract/ Oath/ Charter, Breach of Duty, Capitis Diminutio Maxima, Check and Balance Violation, Conspiracy/ Collusion, Deceit*, Discrimination/ Vexatious Litigation, Duty of Care Violation, Embezzlement/ Extortion, Entrapment*, Factual Causation*, Fair Hearing Request/ Violation, Fraud Upon the Court, Fraudulent Conveyance/Conversion, Fruit Of The Poisonous Tree, Gross Negligence, Malicious Wrongdoing, Mental Anguish, Mis-Application of Statute, Mis-Information/False Evidence, Misappropriation of Funds, Misrepresentation, Mistrial, Natural Law Violation, Obstruction of Justice, Psychological Warfare, R.I.C.O. (Illegal Activities Per Person), Serving in Multiple Capacities, Speedy Trial Violation, Tax Fraud, The Use of Policies to Override The Law, Treason, Trespassing, Undisclosed Policies/Usury, Unholy Alliance, United States Bill of Rights Violation, Unjust Enrichment, Unlawful Taking, Use of injurious or Damaging Laws, Using Public Funds For Private Interests

(Dkt. No. 1 at 7.)

4    The language of that section is ambiguous because it suggests an intent to limit availability of *in forma pauperis* status to prison inmates. *See* 28 U.S.C. § 1915(a)(1) (authorizing the commencement of an action without prepayment of fees "by a person who submits an affidavit that includes a statement of all assets such prisoner possesses"). The courts have construed that section, however, as making *in forma pauperis* status available to any litigant who can meet the governing financial criteria. *Hayes v. United States,* 71 Fed. Cl. 366, 367 (Fed. Cl. 2006); *Fridman v. City of N.Y.,* 195 F. Supp. 2d 534, 536 n.1 (S.D.N.Y. 2002).

5    Plaintiff is reminded that, although his application to proceed *in forma pauperis* has been granted, he is still required to pay fees that he may incur in this action, including copying and/or witness fees.

6    Due to the nature of Plaintiff's Complaint, it is difficult to precisely determine exactly which doctrine applies, but his claims are also likely barred. "The Second Circuit has recently stated that the *Rooker-Feldman* doctrine bars a district court from reviewing a family court's determinations regarding custody, neglect and visitation where those issues have been decided after providing the plaintiff a full and fair opportunity to litigate those issues." *Arena v. Dep't of Soc. Servs. of Nassau Cnty.,* 216 F. Supp. 2d 146, 152 (E.D.N.Y. 2002) (citing *Phifer v. City of New York,* 289 F.3d 49, 57 (2d Cir. 2002)). "Under the domestic relations exception to the jurisdiction of federal courts, cases involving divorce, alimony, and child custody remain outside federal court jurisdiction." *Amato v. McGinty,* 21-CV-0860, 2022 WL 226798, at *10 (N.D.N.Y. Jan. 26, 2022) (Dancks, M.J.) (citing *Marshall v. Marshall,* 547 U.S. 293, 308 (2006)). In the event that Plaintiff's underlying custody state court proceeding remains pending, his request for this Court's involvement may also implicate the *Younger* abstention doctrine. *Younger v. Harris,* 401 U.S. 37 (1971). Under the *Younger* doctrine, "federal courts [must] abstain from taking jurisdiction over federal constitutional claims that involve or call into question ongoing state proceedings." *Diamond "D" Constr. Corp. v. McGowan,* 282 F.3d 191, 198 (2d Cir. 2002).

Miller Ex v. Primo, Not Reported in Fed. Supp. (2022)

Case 3:24-cv-00477-BKS-ML    Document 15    Filed 07/25/24    Page 24 of 126

7    In the alternative, I recommend that Plaintiff's claim against Defendant Newton be dismissed for failure to allege Defendant Newton's personal involvement in any violation of Plaintiff's rights. Again, Plaintiff listed Defendant Newton as a defendant in this case but failed to allege any action taken by Defendant Newton in the body of the Complaint.

8    *See also Carris v. First Student, Inc.*, 132 F. Supp. 3d 321, 340-41 n.1 (N.D.N.Y. 2015) (Suddaby, C.J.) (explaining that the standard set forth in *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 796 (2d Cir. 1999)— that the Court should grant leave to amend "unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would be successful in stating a claim"—is likely not an accurate recitation of the governing law after *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)), *rev'd on other grounds*, 682 F. App'x 30.

9    If you are proceeding *pro se* and served with this report, recommendation, and order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date that the report, recommendation, and order was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(1)(C).

---

**End of Document**                    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

2014 WL 3670609
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Jamil Abdul MUHAMMAD, Plaintiff,
v.
Judge Martin E. SMITH; Jason White, Assistant
District Attorney; Broome County Courts, 6th
District; American Bar Association; United States
of America; and State of New York, Defendants.

No. 3:13–cv–760 (MAD/DEP).
|
Signed July 23, 2014.

**Attorneys and Law Firms**

Jamil Abdul Muhammad, Albion, NY, pro se.

**MEMORANDUM–DECISION AND ORDER**

MAE A. D'AGOSTINO, District Judge.

**I. INTRODUCTION**

 *1 Plaintiff, who is currently a New York State prisoner but was not at the time this action was filed, commenced this civil rights action asserting claims against a sitting judge, an assistant district attorney, a county court, and the American Bar Association. *See* Dkt. No. 1. In an October 16, 2013 Report, Recommendation, and Order, Magistrate Judge Peebles conducted an initial review of the complaint and recommended that the complaint be dismissed, with leave to replead only as to any claims asserted against Defendant American Bar Association. *See* Dkt. No. 19.

Currently before the Court is Magistrate Judge Peebles' Report, Recommendation, and Order and Plaintiff's objections thereto.

**II. BACKGROUND**

Plaintiff's complaint and his many subsequent filings are largely unintelligible. In his complaint, Plaintiff identifies himself as a "Moor/Sovereign/a Freeman On The Land/ a

Man, Real Live Flesh and Blood [.]" Dkt. No. 1 at 3. Plaintiff claims that, through his "unalienated rights under UCC 1–207(308)," he is "entitled to any Interpleted Funds relative to JAMIL ABDUL MUHAMMAD, and the defendant is determined to be Barred from any collection of my alleged debt from JAMIL ABDUL MUHAMMAD relating to Jamil Abdul Muhammad and defendant had in no 'CLAIM IN FACT.' " *Id.* at 5.

From other submissions submitted by Plaintiff, it appears that Plaintiff was sentenced by Broome County Court Judge Martin E. Smith, a named Defendant, based upon a plea of guilty entered in that court. *See* Dkt. No. 7 at 2. Plaintiff appears to allege that, as a result of those proceedings, Judge Smith is guilty of kidnapping, and is liable for conspiracy to violate his civil rights in violation of 18 U.S.C. § 241. *See id.* Further, Plaintiff makes vague references to a clerk in Binghamton named "Karen," and claims that she and other Defendants have placed him in imminent harm. *See* Dkt. No. 21 at 4–5. Plaintiff asks the Court to award him "the dismissal of said charges" and to release him "by implying said 'habeas corpus' granting [him] immediate release of confinement[.]" *Id.* at 5.

In a Report, Recommendation, and Order, Magistrate Judge Peebles granted Plaintiff's motion to proceed *in forma pauperis* and then conducted an initial review of the complaint. *See* Dkt. No. 19. Magistrate Judge Peebles noted that Plaintiff's complaint failed to meet the minimal pleading standards set forth in Rule 8 of the Federal Rules of Civil Procedure, as well as *Twombly* and its progeny. *See id.* at 7. In light of his *pro se* status, however, Magistrate Judge Peebles considered Plaintiff's subsequent filings to determine if he has set forth a plausible claim against any named Defendant. *See id.* at 8.

Magistrate Judge Peebles first found that Defendants Smith and White are entitled to absolute immunity because Plaintiff's claims against them are associated with his prosecution in Broome County. *See id.* at 8–9. Further, the report found that Plaintiff's claims brought pursuant to 18 U.S.C. § 241 should be dismissed because it is a criminal statute that does not give rise to a private cause of action. *See id.* at 9 n. 6 (citations omitted). Next, Magistrate Judge Peebles concluded that Plaintiff's claims against the Broome County Courts must be dismissed because they are an extension of the state, immune from suit under the Eleventh Amendment. *See id.* at 10. Thereafter, Magistrate Judge Peebles found that the Court should dismiss Plaintiff's claims

against Defendant American Bar Association ("ABA") because Plaintiff failed to allege any facts to plausibly suggest that Defendant ABA is a state actor, or that it acted under color of state law when allegedly violating Plaintiff's rights. *See id.* at 10–11. Finally, Magistrate Judge Peebles recommended that the Court dismiss all claims with prejudice, except those asserted against Defendant ABA. *See id.* at 12–13.

**\*2** Currently before the Court are Magistrate Judge Peebles Report, Recommendation, and Order, and Plaintiff's objections thereto. Additionally pending before the Court are several letter motions, along with an amended complaint Plaintiff filed after the issuance of the Report, Recommendation, and Order.

## III. DISCUSSION

### A. Redemptionist and sovereign citizen theories

Plaintiff's assertions appear to be based, at least in part, on the "redemptionist" theory or the related "sovereign citizen" theory, which are frivolous legal theories that have been consistently rejected by federal courts. *See Monroe v. Beard,* 536 F.3d 198, 203 n. 4 (3d Cir.2008). The United States Court of Appeals for the Third Circuit explained:

> "Redemptionist" theory ... propounds that a person has a split personality: a real person and a fictional person called the "strawman." The "strawman" purportedly came into being when the United States went off the gold standard in 19[3]3, and, instead, pledged the strawman of its citizens as collateral for the country's national debt. Redemptionists claim that government has power only over the strawman and not over the live person, who remains free. Individuals can free themselves by filing UCC financing statements, thereby acquiring an interest in their strawman. Thereafter, the real person can demand that government officials pay enormous sums of money to use the strawman's name or, in the case of prisoners, to keep him in custody. If government officials refuse, inmates

> are encouraged to file liens against correctional officers and other prison officials in order to extort their release from prison. Adherents of this scheme also advocate that inmates copyright their names to justify filing liens against officials using their names in public records such as indictments or court papers.

*Id.* (citation omitted). [1]

Plaintiff also apparently adheres to the Redemptionist theory regarding the use of capital letters:

> Redemptionists claim that by a birth certificate, the government created strawmen out of its citizens. A person's name spelled in English, that is with initial capital letters and small letters, represents the real person, that is, the flesh and blood person. Whenever a person's name is written in total capitals, however, as it is on a birth certificate, the Redemptionists believe that only the strawman is referenced, and the flesh and blood person is not involved.

*McLaughlin v. CitiMortgage, Inc.,* 726 F.Supp.2d 201, 210 (D.Conn.2010) (internal quotation marks omitted); *see also Bryant v. Wash. Mut. Bank,* 524 F.Supp.2d 753, 758–61 (W.D.Va.2007).

Theories presented by redemptionist and sovereign citizen adherents have not only been rejected by the courts, but also recognized as frivolous and a waste of court resources. *See McLaughlin v,* 726 F.Supp.2d at 210 (providing detailed explanation of the redemptionist theory and rejecting it); *Charlotte v. Hanson,* 433 Fed. Appx. 660, 661 (10th Cir.2011) (rejecting the sovereign citizen theory as having no conceivable validity in American law) (citation omitted). A prisoner's attempt "to avoid the consequences of his criminal conviction" based on the redemptionist theory, has been recognized as "legally frivolous," *Ferguson—El v. Virginia,*

No. 3:10CV577, 2011 WL 3652327, *3 (E.D.Va. Aug.18, 2011), and civil cases based on redemptionist and sovereign citizen theories have been found to be "utterly frivolous" and "patently ludicrous," using "tactics" that are "a waste of their time as well as the court's time, which is paid for by hard-earned tax dollars." *Barber v. Countrywide Home Loans, Inc.,* No. 2:09cv40, 2010 WL 398915, *4 (W.D.N.C. Oct.7, 2009).

 **\*3** In short, Plaintiff seeks to avoid the consequences of his conviction by suggesting he exists as two separate legal entities and that the State of New York and Broome County do not have jurisdiction over both entities and thus must release him and pay him damages. Such a theory is legally frivolous. *See Tirado v. New Jersey,* No. 10–3408(JAP), 2011 WL 1256624, *4–5 (D.N.J. Mar.28, 2011) (observing a similar argument "has absolutely no legal basis"); *Marshall v. Fla. Dep't Corr.,* No. 10–CV–20101, 2010 WL 6394565, *1 (S.D.Fla. Oct.27, 2010). Although the Court finds that these theories are frivolous, in light of his *pro se* status, the Court will consider each possible claim in greater detail.

**B. The Report, Recommendation, and Order**
Section 1915(e) (2)(B) directs that, when a plaintiff seeks to proceed *in forma pauperis,* "(2) ... the court shall dismiss the case at any time if the court determines that—... (B) the action ... (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). [2] Thus, although the Court has the duty to show liberality toward pro se litigants, *see Nance v. Kelly,* 912 F.2d 605, 606 (2d Cir.1990) (per curiam), and should exercise "extreme caution ... in ordering *sua sponte* dismissal of a *pro se* complaint *before* the adverse party has been served and both parties (but particularly the plaintiff) have had an opportunity to respond, ..." *Anderson v. Coughlin,* 700 F.2d 37, 41 (2d Cir.1983) (internal citations omitted), the court also has a responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed with an action *in forma pauperis* . [3]

When reviewing a complaint, the court may also look to the Federal Rules of Civil Procedure. Rule 8 of the Federal Rules of Civil Procedure provides that a pleading that sets forth a claim for relief shall contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *See* Fed.R.Civ.P. 8(a)(2). The purpose of Rule 8 " 'is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, ...

prepare an adequate defense,' " and determine whether the doctrine of res judicata is applicable. *Hudson v. Artuz,* No. 95 CIV. 4768, 1998 WL 832708, *1 (S.D.N.Y. Nov.30, 1998) (quoting *Powell v. Marine Midland Bank,* 162 F.R.D. 15, 16 (N.D.N.Y.1995) (quoting *Brown v. Califano,* 75 F.R.D. 497, 498 (D.D.C.1977))) (other citation omitted).

A court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (citation omitted). Although the court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly,* 550 U.S. at 555). Thus, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show [n]'—'that the pleader is entitled to relief.' " *Id.* at 679 (quoting Fed.R.Civ.P. 8(a)(2)).

 **\*4** When a party files specific objections to a magistrate judge's report-recommendation, the district court makes a "*de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1) (2006). When a party, however, files "[g]eneral or conclusory objections or objections which merely recite the same arguments [that he presented] to the magistrate judge," the court reviews those recommendations for clear error. *O'Diah v. Mawhir,* No. 9:08–CV–322, 2011 WL 933846, *1 (N.D.N.Y. Mar. 16, 2011) (citations and footnote omitted). After the appropriate review, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1) (2006).

A litigant's failure to file objections to a magistrate judge's report-recommendation, even when that litigant is proceeding *pro se,* waives any challenge to the report on appeal. *See Cephas v. Nash,* 328 F.3d 98, 107 (2d Cir.2003) (holding that, "[a]s a rule, a party's failure to object to any purported error or omission in a magistrate judge's report waives further judicial review of the point" (citation omitted)). A *pro se* litigant must

be given notice of this rule; notice is sufficient if it informs the litigant that the failure to timely object will result in the waiver of further judicial review and cites pertinent statutory and civil rules authority. *See Frank v. Johnson,* 968 F.2d 298, 299 (2d Cir.1992); *Small v. Sec 'y of Health & Human Servs.,* 892 F.2d 15, 16 (2d Cir.1989) (holding that a *pro se* party's failure to object to a report and recommendation does not waive his right to appellate review unless the report explicitly states that failure to object will preclude appellate review and specifically cites 28 U.S.C. § 636(b)(1) and Rules 72, 6(a) and former 6(e) of the Federal Rules of Civil Procedure).

Having reviewed the Report, Recommendation, and Order and Plaintiff's objections thereto, the Court finds that Magistrate Judge Peebles correctly determined that Plaintiff's claims should be dismissed. As explained below, however, the Court rejects Magistrate Judge Peebles' recommendation insofar as it found that Plaintiff should be permitted a chance to amend his complaint as to Defendant ABA.

Section 1983 itself does not create any substantive rights; rather, it provides a procedural mechanism for redressing the deprivation of rights created by the Constitution or laws of the United States. *See Sykes v. James,* 13 F.3d 515, 519 (2d Cir.1993) (citing *City of Oklahoma City v. Tuttle,* 471 U.S. 808, 816, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985)). To state a cognizable claim under Section 1983, a plaintiff must allege that " '(1) the challenged conduct was attributable at least in part to a person who was acting under color of state law and (2) the conduct deprived the plaintiff of a right guaranteed under the Constitution of the United States.' " *Weiss v. Inc. Village of Sag Harbor,* 762 F.Supp.2d 560, 568 (E.D.N.Y.2011) (quoting *Snider v. Dylag,* 188 F.3d 51, 53 (2d Cir.1999)).

**\*5** The Supreme Court, in *Lugar v. Edmondson Oil Co., Inc.,* 457 U.S. 922, 937, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982), established a two-prong test for determining when a private party's actions can be deemed to satisfy Section 1983's requirement that the challenged conduct was "under color of state law." Actions of a private party can be deemed "fairly attributable" to the state, and therefore treated as action taken "under color of state law," when (1) the deprivation is "caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible," and (2) "the party charged with the deprivation [is] a person who may fairly be said to be a state actor ." *Hollander v. Copacabana Nightclub,* 624 F.3d 30, 33 (2d Cir.2010) (quoting *Lugar,* 457

U.S. at 937). A private party's actions may be attributable to the state under the second *Lugar* prong if it meets one of three tests: (1) "The 'compulsion test': the entity acts pursuant to the 'coercive power' of the state or is 'controlled' by the state"; (2) "The 'public function test': the entity 'has been delegated a public function by the [s]tate' "; or (3) "The 'joint action test' or 'close nexus test': the state provides 'significant encouragement' to the entity, the entity is a 'willful participant in joint activity with the [s]tate,' or the entity's functions are 'entwined' with state policies." *Hollander,* 624 F.3d at 34 (quoting *Sybalski v. Indep. Grp. Home Living Program, Inc.,* 546 F.3d 255, 257 (2d Cir.2008) (internal citations omitted)).

In the present matter, Defendant ABA is a private party which does not meet any of the three tests set forth above. Courts throughout the United States have already addressed this question and they have unanimously held that the American Bar Association is not a state actor for purposes of a Section 1983 action. *See Hu v. American Bar Ass'n,* 334 Fed. Appx. 17, 18–19 (7th Cir.2009) (finding that the district court properly dismissed the plaintiff's complaint because the ABA is not a state actor); *Lawline v. American Bar Ass 'n,* 956 F.2d 1378, 1385 (7th Cir.1992) (concluding that "private bar associations are not state actors for the purpose of Section 1983"); *Rohan v. American Bar Ass'n,* No. 93 CV 1338, 1995 WL 347035, \*6–\*7 (E.D.N.Y. May 31, 1995) (holding that the ABA is a professional association, not a state actor, even though admission to practice law in New York State requires graduation from an ABA-accredited law school, because "the State of New York has not explicitly delegated to the ABA its responsibility for setting the requirements that an individual must meet in order to be licensed as an attorney-at-law" and "any conferral of monopoly status on the ABA by New York State does not convert the ABA into a state actor"); *see also The Real Estate Bar Ass'n for Mass., Inc. v. Nat'l Real Estate Info. Servs.,* 608 F.3d 110, 121–22 (1st Cir.2010) (finding that state bar association was not a state actor).

**\*6** In the present matter, the Court agrees that Defendant ABA is not a state actor for Section 1983 purposes. New York has not expressly delegated to the ABA its responsibility for setting the requirements to practice law in New York; rather, to become a member of the New York Bar, an individual must comply with the Rules of the New York Court of Appeals on admission to practice. *See Rohan,* 1995 WL 347035, at \*5. Further, the ABA was neither established by the State of New York, nor is it funded or supported by the State. *See id.* at \*7 (citations omitted). Additionally, school accreditation has been recognized as a function of private entities, rather than

one that "has been traditionally the exclusive prerogative of the State." *Id.* (quotation and other citation omitted).

Based on the foregoing, the Court finds that Defendant ABA is not a state actor. As such, the Court rejects Magistrate Judge Peebles' recommendation only insofar as the report recommended that the Court dismiss the claims against Defendant ABA without prejudice. Although the Court should generally permit a *pro se* litigant an opportunity to amend, dismissal with prejudice is appropriate where, as here, any amendment of the complaint would be futile.

Further, the Court finds that Magistrate Judge Peebles correctly determined that Defendants Smith and White are entitled to absolute immunity since Plaintiff has raised claims against them in their capacities as a judge and prosecutor. *See Hill v. City of New York,* 45 F.3d 653, 660–61 (2d Cir.1995) (quotation omitted); *DuQuin v. Kolbert,* 320 F.Supp.2d 39, 40–41 (W.D.N.Y.2004) (citation omitted). Additionally, Plaintiff's claims against the Broome County Courts are barred by the Eleventh Amendment. *See Thomas v. Bailey,* No. 10–cv–51, 2010 WL 662416, *1 (E.D.N.Y. Feb.22, 2010). Finally, to the extent that Plaintiff is seeking his immediate release from custody, such relief is only available from this Court by way of a writ of habeas corpus, issued pursuant to 28 U.S.C. § 2254. *See Preiser v. Rodriguez,* 411 U.S. 475, 498–99, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1975); *see also Brown v. Freeport Police Dept.,* Nos. 13 CV 4047, 13 CV 6514, 2014 WL 279847, *5 (E.D.N.Y. Jan.23, 2014) (citation omitted).

## C. Plaintiff's amended complaint

In his amended complaint, Plaintiff names as Defendants the "United States of America/Foreign Corporation of United States," and the State of New York, as well as the previously named Defendants. *See* Dkt. No. 34 at 1–2. In the amended complaint, Plaintiff claims that the "United States of America is guilty of criminal infringement of intellectual property, failure of consideration, act of indemnity, insurance fraud, securities fraud," as well as an apparent violation of section 34 of the Judiciary Act [4] and a conspiracy with the other named Defendants in violation of 18 U.S.C. § 241. *See id.* at 4. Plaintiff claims that Defendants' actions were "in violation of misnomer contracts of surety" and led to his "wrongfull [sic] imprisonment via commercial claims alleging DEATH and DEBT." *Id.* Plaintiff is seeking his immediate release, in addition to $150,0000,000 "upon court ordered 'Release' from cestui que vie life insurance policy and foreign

corporation of United States." *Id.* at 6. Additionally, Plaintiff asks the Court to "expunge all criminal proceedings, charges, finger prints, DNA, blood, mugshots, arrest/arrest record of alleged charges do to illegal commercial ... surety contracts alleging DEATH or DEBT upon 'RELEASE' being granted." *Id.*

**\*7** Having reviewed the amended complaint, the Court finds that Plaintiff has failed to plausibly allege that he is entitled to any of the relief he seeks. A plaintiff may not collect damages for his alleged wrongful imprisonment or conviction without first showing "that [his] conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Heck v. Humphrey,* 512 U.S. 477, 487, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994). Here, Plaintiff has made no such showing and a review of the Department of Corrections and Community Supervision website demonstrates that Plaintiff is still incarcerated.

Additionally, 18 U.S.C. § 241 is a criminal statute which does not create a private cause of action. *See Storm–Eggink v. Gottfried,* 409 Fed. Appx. 426, 427 (2d Cir.2011) (citing cases).

Again, as discussed above, Plaintiff's claims against Defendants Smith and White must be dismissed because they are entitled to absolute immunity. *See Hill,* 45 F.3d at 660–61 (quotation omitted); *DuQuin,* 320 F.Supp.2d at 40–41 (citation omitted). Additionally, Plaintiff's claims against the Broome County Courts and the State of New York are barred by the Eleventh Amendment. *See Thomas,* 2010 WL 662416, at * 1. Further, to the extent that Plaintiff is seeking his immediate release from custody, such relief is only available from this Court by way of a writ of habeas corpus, issued pursuant to 28 U.S.C. § 2254. *See Preiser,* 411 U.S. at 498–99; *see also Brown,* 2014 WL 279847, at *5 (citation omitted). Finally, Plaintiff alleges no facts against Defendant United States. Rather, the United States appears to have been included as a Defendant solely under Plaintiff's ludicrous sovereign citizen and redemptionist theories, which are subject to dismissal.

Based on the foregoing, the Court finds that Plaintiff's amended complaint fails to set forth any non-frivolous causes of action. Since permitting additional amendment would be futile, Plaintiff's amended complaint is dismissed with prejudice.

In view of the frivolous nature of Plaintiff's claims, the Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith and, therefore, *in forma pauperis* status is denied for the purpose of an appeal. *See Coppedge v. United States,* 369 U.S. 438, 444–45, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962); *see also Slack v. McDaniel,* 529 U.S. 473, 484, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000).

### IV. CONCLUSION

After carefully considering Magistrate Judge Peebles' Report, Recommendation, and Order, Plaintiff's objections thereto, and the applicable law, and for the reasons stated herein, the Court hereby

**ORDERS** that Magistrate Judge Peebles' October 16, 2013 Report, Recommendation, and Order is **ADOPTED in part and REJECTED in part;** [5] and the Court further

**ORDERS** that Plaintiff's complaint and amended complaint are **DISMISSED with prejudice;** and the Court further

**\*8 ORDERS** that the Clerk of the Court shall enter judgment in Defendants' favor and close this case; and the Court further

**ORDERS** that the Clerk of the Court shall terminate all pending motions not addressed in this Memorandum–Decision and Order as moot; and the Court further

**ORDERS** that the Clerk of the Court shall serve Plaintiff with a copy of this Memorandum–Decision and Order.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in F.Supp.3d, 2014 WL 3670609

## Footnotes

1    The Court notes that Plaintiff was convicted of Falsifying Business Records in the First Degree.

2    To determine whether an action is frivolous, a court must look to see whether the complaint "lacks an arguable basis either in law or in fact." *Neitzke v. Williams,* 490 U.S. 319, 325, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989).

3    "Dismissal of frivolous actions pursuant to 28 U.S.C. § 1915e is appropriate to prevent abuses of the process of the court," *Nelson v. Spitzer,* No. 9:07–CV–1241, 2008 WL 268215, \*1 n. 3 (N.D.N.Y. Jan.29, 2008) (citation omitted), as well as "to discourage the filing of [baseless lawsuits], and [the] waste of judicial ... resources[.]" *Neitzke,* 490 U.S. at 327.

4    Originally § 34 of the Judiciary Act of 1789, the Rules of Decision Act, now contained in 28 U.S.C. § 1652, reads: "The laws of the several states, except where the Constitution or treaties of the United States or Acts of Congress otherwise require or provide, shall be regarded as rules of decision in civil actions in the courts of the United States, in cases where they apply." It is unclear how an improper application of the Rules of Decision Act violated Plaintiff's rights and Plaintiff's nearly incomprehensible filings provide no insight.

5    Magistrate Judge Peebles' Report, Recommendation, and Order is only rejected insofar as it recommended that the Court dismiss Defendant ABA without prejudice.

2022 WL 3358082
Only the Westlaw citation is currently available.
United States District Court, E.D. New York.

Anna T. BALASH-IOANNIDOU, Plaintiff,

v.

CONTOUR MORTGAGE CORPORATION;
Wilmington Savings Fund Society, FSB, Defendants.

22-CV-4506 (AMD) (LB)
|
Signed August 15, 2022

**Attorneys and Law Firms**

Anna T. Balash-Ioannidou, Astoria, NY, Pro Se.

### MEMORANDUM AND ORDER

ANN M. DONNELLY, United States District Judge:

**\*1** On July 22, 2022, the *pro se* plaintiff, Anna T. Balash-Ioannidou, filed a complaint against defendants Contour Mortgage Corporation ("Contour") and Wilmington Savings Fund Society, FSB ("Wilmington") in the United States District Court for the Southern District of New York seeking declaratory and injunctive relief with regards to foreclosure proceedings involving real property located in Astoria, Queens County, New York. (ECF No. 1.) The plaintiff also submitted an unsigned order to show cause seeking to enjoin "all actions ... including calculations, notice of sale, auction of property, sale of property and transfer" of the property located at 21-08 30th Avenue, Astoria, New York ("the property") in her Supreme Court of the State of New York, Queens County, Index No. 707379/2015 ("Queens County Supreme Court") foreclosure action. (ECF No. 2.) On August 1, 2022, the action was transferred to this Court. For the reasons set forth below, the case is dismissed for lack of subject matter jurisdiction.

### BACKGROUND

On July 14, 2015, a foreclosure action was instituted against the plaintiff in Queens County Supreme Court seeking final judgment and the sale of the property to satisfy the mortgage in the amount of $645,300.00. Contour was the original lender; Wilmington now holds the mortgage and lien and is the "current foreclosing party" on the property in the Queens County Supreme Court foreclosure action. (ECF No. 1 at 2.) The plaintiff asserts that she has "issued a payment through Notary Presentment to Defendants in the amount of $645,300.00" to satisfy her debt, as well as a "Notary Protest" and a "Certificate of Dishonor." (*Id.* at 3.) She seeks this Court's involvement in the dispute over her alleged satisfaction of the mortgage, for removal of the lien on the property and for "injunctive relief from the ongoing foreclosure action." (ECF No. 1 at 4-5.)

### STANDARD OF REVIEW

In reviewing the plaintiff's complaint, the Court is mindful that the submissions of a *pro se* litigant must be construed liberally and interpreted "to raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006). A district court may dismiss a *pro se* action *sua sponte*, that is, on its own—even if the plaintiff has paid the requisite filing fee—if the action is frivolous, *Fitzgerald v. First East Seventh Street Tenants Corp.*, 221 F.3d 362, 363-64 (2d Cir. 2000), or if the court lacks subject matter jurisdiction over the matter. Fed. R. Civ. P. 12(h)(3). "Failure of subject matter jurisdiction is not waivable and may be raised at any time by a party or by the court *sua sponte*. If subject matter jurisdiction is lacking, the action must be dismissed." *Lyndonville Sav. Bank & Trust Co. v. Lussier*, 211 F.3d 697, 700-01 (2d Cir. 2000); *see* Fed. R. Civ. P. 12(h)(3). Federal subject matter jurisdiction is available only when a "federal question" is presented, 28 U.S.C. § 1331, or when plaintiffs and defendants are of diverse citizenship, and the amount in controversy exceeds $75,000, 28 U.S.C. § 1332.

### DISCUSSION

#### A. *Younger* Abstention

**\*2** Under the abstention doctrine set out by the Supreme Court in *Younger v. Harris*, 401 U.S. 37, 43-45 (1971), this Court lacks jurisdiction over the plaintiff's claims. "The defining feature of *Younger* abstention is that even though either a federal or a state court could adjudicate a given claim, when there is an ongoing state proceeding in which the claim can be raised, and when adjudicating the claim in federal court would interfere unduly with the ongoing state proceeding, the claim is more appropriately adjudicated in state court." *Kirschner v. Klemons*, 225 F.3d 227, 236 (2d Cir. 2000). *Younger* abstention is triggered by three categories of

Balash-Ioannidou v. Contour Mortgage Corporation, Not Reported in Fed. Supp. (2022)

state court proceedings: (1) "state criminal prosecutions," (2) "civil enforcement proceedings," and (3) civil proceedings that "implicate a State's interest in enforcing the orders and judgments of its courts. *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 72-73 (2013).

Here, the third prong of the *Sprint* rationale applies. "[F]ederal court intervention in an on-going state foreclosure proceeding ... [is] generally barred by *Younger v. Harris*." *Fequiere v. Tribeca Lending*, No. 14-CV-812, 2015 WL 1412580, at *7 (E.D.N.Y. Mar. 20, 2015) (quoting *Marcelo v. EMC Mortg. Corp.*, No. 10-CV-5964, 2011 WL 1792671, at *4 (E.D.N.Y. May 6, 2011)). The plaintiff seeks declaratory injunctive relief relating to the same property that is the subject matter of the underlying state court actions. The plaintiff's remedies are therefore limited to state court—either in the original venue, or on appeal to the state appellate court. *Younger* abstention bars her from seeking injunctive and declaratory relief in a federal court.

### B. The Anti-Injunction Act

The plaintiff's request for injunctive relief is also precluded by the Anti-Injunction Act, which provides that, "[a] court of the United States may not grant an injunction to stay proceedings in State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283. This provision applies when the requested injunction would either stay the ongoing state proceedings or prevent the parties from enforcing an order that has already issued. *See Atlantic Coast Line R.R. Co. v. Brotherhood of Locomotive Eng'rs.*, 398 U.S. 281, 294 (1970). Courts in this Circuit have consistently held that the Anti-Injunction Act applies in the context of pending state court foreclosure proceedings. *See DiMicco v. CitiMortgage, Inc.*, No. 20-CV-755, 2020 WL 804949, at *3 (E.D.N.Y. Feb. 18, 2020); *Abbatiello v. Wells Fargo Bank, N.A.*, No. 15-CV-4210, 2015 WL 5884797, at *5 (E.D.N.Y. Oct. 8, 2015) (collecting cases).

### C. Frivolous Claim

Finally, the Court would dismiss this case even if it had jurisdiction, because the claims are frivolous. The basis for the plaintiff's claim is that she has satisfied her debt and is entitled to release from the lien on her property because she mailed a "notary presentment" and related documents to defendants. (ECF No. 1 at 1-4.) These documents (*id.* at 7-18), appear to be asserting some sort of "sovereign citizen" claim. *See United States v. Ulloa*, 511 F. App'x 105, 107 n.1 (2d Cir. 2013) ("[S]overeign citizens are a loosely affiliated group who believe that the state and federal governments lack constitutional legitimacy and therefore have no authority to regulate their behavior; the FBI has labeled the sovereign citizens a domestic terrorist group."). People who identify as sovereign citizens use maneuvers like the notary presentment to avoid paying debts or to collect debts that are not actually owed. *See, e.g.*, *Kesick v. Ulloa*, No. 10-CV-1248, 2012 WL 2873364, at *3 (N.D.N.Y. July 12, 2012) (Ulloa filed fraudulent papers entitled "notary presentment" with the Town of Ulster Justice Court falsely claiming that a Justice of the Ulster Town Court owed him the sum of $176,000,000.00); *see also McKay v. U.S. Bank*, No. 14-CV-872, 2015 WL 5657110, at *2 (M.D. Ala. Sept. 24, 2015) (denying plaintiffs' request for declaratory judgment that the defendant was not the real mortgage holder and to quiet title based upon their mailing of a "notarial presentment" and a "notarial notice of Dishonor" to the defendant bank). To the extent the plaintiff claims that her notary presentment discharges her debt, the claim lacks an arguable basis in law or fact. *Muhammad v. Smith*, No. 13-CV-760, 2014 WL 3670609, at *2 (N.D.N.Y. July 23, 2014) ("Theories presented by redemptionist and sovereign citizen adherents have not only been rejected by the courts, but also recognized as frivolous and a waste of court resources.") (collecting cases).

### CONCLUSION

**\*3** Accordingly, the instant *pro se* complaint is dismissed without prejudice for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(h)(3). The motion for preliminary injunctive relief is denied. Further, in keeping with its duty to liberally construe *pro se* complaints, the Court has considered whether to grant leave to amend the complaint but finds that amendment would be futile. *See Johnson v. Univ. of Rochester Med. Ctr.*, 642 F.3d 121, 124-25 (2d Cir. 2011).

Although the plaintiff paid the filing fee to bring this action, the Court certifies pursuant to 28 U.S.C. § 1915 (a)(3) that any *in forma pauperis* appeal from this order would not be taken in good faith. *Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

### SO ORDERED.

Case 3:24-cv-00477-BKS-ML    Document 15    Filed 07/25/24    Page 33 of 126

Balash-Ioannidou v. Contour Mortgage Corporation, Not Reported in Fed. Supp. (2022)

**All Citations**

Not Reported in Fed. Supp., 2022 WL 3358082

---

**End of Document**
© 2024 Thomson Reuters. No claim to original U.S. Government Works.

---

Tyson v. Clifford, Not Reported in Fed. Supp. (2018)

Case 3:24-cv-00477-BKS-ML    Document 15    Filed 07/25/24    Page 34 of 126

2018 WL 6727538
Only the Westlaw citation is currently available.
United States District Court, D. Connecticut.

Deshawn TYSON, Plaintiff,

v.

Patrick J. CLIFFORD, et al., Defendants.

CIVIL CASE NO. 3:18cv1600(JCH)
|
Signed 12/21/2018

**Attorneys and Law Firms**

Deshawn Tyson, Suffield, CT, pro se.

**INITIAL REVIEW ORDER**

Janet C. Hall, United States District Judge

 **\*1**  The plaintiff, Deshawn Tyson ("Tyson"), is confined at MacDougall-Walker Correctional Institution. He has filed a pro se civil rights action pursuant to section 1983 of title 42 of the United States Code against New Haven Superior Court Judge Patrick J. Clifford ("Judge Clifford") and Connecticut State's Attorney John P. Doyle, Jr. ("Attorney Doyle"). For the reasons set forth below, the Complaint is dismissed.

**I. STANDARD OF REVIEW**

Pursuant to section 1915A(b) of title 28 of the United States Code, the court must review prisoner civil complaints against governmental actors and "dismiss ... any portion of [a] complaint [that] is frivolous, malicious, or fails to state a claim upon which relief may be granted," or that "seeks monetary relief from a defendant who is immune from such relief." Id. This standard of review "appl[ies] to all civil complaints brought by prisoners against governmental officials or entities regardless of whether the prisoner has paid [a] filing fee." Shakur v. Selsky, 391 F.3d 106, 112 (2d Cir. 2004) (internal quotation marks and citation omitted).

Rule 8 of the Federal Rules of Civil Procedure requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although detailed allegations are not required, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotation marks and citations omitted). A complaint that includes only " 'labels and conclusions,' 'a formulaic recitation of the elements of a cause of action' or 'naked assertion[s]' devoid of 'further factual enhancement,' " does not meet the facial plausibility standard. Id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 557 (2007) ). Although courts still have an obligation to interpret "a pro se complaint liberally," the Complaint must still include sufficient factual allegations to meet the standard of facial plausibility. See Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009) (citations omitted).

**II. FACTS**

Tyson states that he has been "wrong[ly] incarcerated" in a facility within the State of Connecticut Department of Correction since March 10, 2016. [1]  See Compl. (Doc. No. 1) at 22. The State of Connecticut Judicial Branch website reflects that New Haven police officers arrested Tyson on March 10, 2016, and that the State of Connecticut has charged him in a criminal case filed in the Connecticut Superior Court for the Judicial District of New Haven with one count of sexual assault in the first degree, in violation of Conn. Gen. Stat. § 53a-70(a)(1), and one count of unlawful restraint in the first degree, in violation of Conn. Gen. Stat. § 53a-95. See State v. Tyson, Case No. NNH-CR16-0165313-T (Conn. Super. Ct. Mar. 10, 2016). [2]  The case detail indicates that Tyson is represented by counsel and that a jury trial is scheduled for December 16, 2020. See id.

 **\*2**  Tyson alleges that, on or about July 26, 2018, in the Connecticut Superior Court for the Judicial District of New Haven, Judge Clifford stated on the record that he had instructed Attorney Doyle to ignore or disregard any motions, memoranda, or affidavits filed by Tyson. See Compl. at 5 ¶ 1, 22. Judge Clifford has ruled against Tyson even when Attorney Doyle refused to oppose Tyson's motions. See id. at 17.

On or about August 22, 2018, Judge Clifford stated on the record that he had instructed Attorney Doyle to remain silent during a pretrial hearing and that Attorney Doyle agreed to do so. See id. at 5 ¶ 2. On or about September 12, 2018, Judge Clifford stated on the record that he had instructed Attorney Doyle to ignore or disregard Tyson's

"Conditional Acceptance/Negotiable instrument/grievance" document. See id. at 5 ¶ 3. On that same date, Judge Clifford informed Tyson that he would not consider any motions that Tyson might file. See id. at 5 ¶ 4. Tyson generally asserts that Judge Clifford and Attorney Doyle have misapplied statutes and laws and have failed to provide him with "Discovery/Brady material." Id. at 6 ¶¶ 6, 17–18.

At one point during the criminal proceeding, Judge Clifford issued an order that Tyson could represent himself. See id. at 22. Judge Clifford subsequently attempted to appoint an attorney to represent Tyson even though the attorney had made threats against Tyson in the past. See id.

## III. DISCUSSION

Tyson alleges that the defendants violated his rights under the First, Fifth, Eighth, Ninth and Fourteenth Amendments as well as under sections 241 and 242 of title 18 of the United States Code. See id. at 17–18. Tyson seeks punitive, compensatory, nominal, and exemplary damages, as well as injunctive and declaratory relief. See id. at 6–7.

As a preliminary matter, the court notes that Tyson includes the following additional allegations in the Complaint. The "State of CT has declared me/plaintiff sovereign [f]rom itself, as establish[ed] by law, because I/plaintiff had/has no residency with the state and therefore plaintiff is not only a private man as opposed to a corporate fiction." See id. at 6 ¶ 7. Tyson asserts that he cannot be "named in any statutes" and has "a Reservation of Rights which was made known to all defendants." See id. at 6 ¶¶ 8–10. Tyson contends that, throughout his criminal case, "defendants [have] refuse[d] to adhere to the Supremacy Clause of the United States Supreme Court rulings." See id. at 6 ¶ 5. Tyson signs the Complaint as: "Secured Party, Sui Juris, one of the sovereign people, a private man on the land, non-combatant, an American by birth, and child of the living God, Grantor, Secured Party/Creditor and principal of which 'Rights' existed long antecedent to the Organization of the State and Trustee." Id. at 33. Attached to the Complaint is a document titled "Memorandum of Law with points and Authorities on 'sovereignty' of the people In Relationship to 'Government' of the several Compact De-facto State and the Federal Government." Id. at 25–32.

This language and the title of the attachment to the Complaint suggest that Tyson considers himself a "sovereign citizen." In United States v. Ulloa, 511 F. App'x. 105 (2d Cir. 2013), the Second Circuit described, "sovereign citizens," as "a loosely affiliated group who believe that the state and federal governments lack constitutional legitimacy and therefore have no authority to regulate their behavior." Id. at 107 n.1.

**\*3** Adherents of such claims or defenses "believe that they are not subject to government authority and employ various tactics in an attempt to, among other things, avoid paying taxes, extinguish debts, and derail criminal proceedings." Gravatt v. United States, 100 Fed. Cl. 279, 282 (2011) (citations omitted). Federal courts across the country, however, have routinely refused to credit arguments based on a redemption, sovereign citizen, or other similar theory because the arguments are often frivolous, irrational and unintelligible. See United States v. Sterling, 738 F.3d 228, 233 n.1 (11th Cir. 2013) (noting that courts have summarily rejected sovereign citizens' legal theories as frivolous); United States v. Benabe, 654 F.3d 753, 767 (7th Cir. 2011) ("Regardless of an individual's claimed status of descent, be it as a sovereign citizen, a secured-party creditor, or a flesh-and-blood human being, that person is not beyond the jurisdiction of the courts. These theories should be rejected summarily, however they are presented.") (internal quotation marks omitted); Charlotte v. Hanson, 433 F. App'x. 660, 661 (10th Cir. 2011) (rejecting the sovereign citizen theory as having no conceivable validity in American law) (citation omitted); United States v. Jagim, 978 F.2d 1032, 1036 (8th Cir. 1992) (holding that "sovereign citizen" argument was "completely without merit" and "patently frivolous"); Akbar v. Clarke, No. 1:15-CV-338(AJT/TCB), 2016 WL 4150456, at *7 (E.D. Va. Aug. 1, 2016) (noting that sovereign citizen claims are "wholly frivolous"); Berman v. Stephens, No. 4:14-CV-860-A, 2015 WL 3622694, at *2 (N.D. Tex. June 10, 2015) (finding that a prisoner's "reliance on the UCC or a so-called 'sovereign citizen' theory that he is exempt from prosecution and beyond the jurisdiction of the state or federal courts is frivolous") (collecting cases); Gaskins v. South Carolina, C/A No. 2:15-cv-2589 DCN, 2015 WL 6464440, at *4 (D.S.C. Oct. 26, 2015) (affirming recommended ruling dismissing as baseless prisoner's claim, premised upon "sovereign citizen" theory, that the state court lacked jurisdiction over her and that her state conviction was therefore void); Paul v. New York, No. 13-CV-5047 (SJF)(AKT), 2013 WL 5973138, at *3 (E.D.N.Y. Nov. 5, 2013) (dismissing complaint as factually and legally frivolous because "[t]he conspiracy and legal revisionist theories of sovereign citizens are not established law in this court or anywhere in this country's valid legal system") (internal quotation marks and citation omitted).

Tyson v. Clifford, Not Reported in Fed. Supp. (2018)

Case 3:24-cv-00477-BKS-ML    Document 15    Filed 07/25/24    Page 36 of 126

It is apparent that Tyson is claiming that, as a "sovereign citizen," he is not subject to the jurisdiction of the State of Connecticut or the Connecticut Superior Court and that any criminal charges against him must be dismissed. To the extent that he challenges the jurisdiction of the State of Connecticut, its courts, or Judge Clifford, or the authority of the State, through Attorney Doyle, to prosecute him for a criminal offense, based on a "sovereign citizen" theory, the court concludes that the claim lacks an arguable legal basis. Thus, that claim is dismissed. See 28 U.S.C. § 1915A(b)(1). To the extent that Tyson is challenging the conduct of the defendants on other grounds, the court addresses those claims below.

A. Requests for Injunctive and Declaratory Relief

Tyson seeks a declaration that the defendants violated his constitutional and federal protected rights and an injunction directing the defendants to cease and desist from making further contact with him or harassing him in violation of his rights. See Compl. at 7. He includes, an "Order to Show Cause for an Preliminary Injunction and a Temporary Restraining Order," as an attachment to the Complaint, which seeks a court order that the defendants be enjoined from various types of conduct in connection with his state criminal case. See id. at 19–20.

In Younger v. Harris, 401 U.S. 37 (1971), the Supreme Court held that a federal court, except in cases where an injunction is necessary to prevent immediate and irreparable injury to a defendant, should not enjoin a pending state court criminal proceeding. Id. at 45. The doctrine of federal abstention, as outlined in Younger, "is grounded in principles of comity and federalism and is premised on the belief that a state proceeding provides a sufficient forum for federal constitutional claims." Schlagler v. Phillips, 166 F.3d 439, 442 (2d Cir. 1999). It "is not a jurisdictional bar based on Article III requirements, but instead a prudential limitation on the court's exercise of jurisdiction grounded in equitable considerations of comity." Spargo v. New York State Comm'n on Judicial Conduct, 351 F.3d 65, 74 (2d Cir. 2003) (citations omitted).

In Sprint Commc'ns, Inc. v. Jacobs, 571 U.S. 69 (2013), the Supreme Court clarified that courts should abstain under Younger only in three "exceptional circumstances": (1) pending state criminal proceedings; (2) civil enforcement proceedings that are "akin to criminal prosecutions;" and (3) civil proceedings that "implicate a State's interest in enforcing the orders and judgments of its courts." See id. at 72. The

court may address the applicability of the Younger abstention doctrine sua sponte. See Catlin v. Ambach, 820 F.2d 588, 591 (2d Cir. 1987) (citing Bellotti v. Baird, 428 U.S. 132, 143 n.10 (1976) ). The Younger doctrine is as applicable to suits for declaratory relief as it is to those for injunctive relief. See Samuels v. Mackell, 401 U.S. 66, 73 (1971) (holding Younger's policy would "be frustrated as much by a declaratory judgment as it would be by an injunction").

*4 It is clear from the Complaint and the State of Connecticut Judicial Branch website, that Tyson's state criminal proceeding stemming from his arrest on March 10, 2016 is ongoing. See State v. Tyson, Case No. NNH-CR16-0165313-T (Conn. Super. Ct. Nov. 30, 2018). If the court were to grant Tyson's request for a court order directing the defendants to dismiss the criminal charges against Tyson, or were to declare that the defendants had violated Tyson's federal constitutional rights in presiding over and prosecuting Tyson's state criminal case, such Orders would interfere with Tyson's pending state criminal proceeding.

There are two exceptions to the Younger abstention doctrine: bad faith and extraordinary circumstances. See Diamond "D" Constr. Corp. v. McGowan, 282 F.3d 191, 197–198 (2d Cir. 2002). Abstention may be inappropriate if "a prosecution or proceeding has been brought to retaliate for or to deter constitutionally protected conduct, or where a prosecution or proceeding is otherwise brought in bad faith or for the purpose to harass." Id. at 199 (internal quotation marks and citation omitted). This exception focuses on the subjective intent or motivation of the state prosecutor who initiates the proceeding. See id. ("A state proceeding that is legitimate in its purposes, but unconstitutional in its execution—even when the violations of constitutional rights are egregious—will not warrant the application of the bad faith exception.") (citation omitted).

The Second Circuit has described the extraordinary circumstances necessary to invoke the second exception to abstention under Younger as circumstances that "render the state court incapable of fairly and fully adjudicating the federal issues before it" and "creat[e] an extraordinarily pressing need for immediate federal equitable relief." Id. at 201 (citation omitted). Application of the extraordinary circumstances exception requires "two predicates ... (1) that there be no state remedy available to meaningfully, timely, and adequately remedy the alleged constitutional violation; and (2) that a finding be made that the litigant will suffer 'great

and immediate' harm if the federal court does not intervene." Id. (citation omitted) (emphasis in original).

Tyson has alleged no facts to suggest that the prosecutor initiated the criminal action against him in bad faith or with "no reasonable expectation of obtaining a favorable outcome." Id. at 199 (internal quotation marks and citation omitted). Nor has Tyson alleged the absence of a remedy available in state court to challenge any alleged constitutional violations associated with his criminal prosecution. Tyson is not precluded from challenging any subsequent conviction or sentence on appeal to the Connecticut Appellate and Supreme Courts, filing a habeas petition in the Connecticut Superior Court, and following that, a habeas petition in federal court. Furthermore, Tyson has not alleged that he will suffer imminent harm if this court does not intervene in the ongoing prosecution. See Davis v. Lansing, 851 F.2d 72, 77 (2d Cir. 1988) (holding the burden of defending criminal prosecution is insufficient, without more, to constitute irreparable harm); Saunders v. Flanagan, 62 F. Supp. 2d 629, 635 (D. Conn. 1999) ("That the plaintiff will be forced to defend against a charge of murder in state court does not constitute the extraordinary circumstances resulting in irreparable harm warranting this court to refuse to apply the doctrine of Younger abstention, and no other specific basis of 'extraordinary circumstances' is asserted.").

 *5  Because there are no facts alleged to plausibly suggest that either of the narrow exceptions to the Younger abstention doctrine have been met, the court abstains from exercising jurisdiction over the requests for injunctive and declaratory relief seeking intervention in Tyson's ongoing state criminal case. The court therefore dismisses those requests. See 28 U.S.C. § 1915A(b)(1).

B. Request for Money Damages
Tyson seeks $ 1,000,000 in punitive damages from each defendant as well as damages for harassment, mental anguish, anxiety and annoyance, nominal damages and exemplary damages. See Compl. at 6. The court declines to stay this action pending resolution of the state criminal proceeding because Tyson's claims for damages lack arguable legal merit.

1. Judge Clifford

Judges are immune from suit, not just from the ultimate assessment of damages. See Mireles v. Waco, 502 U.S. 9, 11 (1991). This immunity applies even to claims that a judge acted in bad faith, erroneously, maliciously or "in excess of his authority." Id. at 13. "[O]nce a court determines that an official was functioning in a core judicial or prosecutorial capacity, absolute immunity applies however erroneous the act may have been, and however injurious in its consequences it may have proved to the plaintiff." DiBlasio v. Novello, 344 F.3d 292, 297 (2d Cir. 2003) (citations and internal quotation marks omitted). There are two situations in which judicial immunity may be overcome. A judge is not immune from suit for actions taken outside his judicial capacity or for actions that are judicial in nature but taken in the absence of all jurisdiction. See Mireles, 502 U.S. at 11 (citations omitted).

Tyson alleges that, at times during the pendency of his state criminal case, Judge Clifford has instructed Attorney Doyle not to speak during a pretrial hearing, has either declined to rule on his motions or ruled against him on matters and motions, has disregarded his Acceptance/Negotiable Instrument/Grievance document, has misapplied statutes, and has refused to provide or disclose discovery/exculpatory material to him. See Compl. at 5, 17–18. Tyson complains that, at one point, Judge Clifford permitted him to proceed pro se, but would not rule on his motions. See id. at 22. Tyson suggests that more recently, Judge Clifford has attempted to appoint counsel for him, even though he did not ask for counsel. See id. Tyson claims that the attorney Judge Clifford attempted to appoint for him had threatened Tyson in the past. See id.

Appointing counsel for a party and determining whether to rule on motions, ruling on motions, including motions related to the disclosure of information or evidence, issuing orders regarding documents that have been filed in a case, directing speakers during proceedings, and interpreting and applying statutes constitute judicial acts within the jurisdiction of a state court judge. See Sadler v. Supreme Court of Connecticut, 167 F. App'x 257, 259 (2d Cir. 2006) ("Superior Court Judge White is immune from liability under § 1983 for damages and injunctive relief. Judge White performed a judicial action within his jurisdiction when he determined that Sadler's counsel ... should not be replaced.") (citation omitted); Ashmore v. Prus, No. 13-CV-2796 (JG), 2013 WL 3149458, at *3 (E.D.N.Y. June 19, 2013) ("Making evidentiary rulings is a paradigmatic judicial function."); Book v. Tobin, No. 3:04CV442 (JBA), 2005 WL 1981803, at *2 (D. Conn. Aug. 16, 2005) ("Quintessential judicial acts include presiding over trial proceedings, making evidentiary rulings, issuing jury instructions, and deciding motions, and remain protected

Tyson v. Clifford, Not Reported in Fed. Supp. (2018)

Case 3:24-cv-00477-BKS-ML    Document 15    Filed 07/25/24    Page 38 of 126

by judicial immunity even if the decisions are erroneous, untimely, and in excess of the judge's authority."). There are no allegations that Judge Clifford engaged in actions that were not judicial in nature or were taken in the absence of all jurisdiction. Thus, Judge Clifford is absolutely immune from suit to the extent that Tyson seeks money damages, and those claims against Judge Clifford are dismissed. See 28 U.S.C. § 1915(b)(2).

### 2. Attorney Doyle

**\*6** Tyson alleges that Attorney Doyle is the State's Attorney prosecuting his criminal case in the Connecticut Superior Court for the Judicial District of New Haven. See Compl. at 3, 5. Tyson asserts that Attorney Doyle did not speak during a pretrial hearing, did not respond to motions that he filed in the case, ignored his Acceptance/Negotiable Instrument/ Grievance document, misapplied statutes, and refused to disclose discovery/exculpatory material to him. See id. at 5 ¶ 2, 17–18. Tyson contends that, by failing to respond to his motions, Attorney Doyle has consented to the relief sought in those motions, including a motion to dismiss the charges against him. See id. at 20.

A prosecutor is protected by absolute immunity from a section 1983 action "for virtually all acts, regardless of motivation, associated with his function as an advocate." Dory v. Ryan, 25 F.3d 81, 83 (2d Cir. 1994). In Imbler v. Pachtman, 424 U.S. 409 (1976), the Supreme Court held that a state prosecutor was absolutely immune from a civil suit to recover damages under section 1983 because the prosecutor's conduct "in initiating a prosecution and presenting the State's case" were "intimately associated with the judicial phase of the criminal process." Id. at 430–31. If a prosecutor acts in an investigative rather than an adversarial capacity, he or she is not entitled to absolute immunity. See Kalina v. Fletcher, 522 U.S. 118, 125–27 (1997) (holding that prosecutor was not protected by absolute immunity because she was acting as an investigator when she signed a sworn affidavit attesting to the facts supporting an arrest warrant).

Tyson's allegations against Attorney Doyle pertain to his role in prosecuting the criminal case against Tyson. Decisions involving whether to respond to a motion, to argue a matter in a pretrial hearing, or to disclose evidence to a defendant are all part of the preparation of a case for trial. See Shmueli

v. City of New York, 424 F.3d 231, 236 (2d Cir. 2005) ("It is by now well established that 'a state prosecuting attorney who acted within the scope of his duties in initiating and pursuing a criminal prosecution' 'is immune from a civil suit for damages under § 1983.' ") (quoting Imbler, 424 U.S. at 410, 431); Smith v. Garretto, 147 F.3d 91, 94 (2d Cir. 1998) ("A prosecutor enjoys absolute immunity for acts taken in initiating a prosecution and in presenting the State's case, whether at a trial, a preliminary hearing, or a bail hearing.") (internal citations and quotation marks omitted); Hill v. City of New York, 45 F.3d 653, 661 (2d Cir. 1995) (explaining that prosecutors are "immune for conduct in preparing for those functions; for example, evaluating and organizing evidence for presentation at trial or to a grand jury, or determining which offenses are to be charged") (citation omitted). Thus, Attorney Doyle is immune from this suit.

### ORDERS

The court enters the following Orders:

**(1)** To the extent that Tyson challenges, based on a "sovereign citizen" theory, the jurisdiction of the State of Connecticut to prosecute him for a criminal offense, or the authority of any defendant to be involved in his prosecution, the court concludes that the claim lacks an arguable legal basis and is **DISMISSED**. See 28 U.S.C. § 1915A(b)(1). The claims against Judge Clifford and Attorney Doyle in their individual capacities for money damages are **DISMISSED** on the ground that they are entitled to absolute immunity. See 28 U.S.C. § 1915(b)(2). The court concludes that it must abstain from exercising jurisdiction over the requests for injunctive and declaratory relief seeking the court's intervention in Tyson's ongoing state criminal case and **DISMISSES** those requests. See 28 U.S.C. § 1915A(b)(1).

**\*7 (2)** The Clerk is directed to enter judgment for the defendants and close this case. Any appeal from the Ruling dismissing the Complaint would not be taken in good faith. See 28 U.S.C. § 1915(a)(3).

**SO ORDERED.**

### All Citations

Not Reported in Fed. Supp., 2018 WL 6727538

**Tyson v. Clifford, Not Reported in Fed. Supp. (2018)**

Case 3:24-cv-00477-BKS-ML   Document 15   Filed 07/25/24   Page 39 of 126

## Footnotes

1      The State of Connecticut Department of Correction's website indicates, however, that Tyson is currently serving a nine-year sentence, imposed on January 25, 2017, for a violation of probation. Information regarding Tyson's current confinement may be found on the State of Connecticut Department of Correction's website under Inmate Search using his CT DOC Inmate Number 253494. <u>See</u> http://portal.ct.gov/DOC.

2      Information regarding this case may be found on the State of Connecticut's Judicial Branch website at: <u>http://www.jud.ct.gov/jud2.htm</u> under Superior Court Case Look-up; Criminal/Motor Vehicle; Pending Case – Search by Defendant – using plaintiff's last name and first initial of his first name - Tyson, D. (Last visited on December 19, 2018). The court notes that Tyson has filed another federal lawsuit against the victim of the alleged offenses for which he was arrested on March 10, 2016, as well as the police officers who arrested him. <u>See</u> <u>Tyson v. Doe, et al.</u>, Case No. 3:17cv731(JCH). The court has stayed that action pending resolution of Tyson's state criminal case. <u>See id.</u> (Ruling on Mot. to Intervene or Stay Discovery, Doc. No. 133).

---

**End of Document**                                      © 2024 Thomson Reuters. No claim to original U.S. Government Works.

Case 3:24-cv-00477-BKS-ML   Document 15   Filed 07/25/24   Page 40 of 126

Steinkirchner v. Gordon, Not Reported in Fed. Supp. (2020)

2020 WL 549087
Only the Westlaw citation is currently available.
United States District Court, W.D. Pennsylvania.

Anastasia STEINKIRCHNER, Plaintiff,

v.

Benjamin E. GORDON, Eric M. Hurwitz,
Stradley, Ronon, Stevens & Young, LLP
Navient Solutions, LLC, Defendants.

2:19-cv-01241
|
Signed 02/04/2020

**Attorneys and Law Firms**

Anastasia Steinkirchner, Pittsburgh, PA, pro se.

Benjamin E. Gordon, Stradley, Ronon, Stevens & Young,
LLP, Philadelphia, PA, for Defendants.

## OPINION

Mark R. Hornak, Chief United States District Judge

**\*1** The Plaintiff, Anastasia Steinkirchner, proceeding *pro se*,
filed a state court complaint against Navient Solutions, LLC
("Navient") in the Magisterial District Court for Allegheny
County, Pennsylvania. (ECF No. 1-1, at 2.) Navient removed
the action to this Court and then moved to dismiss. (ECF
Nos. 1, 8.) The Plaintiff moved to amend her state court
complaint, which the Court granted as a matter of course
under Rule 15(a). (ECF Nos. 12, 15.) An Amended Complaint
was filed, joining Navient's law firm and counsel of record
as defendants. (ECF No. 16.) Navient and its law firm and
counsel (collectively "the Defendants") moved to dismiss the
Amended Complaint. (ECF No. 17.) The Plaintiff responded,
the Defendants replied, and this matter became ripe for
disposition. (ECF Nos. 20, 23.)

## I. STATEMENT OF THE FACTS

The Plaintiff's bare-bones state court complaint alleged
violations of the Fair Debt Collections Practices Act
("FDCPA" or "the Act"), specifically 15 U.S.C. §§ 1692e,
"False or misleading representations" and 1692f, "Unfair
practices," and sought $12,000 in damages. (ECF No. 1-1, at
3.) The facts set forth in the state court complaint read in their

entirety, "Terms of 'collection activities' listed in affidavit
and subsequent letters was violated. Phone calls persisted and
constitutes harrassment [sic]." (*Id.*) In her otherwise extensive
Amended Complaint, the Plaintiff presented no additional
facts. (ECF No. 16, at 1.) Instead, the Plaintiff stated that
because she is no longer limited to a "maximum dollar
amount" in state court, she now seeks "$28,181.85 (including
filing fees)." (*Id.*) The Plaintiff arrived at that number by
"seeking $1,000 in damages for each and every [FDCPA]
violation"[1] plus the filing fees she paid. (*Id.*) To support those
violations, the Plaintiff incorporated by reference records of
phone calls and voicemails attached as Exhibit A to her
Motion for Leave to Amend. (ECF No. 12, at 4–32.)

From those records, the Court discerned these asserted facts.
The Plaintiff received missed calls, voicemails, or both from
phone numbers she attributes to Navient. (*Id.*) The Plaintiff
claims there were twenty-eight (28) offending calls. (ECF No.
16, at 1.) For its part, the Court counts twenty-six (26) separate
calls. (ECF No. 12, at 4–32.) The discrepancy might be that
these records consist of screenshots from a cell phone. Some
screenshots of missed calls have a corresponding screenshot
of a voicemail from the same phone number and left at
nearly the same date and time. The Plaintiff does not clarify
where a certain voicemail corresponds to a certain phone call.
The Court also found one duplicate among the screenshots.[2]
Finally, there is also very little in the record about the actual
content of the voicemails.[3]

**\*2** The Plaintiff also incorporated by reference Exhibit
B to her Motion for Leave to Amend, the state court
complaint and the documents she originally included with that
complaint. (*Id.* at 33–72.) The limited content of the state
court complaint is discussed above. The attached documents
include an "Affidavit of Legal Notice and Demand to Validate
Debt Claim" ("the Affidavit"), a "Notary Certificate of
Dishonor and Non-Response" ("the Certificate"), and a "Non-
Negotiable Notice of Default Opportunity to Cure" ("the
Notice").[4] (*Id.*)

These documents suggest that in March 2019 the Plaintiff
wrote an Affidavit claiming to bind Navient to the Affidavit's
terms if Navient failed to respond. (*Id.* at 37 ("SILENCE IS
ACQUIESCENCE").) The Affidavit demanded that Navient
"cease and desist" all collection activities "prior to validation
of purported debt." (*Id.*) The Affidavit required Navient to
produce a list of documents to verify this debt within thirty
(30) days. (*Id.* at 38.)

In May 2019, the Plaintiff drafted, signed, and notarized the Certificate. (*Id.* at 40.) This document claimed to bind Navient legally for its failure to respond to the Plaintiff's Affidavit. (*Id.*) Further, it purportedly "dishonors" any claim of debt and associated costs or fees (*Id.*) The pagination suggests that attached to the Certificate was a letter. (*Id.* at 41.) The letter, dated the same day as the Certificate, gave Navient another ten days to provide documents and information proving the existence of a debt. (*Id.*) The letter also mentioned an account number. (*Id.*) Whether this number is an account the Plaintiff held with Navient or is unrelated, the record does not reveal.

The last document is the Notice. (*Id.* at 42.) The document is yet a third letter to Navient, dated around three weeks later, also in May 2019. (*Id.*) The letter included the same account number as the Certificate and recounted the previous correspondence the Plaintiff sent to Navient. (*Id.*) Noting Navient's failure to respond adequately (as defined by the Plaintiff), this letter purported to bind Navient to these terms:

1. That the debt did not exist in the first place; **OR**

2. It has already been paid in full; **AND**

3. That any damages I suffer, you will be held culpable;

4. That any negative remarks made, to a credit reference agency will be removed;

5. You will no longer pursue this matter any further. You have not proven any debt. If you sell the alleged liability, and/or appoint an agent to act on its/your behalf in this matter you will have broken our agreement and you agree to pay the following fee schedule $5,400 for dishonoring our binding agreement, plus $1000 per hour or part thereof for Authorized Representatives time nunc pro tunc, plus $1000 per recorded delivery or any other form of response nunc pro tunc. Also, **NO** further contact is now necessary, however, if you decide to contact me by phone or letter the fee is $100 per item payable in advance by cheque; if no payment is made in advance the fee will rise to $ 1000 per item and you will also be held culpable for any costs incurred while recovering the debt you owe.

(*Id.*) In essence, the Plaintiff has received multiple debt collection calls and she believes she successfully discharged her debt obligation by unilaterally sending these various letters and documents to Navient. The Plaintiff assumes that her correspondence is legally binding on Navient and so those documents are also the source of her damages calculation. [5]

## II. JURISDICTION

**\*3** The Court has original jurisdiction under 28 U.S.C. § 1331 to decide this case. The Amended Complaint alleges claims under the FDCPA, and therefore the action arises under federal law. All other requirements for removal are satisfied. The Magisterial District Court for Allegheny County rests within the Western District of Pennsylvania. 28 U.S.C. § 1441. The Defendants filed their Notice of Removal within thirty (30) days of receipt. 28 U.S.C. § 1446(b).

## III. LEGAL STANDARDS

### A. Rule 12(b)(6) Motions

The Defendants moved to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). Rule 12(b)(6) allows dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A complaint must "state a claim to relief that is plausible on its face" by providing facts which "permit the court to infer more than the mere possibility of misconduct." *Ashcroft v. Iqbal,* 556 U.S. 662, 678–79 (2009). When determining whether dismissal is appropriate, the Court must: "(1) identify[ ] the elements of the claim, (2) review[ ] the complaint to strike conclusory allegations, and then (3) look[ ] at the well-pleaded components of the complaint and evaluat[e] whether all of the elements identified in part one of the inquiry are sufficiently alleged." *Malleus v. George,* 641 F.3d 560, 563 (3d Cir. 2011). The Court should "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Blanyar v. Genova Prods. Inc.*, 861 F.3d 426, 431 (3d Cir. 2017). "A Rule 12(b)(6) motion should be granted when it appears to a certainty that no relief can be granted under any set of facts which could be proved." *Nichole Med. Equip. & Supply, Inc. v. TriCenturion, Inc.*, 694 F.3d 340, 350 (3d Cir. 2012).

### B. *Pro Se* Pleadings

The Plaintiff is proceeding *pro se*. As a result, the Court holds the Amended Complaint to a less stringent standard and the Court must liberally construe the Plaintiff's pleading.

*Becker v. Comm'r*, 751 F.2d 146, 149 (3d Cir. 1984); *see also Carter v. Kane*, 717 F. App'x 105, 108 (3d Cir. 2017) (citing *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)) (holding the same post-*Twombly* and *Iqbal*). That said, even "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013).

## IV. DISCUSSION

The Court accepts the well-pleaded facts (such as they are) as true and views the case in the light most favorable to the Plaintiff. The Court thus presumes that Navient placed all the calls and voicemails evidenced. It presumes that the Plaintiff sent the documents discussed above to Navient, and that Navient failed to respond. [6] Still, the Court will grant the Defendants' Motion to Dismiss.

### A. Claims Against Navient's Law Firm and Counsel of Record

First, the claims against Benjamin E. Gordon, Eric M. Hurwitz, and Stradley, Ronon, Stevens & Young, LLP ("SRSY") are dismissed. In reviewing the Amended Complaint and incorporated filings, the Court finds that the Plaintiff fails to state any claim as to these defendants. Certain filings by the Plaintiff, which the Court either denied or struck as irrelevant, show that the Plaintiff joined Mr. Gordon and Mr. Hurwitz as defendants based on her belief that these attorneys cannot practice law or represent Navient. [7] [8] (*See* ECF Nos. 11, 13, 18, 24.) The Plaintiff apparently joined SRSY based on the Plaintiff's belief that the law firm "is acting as a debt collector without a license, a bond and they are not registered under the [FDCPA]"—an assertion provided with no supporting facts. (ECF No. 11, at 1.) This allegation does not appear on the face of the complaint or in any incorporated documents. But even if it did, the allegation would be struck as a conclusory, legal statement. *Malleus*, 641 F.3d at 563. SRSY and Navient's counsel of record state that Navient retained them for legal representation. (ECF No. 17, at 1.) They were not involved in any underlying activity before their retention. (*Id.*) Given that none of the facts proffered by the Plaintiff assert FDCPA violations by SRSY or counsel of record, the claims against them are dismissed. [9] Leave to amend the complaint as to these defendants is also denied because they are not "debt collectors" or engaged in "debt collection activity," and thus not covered by the FDCPA as discussed below.

### B. FDCPA Claims Against Navient

**\*4** To prevail on a claim under the FDCPA, a plaintiff must satisfy four elements: "(1) she is a consumer, (2) the defendant is a debt collector, (3) the defendant's challenged practice involves an attempt to collect a 'debt' as the Act defines it, and (4) the defendant has violated a provision of the FDCPA in attempting to collect the debt." *Jensen v. Pressler & Pressler*, 791 F.3d 413, 417 (3d Cir. 2015). Viewed in the light most favorable to the Plaintiff, the Complaint adequately alleges the first and third elements, but she fails to plead the second and fourth elements.

#### 1. Element (1)—"Consumer"

First, the term "consumer" is defined under the Act as "*any* natural person obligated or allegedly obligated to pay *any* debt." 15 U.S.C. § 1692a(3) (emphasis added). Navient does not dispute that the Plaintiff is a natural person who is allegedly obligated to pay any debt.

#### 2. Element (3)—"Debt Collection"

The third element requires the Plaintiff to show that Navient's activity is "debt collection." The FDCPA regulates, but does not define, "debt collection." The Third Circuit has held the term encompasses "any conduct taken in connection with the collection of any debt" or "activity undertaken for the general purpose of inducing payment." *McLaughlin v. Phelan Hallinan & Schmieg, LLP*, 756 F.3d 240, 245 (3d Cir. 2014). Communications need not include an explicit demand for payment to be "debt collection" activity. *Id.* Covered activity could also consist of "communications that include discussions of the status of payment, offers of alternatives to default, and requests for financial information." *Id.* at 245–46. Thus, it could be said that most, if not all, calls from a debt collector would constitute "debt collection" activity. Debt collectors usually don't call just to say, "hi." Viewed in the light most favorable to the Plaintiff, the Court finds that there is a plausible showing that there is a debt in which Navient has some interest. The account number in the Plaintiff's letters to Navient, as well as by the calls and voicemails she received, show this to be the case. [10] Accepting the Plaintiff's claim that the calls and voicemails were from Navient, the Court finds

that this element is also satisfactorily pleaded. Even so, the inquiry still hinges on Navient being a "debt collector" in the first place.

### 3. Element (2)—"Debt Collector"

In their Motion to Dismiss, the Defendants mainly challenge Navient's status as a "debt collector" as defined under the FDCPA. The Act generally defines a "debt collector" as "any person (1) who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts (the principal purpose definition), or (2) who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another (the regularly collects definition)." *Barbato v. Greystone All., LLC*, 916 F.3d 260, 265 (3d Cir. 2019) (internal quotations omitted). The definition includes several exclusions, under which the Defendants say Navient falls. [11]

**\*5** The Defendants argue that the FDCPA's definition of "debt collector" applies *only* to those who collect debts on behalf of others. (ECF No. 17-1, at 5.) The definition thus excludes creditors collecting on a debt that the creditor originated. [12] (*Id.*) The Defendants also argue that the FDCPA excepts loan servicing companies, like Navient, and assignees of student loan debt "so long as that debt was not in default at the time the debt was obtained." (*Id.* at 6.) The Defendants cite several opinions holding that loan servicing companies are not "debt collectors" under the FDCPA. (*Id.* (citing cases from the 2d Cir., 5th Cir., 6th Cir., C.D. Cal., D. Haw., E.D. Mich., D.N.J., and E.D. Pa.).) Navient itself was a defendant in several of those cases. [13] Thus, the Defendants argue that the Amended Complaint should be dismissed because Navient cannot be a debt collector as a matter of law. They further argue that if the Court dismisses the Amended Complaint, it should also deny leave to amend because no amendment could cure this deficiency. (*Id.* at 7.)

The cases the Defendants cited from this Circuit suggest that a key factual element in determining whether a defendant is a covered "debt collector" or an uncovered loan servicer is whether the debt was in default when that defendant acquired it. In *Levy-Tatum v. Navient and Sallie Mae Bank*, the court focused on the debt collector exclusion under 15 U.S.C. § 1692a(6)(F)(iii). No. CV 15-3794, 2016 WL 75231, at *6 (E.D. Pa. Jan. 7, 2016). That subparagraph excludes "any person collecting or attempting to collect any debt owed or

due or asserted to be owed or due another to the extent such activity ... concerns a debt which was not in default at the time it was obtained by such person." *Id.* Because Navient had "maintained responsibility for servicing the loan from its inception" and before it defaulted, the complaint in *Levy-Tatum* failed to establish Navient was a debt collector. *Id.* at *7. As a result, the exclusion in § 1692a(6)(F)(iii) applied and the claim was dismissed. *Id. See also Spyer v. Navient Sols., Inc.*, No. 15-3814, 2016 WL 1046789, at *3 (D.N.J. Mar. 15, 2016) ("Navient is not a 'debt collector' under the FDCPA under these circumstances because it became the loan servicer ... while plaintiff's loan were not in default."); *Caione v. Navient Corp.*, No. CV 16-0806, 2016 WL 4432687 (D.N.J. Aug. 18, 2016) (holding the same).

After the Defendants here moved to dismiss, the Court specifically ordered the Plaintiff to address the arguments in the Defendants' Motion. (ECF No. 19.) The Court felt that this was necessary after the Plaintiff filed only a "Non-Negotiable Notice of Default Opportunity to Cure," which raised secondary and separate issues and was nonresponsive to the Motion to Dismiss. (*See* ECF No. 18.) Yet despite the Court's clear direction, the Plaintiff did not address the Defendants' arguments in her Response. (ECF No. 20.) Instead, the Plaintiff stated "[m]y original Complaint was clear in its statement and documentation as is the Amended Complaint." (*Id.* at 2.) She also rested on her previous arguments that Navient failed to validate the debt and that her correspondence to Navient had somehow discharged her debt. [14] (*Id.* at 1.) The Plaintiff therefore still offers no facts showing that Navient is a "debt collector," even after pleading, then amending, and then ignoring this Court's specific direction that she do so. Even accepting all factual allegations as true and viewing the Amended Complaint in the light most favorable to the Plaintiff, she still fails to state a claim. As a result, her Amended Complaint will be dismissed. The Court will not grant the Plaintiff leave to further amend, given that she had two (2) chances to do so, and ignored the Court's directions the second time around. The Court concludes therefore that she cannot do so, and any such effort would therefore be futile. *See Kline v. Elite Med. Labs., Inc.*, No. 1:19-CV-1043, 2019 WL 6828590, at *6 (M.D. Pa. Dec. 13, 2019) ("Because Plaintiff has already amended his complaint ... and that amendment has failed to cure [the] defect, I find that granting further leave to amend would be both inequitable to require Defendant ... to seek dismissal a third time, and futile because even after being placed on notice of this issue Plaintiff has failed to allege enough facts").

*4. Element (4)—FDCPA Violation*

**\*6** The Plaintiff lists two causes of action against Navient—15 U.S.C. §§ 1692e and 1692f. The first statute prohibits a "debt collector" from using false, deceptive, or misleading representations or means" in collecting a debt. 15 U.S.C. § 1692e. It also enumerates sixteen (16) potential violations. *Id.* The latter statute prohibits unfair or unconscionable means to collect or attempt to collect a debt and lists eight (8) potential violations. *Id.* § 1692f. At most, the Plaintiff has pleaded that she received more than two dozen phone calls from Navient, which she regards as harassment. (ECF No. 12, at 34.) Even if the Plaintiff *had* shown Navient is a "debt collector," these facts would not state a claim. The Plaintiff sometimes received two or three calls per day. (*Id.* at 10, 21, 23.) But all the calls she documented took place over a span of five (5) months. (*Id.* at 4–32.); *see Despot v. Allied Interstate*, Aw., No. CV 15-15, 2016 WL 4593756, at *6 (W.D. Pa. Sept. 2, 2016) ("Plaintiff has not pled any facts from which the Court can rightly infer that the phone calls were made with the intent to harass or annoy. The frequency of the calls does not suggest such behavior because the calls occurred over twenty days for an average frequency of less than one call per day.") The Plaintiff also received these calls between 9:00a.m. and 6:30p.m. (ECF No. 12, at 4–32.); *see Lightfoot v. Healthcare Revenue Recovery Grp., LLC*, No. CIV 14-6791, 2015 WL 1103441, at *2 (D.N.J. Mar. 11, 2015) ("there is ample case law requiring plaintiffs to plead that the challenged communication(s) occurred after 9 p.m. or before 8 a.m."). Thus, even accepting all the facts as true, the Plaintiff has not provided enough detail to support her claims. The Court would dismiss the Amended Complaint on this basis as well.

## V. CONCLUSION

For the reasons set out in this Opinion, the Defendants' Motion to Dismiss (ECF No. 17) will be GRANTED. The claims against Navient, Mr. Hurwitz, Mr. Gordon, and SRSY will be DISMISSED with prejudice. Leave to amend those claims is also denied as futile. *See Phillips v. County of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008). The Plaintiff's Motion for Reconsideration (ECF No. 27) is also DENIED.

An appropriate Order will follow.

## All Citations

Not Reported in Fed. Supp., 2020 WL 549087

## Footnotes

1   She claims twenty-eight violations. (ECF No. 16, at 1.)

2   The Plaintiff received a July 3, 2019 call from a Springville, Utah phone number at 10:13a.m., which appears in two screenshots. (ECF No. 12, at 9, 28.)

3   Some voicemail screenshots consist of emails sent to the Plaintiff that include automated transcriptions of the voicemails' content. (*See* ECF No. 12, at 15–16, 19.) Unfortunately, the transcriptions are so poor that they shed little light on the actual content. At most, one caller may have said she was calling the Plaintiff from "Navient," but it was transcribed as "Navia." (*Id.* at 19.)

4   Exhibit B also includes the same screenshots discussed above and a photocopy of a certified mail receipt. (*Id.* at 43–72.) Much of Exhibit B consists of high-sounding but completely irrelevant content regarding Federal Reserve Notes, notice to agents and principals, and references to the "Republic of Pennsylvania." (*Id.* at 37–39.)

5   Upon reviewing these documents, it is clear what the Plaintiff meant in her state court complaint when she said, "[t]erms of 'collection activities' listed in affidavit and subsequent letters was violated." The Plaintiff believes that the terms in the documents she sent to Navient are somehow binding on Navient by dint of

its nonresponse to them. Those terms were then supposedly "violated" when Navient continued to call the Plaintiff. As a result, the Plaintiff says that Navient must pay her $1,000 per call. (ECF No. 12, at 42.) That "fee" multiplied by the alleged number of calls (28) equals the damages the Plaintiff seeks, less the filing fee. Presumably, Navient never "paid for" those calls. Given the claims asserted, these documents are not relevant to whether the Plaintiff sufficiently alleges a violation of the FDCPA. While the Court is not in the business of issuing general advisory opinions, it can say with confidence that the Plaintiff's one-sided effort to discharge her debts does not create a legal or factual basis for the claims she struggles to assert.

6   Navient provided documentation purportedly showing that it did respond to the Plaintiff's request for verification of the debt, even though it argues it did not have to. (ECF Nos. 23, at 4–5; 23-1; 23-2; 23-3.)

7   Both lawyers for Navient are admitted to practice in the Commonwealth of Pennsylvania. Mr. Hurwitz is admitted to practice in this Court. The Court also admitted Mr. Gordon to appear and practice in this Court as counsel *pro hac vice* for Navient. (ECF Nos. 2, 3.)

8   The Plaintiff advanced several unconvincing legal theories in her Motion to Strike, which the Court denied. (ECF No. 11.) For instance, the Plaintiff claimed that counsel could not practice law because the practice of law "CAN NOT be licensed by any state/State," rather the "practice of Law is AN OCCUPATION OF COMMON RIGHT!" (*Id.* at 1.) Yet despite her belief about the common right to practice law, she demands evidence of the attorneys' licenses to practice law, lest they come before the court "in violation of the 'Clean Hands Doctrine.' " (*Id.*) The Plaintiff asserted several dubious legal theories throughout the stricken documents as well. (ECF Nos. 13, 18, 24.) For example, she repeatedly claimed that counsel of record must provide their "Registration Statements" under the Foreign Agents Registration Act of 1938 ("FARA"). (*See, e.g.*, ECF No. 24, at 1.) FARA, of course, applies to agents of a foreign (as in "outside the United States") principal and aims to prevent clandestine dissemination of foreign political propaganda within the United States. *See* 22 U.S.C. § 611 *et seq.*; *Viereck v. United States*, 318 U.S. 236, 241 (1943). Having stricken or denied these filings, the Court does not address them point-by-point. Instead, the Court refers to them to reflect what the Court believes was the Plaintiff's reasoning for joining these parties.

9   The Court also ordered stricken the Plaintiff's repetitive further filings assailing the "foreign registration" (or lack thereof) of these lawyers, ECF Nos. 13, 18, 24, 25, 26, and for the same reasons will deny the apparent Motion for Reconsideration, ECF No. 27.

10   The exhibits attached to the Defendants' Reply Brief—the promissory notes for the Plaintiff's federal student loans and her detailed payment history—also confirm this. (ECF Nos. 23-1, 23-2, 23-3.)

11   The most pertinent exclusion appears to be: "the term [debt collector] does not include ... any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity ... (iii) concerns a debt which was not in default at the time it was obtained by such person." 15 U.S.C. § 1692a(6)(F).

12   Navient does not claim to be a creditor, but this argument is a bit more nuanced in this Circuit. *See Barbato*, 916 F.3d at 266 (holding a "creditor" could also be a "debt collector" under the FDCPA).

13   *Caione v. Navient Corp.*, No. 16-cv-806, 2016 WL 4432687 (D.N.J. Aug. 18, 2016); *Downridge v. Navient*, No. 16-cv-10327, 2016 WL 1594427 (E.D. Mich. Apr. 21, 2016); *Spyer v. Navient*, No. 15-cv-3814, 2016 WL 1046789 (D.N.J. Mar. 15, 2016); *Haysbert v. Navient Sols., Inc.*, No. 15-4144, 2016 WL 890297 (C.D. Cal. Mar. 8, 2016); *Levy-Tatum v. Navient*, No. 15-cv-3794, 2016 WL 75231 (E.D. Pa. Jan. 7, 2016).

14   For these reasons, the Defendants ask this Court to consider the arguments unopposed and to grant their Motion. (ECF No. 23, at 2.) The Court declines to do so on this basis. *See Jones v. Unemployment Comp.*

*Bd. of Review*, 381 F. App'x 187, 189 (3d Cir. 2010) (expressing disfavor for a 12(b)(6) dismissal because an argument is unopposed).

---

**End of Document**                          © 2024 Thomson Reuters. No claim to original U.S. Government Works.

Stoute v. Navient, Not Reported in Fed. Supp. (2019)

Case 3:24-cv-00477-BKS-ML    Document 15    Filed 07/25/24    Page 47 of 126

2019 WL 13234780
Only the Westlaw citation is currently available.
United States District Court, D. Massachusetts.

Stephen STOUTE, Plaintiff,

v.

NAVIENT, Defendant.

Civil Action No. 19-11362-IT
|
Signed July 2, 2019

**Attorneys and Law Firms**

Stephen Stoute, Chelsea, MA, Pro Se.

**MEMORANDUM AND ORDER**

TALWANI, District Judge

 **\*1**  For the reasons set forth below, the court allows Plaintiff's Application to Proceed Without Prepayment of Fees [#2] but finds that Plaintiff's Complaint [#1] fails to state a claim upon which relief may be granted. If Plaintiff wishes to proceed with this action, he must file an amended complaint that sets forth a plausible claim upon which relief may be granted.

 **I. Background**
On June 19, 2019, Stephen Stoute ("Stoute"), a resident of Chelsea, Massachusetts, filed a *pro se* Complaint [#1] accompanied by an Application to Proceed Without Prepayment of Fees [#2]. The sole defendant named in the complaint is Navient, identified as a Pennsylvania Corporation. Compl. Stoute alleges that on May 2, 2019, Navient sought to collect payments for a student loan. *Id.* at ¶ III (statement of claim), p. 5. He contends that Navient failed to respond to his May 22, 2019, letter and Notice of Default. *Id.* Stoute states that he "suffered in housing for several years [because] the alleged debt [was placed] on [Stoute's] credit report." *Id.* Stoute asserts that as a result of Navient's actions, he "was embarrassed to show [his] credit report or have a credit check performed." *Id.* As best as can be gleaned from the Complaint and attached exhibits, Stoute contends that due to Navient's failure to respond to his correspondence, and pursuant to UCC 3-505 and 1-202, Navient may not pursue collection on the alleged debt. For relief, Stoute seeks (1) "actual damages" of $48,245 plus interest on the alleged

debt; (2) removal of the alleged debt from Stoute's credit score, including any late payments; (3) $80,000 for emotional distress; and (4) $350,000 punitive damages. Compl., at ¶ IV (relief).

 **II. Motion for Leave to Proceed In Forma Pauperis**
After review of Stoute's motion for leave to proceed *in forma pauperis*, the court concludes that Stoute is without assets to pay the filing fee and ALLOWS the motion.

 **III. Screening of the Complaint**
When a plaintiff seeks to file a complaint without prepayment of the filing fee, summonses do not issue until the Court reviews the complaint and determines that it satisfies the substantive requirements of 28 U.S.C. § 1915. Section 1915 authorizes federal courts to dismiss a complaint *sua sponte* if the claims therein lack an arguable basis in law or in fact, fail to state a claim on which relief may be granted, or seek monetary relief against a defendant who is immune from such relief. *See* 28 U.S.C. § 1915(e)(2).

When examining the sufficiency of the pleadings, the court considers whether the plaintiff has pled "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).

"In evaluating whether a complaint states a plausible claim, [the court performs a] 'two-step analysis.' " *Saldivar v. Racine*, 818 F.3d 14, 18 (1st Cir. 2016) (quoting *Cardigan Mountain Sch. v. N.H. Ins. Co.*, 787 F.3d 82, 84 (1st Cir. 2015)). "First, the court must distinguish 'the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited).' " *Garcia-Catalan v. United States*, 734 F.3d 100, 103 (1st Cir. 2013) (quoting *Morales-Cruz v. Univ. of P.R.*, 676 F.3d 220, 224 (1st Cir. 2012)). Second, the court must determine whether the factual allegations present a "reasonable inference that the defendant is liable for the misconduct alleged." *Haley v. City of Boston*, 657 F.3d 39, 46 (1st Cir. 2011).

 **\*2**  In conducting this review, the court liberally construes Stoute's complaint because Stoute is proceeding *pro se. See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).

Stoute v. Navient, Not Reported in Fed. Supp. (2019)

Case 3:24-cv-00477-BKS-ML   Document 15   Filed 07/25/24   Page 48 of 126

#### IV. Discussion

Here, the complaint fails to allege any facts that could support a claim against the defendant. Stoute does not deny that he incurred a debt. Rather, he contends that the debt has been cancelled based upon Navient's failure to respond to his correspondence. Stoute's reliance on two provisions [1] of the Uniform Commercial Code do not support any claim for relief. In light of the foregoing, this action will be dismissed in 21 days unless Stoute files an amended complaint which cures the pleading deficiencies and sets forth a plausible claim upon which relief may be granted.

#### V. Order

Based upon the foregoing, it is it is hereby ORDERED that

1. The Application to Proceed Without Prepayment of Fees [#2] is granted.

2. The Complaint [1] is subject to dismissal pursuant to 28 U.S.C. § 1915(e)(2). If Plaintiff wishes to proceed in this matter, he must file an amended complaint curing the pleading deficiencies and setting forth a plausible claim upon which relief may be granted. Failure to comply with this directive within twenty-one (21) days of the date of this Memorandum and Order will result in dismissal of this action.

**So ordered.**

**All Citations**

Not Reported in Fed. Supp., 2019 WL 13234780

### Footnotes

1    Section 1-202 concerns authentication of commercial paper and related documents. Section 3-505 provides that certain evidence concerning dishonor of a negotiable instrument is admissible and creates a presumption of dishonor.

2015 WL 5657110
Only the Westlaw citation is currently available.
United States District Court,
M.D. Alabama,
Northern Division.

Wayne McKAY and Shondra McKay, Plaintiffs,
v.
U.S. BANK, National Associaton, as
trustee for the Certificate Holders of the
LXS 2007–15N Trust Fund, Defendant.

No. 2:14–cv–872–TFM.
|
Signed Sept. 24, 2015.

**Attorneys and Law Firms**

John Scott Hooper, Hooper Law Firm, Montgomery, AL, for Plaintiffs.

Gregory Carl Cook, Balch & Bingham LLP, Birmingham, AL, John W. Naramore, Griffin Lane Knight, Balch & Bingham LLP, Montgomery, AL, for Defendant.

### *MEMORANDUM OPINION AND ORDER*

TERRY F. MOORER, United States Magistrate Judge.

#### I. *Introduction*

**\*1** Plaintiffs filed this declaratory judgment action against Defendant U.S. Bank, National Association, as trustee for the Certificate Holders of the LXZ 2007–15N Trust Fund ("U.S.Bank") asking this Court to declare "that Defendant is not a party in interest as against Plaintiffs and or Plaintiff's [sic] real property." and seeking "a declaration to quiet title in favor of Plaintiffs and against Defendants [sic]." (Doc. 1 p. 2). The defendant filed a *Motion to Dismiss and Brief in Support* (Docs. 12 and 13) to which it attached as exhibits the following: a copy of the Plaintiffs' Mortgage on the property identified as 2722 Albemarle Road Montgomery, Alabama 36107 (Doc. 13–1) [1]; a copy of the Adjustable Rate Note for the property identified above (Doc. 13–2); and a copy of the Assignment of Mortgage from MERS as nominee for Bayrock Mortgage Corporation to Defendant U.S Bank. (Doc. 13–3). The plaintiffs filed a *Response to the Motion to Dismiss* (Doc. 17) to which they attached an affidavit from

Rosemary A. Parks, "the substitute of the holder of the power of Attorney" for Plaintiffs. (Doc. 17–1).

#### II. *Standard of Review*

When considering the appropriate standard to apply on a motion to dismiss where parties have filed documents outside the complaint with the Court, the Eleventh Circuit has held that

> "the court may consider a document attached to a motion to dismiss without converting the motion into one for summary judgment if the attached document is (1) central to the plaintiff's claim and (2) undisputed. In this context, 'undisputed' means that the authenticity of the document is not challenged."

*D.L. Day, v. Taylor,* 400 F.3d 1272, 1276 (11th Cir.2005) citing *Horsley v. Feldt,* 304 F.3d 1125, 1134 (11th Cir.2002). Further, "[a] Rule 12(b)(6) motion tests the legal sufficiency of the complaint....[I]n order to survive a motion to dismiss for failure to state a claim, the plaintiff must allege 'enough facts to state a claim to relief that is plausible on its face.' " *Coggins v. Abbett,* 2008 WL 2476759 \*4 citing *Bell Atlantic Corp., v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929) (2007).

The standard for a motion to dismiss under Rule 12(b)(6) was explained in *Twombly* and refined in *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) as follows:

> Two working principles underlie our decision in *Twombly.* First, the tenet that a court must accept as true all the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era,

but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief.

**\*2** *Iqbal,* 129 S.Ct. at 1949–50 (citations and internal edits omitted).

The *Twombly–Iqbal* two-step analysis begins "by identifying the allegations in the complaint that are not entitled to the assumption of truth" because they are conclusory. *Id.,* at 195; *Mamani v. Berzain,* 2011 U.S.App. Lexis 17999, at \*12, 2011 WL 3795468 (11th Cir. Aug. 29, 2011) ("Following the Supreme Court's approach in *Iqbal,* we begin by identifying conclusory allegations in the Complaint."). After conclusory statements are set aside, the *Twombly–Iqbal* analysis requires the Court to assume the veracity of well-pleaded factual allegations, and then to determine whether they "possess enough heft to set forth 'a plausible entitlement to relief.' " *Mack v. City of High Springs,* 486 Fed. App'x 3, 6 (11th Cir.2012) (quotation omitted.) "To survive a motion to dismiss, a complaint need not contain 'detailed factual allegations' but instead the complaint must contain 'only enough facts to state a claim to relief that is plausible on its face.' " *Maddox v. Auburn Univ. Fed. Credit Union,* 2010 U.S. Dist. Lexis 127043 at \*4. Establishing facial plausibility, however, requires more than stating facts that establish mere possibility. *Mamani,,* 2011 U.S.App. Lexis 17999, at \*22–\*23, 2011 WL 3795468 ("The possibility that -if even a possibility has been alleged effectively-these defendants acted unlawfully is not enough for a plausible claim."). Plaintiff is required to "allege more by way of factual content to nudge [her] claim ... across the line from conceivable to plausible." *Iqbal,* 129 S.Ct. at 1952 (internal editing and citation omitted.)

### III. *Discussion*

The claims in this case arise from U.S. Bank's status as mortgagee of Plaintiffs' Mortgage. (Doc. 1 para. 2). On December 12, 2006, Plaintiffs executed a Mortgage in favor of MERS, as nominee for Bayrock Mortgage Corporation ("Bayrock") to secure a Note evidencing an $82,400.00 home loan from Bayrock to Plaintiffs. The defendant has filed with the Court a copy of the Mortgage, the Note and the Assignment at issue in this case (Docs.13–1, 13–2, 13–3). The Plaintiffs have not objected to the authenticity of these documents; nor does the Court have any reason to doubt that these documents are anything other than what they appear to be on their face. Thus, the authenticity of these documents is "undisputed". Furthermore, these documents form the basis of Plaintiffs' claim and as such are "central" to Plaintiffs' claim. *D.L. Day,* 400 F.3d at 1276. Accordingly, the Court concludes that these documents are properly before the Court for its consideration on the Motion to Dismiss. *Id.*

Plaintiffs allegedly mailed U.S. Bank a "notarial presentment" on July 17, 2014, which U.S. Bank allegedly received on July 21, 2014. (Doc. 1 para. 4). This "notarial presentment" purportedly asserted that U.S. Bank was not the party of interest to enforce Plaintiff's Mortgage, and apparently requested that U.S. Bank produce the original Note and Mortgage. (*Id.* at para. 5). Plaintiffs also allegedly mailed U.S. Bank a "notarial notice of Dishonor" on August 4, 2014, which was allegedly received by U.S. Bank on August 11, 2014. (*Id.* at para. 7). Plaintiffs alleged that U.S. Bank has not responded to either the "notarial presentment" or the "notarial notice of dishonor." (*Id.* paras. 6, 8). Plaintiffs claim that U.S. Bank is not in possession of the original Note or original Mortgage—notwithstanding that U.S. Bank has attached copies of the same to this motion. (*Id.* para. 9); *see* (Doc. 13–1 and 13–2). Plaintiffs' Note and Mortgage are now part of a securitized pool, of which U.S. Bank is Trustee. (Doc. 1, paras.2, 10); *see* (Doc. 13–3). Plaintiffs now seek a declaratory judgment (1) against U.S. Bank declaring that U.S. Bank is not a party in interest as to Plaintiffs or Plaintiffs' property, and (2) to quiet title in favor of Plaintiffs and against U.S. Bank. (*Id.* at p. 2).

**\*3** It is undisputed that Plaintiffs have not made a mortgage payment since June 2013, yet are still living in their house. Defendant argues that the Plaintiffs' Complaint is due to be dismissed for three reasons. First, Plaintiffs incorrectly argue that the principles of presentment and dishonor of negotiable instruments apply to this case. Second, Plaintiffs incorrectly argue that U.S. Bank is not a party in interest to this case. Third, Plaintiffs fail to adequately plead a

quiet title claim. The Court will address each of these arguments below. The Court notes that Plaintiffs' response to Defendant's Motion to Dismiss is simply a restatement, almost verbatim, of the claims in their complaint and offers no factual or legal argument to rebut those arguments presented by Defendant. (Doc. 17). The Court will address each of Defendants arguments in turn below.

### (1) *Ala.Code* §§ 7–3–501 to 503 do not apply to this case.

Plaintiffs claim that U.S. Bank has "admitted that it is not the party to enforce the note and mortgage on Plaintiffs' property and [U.S. Bank] is not in possession of the original note." (Doc. 1, paras 4–8). This claim is not supported by any relevant law or fact. First, Plaintiffs claim that they mailed U.S. Bank a "notarial presentment alleging that [U.S. Bank] was not the party of interest to enforce the mortgage and that for [U.S. Bank] to produce the original mortgage and note under Code of Alabama 7–3–501." (Doc. 1, para.4). This section defines "presentment" as follows:

> "*a demand made by or on behalf of a person entitled to enforce an instrument (i) to pay the instrument made to* the drawee *or party obliged to pay the instrument,* or in the case of a note or accepted draft payable at a bank, to the bank, or (ii) to accept a draft made to the drawee."

*Ala.Code* 7–3–501 (emphasis added). By the clear terms of the statute, presentment is a power to be exercised "by or on behalf of a person entitled to enforce the instrument," and against "a party obliged to pay the instrument". *Id.* Plaintiffs appear to claim that they are entitled to make a demand for presentment, and that they are entitled to demand payment from U.S. Bank. This is a backwards reading and interpretation of the statute. As the parties indebted under their home loan and obliged to pay the Note, Plaintiffs are the parties to whom presentment could be made. There is no allegation that U.S. Bank, as the party entitled to enforce the Note, has made any demand for presentment on Plaintiffs. Thus the doctrine of presentment is inapplicable to the facts of this case and is not a basis for this Court to conclude that U.S. Bank has "admitted" anything related to Plaintiffs' Mortgage as Plaintiffs claim. (Doc. 1, paras 4–8).

Similarly, Plaintiffs' contentions related to dishonor are inapplicable and without merit. (Doc. 1 paras. 6–8). *Ala.Code* 7–3–502(a)(1)–(3) provides generally that a note is dishonored if the note is not paid on the day of presentment (if necessary) or on the day it becomes payable. For the concept of dishonor to apply, the party obligated to pay it, must fail to pay it. Thus, Plaintiffs, as the parties obligated to pay the amount of the Note, are the only parties who could dishonor the Note. Thus the doctrine of dishonor is inapplicable [2] to the facts of this case and is not a basis for this Court to conclude that U.S. Bank has "admitted" anything related to Plaintiffs' Mortgage as Plaintiffs claim. (Doc. 1, paras 4–8).

### (2) 12 U.S.C. § 2605(k)(1)(d) does not apply.

**\*4** Plaintiffs cite 12 U.S.C. § 2605(k)(1)(d) for the proposition that U.S. Bank had "ten (10) business days to rebut the Notarial Presentment of Plaintiffs or the same is deemed admitted as presented. "(Doc. 1, para.5). This Section states as follows:

(k) Servicer prohibitions

(1) In general

A servicer of a federally related mortgage shall not—

(D) fail to respond within 10 business days to a request from a borrower to provide the identity, address, and other relevant contact information about the owner or assignee of the loan.

By its clear terms, this statute applies to a "servicer of a federally related mortgage". Plaintiffs have not alleged that U.S. Bank is the servicer of their Mortgage; nor do Plaintiffs allege in their Complaint that they ever actually requested identity and contact information about the owner or assignee of the loan. Rather they assert that their "Notarial Presentment alleg[ed] that [U.S. Bank] was not the party of interest to enforce the mortgage and that for [U.S. Bank] to produce the original mortgage or note." (Doc. 1, para.4). The information sought by Plaintiff is clearly not contemplated by this Code section. Thus, this Code section is inapplicable to the facts of this case and is not a basis for this Court to conclude that U.S. Bank has "admitted" anything related to Plaintiffs' Mortgage as Plaintiffs claim. (Doc. 1, paras.4–8).

### (3) U.S. Bank is a party in interest as to Plaintiffs' Mortgage

Plaintiffs seek declaratory relief that U.S. Bank "is not a party in interest as against Plaintiffs and or Plaintiff's [sic] real property." (Doc. 1, p. 2). Plaintiffs first theory to support this argument is that U.S. Bank failed to comply with the statutory requirements relating to presentment, dishonor, and information requests. For the reasons stated in sections (1) and (2) above, the Court concludes this theory has no merit.

Plaintiffs' second theory to support their request for declaratory relief is based partly upon their claim that U.S. Bank "must possess both [the Note and Mortgage] to be the party in interest to enforce the mortgage." (Doc. 1 para. 9). The law is clear; this "split the note" theory has been consistently rejected by Alabama courts. *See, e.g., Coleman v. BAC Servicing,* 104 So.3d 195, 205 (Ala.Civ.App.2012) (holding that "Alabama law specifically contemplates that there can be a separation" of the note and mortgage); *See, also, Orton v. Matthews,* 2013 WL 5890167 * 4 (N.D. Ala. Nov 1, 2013) (granting motion to dismiss on basis that the " 'split the note' theory has been roundly rejected by Alabama courts"). Thus, the Court concludes that this theory does not support the conclusion that U.S. Bank is not a party in interest to Plaintiffs' mortgage, as Plaintiffs claim.

Further, the Court recognizes Plaintiffs acknowledge that U.S. Bank is Trustee of the Trust (Doc. 1 para. 2). Under the law, if a trustee possesses "customary powers to hold, manage, and dispose of assets," then that trustee is a real party in interest. *Navarro Sav. Ass'n v. Lee,* 446 U.S. 458, 464, 100 S.Ct. 1779, 64 L.Ed.2d 425 (1980). Section Q of the Mortgage provides as follows:

**\*5** "MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the property ... [or] releasing and cancelling this Security Instrument."

(Doc. 13–1 p. 4). Additionally, the Mortgage provides that

"[t[he Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to [Plaintiffs]."

(Doc. 13–1 p. 16 para. 20). Also, the recorded U.S. Bank assignment provides that the Mortgage was assigned to U.S. Bank, as trustee. (Doc. 13–3). Thus, the facts are undisputed that U.S. Bank is now the mortgagee of Plaintiffs' Mortgage, and Plaintiffs agreed to terms in the Mortgage establishing that the mortgagee has the power to exercise enforcement

rights granted in the Mortgage. Thus, the Court concludes that Plaintiffs claim that U.S. Bank is not a real party in interest fails; and thus no declaratory relief is due on this claim.

**(4) Plaintiffs' Quiet Title claim is due to be dismissed.**
Plaintiffs also seek "a declaration to quiet title in favor of Plaintiffs and against Defendants." (Doc. 1 p. 2). An action to quiet title is the appropriate test to determine which among the parties claiming right of title and possession holds superior title. *Gardner v. Key,* 594 So.2d 43, 44 (Ala.1991). Plaintiffs quiet title claim is based, in whole or in part, on the arguments made pursuant to Alabama and federal law as discussed above in sections (1), (2) and (3). To the extent that these arguments serve as the basis for Plaintiffs' quiet title claim, the Court concludes that the quiet title claim is due to be dismissed.

Furthermore, the Court concludes that Plaintiffs' quiet title claim should be dismissed because it does not meet the required pleading standards for a quiet title action. Under Alabama law, any person "in peaceable possession of lands [and] ... claiming to own the same, ... [whose] title thereto, or any party thereof, is ... disputed ..., may commence an action to settle the title to such land and to clear up all doubts or disputes concerning the same." *Ala.Code* § 6–6–540. A plaintiff establishes a prima facie case to quiet title when "it is shown that [the plaintiff] is in peaceable possession of the land, either actual or constructive, at the time of the filing of the bill and that there was no suit pending to test the validity of the title. *Woodland Grove Baptist Church, v. Woodland Grove Cmty. Cemetery Ass'n, Inc.,* 947 So.2d 1031, 1036 (Ala.2006) (citations omitted.)

Indeed, in order to meet the "plausibility" pleading standard articulated by *Twombly* and *Iqbal,* a plaintiff's complaint must include enough factual allegations to lift the stated claim out of the realm of mere speculation. *Twombly,* 550 U.S. at 555. Here, Plaintiffs fail to identify or attempt to connect factual allegations to any of the elements of a quiet title cause of action. Indeed, the only part of the Complaint that remotely relates to such a claim is the factual allegation that Plaintiff's "own a home". (Doc. 1 para. 1). Thus, the Court concludes that under the "plausibility" standard of *Twombly* and *Iqbal,* Plaintiffs fail to adequately plead a cause of action to quiet title.

**IV. *Conclusion***
**\*6** Accordingly, the Court concludes that Defendant U.S. Bank's *Motion to Dismiss the Complaint* (Doc. 12) is

GRANTED and that this case is due to be dismissed with prejudice. A separate Order will be issued.

**All Citations**

Not Reported in F.Supp.3d, 2015 WL 5657110

## Footnotes

1    The Lender identified in the Mortgage is Bayrock Mortgage Corporation for whom Mortgage Electronic Registration Systems, Inc. ("MERS") acts as nominee. (Doc. 13–1 pp. 2–3).

2    Further, *Ala.Code* 7–3–503 which relates to notice of dishonor, is similarly inapplicable to this case.

**End of Document**                                   © 2024 Thomson Reuters. No claim to original U.S. Government Works.

1997 WL 599355
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Kenneth BROWN, Plaintiff,

v.

Andrew PETERS, Warden, Watertown Correctional
Facility; Joseph Williams, Warden, Lincoln Work–
Release Center; Francis J. Herman, Senior Parole
Officer Interstate Bureau; T. Stanford, Senior Parole
Officer; Deborah Stewart, Parole Officer; John Doe #
1, Parole Agent, Watertown Correctional Facility; John
Doe # 2, Parole Agent, Lincoln Work Release Center;
Susan Bishop, Director of Interstate Compact, South
Carolina; Cecil Magee, Parole Officer, South Carolina;
Frank Barton, Parole Officer, South Carolina; John
McMahan, Parole Officer, South Carolina, Defendants.

No. Civ.A. 95CV1641RSPDS.
|
Sept. 22, 1997.

**Attorneys and Law Firms**

Kenneth Brown, State Court Institute–Greene, Waynesburg,
PA, plaintiff, pro se.

Dennis C. Vacco, New York State Attorney General, The
Capitol Albany, NY, for defendants Peters, Herman Stewart,
Doe # 1, Doe # 2, and Williams, Jeffrey M. Dvorin, Assistant
Attorney General, Carl N. Lundberg, Chief Legal Counsel,
South Carolina Department of Probation, Columbia, SC, for
defendants Bishop, Magee, Barton, McMahan, and Stanford,
Carl N. Lundberg, of Counsel.

DECISION AND ORDER

POOLER, J.

**\*1** The above matter comes to me following a Report–
Recommendation by Magistrate Judge Daniel Scanlon, Jr.,
duly filed on April 17, 1997. Following ten days from the
service thereof, the Clerk has sent me the entire file, including
any and all objections filed by the parties herein.

Plaintiff Kenneth Brown commenced this Section 1983 civil
rights action on November 17, 1995. On February 12,

1996, Magistrate Judge Scanlon ordered Brown to submit an
amended complaint alleging the specific acts committed by
the individuals named as defendants which Brown claimed
violated his constitutional rights. Brown filed an amended
complaint on March 21, 1996. In his amended complaint,
Brown alleged that defendants violated his rights under the
Eighth and Fourteenth Amendments by failing to process
properly his interstate compact paperwork, resulting in Brown
being imprisoned pursuant to a parole hold when in fact
he had never violated the conditions of his parole. For a
more complete statement of Brown's claims, see his amended
complaint. Dkt. No. 5.

On August 5, 1996, defendants Peters and Williams made
a motion to dismiss for failure to state a claim pursuant to
Fed.R.Civ.P. 12(b)(6). Dkt. No. 13; Dkt. No. 14, at 2. On
August 19, 1996, defendants Bishop, Magee, Barton, and
McMahan made a motion to dismiss the complaint against
them or, in the alternative, for summary judgment. Dkt. No.
20. On October 17, 1996, defendants Herman, Stewart, and
Stanford made a motion to dismiss for failure to state a
claim. Dkt. No 34. On April 17, 1996, Magistrate Judge
Scanlon recommended that all defendants' motions to dismiss
be granted and that the complaint be dismissed. Dkt. No. 50.

On June 9, 1997, Brown filed objections to the
magistrate judge's report-recommendation, having been
granted additional time in which to do so. Dkt. No. 52. In
addition, Brown filed on June 9, 1997, a motion for leave to
file a second amended complaint and a copy of his proposed
amended complaint. Dkt. No. 53. I turn first to the last motion
filed, Brown's motion for leave to amend his complaint a
second time.

Brown seeks to file a second amended complaint "setting
forth in detail the personal involvement of each defendant
and how their acts of commission and omission served to
deprive plaintiff of Constitutionally secured rights." Dkt. No.
53. The district court has discretion whether to grant leave
to amend. *Ruffolo v. Oppenheimer & Co.,* 987 F.2d 129,
131 (2d Cir.1993). In exercising that discretion, the court
should freely grant leave to amend when justice so requires.
Fed.R.Civ.P. 15(a). However, the court need not grant leave
to amend where it appears that amendment would prove to be
unproductive or futile. *Ruffolo,* 987 F.2d at 131.

Here, Brown moved to amend his complaint to add additional
allegations against the named defendants. However, the
additional allegations fail to cure the deficiency which

forms the basis of defendants' motion to dismiss— the absence of defendants' personal involvement in a constitutional deprivation. Section 1983 imposes liability upon an individual only when personal involvement of that individual subjects a person to deprivation of a federal right. *See Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). A complaint is fatally defective if it fails to allege personal involvement sufficient to establish that a supervisor was "directly and personally responsible for the purported unlawful conduct." *Alfaro Motors, Inc. v. Ward,* 814 F.2d 883, 886 (2d Cir.1987).

**\*2** Brown's proposed amended complaint alleges in conclusory fashion that defendants acted "in a grossly negligent and concerted manner which breached their duties owed to Plaintiff and is the proximate cause of [the violation of plaintiff's constitutional rights]." Proposed Am. Compl., at 3. Brown continues in the same vein, stating that defendants owed duties to plaintiff to carry out their jobs in a professional manner and they failed to carry out those duties appropriately. The complaint states that defendants held specific responsibilities, such as checking for outstanding warrants, which if performed properly should have alerted them to a problem. However, nowhere does the complaint set forth allegations that these defendants either participated directly in any constitutional infraction or that they were even aware of such an infraction. The proposed amended complaint merely alleges that these defendants failed in performing their supervisory and ministerial functions. "These bare assertions do not state a claim under 42 U.S.C. § 1983." *Smiley v. Davis,* 1988 WL 78306, \*2 (S.D.N.Y.).

This plaintiff previously has had the opportunity to amend his complaint for the same reason asserted here, to allege personal involvement on the part of defendants. Brown's first amended complaint failed to accomplish that task, and it appears that even if allowed to amend again Brown would be unable to make the requisite allegations with sufficient specificity to sustain his complaint. Consequently, I find that amendment would be futile, and I deny Brown's motion for leave to amend his complaint.

I turn now to the magistrate judge's report-recommendation and defendants' motions. The magistrate judge recommends that I grant defendants' motions and dismiss the complaint as to all defendants. The report-recommendation clearly describes the grounds on which the magistrate judge recommends dismissal as to each defendant. Fed.R.Civ.P. 72(b) requires the district judge to make a *de novo*

determination on "any portion of the magistrate's disposition to which specific, written objection has been made." Brown's objections fail to address directly any of the analysis. Brown's objections state (1) that he has been deprived of his constitutional rights; (2) that he has stated a cause of action; (3) that the court wrongly refused to appoint an attorney for him and wrongly stayed discovery pending the outcome of these motions; (4) that he seeks to file an amended complaint; (5) the standard of review for a Fed.R.Civ.P. 12(b) (6) motion; (6) that he disagrees with the magistrate judge's recommendation to grant defendants' motions because the allegations in his complaint, which he repeats, show that his rights were violated; and (7) the text of the Fourteenth and Eighth Amendments.

Even affording the objections the liberal reading required for *pro se* pleadings, I find that these objections fail to state any basis whatsoever, much less a specific one, for the court not to adopt the magistrate judge's rulings. They simply re-state the relief sought and the facts on which Brown grounds his complaint and conclude that the magistrate judge's conclusions are wrong. When the parties make only frivolous, conclusive, or general objections, the court reviews the report-recommendation for clear error. *See Camardo v. General Motors Hourly–Rate Employees Pension Plan,* 806 F.Supp. 380, 382 (W.D.N.Y.1992) (court need not consider objections which are frivolous, conclusive, or general and constitute a rehashing of the same arguments and positions taken in original pleadings); *Chambrier v. Leonardo,* 1991 WL 44838, \*1 (S.D.N.Y.) (restatement of allegations already before the court and assertion that valid constitutional claim exists insufficient to form specific objections); *Schoolfield v. Dep't of Correction,* 1994 WL 119740, \*2 (S.D.N.Y.) (objections stating that magistrate judge's decisions are wrong and unjust, and restating relief sought and facts upon which complaint grounded, are conclusory and do not form specific basis for not adopting report-recommendation); *Vargas v. Keane,* 1994 WL 693885, \*1 (S.D.N.Y.) (general objection that report does not address violation of petitioner's constitutional rights is a general plea that report not be adopted and cannot be treated as objection within the meaning of 28 U.S.C. § 636), *aff'd,* 86 F.3d 1273 (2d Cir.), *cert. denied,* 519 U.S. 895, 117 S.Ct. 240, 136 L.Ed.2d 169 (U.S.1996). *See also Scipio v. Keane,* 1997 WL 375601, \*1 (1997) (when objections fail to address analysis directly, court reviews report-recommendation for clear error); Fed.R.Civ.P. 72(b), Advisory Comm. Note (when no specific, written objections filed, "court need only satisfy itself that there is

no clear error on the face of the record in order to accept the recommendation").

 **\*3** Because Brown fails to make specific objections or provide any basis for his general objections, I review the report-recommendation for clear error. After careful review, I conclude that the magistrate judge's report-recommendation is well-reasoned and is not clearly erroneous.[1] The magistrate judge employed the proper standard, accurately recited the facts, and reasonably applied the law to those facts. Consequently, I adopt the report-recommendation.

CONCLUSION

Because plaintiff's proposed amendment demonstrates that amendment would be futile, I deny plaintiff's motion for leave to amend his complaint. I approve the magistrate judge's recommendation and grant defendants' motions to dismiss. Plaintiff's complaint is dismissed in its entirety.

IT IS SO ORDERED.

**ORDER and REPORT–RECOMMENDATION**

This matter was referred to the undersigned for report and recommendation by the Hon. Rosemary S. Pooler, United States District Judge, by Standing Order dated November 12, 1986. Currently before this Court are a number of motions. Defendants Peters and Williams have filed a motion to dismiss (dkt.13); defendants Bishop, Magee, Barton and McMahan have filed a motion for summary judgment, or in the alternative to dismiss (dkt.20); and defendants Herman, Stewart and Stanford also have filed a motion to dismiss (dkt.34). Plaintiff opposes these three motions (dkts.27, 29, 33, 38). Defendants Bishop, Magee and McMahan have filed a motion to stay discovery (dkt.41) and plaintiff has filed a motion to extend time (dkt.44) in which to file opposition to the latter motion for a stay of discovery.

The Court addresses these issues *seriatim*.

**BACKGROUND**

Plaintiff's amended complaint, which he has brought pursuant to 42 U.S.C. § 1983, alleges the following facts. In October, 1991, plaintiff was incarcerated in the Watertown Correctional Facility in Watertown, New York. He applied for an interstate compact because he wanted to return to South Carolina to live with his common law wife, Pamela Reid. During the application process, he was interviewed by the facility's parole officer, identified only as defendant John Doe # 1. After signing the necessary papers, his application was forwarded to defendant Andrew Peters, the facility's superintendent, who reviewed, signed and forwarded the papers to the Interstate Bureau. Amend. Compl. at ¶¶ 1–2; Exs. A, B.

On or about January 15, 1992, while his compact was waiting for review at the Interstate Bureau, plaintiff was approved for work release and sent to the Lincoln Work Release Center in New York City. While at the center, plaintiff spoke to a parole officer, defendant John Doe # 2, and told him that he was seeking a compact that would return him to South Carolina upon his conditional release. Plaintiff claims the parole officer told him that he would handle the necessary paperwork, although the officer had had no experience with an interstate compact. Amend. Compl. at ¶¶ 3, 4.

 **\*4** Plaintiff, meanwhile, asked Reid whether any officials had contacted her in South Carolina regarding his prospective residence in that state. Upon discovering no one had contacted her, plaintiff asked a lawyer he knew, Navron Ponds, to inquire as to his compact status. In March, 1992, the lawyer spoke with defendant Susan Bishop, who is the director of the interstate compact program in South Carolina. Bishop allegedly told Ponds that plaintiff "was disapproved because there was a discrepancy about approving plaintiff['s] compact." The "discrepancy" was the fact that plaintiff owed the state of South Carolina eighty-six days of confinement from a previous sentence. Plaintiff claims Bishop told Ponds to contact defendants Cecil Magee and Frank Barton, who worked for the South Carolina Parole Department. Sometime in March, 1992, Ponds made some calls to Barton and Magee. A verbal agreement was reached, and plaintiff, upon speaking with Barton and Magee was told that his compact had been approved. He also was told that he should report to the South Carolina Department of Parole upon being released. Amend. Compl. at ¶¶ 5–7.

Prior to leaving the Lincoln Work Release Center, plaintiff processed paperwork related to his interstate compact. His paperwork was sent by Doe # 2 to defendant Joseph Williams, the superintendent of the center. Williams reviewed, signed and returned the paperwork to plaintiff. On May 1, 1992,

upon his release from the center, plaintiff traveled to South Carolina. Three days later, he entered a South Carolina parole office and promptly was arrested because of the eighty-six days of confinement that he owed the state. Plaintiff's paperwork was given to defendant John McMahan, a parole officer. Plaintiff claims that McMahan never returned this paperwork to him. On May 20, 1992, the state of South Carolina revoked plaintiff's parole and plaintiff was returned to prison to serve the eighty-six days that he owed. When he asked McMahan what would happen to his one year of parole from New York, the officer allegedly told him that his New York parole would run concurrently with his South Carolina parole, and that when he finished his South Carolina parole, he would not owe any parole whatsoever. Plaintiff served the eighty-six days he owed and was released on July 31, 1992. Amend. Compl. at ¶¶ 8–10.

In February, 1993, plaintiff was arrested on robbery charges in South Carolina. The charges ultimately were dropped, but he apparently encountered some difficulties regarding this arrest as a result of a parole hold that New York state had placed upon him. Bishop's office told him that it had nothing to do with his parole hold and that any problem that he had was between him and the state of New York. He talked to authorities in Albany, New York regarding the parole hold, but was not successful in his efforts to have the hold removed. On September 30, 1993, after had been extradited to New York as a fugitive from justice, plaintiff was given a preliminary hearing at Riker's Island, New York. The hearing officer found no probable cause that plaintiff had violated any condition of parole. He was released. Amend. Compl. at ¶¶ 11–14; Exs. C–J.

**\*5** Plaintiff claims that he would not have suffered hardships if his interstate compact had been handled correctly. He alleges that defendant Deborah Stewart failed to follow up and see whether plaintiff had arrived in South Carolina. If she had, he argues, she would have discovered that he had been arrested upon his arrival. He alleges that defendant Francis Herman, a parole officer at the Interstate Bureau failed to do his job by not investigating plaintiff's violation reports. Amend. Compl. at ¶¶ 15–17; Exs. F–I.

Plaintiff asserts that the foregoing amounts violations of his Eighth and Fourteenth Amendment rights, wherefore he both compensatory and declaratory relief.

## DISCUSSION

A. Motion to Dismiss by Williams and Peters.

Williams and Peters have filed a motion to dismiss plaintiff's complaint pursuant to FED.R.CIV.P. 12(b)(6) on the grounds that it fails to state a claim upon which relief may be granted. In a Rule 12(b)(6) motion, all factual allegations in the complaint must be taken and construed in plaintiff's favor. *See LaBounty v. Adler,* 933 F.2d 121, 122 (2d Cir.1991) (citing *Ortiz v. Cornette,* 867 F.2d 146, 149 (1989)). The Court's role is not to assess whether plaintiffs have raised questions of fact or demonstrated an entitlement to a judgment as a matter of law, as in a motion made pursuant to FED.R.CIV.P. 56 for summary judgment, but rather to determine whether plaintiff's complaint sufficiently alleges all of the necessary legal elements to state a claim under the law. *See Christopher v. Laidlaw Transit, Inc.* 899 F.Supp. 1224, 1226 (S.D.N.Y.1995), (citing *Ricciuti v. New York City Transit Authority,* 941 F.2d 119, 124 (2d Cir.1991)). Factual allegations in brief or memoranda may not be considered. *Fonte v. Board of Managers of Continental Towers Condominium,* 848 F.2d 24, 25 (2d Cir.1988). The Court now turns to the issues presented.

Personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983. *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994). As superintendents at New York State Correctional facilities, Williams and Peter may be found personally involved in the alleged deprivation of plaintiff's constitutionally protected rights by a showing that they: (1) directly participated in the infraction; (2) knew of the infraction, but failed to remedy the wrong; (3) created or continued a policy or custom under which unconstitutional practices occurred; or (4) were grossly negligent in managing subordinates who caused unlawful conditions or events. *Id.,* (quoting *Williams v. Smith,* 781 F.2d 319, 323–24 (2d Cir.1986)). Supervisory liability also may be imposed against Williams or Peters with a showing of gross negligence or deliberate indifference to plaintiff's constitutional rights. *Id.* Absent some personal involvement by Williams or Peters in the allegedly constitutionally infirm conduct of their subordinates, neither can be held liable under § 1983. *Gill v. Mooney,* 824 F.2d 192, 196 (2d Cir.1987).

**\*6** Plaintiff has not provided any evidence linking either Williams or Peters to his alleged constitutional deprivations. All that plaintiff has alleged is that Williams and Peters, as superintendents, have reviewed and signed paperwork

Brown v. Peters, Not Reported in F.Supp. (1997)

Case 3:24-cv-00477-BKS-ML    Document 15    Filed 07/25/24    Page 58 of 126

relating to plaintiff's compact. Though it has long been held that *pro se* complaints are held to "less stringent standards than formal pleadings drafted by lawyers" for the purpose of a motion to dismiss under Rule 12(b)(6), *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 595–96, 30 L.Ed.2d 652 (1972), plaintiff has not explained how the ministerial conduct of these two defendants was violative of the Constitution. Their motion to dismiss should be granted.

**B. Motion for Summary Judgment or to Dismiss by Bishop, Magee, Barton and McMahan.**
Bishop, Magee, Barton and McMahan have filed a motion for summary judgment, or in the alternative a motion to dismiss. The Court will treat their motion as a motion to dismiss. "[C]omplaints relying on the civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning." *Barr v. Adams,* 810 F.2d 358, 363 (2d Cir.1987). Plaintiff has not alleged specifically how the conduct of these four defendants infringed upon his constitutional rights. In his amended complaint, he contends that defendants violated the Constitution by "continuously breaching [[[their] duty" to him. This language underscores the defect with the complaint: if it alleges anything at all, it alleges that defendants were negligent in handling plaintiff's interstate compact and parole. To state a cognizable § 1983 claim, the prisoner must allege actions or omissions sufficient to demonstrate deliberate indifference; mere negligence will not suffice. *Hayes v. New York City Dept. of Corrections,* 84 F.3d 614, 620 (2d Cir.1996); *Morales v. New York State Dep't of Corrections,* 842 F.2d 27, 30 (2d Cir.1988) (section 1983 does not encompass a cause of action sounding in negligence).

The Court finds that the claims against Bishop, Magee, Barton and McMahan should be dismissed.

**C. Motion to Dismiss by Herman, Stewart and Stanford.**
Plaintiff's claim against Stewart is that she failed to follow up and see whether plaintiff had arrived in South Carolina. Herman, he likewise asserts, failed to do his job because he did not investigate plaintiff's violation reports. Plaintiff has not alleged how these actions run afoul of the Constitution; and again, these claims seem to be grounded in negligence, which is not actionable under § 1983. *Hayes,* 84 F.3d at 620.

Plaintiff's claim against Stanford must fail because his complaint literally fails to state a claim against that

defendant. Aside from naming Stanford as a defendant, and alleging that he was the appointed Senior Parole Officer at plaintiff's September 30, 1993 revocation hearing at Riker's Island, plaintiff does not detail how Stanford violated his constitutional rights. Absent some personal involvement by Stanford in the allegedly constitutionally infirm conduct of his subordinates, he cannot be held liable under § 1983. *Gill,* 824 F.2d at 196.

**\*7** Accordingly, the Court finds that Stanford, Stewart and Herman's motion to dismiss should be granted.

**D. Plaintiff's "John Doe" Claims.**
In so far as neither John Doe # 1 nor John Doe # 2 have been identified and served in this matter, the Court does not have jurisdiction over these parties and does not reach the merits of plaintiff's claims against them.

**E. Discovery Motions.**
Defendants Bishop, Magee and McMahan have filed a motion to stay discovery until the Court has made a ruling on their motion to dismiss. Plaintiff has filed a motion to extend the time in which he may file opposition to defendants' motion. Plaintiff, however, has filed his opposing response (dkt.47), therefore his instant discovery motion is denied as moot. In that the Court recommends granting defendants' motion to dismiss, discovery in this matter would be fruitless. Accordingly, defendants' motion for a stay of discovery pending the resolution of their motion to dismiss is granted.

## CONCLUSION

WHEREFORE, based upon the foregoing analysis, it is hereby

ORDERED, that plaintiff's motion to extend the time to file an opposing reply (dkt.44) is denied as moot; and it is further

ORDERED, that defendants Bishop, Magee and McMahan's motion to stay discovery until their motion to dismiss is decided (dkt.41) is granted; and it is further

RECOMMENDED, that defendants Peters and Williams' motion to dismiss (dkt.13) be granted; and it is further

Brown v. Peters, Not Reported in F.Supp. (1997)

Case 3:24-cv-00477-BKS-ML    Document 15    Filed 07/25/24    Page 59 of 126

RECOMMENDED, that defendants Bishop, Magee, Barton and McMahan's motion to dismiss (dkt.20) be granted; and it is further

RECOMMENDED, that defendants Herman, Stewart and Stanford's motion to dismiss (dkt.34) be granted.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have ten (10) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN (10) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993) (citing *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir.1989)); 28 U.S.C. § 636(b)(1); FED.R.CIV.P. 6(a), 6(e) and 72.

**All Citations**

Not Reported in F.Supp., 1997 WL 599355

## Footnotes

1    I note, however, that the report-recommendation would survive even *de novo* review.

---

End of Document                                                    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

2024 WL 1702010
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

David John CAMPBELL, Plaintiff,

v.

NEW YORK STATE POLICE; Steven A. Negrelli,
Superintendent of New York State Police; Broome
County; Broome County Sheriff's Office; David Harder,
Broome County Sheriff; Mark Hamilton, Deputy
Sheriff for Broome County; Brian Curtis, CO for
Broome County; Broome County District Attorney's
Office; Lucas Finley, Assistant District Attorney for
Broome County in official and individual capacities;
City of Binghamton; Jared M. Kraham, Mayor of City
of Binghamton, New York in official and individual
capacities; Binghamton Police Department; Chief
Joseph Zikuski, Binghamton Police Department;
Nicholas Mushalla, Officer for Binghamton Police
Department; Bryan Sostowski, Detective for Binghamton
Police Department; UHS Binghamton General
Hospital, City owned hospital/Department of City of
Binghamton; Jessica R. Raymond, Nurse Practitioner
for UHS Binghamton General Hospital; Unknown
1, in official and individual capacities; Unkown 2,
in official and individual capacities; and Unknown
3, in official and individual capacities, Defendants.

3:23-CV-1337 (AMN/ML)
|
Signed April 19, 2024

**Attorneys and Law Firms**

DAVID JOHN CAMPBELL, Plaintiff, Pro Se, 5 Bradley
Street, Binghamton, New York 13904.

**ORDER and REPORT-RECOMMENDATION**

MIROSLAV LOVRIC, United States Magistrate Judge

**\*1** The Clerk has sent a complaint in the above captioned
action together with an amended application to proceed
*in forma pauperis* and letter motion, filed by David John
Campbell ("Plaintiff") to the Court for review. (Dkt. Nos.
1, 5, 6.) For the reasons discussed below, I (1) grant

Plaintiff's amended *in forma pauperis* application (Dkt. No.
5), (2) recommend that Plaintiff's Complaint (Dkt. No. 1) be
dismissed (a) in part with leave to amend, and (b) in part
without leave to amend, and (3) recommend that Plaintiff's
Letter Request/Motion (Dkt. No. 6) be denied as moot.

**I. INTRODUCTION**

Construed as liberally [1] as possible, Plaintiff's Complaint
alleges that his rights were violated by Defendants
New York State Police ("Defendant NYSP"), Steven
A. Negrelli, Broome County, Broome County Sheriff's
Office ("Defendant BCS"), David Harder, Mark Hamilton,
Brian Curtis, Broome County District Attorney's Office
("Defendant BCDA"), Lucas Finley, City of Binghamton,
Jared M. Kraham, Binghamton Police Department
("Defendant BPD"), Chief Jospeh Zikuski, Nicholas
Mushalla, Bryan Sostowski, UHS Binghamton General
Hospital ("Defendant UHS"), Jessica R. Raymond, Unknown
1, Unknown 2, and Unknown 3 (collectively "Defendants").
(*See generally* Dkt. No. 1.) The Complaint is difficult to
follow and includes terse sentences that make little sense.

As best as the undersigned can decipher, the Complaint
alleges that on May 4, 2022, Plaintiff called Defendant
BCS to inquire about "local gun policies." (Dkt. No. 1
at 8.) The Complaint alleges that Plaintiff was directed to
surrender "what he had" so, on May 5, 2022, he "show[ed]
up to [Defendant] BCS ... to surrender property." (*Id.*) The
Complaint alleges that Plaintiff was detained, "unreasonably
searched and property seized by [Defendant] Hamilton." (*Id.*)

The Complaint alleges that at some point in time, Plaintiff
attempted to "redress again" (presumably the issue with the
property that he surrendered) but that his attempt "triggered
a *blue alert*" wherein, Plaintiff was falsely accused of
threatening law enforcement officers. (Dkt. No. 1 at 8.)
Plaintiff alleges that, as a result, he "had to leave his job out
of safety concerns." (*Id.*)

The Complaint alleges that at, at some point in time,
Defendant BPD attempted to enter Plaintiff's apartment and
claimed that someone inside the apartment called 911. (Dkt.
No. 1 at 8.)

The Complaint alleges that on November 23, 2023, Plaintiff
was pulled over by Defendant NYSP "just after updating his
professional credentials." (*Id.*) Plaintiff alleges that the stop
was never documented by Defendant NYSP. (*Id.*)

The Complaint alleges that on January 13, 2023, Plaintiff found his vehicle vandalized "and completely disabled." (Dkt. No. 1 at 8.) Notwithstanding the damage, Plaintiff alleges that he was able to "rig" the car to make it operable. (*Id.*) The Complaint alleges that Plaintiff's wife called Defendant BPD to report the crime and Defendant Mushalla responded. (*Id.*) Plaintiff alleges that Defendant Mushalla and another officer confiscated "an undocumented amount of property exceeding $3,000 in value." (Dkt. No. 1 at 8-9.)

**\*2** The Complaint alleges that on January 14, 2023, approximately five officers employed by Defendant BPD went to Plaintiff's house and claimed that they had a warrant to enter. (Dkt. No. 1 at 9.) The Complaint alleges that Plaintiff was in only boxer-style underwear at the time officers arrived and was inappropriately touched and taunted during the search. (*Id.*) The Complaint alleges that Defendant Sostowski tried to trick Plaintiff into signing a consent form by telling Plaintiff that it was a confiscation form. (*Id.*)

The Complaint alleges that as a result of the stress from the searches, "[k]nowing the police were harassing [him,] his wife [was] turning people against [him]," and "knowing someone [was] out to get Plaintiff but no[ ]one believing [him,] Plaintiff checked into the local hospital for [an] evaluation." (Dkt. No. 1 at 9.) The Complaint alleges that on January 16, 2023, Defendant BPD lied to Defendant Raymond about having warrants to search his home, which led to misdiagnosis and mistreatment. (*Id.*)

The Complaint alleges that Plaintiff was involuntarily committed to Defendant UHS for six days without due process or Plaintiff's consent. (Dkt. No. 1 at 9.) The Complaint alleges that on January 17, 2023, while Plaintiff was involuntarily committed, Defendant Sostowski—with assistance from Defendants BCDA and Finley—filed false documents with the Court pursuant to the New York State red flag laws. (Dkt. No. 1 at 9-10.)

The Complaint alleges that Defendants BPD, BCS, and UHS included false records of encounters with Plaintiff, which resulted in Plaintiff permanently losing his gun rights. (Dkt. No. 1 at 10.) The Complaint alleges that neither Plaintiff nor his wife were ever charged with a crime. (*Id.*)

The Complaint alleges that All Star Pawn informed Plaintiff that "gun pieces were sabotaged/switched by [Defendant BCS]." (Dkt. No. 1 at 10.)

Based on these factual allegations, the Complaint appears to allege the following nine causes of action: (1) a claim that on May 5, 2022, Defendant Hamilton conducted an unreasonable search and seizure of Plaintiff's personal items in violation of the First, Fourth, Fifth, and Fourteenth Amendments and 42 U.S.C. § 1983; (2) a claim that Defendant BCS retaliated against Plaintiff by creating false information to conceal its unreasonable searches in violation of the First, Fourth, Fifth, and Fourteenth Amendments and 42 U.S.C. § 1983; (3) a claim that on January 16, 2023, Defendant BPD's actions intentionally influenced Defendant UHS's involuntary commitment of Plaintiff in violation of the First, Fourth, Fifth, and Fourteenth Amendments and 42 U.S.C. § 1983; (4) a claim that on January 13, 2023, Defendant Mushalla unreasonably seized property valued at over $3,000 and created false business records in violation of the First, Fourth, Fifth, and Fourteenth Amendments and 42 U.S.C. § 1983; (5) a claim that on January 14, 2023, Defendant BPD officers unreasonably searched Plaintiff's home causing $1,000 in damages in violation of the First, Fourth, Fifth, Sixth, and Fourteenth Amendments and 42 U.S.C. § 1983; (6) a claim that Defendant Sostowski filed a false petition in violation of the Fourth, Seventh, and Fourteenth Amendments and 42 U.S.C. § 1983; (7) a claim that Defendants NYSP, City of Binghamton, BPD, Broome County, BCS, and UHS failed to provide services in violation of the First, Fifth, Seventh, and Fourteenth Amendments and 42 U.S.C. § 1983; (8) a claim that on November 23, 2022 at 10:30 p.m., an unknown officer employed by Defendant NYSP conducted a traffic stop of Plaintiff without calling in the stop and was verbally aggressive during the encounter in violation of the First, Fourth, Fifth, Sixth, and Fourteenth Amendments and 42 U.S.C. § 1983; and (9) a claim that between January 15, 2023, and January 23, 2023, Defendant UHS falsified records in the scheme devised by Defendant BPD in violation of the First, Fourth, Fifth, Sixth, and Fourteenth Amendments and 42 U.S.C. § 1983. (Dkt. No. 1 at 12-15.) As relief, Plaintiff seeks, *inter alia*, (1) "$10,000 from each [D]efendant per each seized item per day every single day kept from Plaintiff," (2) "Supervised Policy improvement(s) to [Defendants NYSP, Broome County, City of Binghamton, and UHS] preventing similar acts," (3) "immediate deactivation of ERPO and TERPO," (4) destruction of all inaccurate documents with corrected records created to accurately reflect Plaintiff's encounters with Defendants and "$10,000 per day for every

day record releases and corrections not completed," (5) the return of Plaintiff's property and "$3,000,000 for items not returned to Plaintiff after release," (6) $2,000,000 in punitive damages, (7) contempt of court proceedings against Defendants, and (8) an order that in the future, Plaintiff be handcuffed in the front and/or that Defendants use two pars of handcuffs in the back. (*Id.* at 16-18.)

## II. PLAINTIFF'S AMENDED APPLICATION TO PROCEED *IN FORMA PAUPERIS*

**\*3** When a civil action is commenced in a federal district court, the statutory filing fee, currently set at $405, must ordinarily be paid. 28 U.S.C. § 1914(a). A court is authorized, however, to permit a litigant to proceed *in forma pauperis* status if a party "is unable to pay" the standard fee for commencing an action. 28 U.S.C. § 1915(a)(1). [2] After reviewing Plaintiff's *in forma pauperis* application (Dkt. No. 5), the Court finds that Plaintiff meets this standard. Therefore, Plaintiff's amended application to proceed *in forma pauperis* is granted. [3]

## III. LEGAL STANDARD FOR INITIAL REVIEW OF THE COMPLAINT

"Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that ... the action ... (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2).

In determining whether an action is frivolous, the court must consider whether the complaint lacks an arguable basis in law or in fact. *Neitzke v. Williams,* 490 U.S. 319, 325 (1989). Dismissal of frivolous actions is appropriate to prevent abuses of court process as well as to discourage the waste of judicial resources. *Neitzke,* 490 U.S. at 327; *Harkins v. Eldridge,* 505 F.2d 802, 804 (8th Cir. 1974); *see Fitzgerald v. First East Seventh Street Tenants Corp.,* 221 F.3d 362, 364 (2d Cir. 2000) (a district court "may dismiss a frivolous complaint *sua sponte* even when the plaintiff has paid the required filing fee[.]"); *see also Pflaum v. Town of Stuyvesant, Columbia Cnty., N.Y.,* 11-CV-0335, 2016 WL 865296, at \*1, n.2 (N.D.N.Y. Mar. 2, 2016) (Suddaby, C.J.) (finding that the Court had the power to address and dismiss additional theories of the plaintiff's retaliation claim *sua sponte* because those theories were so lacking in arguable merit as to be frivolous).

In order to state a claim upon which relief can be granted, a complaint must contain, *inter alia,* "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The requirement that a plaintiff "show" that he or she is entitled to relief means that a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is *plausible* on its face.' " *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (emphasis added) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 [2007]). "Determining whether a complaint states a plausible claim for relief ... requires the ... court to draw on its judicial experience and common sense.... [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not shown–that the pleader is entitled to relief." *Iqbal,* 556 U.S. at 679 (internal citation and punctuation omitted).

**\*4** "In reviewing a complaint ... the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin,* 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal,* 556 U.S. at 678.

Courts are "obligated to construe a pro se complaint liberally." *Harris v. Mills,* 572 F.3d 66, 72 (2d Cir. 2009); *see also Nance v. Kelly,* 912 F.2d 605, 606 (2d Cir. 1990) (per curiam) (reading the plaintiff's *pro se* complaint "broadly, as we must" and holding that the complaint sufficiently raised a cognizable claim). "[E]xtreme caution should be exercised in ordering sua sponte dismissal of a pro se complaint before the adverse party has been served and [the] parties ... have had an opportunity to respond." *Anderson v. Coughlin,* 700 F.2d 37, 41 (2d Cir. 1983).

## IV. ANALYSIS

In addressing the sufficiency of a plaintiff's complaint, the court must construe his pleadings liberally. *Sealed Plaintiff v. Sealed Defendant,* 537 F.3d 185, 191 (2d Cir. 2008). Having reviewed Plaintiff's Complaint with this principle in mind, I recommend that it be dismissed for the following six reasons.

First, the undersigned finds Plaintiff's Complaint factually frivolous. [4] To the extent allegations are discernible from

the pleading, they are "wholly incredible, irrational, and/or appear to be the product of delusion or fantasy." *Curmen v. U.S. Gov't*, 18-CV-1546, 2018 WL 2324060, at \*3 (E.D.N.Y. May 22, 2018). The Complaint alleges a wide-ranging conspiracy among various law enforcement agencies and a hospital to seize Plaintiff's firearms and personal property. (*See generally* Dkt. No. 1.)

Courts routinely dismiss this kind of *pro se* complaint. *See Gallop v. Cheney*, 08-CV-10881, 2010 WL 909203, at \*5 (S.D.N.Y. Mar. 15, 2010) ("Courts have not hesitated to dismiss complaints asserting delusional claims of conspiracy."), *aff'd*, 642 F.3d 364 (2d Cir. 2011); *Ceparano v. Suffolk Cnty.*, 10-CV-2030, 2010 WL 5437212, at \*3 (E.D.N.Y. Dec. 15, 2010) ("[P]rolix, unintelligible, speculative complaints that are argumentative, disjointed and needlessly ramble have routinely been dismissed in this Circuit.").

For example, in *Harvey v. Kirk*, 19-CV-0411, 2019 WL 5150035, at \*4 (N.D.N.Y. May 9, 2019) (Baxter, M.J.), the trial court *sua sponte* dismissed as frivolous a *pro se* litigant's claim without leave to amend where the plaintiff alleged that government agents were surveilling and harassing him using telepathic methods. *Harvey*, 2019 WL 5150035, at \*4, *report and recommendation adopted by*, 2019 WL 3491264 (N.D.N.Y. Aug. 1, 2019) (D'Agostino, J.); *see also Ciltas v. Wang*, 20-CV-2520, 2020 WL 6146865, at \*1 (E.D.N.Y. Oct. 20, 2020) (dismissing as frivolous the plaintiff's claims that a defendant had been trying to murder her for years, had made false statements and hidden cameras in her home and vehicle and hacked her electronic devices); *Raoul v. City of N.Y. Police Dep't*, 14-CV-1787, 2015 WL 1014204, at \*1-2 (E.D.N.Y. Mar. 6, 2015) (dismissing as factually frivolous a complaint alleging a "wide-ranging conspiracy" between state and federal agencies that involved a campaign to harass, torture, and harm the plaintiff). As a result, I recommend that Plaintiff's Complaint be dismissed in its entirety because it is factually frivolous.

**\*5** Second, to the extent that the Complaint seeks monetary damages, it asserts claims against several Defendants who are immune. More specifically, Plaintiff's claims against Defendant NYSP "are barred by both the Eleventh Amendment and the language of § 1983." *Kilcher v. New York State Police*, 19-CV-0157, 2019 WL 2511154, at \*2-3 (N.D.N.Y. June 18, 2019) (D'Agostino, J.) (citing *Pierce v. New York State Police (Troop D Lowville)*, 05-CV-1477, 2011 WL 1315485, at \*13 (N.D.N.Y. Apr. 4, 2011)). To

the extent that the Complaint alleges any claims against Defendant Negrelli in his official capacity as Superintendent of Defendant NYSP, those claims are also barred pursuant to the Eleventh Amendment immunity applicable to Defendant NYSP. *See Swanhart v. New York*, 20-CV-6819, 2022 WL 875846, at \*4-5 (S.D.N.Y. Mar. 24, 2022) (citing *Davis v. New York*, 316 F.3d 93, 101 (2d Cir. 2002); *Ying Jing Gan v. City of New York*, 996 F.2d 522, 529 (2d Cir. 1993); *Farid v. Smith*, 850 F.2d 917, 921 (2d Cir. 1988)) ("The immunity provided by the Eleventh Amendment extends to actions seeking damages against state officials sued in their official capacities if the state is the real party in interest."). Moreover, Plaintiff's claims against Defendant BCDA and Defendant Finley in his official capacity are barred by the Eleventh Amendment. *Roark v. New York*, 23-CV-1237, 2023 WL 8827185, at \*3 (N.D.N.Y. Dec. 21, 2023) (Lovric, M.J.) (citations omitted) (recommending that the plaintiff's claims against the Watertown District Attorney's Office be dismissed as barred by the Eleventh Amendment), *report and recommendation adopted by*, 2024 WL 125512, at \*1 (N.D.N.Y. Jan. 11, 2024) (Hurd, J.). As a result, I recommend that, in the alternative, Plaintiff's claims seeking monetary damages against Defendants NYSP, Negrelli in his official capacity, BCDA, and Finely in his official capacity, be dismissed because they are immune from suit pursuant to 28 U.S.C. § 1915(e)(2)(B).

Third, the Complaint failed to allege the personal involvement of Defendants Negrelli, Harder, Curtis, Kraham, Zikuski, Unknown 1, Unknown 2, and Unknown 3 in any alleged constitutional deprivation, which is a prerequisite to an award of damages under 42 U.S.C. § 1983. *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991)); *see Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986) (holding that in order to prevail on a section 1983 cause of action against an individual, a plaintiff must show "a tangible connection between the acts of a defendant and the injuries suffered."); *Provost v. City of Newburgh*, 262 F.3d 146, 155 (2d Cir. 2001) (internal quotation marks omitted) ("[D]irect participation as a basis of liability in this context requires intentional participation in the conduct constituting a violation of the victim's rights by one who knew of the facts rendering it illegal."). The Second Circuit has made clear that "there is no special rule for supervisory liability," and a "plaintiff must plead and prove 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'" *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020). Here, although

Plaintiff names Defendants Negrelli, Harder, Curtis, Kraham, and Zikuski as defendants, the body of the Complaint lacks any allegations of wrongdoing by them. (*See generally* Dkt. No. 1.) As a result, I recommend that, in the alternative, Plaintiff's claims against Defendants Negrelli, Harder, Curtis, Kraham, and Zikuski be dismissed for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2)(B).

Fourth, Defendants BPD and BCS, which are merely departments of a municipality, are not amenable to suit. [5] *See White v. Syracuse Police Dep't*, 18-CV-1471, 2019 WL 981850, at *3 (N.D.N.Y. Jan. 7, 2019) (Peebles, M.J.) (citing *Krug v. Cnty. of Rennselaer*, 559 F. Supp. 2d 223, 247 (N.D.N.Y. 2008) (McAvoy, J.); *Turczyn ex rel. McGregor v. City of Utica*, 13-CV-1357, 2014 WL 6685476, at *2 (N.D.N.Y. Nov. 26, 2014) (Sharpe, J.); *Hoisington v. Cnty. of Sullivan*, 55 F. Supp. 2d 212, 214 (S.D.N.Y. 1999) ("Under New York law, a department of a municipal entity is merely a subdivision of the municipality and has no separate legal existence. Therefore, municipal departments like the Department of Social Services are not amenable to suit and no claims lie directly against the Department.")) ("Although a municipality is subject to suit pursuant to section 1983, *see Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978), a municipal ... department does not have the capacity to be sued as an entity separate from the municipality in which it is located."), *report and recommendation adopted*, 2019 WL 974824 (N.D.N.Y. Feb. 28, 2019) (Suddaby, C.J.). As a result, I recommend that, in the alternative, Plaintiff's claims against Defendants BPD and BCS be dismissed because they are not entities amenable to suit.

**\*6** Fifth, the Complaint fails to allege facts plausibly suggesting that municipal Defendants Broome County and the City of Binghamton violated Plaintiff's constitutional rights through the execution of their policies. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978) (outlining the limited circumstances under which a municipality may be liable under Section 1983 and holding that only when the municipality, through the execution of its policies, actually deprives an individual of his constitutional rights, is it liable for the injury); *see also Connick v. Thompson*, 563 U.S. 51, 61 (2011) (holding that official policy includes the decisions of a government's lawmakers, the acts of policymaking officials, and practices that are so widespread as to "practically have the force of law."). A municipality may not be held liable solely because it employs a tortfeasor. *Los Angeles Cnty., Cal. v. Humphries*, 562 U.S. 29, 36 (2010).

Here, there is no basis for municipal liability alleged in the Complaint. Plaintiff essentially complains of a series of discrete incidents, during which an officer or officers employed by Defendants City of Binghamton and Broome County did not act properly. There is no indication that Plaintiff can assert a policy or custom which would support municipal liability based on these facts. In addition, none of Plaintiff's allegations reflect a failure to train or "deliberate indifference" to the rights of persons who would come into contact with employees of Defendants City of Binghamton and Broome County.

As a result, I recommend that, in the alternative, Plaintiff's claims against Defendants City of Binghamton and Broome County be dismissed for failure to state a claim upon which relief may be granted. *See Flagg v. NYS Division of Parole*, 19-CV-0886, 2019 WL 5002215, at *5 (N.D.N.Y. Aug. 15, 2019) (Baxter, M.J.) (citing *DeCarlo v. Fry*, 141 F.3d 56, 61 (2d Cir. 1998)) ("A single incident, particularly if it involved individuals below the policy-making level is insufficient to state a *Monell* claim."), *report and recommendation adopted*, 2019 WL 4963112 (N.D.N.Y. Oct. 8, 2019) (McAvoy, J.).

Sixth, to the extent that the Complaint seeks the return of property confiscated by the police, such a claim "is not cognizable in federal court if the state courts provide a remedy for the deprivation of that property" and "New York provides such an adequate post-deprivation remedy." *Winters v. New York*, 20-CV-8128, 2020 WL 6586364, at *4 (S.D.N.Y. Nov. 9, 2020) (citing *Hudson v. Palmer*, 468 U.S. 517, 533 (1984); *Marino v. Ameruso*, 837 F.2d 45, 47 (2d Cir. 1988); *Love v. Coughlin*, 714 F.2d 207, 208-09 (2d Cir. 1983)). "Because Plaintiff does not allege facts suggesting that his remedy under state law is in any way inadequate or inappropriate, his claim with respect to the seized property must be dismissed." *Winters*, 2020 WL 6586364, at *4 (citing *Butler v. Castro*, 896 F.2d 698, 700-04 (2d Cir. 1990)). As a result, I recommend that, in the alternative, Plaintiff's claims seeking the return of his seized property be dismissed.

## V. OPPORTUNITY TO AMEND

Generally, a court should not dismiss claims contained in a complaint filed by a *pro se* litigant without granting leave to amend at least once "when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir. 1991); *see also* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires."). An opportunity to

amend is not required, however, where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *see also Cortec Indus. Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice."). Stated differently, "[w]here it appears that granting leave to amend is unlikely to be productive, ... it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993); *accord, Brown v. Peters*, 95-CV-1641, 1997 WL 599355, at *1 (N.D.N.Y. Sept. 22, 1997) (Pooler, J.). [6]

**\*7** Here, an amended pleading cannot cure the defects outlined above with respect to Plaintiff's claims against Defendants (1) NYSP, BCDA, Negrelli in his official capacity, and Finley in his official capacity because they are immune from suit, and (2) BPD and BCS because they are not entities amenable to suit. As a result, I recommend that the claims against those defendants be dismissed without prejudice but without leave to amend.

Although I have serious doubts about whether Plaintiff can replead to assert actionable claims against Defendants (1) Negrelli in his individual capacity, (2) Broome County, (3) Harder, (4) Hamilton, (5) Curtis, (6) Finley in his individual capacity, (7) City of Binghamton, (8) Kraham, (9) Zikuski, (10) Mushalla, (11) Sostowski, (12) UHS, (13) Raymond, (14) Unknown 1, (15) Unknown 2, and (16) Unknown 3, given that this is the Court's first review of Plaintiff's pleading, out of an abundance of caution and in light of Plaintiff's status as a *pro se* litigant, I recommend that he be permitted leave to amend.

If Plaintiff chooses to file an amended complaint, he should note that the law in this circuit clearly provides that " 'complaints relying on the civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning.' " *Hunt v. Budd*, 895 F. Supp. 35, 38 (N.D.N.Y. 1995) (McAvoy, J.) (quoting *Barr v. Abrams*, 810 F.2d 358, 363 (2d Cir. 1987)); *accord Pourzancvakil v. Humphry*, 94-CV-1594, 1995 WL 316935, at *7 (N.D.N.Y. May 22, 1995) (Pooler, J.). Therefore, in any amended complaint, Plaintiff must clearly set forth facts that give rise to the claims, including the dates, times, and places of the alleged underlying acts, and each individual who committed each

alleged wrongful act. In addition, the revised pleading should allege facts demonstrating the specific involvement of any of the named defendants in the constitutional deprivations alleged in sufficient detail to establish that they were tangibly connected to those deprivations. *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986). Finally, Plaintiff is informed that any such amended complaint will replace the existing complaint, and must be a wholly integrated and complete pleading that does not rely upon or incorporate by reference any pleading or document previously filed with the Court. *See Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994) ("It is well established that an amended complaint ordinarily supersedes the original and renders it of no legal effect.").

## VI. PLAINTIFF'S LETTER REQUEST/MOTION

On March 26, 2024, Plaintiff filed a Letter Request/Motion. (Dkt. No. 6.) To the extent that the Court adopts the recommendations contained herein which recommend dismissal of the Complaint, I recommend that Plaintiff's Letter Request/Motion be dismissed as moot.

In the alternative, as best as the undersigned can glean from Plaintiff's Letter Request/Motion, Plaintiff is merely requesting that the Court rule on his motion for IFP. (Dkt. No. 6.) This Order and Report-Recommendation rules on Plaintiff's amended IFP application and thus, Plaintiff's Letter/Motion is moot.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's amended application to proceed *in forma pauperis* (Dkt. No. 5) is **GRANTED**; and it is further respectfully

**RECOMMENDED** that the Court **DISMISS WITH LEAVE TO REPLEAD** Plaintiff's Complaint (Dkt. No. 1) to the extent that it asserts claims against Defendants (1) Negrelli in his individual capacity, (2) Broome County, (3) Harder, (4) Hamilton, (5) Curtis, (6) Finley in his individual capacity, (7) City of Binghamton, (8) Kraham, (9) Zikuski, (10) Mushalla, (11) Sostowski, (12) UHS, (13) Raymond, (14) Unknown 1, (15) Unknown 2, and (16) Unknown 3, because it is factually frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B); and it is further respectfully

**\*8 RECOMMENDED** that the Court **DISMISS WITHOUT PREJUDICE BUT WITHOUT LEAVE TO REPLEAD** Plaintiff's Complaint (Dkt. No. 1) to the extent that it asserts claims against Defendants (1) NYSP, BCDA,

Negrelli in his official capacity, and Finley in his official capacity because they are immune from suit, and (2) BPD and BCS because they are not entities amenable to suit pursuant to 28 U.S.C. § 1915(e)(2)(B); and it is further respectfully

**RECOMMENDED** that the Court **DENY** Plaintiff's Letter Request/Motion (Dkt. No. 6) as moot; and it is further

**ORDERED** that the Clerk of the Court shall file a copy of this Order and Report-Recommendation on the docket of this case and serve a copy upon the parties in accordance with the local rules. [7]

**NOTICE:** Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. [8] Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. 28 U.S.C. § 636(b)(1) (Supp. 2013); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)).

**All Citations**

Slip Copy, 2024 WL 1702010

## Footnotes

1   The court must interpret *pro se* complaints to raise the strongest arguments they suggest. *Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)).

2   The language of that section is ambiguous because it suggests an intent to limit availability of *in forma pauperis* status to prison inmates. *See* 28 U.S.C. § 1915(a)(1) (authorizing the commencement of an action without prepayment of fees "by a person who submits an affidavit that includes a statement of all assets such prisoner possesses"). The courts have construed that section, however, as making *in forma pauperis* status available to any litigant who can meet the governing financial criteria. *Hayes v. United States*, 71 Fed. Cl. 366, 367 (Fed. Cl. 2006); *Fridman v. City of N.Y.*, 195 F. Supp. 2d 534, 536 n.1 (S.D.N.Y. 2002).

3   Plaintiff is reminded that, although his application to proceed *in forma pauperis* has been granted, he is still required to pay fees that he may incur in this action, including copying and/or witness fees.

4   While the undersigned has no basis to doubt the sincerity of Plaintiff's beliefs, the allegations exhibit a level of delusional paranoia that makes the continuation of this vexatious litigation an unjustified expenditure of public resources.

5   The Complaint alleges that Defendant UHS is a "City owned hospital/Department of City of Binghamton." (Dkt. No. 1 at 6.) Thus, Defendant UHS, as a department of Defendant City of Binghamton, would also not be amenable to suit. Notwithstanding Plaintiff's allegation that Defendant UNS is a municipal-run hospital, it appears that Defendant UHS is a private medical institution. *See* New York United Health Services, https://www.nyuhs.org/why-choose-us/leadership-performance (last visited Apr. 4, 2024) ("UHS is a not-for-profit, community-benefit organization governed by a board of directors whose members are selected from the communities we serve."). The Complaint fails to allege facts plausibly suggesting that Defendant UHS's actions are "fairly attributable to the state" and thus, fails to state any claims for relief pursuant to 42 U.S.C. § 1983. *See Roark*, 2023 WL 8827185, at *5 (citing *White v. St. Joseph's Hosp.*, 369 F. App'x 225, 226 (2d Cir. 2010) ("[P]rivate actors and institutions, such as the hospitals ... named as defendants in [plaintiff's] complaint, are generally not proper § 1983 defendants because they do not act under color of state law."); *Guillory v. Benedict*, 21-CV-0073, 2021 WL 707076, at *2 (N.D.N.Y. Feb. 4, 2021) (Baxter, M.J.) (recommending dismissal of the plaintiff's § 1983 claims against private medical institution St. Joseph's Hospital), *report and recommendation adopted by*, 2021 WL 706644 (N.D.N.Y. Feb. 23, 2021) (Sharpe, J.); *Guillory v. Crouse*

*Hosp.*, 21-CV-1177, 2021 WL 5605260, at *2 (N.D.N.Y. Nov. 2, 2021) (Baxter, M.J.) ("it remains well settled in this Circuit that a private hospital, and its employees, are not deemed state actors solely because the state has granted them authority to practice medicine within its borders."), *report and recommendation adopted by*, 2021 WL 5585926 (N.D.N.Y. Nov. 30, 2021) (Hurd, J.)) (recommending dismissal of the § 1983 claims against Samaritan Hospital, a private medical institution, because the complaint failed to allege facts plausibly suggesting how its actions are "fairly attributable to the state.").

6    *See also Carris v. First Student, Inc.*, 132 F. Supp. 3d 321, 340-41 n.1 (N.D.N.Y. 2015) (Suddaby, C.J.) (explaining that the standard set forth in *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 796 (2d Cir. 1999)—that the Court should grant leave to amend "unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would be successful in stating a claim"—is likely not an accurate recitation of the governing law after *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)), *rev'd on other grounds*, 682 F. App'x 30.

7    The Clerk shall also provide Plaintiff with copies of all unreported decisions cited herein in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

8    If you are proceeding *pro se* and served with this report, recommendation, and order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date that the report, recommendation, and order was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(1)(C).

---

**End of Document**                          © 2024 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW    © 2024 Thomson Reuters. No claim to original U.S. Government Works.    8

2023 WL 8827185
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Mark A. ROARK, Plaintiff,

v.

The People of the State of NEW YORK;
Watertown Police Dep't; Samaritan Hosp.;
and the Watertown District Attorney's

Office, Kristyna S. Mills, [1] Defendants.

5:23-CV-1237 (DNH/ML)
|
Signed December 21, 2023

**Attorneys and Law Firms**

MARK A. ROARK, Plaintiff, Pro Se, Ulster Correctional
Facility, Post Office Box 800, Berme Road, Napanoch, New
York 12458.

**ORDER and REPORT-RECOMMENDATION**

MIROSLAV LOVRIC, United States Magistrate Judge

**\*1** The Clerk has sent a *pro se* complaint in the above
captioned action together with an application to proceed *in
forma pauperis* and inmate authorization filed by Mark A.
Roark ("Plaintiff") to the Court for review. (Dkt. Nos. 1,
2.) For the reasons discussed below, I grant Plaintiff's *in
forma pauperis* application and recommend that Plaintiff's
Complaint be dismissed in its entirety. (Dkt. Nos. 1, 2.)

**I. BACKGROUND**

Construed as liberally [2] as possible, Plaintiff's Complaint
appears to allege that his civil rights were violated
by Defendants The People of the State of New York,
Watertown Police Department ("WPD"), Samaritan Hospital,
and the Watertown District Attorney's Office (collectively
"Defendants"). (*See generally* Dkt. No 1.) More specifically,
the Complaint alleges that on an unspecified date, time, and
year, he was walking around an unspecified town where he
was "pulled to the side of the road" by officers employed by
Defendant WPD and asked why he was J-walking. (Dkt. No.
1 at 5, 7.) The Complaint alleges that, despite not being "put
through any test," the officers insisted that Plaintiff was under
the influence of a substance, placed handcuffs on him, and

transported him to the WPD headquarters. (Dkt. No 1 at 5,
7.) The Complaint alleges that while at WPD headquarters,
"6 John Doe's came in and assaulted [Plaintiff] while being
fully [restrained]." (Dkt. No. 1 at 5.)

The Complaint alleges that after Plaintiff was assaulted, he
was taken to Defendant Samaritan Hospital, where he was
admitted for medical care. (Dkt. No. 1 at 5.)

The Complaint alleges that Defendant Watertown District
Attorney's Office "never spoke to [Plaintiff] nor read [him
his] rights" but that he sat in jail for ten days before being
transported by the New York State Police to the Clinton
County Jail for a probation violation. (Dkt. No. 1 at 6.) The
Complaint alleges that no new charges were filed against
Plaintiff, he did not plead guilty, and did not appear before a
judge. (*Id.*)

Notwithstanding these allegations, the Complaint also alleges
that on an unspecified date and at an unspecified time,
Plaintiff was "brought in[ ]front of a [j]udge and ... charged
[with] orderly misconduct." (Dkt. No. 1 at 8.)

Plaintiff alleges that as a result of the incidents alleged in
the Complaint, he has lost his dog, his belongings, and his
freedom. (Dkt. No. 1 at 8.)

Based on these factual allegations, Plaintiff appears to assert
the following nine claims: (1) a claim of false arrest against
Defendant WPD in violation of the Fourth Amendment and
42 U.S.C. § 1983; (2) a claim of excessive force against
Defendant WPD in violation of the Fourth Amendment and
42 U.S.C. § 1983; (3) a claim of failure to protect against
Defendant WPD in violation of the Fourth Amendment
and 42 U.S.C. and § 1983; (4) a claim that his right to
equal protection of the law was violated by Defendant WPD
pursuant to Fourteenth Amendment and 42 U.S.C. § 1983; (5)
a claim that Defendant Watertown District Attorney's Office
denied his right of access to the courts pursuant to First
Amendment and 42 U.S.C. § 1983; (6) claim of false arrest
against Defendant Watertown District Attorney's Office in
violation of the Fourth Amendment and 42 U.S.C. § 1983; (7)
a claim that Defendant Watertown District Attorney's Office
violated his right to freedom of speech pursuant to the First
Amendment and 42 U.S.C. § 1983; (8) a claim that Defendant
Watertown District Attorney's Office violated his due process
rights pursuant to Fourteenth Amendment and 42 U.S.C. §
1983; and (9) a claim that Defendant Watertown District
Attorney's Office violated his right to counsel pursuant to the

Sixth Amendment and 42 U.S.C. § 1983. (Dkt. No. 1 at 5-7.) As relief, Plaintiff seeks $5,000,000.00 in damages and would like to "fully charge the officers from [his] assault." (Dkt. No. 1 at 5.)

**\*2** Plaintiff also filed a motion for leave to proceed *in forma pauperis*. (Dkt. No. 2.)

## II. PLAINTIFF'S APPLICATION TO PROCEED *IN FORMA PAUPERIS*

"28 U.S.C. § 1915 permits an indigent litigant to commence an action in a federal court without prepayment of the filing fee that would ordinarily be charged." *Cash v. Bernstein*, 09-CV-1922, 2010 WL 5185047, at \*1 (S.D.N.Y. Oct. 26, 2010). [3] "Although an indigent, incarcerated individual need not prepay the filing fee at the time of filing, he must subsequently pay the fee, to the extent he is able to do so, through periodic withdrawals from his inmate accounts." *Cash*, 2010 WL 5185047, at \*1 (citing 28 U.S.C. § 1915(b); *Harris v. City of New York*, 607 F.3d 18, 21 (2d Cir. 2010)).

Upon review, the Court finds that Plaintiff has submitted a completed IFP application which has been certified by an appropriate official at his facility (Dkt. No. 2 at 2), and which demonstrates economic need. *See* 28 U.S.C. § 1915(a)(2). Plaintiff has also filed the inmate authorization required in the Northern District. (Dkt. No. 2 at 3.)

Accordingly, Plaintiff's application to proceed with this action IFP is granted. (Dkt. No. 2.)

## III. LEGAL STANDARD FOR REVIEW OF THE COMPLAINT

Having found that Plaintiff met the financial criteria for commencing this action *in forma pauperis*, the Court must consider the sufficiency of the allegations set forth in the Complaint in light of 28 U.S.C. §§ 1915(e). Section 1915(e) of Title 28 of the United States Code directs that, when a plaintiff seeks to proceed *in forma pauperis*, "the court shall dismiss the case at any time if the court determines that— ... (B) the action ... (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B); *see also* 28 U.S.C. 1915A(a) ("The court shall review ... as soon as practicable ... a complaint in a civil action in which a prisoner seeks redress from a

governmental entity or officer or employee of a governmental entity."). [4]

Additionally, when reviewing a complaint, a court may also look to the Federal Rules of Civil Procedure. Rule 8 of the Federal Rules of Civil Procedure provides that a pleading which sets forth a claim for relief shall contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief." *See* Fed. R. Civ. P. 8(a)(2). The purpose of Rule 8 "is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable." *Powell v. Marine Midland Bank*, 162 F.R.D. 15, 16 (N.D.N.Y. 1995) (McAvoy, C.J.) (quoting *Brown v. Califano*, 75 F.R.D. 497, 498 (D.D.C. 1977)).

**\*3** A court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), *rev'd on other grounds*, 682 F. App'x 30. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While the court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). Rule 8 "demands more than an unadorned the-defendant-unlawfully-harmed-me accusation." *Id.* Thus, a pleading that contains only allegations which "are so vague as to fail to give the defendants adequate notice of the claims against them" is subject to dismissal. *Sheehy v. Brown*, 335 F. App'x 102, 104 (2d Cir. 2009).

"[E]xtreme caution should be exercised in ordering sua sponte dismissal of a ... complaint before the adverse party has been served and [the] parties ... have had an opportunity to respond." *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983). The Court, however, also has an overarching obligation to determine that a claim is not legally frivolous before permitting a plaintiff's complaint to proceed. *See, e.g., Fitzgerald v. First East Seventh St. Tenants Corp.*, 221 F.3d 362, 363 (2d Cir. 2000) (holding that a district court may *sua sponte* dismiss a frivolous complaint, notwithstanding the fact that the plaintiff paid the statutory filing fee).

"Legal frivolity ... occurs where 'the claim is based on an indisputably meritless legal theory [such as] when either the claim lacks an arguable basis in law, or a dispositive defense clearly exists on the face of the complaint." *Aguilar v. United States*, 99-MC-0304, 99-MC-0408, 1999 WL 1067841, at *2 (D. Conn. Nov. 8, 1999) (quoting *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998)); *see also Neitzke v. Williams*, 490 U.S. 319, 325 (1989) ("[D]ismissal is proper only if the legal theory ... or factual contentions lack an arguable basis."); *Pino v. Ryan*, 49 F.3d 51, 53 (2d Cir. 1995) ("[T]he decision that a complaint is based on an indisputably meritless legal theory for purposes of dismissal under section 1915(d), may be based upon a defense that appears on the face of the complaint.").

## IV. ANALYSIS

In addressing the sufficiency of a plaintiff's complaint, the court must construe his pleadings liberally. *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008). Having reviewed Plaintiff's Complaint with this principle in mind, I recommend that all causes of action be dismissed.

### A. Defendants The People of the State of New York and Watertown District Attorney's Office [5]

To the extent Plaintiff seeks money damages against Defendants The People of the State of New York and Watertown District Attorney's Office, those claims are barred by the Eleventh Amendment. *Drawhorne v. Aloise*, 23-CV-1278, 2023 WL 8188396, at *3 (N.D.N.Y. Nov. 27, 2023) (Dancks, M.J.) (citing *Best v. Brown*, 19-CV-3724, 2019 WL 3067118, at *2 (E.D.N.Y. July 12, 2019) (dismissing the plaintiff's claim against the Office of the Queens County District Attorney as barred by the Eleventh Amendment); *D'Alessandro v. City of New York*, 713 F. App'x 1, 8 (2d Cir. 2017) ("[I]f a district attorney or an assistant district attorney acts as a prosecutor, she is an agent of the state, and therefore immune from suit in her official capacity."); *Rich v. New York*, 21-CV-3835, 2022 WL 992885, at *5 n.4 (S.D.N.Y. Mar. 31, 2022) ("[A]ny claims Plaintiff may raise against the DA Defendants in their 'official capacity' would be precluded by immunity under the Eleventh Amendment."); *Gentry v. New York*, 21-CV-0319, 2021 WL 3037709, at *6 (N.D.N.Y. June 14, 2021) (Lovric, M.J.) (recommending dismissal of the plaintiff's claims against the defendant assistant district attorneys in their official capacities—which were effectively claims against the State of New York— as barred by the Eleventh Amendment) *adopted by*, 2021 WL 3032691 (N.D.N.Y. July 19, 2021) (Suddaby, C.J.)).

Therefore, the undersigned recommends Plaintiff's Section 1983 claims against Defendants The People of the State of New York and Watertown District Attorney's Office be dismissed with prejudice pursuant to 28 U.S.C. §§ 1915(e), 1915A. *Drawhorne*, 2023 WL 8188396, at *3.

### B. Defendant Watertown Police Department

**\*4** "Although a municipality is subject to suit pursuant to section 1983, *see Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978), a municipal police department does not have the capacity to be sued as an entity separate from the municipality in which it is located." *White v. Syracuse Police Dep't*, 18-CV-1471, 2019 WL 981850, at *3 (N.D.N.Y. Jan. 7, 2019) (Peebles, M.J.) (citing *Krug v. Cnty. of Rennselaer*, 559 F. Supp. 2d 223, 247 (N.D.N.Y. 2008) (McAvoy, J.); *Turczyn ex rel. McGregor v. City of Utica*, 13-CV-1357, 2014 WL 6685476, at *2 (N.D.N.Y. Nov. 26, 2014) (Sharpe, J.); *Hoisington v. Cnty. of Sullivan*, 55 F. Supp. 2d 212, 214 (S.D.N.Y. 1999) ("Under New York law, a department of a municipal entity is merely a subdivision of the municipality and has no separate legal existence. Therefore, municipal departments like the Department of Social Services are not amenable to suit and no claims lie directly against the Department.")), *report and recommendation adopted by*, 2019 WL 974824 (N.D.N.Y. Feb. 28, 2019) (Suddaby, C.J.). Thus, Defendant WPD is not a proper party which would be amenable to suit.

To the extent that Plaintiff's claims are liberally construed as against the City of Watertown, I recommend that they be dismissed.

A municipality may only be named as a defendant in certain circumstances. In *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), the Supreme Court outlined the limited circumstances under which a municipality may be liable under Section 1983. A municipality may not be held liable solely because it employs a tortfeasor. *Los Angeles Cnty., Cal. v. Humphries*, 562 U.S. 29, 36 (2010). Only when the municipality, through the execution of its policies, actually deprives an individual of his constitutional rights, is it liable for the injury. *Monell*, 436 U.S. at 694.

To establish municipal liability, the policy must actually cause the violation of constitutional rights; it must be the moving force behind the violation. *Id.*; *Dominguez v. Beame*, 603 F.2d 337, 341 (2d Cir. 1979). Official policy includes the decisions of a government's lawmakers, the acts of policymaking officials, and practices that are so

widespread as to "practically have the force of law." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). Municipal liability may also be shown by establishing that a policymaking official ordered or ratified the employees' actions either expressly or tacitly.

Finally, municipal liability can, under limited circumstances, be based upon a failure to properly train the municipality's employees. *Connick*, 563 U.S. at 51. However, municipal liability is most tenuous when a claim turns on the failure to train. *Id.* (citing *Oklahoma City v. Tuttle*, 471 U.S. 808, 822-23 (1985) (plurality opinion) ("[A] 'policy' of 'inadequate training' " is "far more nebulous, and a good deal further removed from the constitutional violation, than was the policy in Monell")). To satisfy the statute, a municipality's failure to train its employees must amount to " 'deliberate indifference to the rights of persons with whom the [untrained employees] come into contact.' " *Id.* (citing *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989)).

There is no basis for municipal liability alleged in the Complaint. Plaintiff essentially complains of a single incident, during which an officer or officers employed by the Watertown Police Department did not act properly. There is no indication that Plaintiff can assert a policy or custom which would support municipal liability based on these facts. In addition, none of Plaintiff's allegations reflect a failure to train or "deliberate indifference" to the rights of persons who would come into contact with employees of Defendant WPD.

**\*5** As a result, I recommend that, to the extent Plaintiff's claims against Defendant WPD are construed as against the City of Watertown, they be dismissed at this time. *See Flagg v. NYS Division of Parole*, 19-CV-0886, 2019 WL 5002215, at *5 (N.D.N.Y. Aug. 15, 2019) (citing *DeCarlo v. Fry*, 141 F.3d 56, 61 (2d Cir. 1998)) ("A single incident, particularly if it involved individuals below the policy-making level is insufficient to state a *Monell* claim."), *report and recommendation adopted*, 2019 WL 4963112 (N.D.N.Y. Oct. 8, 2019) (McAvoy, J.).

### C. Defendant Samaritan Hospital
A claim for relief under 42 U.S.C. § 1983 must allege facts showing that the defendant acted under the color of a state "statute, ordinance, regulation, custom or usage." 42 U.S.C. § 1983. Thus, to state a claim under § 1983, a plaintiff must allege both that: (1) a right secured by the Constitution or laws of the United States was violated, and (2) the right was violated by a person acting under the color of state law, or

a "state actor." *West v. Atkins*, 487 U.S. 42, 48-49 (1988). Private parties are generally not state actors, and are therefore not usually liable under § 1983. *Sykes v. Bank of Am.*, 723 F.3d 399, 406 (2d Cir. 2013) (quoting *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001)); *see also Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 323 (2d Cir. 2002) ("[T]he United States Constitution regulates only the Government, not private parties.") (internal quotation marks and citation omitted).

"For the purposes of section 1983, the actions of a nominally private entity are attributable to the state when: (1) the entity acts pursuant to the 'coercive power' of the state or is 'controlled' by the state ('the compulsion test'); (2) when the state provides 'significant encouragement' to the entity, the entity is a 'willful participant in joint activity with the [s]tate,' or the entity's functions are 'entwined' with state policies ('the joint action test' or 'close nexus test'); or (3) when the entity 'has been delegated a public function by the [s]tate,' ('the public function test')." *Caballero v. Shayna*, 18-CV-1627, 2019 WL 2491717, at *3 (E.D.N.Y. June 14, 2019) (quoting *Sybalski v. Indep. Grp. Home Living Program, Inc.*, 546 F.3d 255, 257 (2d Cir. 2008)). "The fundamental question under each test is whether the private entity's challenged actions are 'fairly attributable' to the state." *Caballero*, 2019 WL 2491717, at *3 (quoting *Fabrikant v. French*, 691 F.3d 193, 207 (2d Cir. 2012)).

Plaintiff is suing Samaritan Hospital, a private medical institution.[6] The Complaint alleges no facts suggesting that the hospital is under any of the aforementioned exceptions, or describing how Defendant Samaritan Hospital's actions are otherwise "fairly attributable to the state." Because Plaintiff has failed to plausibly allege that Defendant Samaritan Hospital acted under color of state law, the Complaint fails to state any claims for relief under § 1983. *See White v. St. Joseph's Hosp.*, 369 F. App'x 225, 226 (2d Cir. 2010) ("[P]rivate actors and institutions, such as the hospitals ... named as defendants in [plaintiff's] complaint, are generally not proper § 1983 defendants because they do not act under color of state law."). As a result, I recommend that the district court dismiss Plaintiff's claims alleged pursuant to § 1983. *Guillory v. Benedict*, 21-CV-0073, 2021 WL 707076, at *2 (N.D.N.Y. Feb. 4, 2021) (Baxter, M.J.) (recommending dismissal of the plaintiff's § 1983 claims against private medical institution St. Joseph's Hospital), *report and recommendation adopted by*, 2021 WL 706644 (N.D.N.Y. Feb. 23, 2021) (Sharpe, J.); *see Guillory v. Crouse Hosp.*, 21-CV-1177, 2021 WL 5605260, at *2 (N.D.N.Y. Nov.

2, 2021) (Baxter, M.J.) (citing *McGugan v. Aldana-Bernier*, 752 F.3d 224, 229 (2d Cir. 2014); *White v. St. Joseph's Hosp.*, 369 F. App'x 225, 226 (2d Cir. 2010); *Doe v. Rosenberg*, 996 F. Supp. 343, 352 (S.D.N.Y. 1998), *aff'd*, 166 F.3d 507 (2d Cir. 1999)) ("it remains well settled in this Circuit that a private hospital, and its employees, are not deemed state actors solely because the state has granted them authority to practice medicine within its borders."), *report and recommendation adopted by*, 2021 WL 5585926 (N.D.N.Y. Nov. 30, 2021) (Hurd, J.).

## V. OPPORTUNITY TO AMEND

 **\*6** Generally, a court should not dismiss claims contained in a complaint filed by a *pro se* litigant without granting leave to amend at least once "when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir. 1991); *see also* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires."). An opportunity to amend is not required, however, where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *see also Cortec Indus. Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice."). Stated differently, "[w]here it appears that granting leave to amend is unlikely to be productive, ... it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993); *accord, Brown v. Peters*, 95-CV-1641, 1997 WL 599355, at \*1 (N.D.N.Y. Sept. 22, 1997) (Pooler, J.). [7]

Here, I find that leave to replead would be futile with respect to Plaintiff's claims against Defendants The People of the State of New York and Watertown District Attorney's Office. [8]

Although I have serious doubts about whether Plaintiff can replead to assert an actionable claim against Defendants WPD and Samaritan Hospital, given that this is the Court's first review of Plaintiff's pleading, out of an abundance of caution, I recommend that he be permitted to replead the Complaint with respect to those claims.

If Plaintiff chooses to file an amended complaint, he should note that the law in this circuit clearly provides that " 'complaints relying on the civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning.' " *Hunt v. Budd*, 895 F. Supp. 35, 38 (N.D.N.Y. 1995) (McAvoy, J.) (quoting *Barr v. Abrams*, 810 F.2d 358, 363 (2d Cir. 1987)); *accord Pourzancvakil v. Humphry*, 94-CV-1594, 1995 WL 316935, at \*7 (N.D.N.Y. May 22, 1995) (Pooler, J.). Therefore, in any amended complaint, Plaintiff must clearly set forth facts that give rise to the claims, including the dates, times, and places of the alleged underlying acts, and each individual who committed each alleged wrongful act. In addition, the revised pleading should allege facts demonstrating the specific involvement of any of the named defendants in the constitutional deprivations alleged in sufficient detail to establish that they were tangibly connected to those deprivations. *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986). Finally, Plaintiff is informed that any such amended complaint will replace the existing Complaint, and must be a wholly integrated and complete pleading that does not rely upon or incorporate by reference any pleading or document previously filed with the Court. *See Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994) ("It is well established that an amended complaint ordinarily supersedes the original and renders it of no legal effect.").

 **\*7 ACCORDINGLY**, it is

**ORDERED** that Plaintiff's application to proceed *in forma pauperis* (Dkt. No. 2) is **GRANTED**; and it is further

**ORDERED** that the Clerk of the Court (1) provide the Superintendent of the facility that Plaintiff has designated as his current location with a copy of Plaintiff's inmate authorization form (Dkt. No. 2 at 3) and notify that official that Plaintiff has filed this action and is required to pay the Northern District of New York the entire statutory filing fee of $350.00 in installments, over time, pursuant to 28 U.S.C. § 1915; and (2) provide a copy of Plaintiff's inmate authorization form (Dkt. No. 2 at 3) to the Financial Deputy of the Clerk's office; and it is further

**ORDERED** that the Clerk of the Court add "Watertown District Attorney's Office, Kristyna S. Mills" as a defendant in this action; and it is further respectfully

**RECOMMENDED** that the Court **DISMISS** the Complaint (Dkt. No. 1) **WITH PREJUDICE AND WITHOUT LEAVE TO REPLEAD** to the extent that it asserted claims against Defendants The People of the State of New York

and Watertown District Attorney's office, and **WITHOUT PREJUDICE AND WITH LEAVE TO REPLEAD** to the extent that it asserted claims against Defendants WPD and Samaritan Hospital; and it is further

**ORDERED** that the Clerk of the Court shall file a copy of this order, report, and recommendation on the docket of this case and serve a copy upon the parties in accordance with the local rules. [9]

**NOTICE:** Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. [10] Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** 28 U.S.C. § 636(b)(1) (Supp. 2013); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)).

**All Citations**

Slip Copy, 2023 WL 8827185

## Footnotes

1   The Clerk of the Court is directed to add Watertown District Attorney's Office, Kristyna S. Mills to the docket as a defendant in this action. (Dkt. No. 1 at 2.)

2   The court must interpret *pro se* complaints to raise the strongest arguments they suggest. *Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)).

3   Section § 1915(g) prohibits a prisoner from proceeding *in forma pauperis* where, absent a showing of "imminent danger of serious physical injury," a prisoner has filed three or more actions that were subsequently dismissed as frivolous, malicious, or failing to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915(g). The Court has reviewed Plaintiff's litigation history on the Federal Judiciary's Public Access to Court Electronic Records ("PACER") Service. *See* http://pacer.uspci.uscourts.gov. It does not appear from that review that Plaintiff had accumulated three strikes for purposes of 28 U.S.C. § 1915(g) as of the date this action was commenced.

4   To determine whether an action is frivolous, a court must look to see whether the complaint "lacks an arguable basis in either law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).

5   The Court presumes that Plaintiff intended to assert claims against the Jefferson County District Attorney's Office. Watertown, New York is located within Jefferson County and the current District Attorney of Jefferson County is Kristyna S. Mills.

6   "Samaritan Medical Center (Watertown, New York) is a 290-bed not-for-profit community medical center, offering a full spectrum of inpatient and outpatient health services." Samaritan Health, https://samaritanhealth.com/ (last visited December 20, 2023).

7   *See also Carris v. First Student, Inc.*, 132 F. Supp. 3d 321, 340-41 n.1 (N.D.N.Y. 2015) (Suddaby, C.J.) (explaining that the standard set forth in *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 796 (2d Cir. 1999)—that the Court should grant leave to amend "unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would be successful in stating a claim"—is likely not an accurate recitation of the governing law after *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)), *rev'd on other grounds*, 682 F. App'x 30.

8    The undersigned notes that a dismissal based on the doctrine of sovereign immunity, is consequently a dismissal for lack of subject matter jurisdiction. *Crumble v. United States*, 23-CV-4427, 2023 WL 5102907, at *7 (S.D.N.Y. Aug. 7, 2023); *Nguyen v. Kijakazi*, 20-CV-0607, 2022 WL 542265, at *8 (E.D.N.Y. Feb. 23, 2022). Moreover, the Second Circuit has directed that dismissals for lack of subject matter jurisdiction are to be made without prejudice. *Abadi v. City of New York*, 22-CV-1560, 2023 WL 3295949, at *3 n.3 (2d Cir. May 8, 2023) (summary order) (citing *Katz v. Donna Karan Co.*, 872 F.3d 114, 116 (2d Cir. 2017) ("[A] complaint must be dismissed without prejudice where the dismissal is due to the court's lack of subject matter jurisdiction.")) ("Because the Court lacks subject matter jurisdiction ... the amended complaint should be dismissed *without* prejudice.") (emphasis in original). Notwithstanding, the undersigned recommends dismissal with prejudice and without leave to amend because any amendment or attempt to bring these claims against Defendants The People of the State of New York and Watertown District Attorney's Office, would be futile. *Drawhorne,* 2023 WL 8188396, at *3 (recommending that the plaintiff's "Section 1983 claims against The People of the State of New York be dismissed with prejudice pursuant to 28 U.S.C. §§ 1915(e), 1915A.").

9    The Clerk shall also provide Plaintiff with copies of all unreported decisions cited herein in accordance with *Lebron v. Sanders,* 557 F.3d 76 (2d Cir. 2009) (per curiam).

10   If you are proceeding *pro se* and served with this report, recommendation, and order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date that the report, recommendation, and order was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(1)(C).

---

**End of Document**                                    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

2024 WL 125512
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Mark A. ROARK, Plaintiff,

v.

The People of the State of
NEW YORK et al., Defendants.

5:23-CV-1237
|
Signed January 11, 2024

**Attorneys and Law Firms**

MARK A. ROARK, Plaintiff, Pro Se, 23-R-2152, Ulster Correctional Facility, P.O. Box 800, Berme Road, Napanoch, NY 12458.

### ORDER ON REPORT & RECOMMENDATION

DAVID N. HURD, United States District Judge

**\*1** On September 29, 2023, *pro se* plaintiff Mark A. Roark ("plaintiff"), who is currently incarcerated at Ulster Correctional Facility, initially filed this civil action in the U.S. District Court for the Western District of New York. Dkt. No. 1. Along with his complaint, plaintiff sought leave to proceed *in forma pauperis* ("IFP Application"). Dkt. No. 2. But the case was transferred to this judicial district because it involved events that occurred in Watertown, New York, which is located in Jefferson County. Dkt. Nos. 3, 4.

On December 21, 2023, U.S. Magistrate Judge Miroslav Lovric granted plaintiff's IFP Application and advised by Report & Recommendation ("R&R") that plaintiff's complaint be dismissed with leave to replead some claims but not others. Dkt. No. 5. As Judge Lovric explained, plaintiff's claims for money damages against the State of New York or the Watertown District Attorney's Office (or one of its named employee for actions taken in the course of her official duties) were barred by Eleventh Amendment immunity. *Id.* So Judge Lovric recommended that those claims be dismissed for lack of subject matter jurisdiction. *Id.* But Judge Lovric

concluded that plaintiff might be able to plead one or more actionable claims for relief against defendant Watertown Police Department and/or defendant Samaritan Hospital. *Id.*

Plaintiff has not filed objections, and the time period in which to do so has expired. *See* Dkt. No. 5. Upon review for clear error, the R&R is accepted and will be adopted in all respects. *See* FED. R. CIV. P. 72(b).

Therefore, it is

ORDERED that

1. The Report & Recommendation (Dkt. No. 5) is ACCEPTED;

2. Plaintiff's complaint (Dkt. No. 1) is DISMISSED;

3. Plaintiff's claims against defendants The People of the State of New York and Watertown District Attorney's Office are DISMISSED without prejudice but <u>without leave to amend</u> for lack of subject matter jurisdiction;

4. Plaintiff's claims against defendants Watertown Police Department and Samaritan Hospital are DISMISSED <u>with leave to amend</u>;

5. Plaintiff shall have THIRTY DAYS in which to submit an amended complaint in accordance with the instructions set forth in Judge Lovric's R&R;

6. If plaintiff timely files an amended complaint, this matter shall be referred to Judge Lovric for further review or other action as appropriate; and

7. If plaintiff does not timely file an amended complaint, the Clerk of the Court is directed to close this matter without further Order of the Court.

IT IS SO ORDERED.

**All Citations**

Slip Copy, 2024 WL 125512

---

2024 WL 3063674

Only the Westlaw citation is currently available.

United States District Court, N.D. New York.

David John CAMPBELL, Plaintiff,

v.

NEW YORK STATE POLICE, et al., Defendants.

David J. Campbell, Plaintiff,

v.

City of Binghamton, NY, et al., Defendants.

3:23-cv-01337 (AMN/ML), 3:24-cv-00067 (AMN/ML)

|

Signed June 20, 2024

**Attorneys and Law Firms**

DAVID J. CAMPBELL, Binghamton, NY 13904, Plaintiff
pro se

**MEMORANDUM-DECISION AND ORDER**

Anne M. Nardacci, United States District Judge:

**I. INTRODUCTION**

 **\*1**  On October 30, 2023, Plaintiff *pro se* David John
Campbell ("Plaintiff"), filed a civil rights complaint pursuant
to 42 U.S.C. § 1983 ("Section 1983") against Defendants
New York State Police ("NYSP"), Steven A. Negrelli,
Broome County, Broome County Sheriff's Office ("BCSO"),
David Harder, Mark Hamilton, Brian Curtis, Broome County
District Attorney's Office ("BCDA"), Lucas Finley, City of
Binghamton ("Binghamton"), Jared M. Kraham, Binghamton
Police Department ("BPD"), Chief Jospeh Zikuski, Nicholas
Mushalla, Bryan Sostowski, UHS Binghamton General
Hospital ("UHS"), Jessica R. Raymond, Unknown 1,
Unknown 2, and Unknown 3. Case No. 3:23-cv-01337-AMN-
ML (N.D.N.Y.) (the "2023 Action"), Dkt. No. 1 (the "2023
Complaint"). [1] In the 2023 Complaint, Plaintiff asserts nine
claims, which generally allege the mistreatment of Plaintiff
and his property in violation of his First, Fourth, Fifth,
Sixth, Seventh, and Fourteenth Amendment rights, and seeks
declaratory, injunctive, and monetary relief. *See id.* at 12-15.
Plaintiff also sought leave to proceed *in forma pauperis*
("IFP"), 2023 Action, Dkt. No. 2, which motion was denied,
2023 Action, Dkt. No. 4, and on March 25, 2024, Plaintiff
filed a second IFP motion, 2023 Action, Dkt. No. 5.

On January 16, 2024, Plaintiff filed a second civil rights suit
pursuant to Section 1983 against Defendants Binghamton,
Jared M. Kraham, BPD, Chief Joseph Zikuski, Detective
Bryan Sostowski, Broome County, Broome County Clerk's
Office, Judith E. Osburn, Honorable Judge Joseph A.
Cawley, and Unknown(s). Case No. 3:24-cv-00067-AMN-
ML (N.D.N.Y.) (the "2024 Action"), Dkt. No. 1 (the "2024
Complaint"). In the 2024 Complaint, Plaintiff asserts two
claims related to the allegations in the 2023 Complaint for
violations of Plaintiff's own and his wife's due process rights,
and seeks declaratory, injunctive, and monetary relief. *See id.*
at 5-7. Plaintiff also sought leave to proceed IFP, 2024 Action,
Dkt. No. 2, which motion was denied, 2024 Action, Dkt. No.
4, and on March 22, 2024, Plaintiff filed a second IFP motion,
2024 Action, Dkt. No. 5. [2]

Both actions were referred to United States Magistrate
Judge Miroslav Lovric, who, on April 19, 2024, issued
an Order and Report-Recommendation in the 2023 Action
(1) granting Plaintiff's IFP motion; (2) recommending
that Plaintiff's claims against Defendants Negrelli in his
individual capacity, Broome County, Harder, Hamilton,
Curtis, Finley in his individual capacity, Binghamton,
Kraham, Zikuski, Mushalla, Sostowski, UHS, Raymond,
Unknown 1, Unknown 2, and Unknown 3 be dismissed with
leave to replead; and (3) recommending that Plaintiff's claims
against Defendants NYSP, BCDA, Negrelli in his official
capacity, Finley in his official capacity, BPD, and BCS be
dismissed without leave to replead. 2023 Action, Dkt. No. 7 at
16-18 (the "2023 Action Report-Recommendation"). Also on
April 19, 2024, Magistrate Judge Lovric issued an Order and
Report-Recommendation in the 2024 Action (1) granting the
IFP Motion; (2) recommending that Plaintiff's claims against
Defendants Binghamton, Broome County, Kraham, Zikuski,
and Unknown(s) be dismissed with leave to replead; and
(3) recommending that Plaintiff's claims against Defendants
Crawley, Osburn, Broome County Clerk's Office, and BPD be
dismissed without leave to replead. 2024 Action, Dkt. No. 7 at
16-18 (the "2024 Action Report-Recommendation"). Finally,
in light of the above recommendations, Magistrate Judge
Lovric recommended denying Plaintiff's Letter Requests as
moot. 2023 Action, Dkt. No. 7 at 17-18; 2024 Action, Dkt.
No. 7 at 17-18.

 **\*2**  Magistrate Judge Lovric advised Plaintiff that under
28 U.S.C. § 636(b)(1), he had fourteen days to file written
objections to the Report-Recommendations and failure to
object within fourteen days would preclude appellate review.
2023 Action, Dkt. No. 7 at 18; 2024 Action, Dkt. No. 7 at

18. On April 26, 2024, Plaintiff timely filed Objections to the 2024 Action Report-Recommendation, 2024 Action, Dkt. No. 8 (the "2024 Action Objections"), and on April 29, 2024, Plaintiff timely filed Objections to the 2023 Action Report-Recommendation, 2023 Action, Dkt. No. 8 (the "2023 Action Objections").

For the reasons set forth below, the Court adopts the Report-Recommendations in their entireties.

## II. STANDARD OF REVIEW

This Court reviews *de novo* those portions of a magistrate judge's report-recommendation that have been properly preserved with a specific objection. 28 U.S.C. § 636(b)(1)(C). "To be 'specific,' the objection must, with particularity, 'identify [1] the portions of the proposed findings, recommendations, or report to which it has an objection and [2] the basis for the objection.' " *Petersen v. Astrue*, 2 F. Supp. 3d 223, 228-29 (N.D.N.Y. 2012) (alteration in original) (quoting N.D.N.Y. Local Rule 72.1(c)). If no specific objections have been filed, this Court reviews a magistrate judge's report-recommendation for clear error. *See id.* at 229 (citing Fed. R. Civ. P. 72(b), Advisory Committee Notes: 1983 Addition). Similarly, when a party files "[g]eneral or conclusory objections, or objections which merely recite the same arguments [previously] presented to the magistrate judge," the district court reviews a magistrate judge's report-recommendations for clear error. *O'Diah v. Mawhir*, No. 9:08-CV-322 (TJM) (DRH), 2011 WL 933846, at *1 (N.D.N.Y. Mar. 16, 2011) (citations omitted); *accord Mario v. P & C Food Markets, Inc.*, 313 F.3d 758, 766 (2d Cir. 2002) (a "statement, devoid of any reference to specific findings or recommendations to which [the plaintiff] objected and why, and unsupported by legal authority, was not sufficient to preserve" a claim); *Petersen*, 2 F. Supp. 3d at 228-29 & n.6 (collecting cases). "When performing [ ] a 'clear error' review, 'the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.' " *Dezarea W. v. Comm'r of Soc. Sec.*, No. 6:21-CV-01138 (MAD/TWD), 2023 WL 2552452, at *1 (N.D.N.Y. Mar. 17, 2023) (quoting *Canady v. Comm'r of Soc. Sec.*, No. 1:17-CV-0367 (GTS/WBC), 2017 WL 5484663, at *1 n.1 (N.D.N.Y. Nov. 14, 2017)).

"[I]n a *pro se* case, the court must view the submissions by a more lenient standard than that accorded to 'formal pleadings drafted by lawyers.' " *Govan v. Campbell*, 289 F. Supp. 2d 289, 295 (N.D.N.Y. 2007) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)) (additional citations omitted).

The Second Circuit has held that courts are obligated to "make reasonable allowances to protect *pro se* litigants" from inadvertently forfeiting legal rights merely because they lack a legal education. *Id.* (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)). That said, "even a *pro se* party's objections to a Report and Recommendation must be specific and clearly aimed at particular findings in the magistrate's proposal ...." *Machicote v. Ercole*, No. 06 Civ. 13320 (DAB) (JCF), 2011 WL 3809920, at *2, (S.D.N.Y. Aug. 25, 2011) (citation omitted); *accord Caldwell v. Petros*, No. 1:22-cv-567 (BKS/CFH), 2022 WL 16918287, at *1 (N.D.N.Y. Nov. 14, 2022). After appropriate review, "the court may accept, reject or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C).

## III. DISCUSSION

### A. The 2023 Action Report-Recommendation and Objections

**\*3** In his Objections to the 2023 Action Report-Recommendation, Plaintiff contends, among other things, that he has standing to bring his action, it is of major public concern, and it addresses prohibited official acts which would nullify any immunity defenses. 2023 Action, Dkt. No. 8 at 1-2. Notably, Plaintiff does not cite to or quote from the 2023 Action Report-Recommendation, does not cite to any additional allegations from the 2023 Complaint that support his claims, does not cite any allegations Magistrate Lovric allegedly overlooked or misinterpreted, and cites only one case. *See id.* (citing *Ex Parte Young*, 209 U.S. 123 (1908)). Read in the light most favorable to Plaintiff, the Court finds that these objections are not specific, [3] and accordingly the Court reviews the 2023 Action Report-Recommendation for clear error. *See Mario*, 313 F.3d at 766; *O'Diah*, 2011 WL 933846, at *1.

The 2023 Action Report-Recommendation details the factual allegations contained in the 2023 Complaint, *see* 2023 Action, Dkt. No. 7 at 2-6, before undertaking a reasoned analysis and concluding that the 2023 Complaint should be dismissed for one overarching reason, *see id.* at 8-10, or alternatively, for five claim- and Defendant-specific reasons, *see id.* at 10-14. Magistrate Judge Lovric first concluded that the 2023 Complaint should be dismissed for frivolousness. *Id.* at 9-10. Second, Magistrate Judge Lovric also found that Defendants NYSP, BCDA, Negrelli in his official capacity, and Finley in his official capacity are immune from the claims asserted under the Eleventh Amendment and 28 U.S.C. § 1915(e)(2)(B), and should be dismissed from the action.

*Id.* at 10-11. Third, Magistrate Judge Lovric found that the 2023 Complaint lacks any allegations of wrongdoing by Defendants Negrelli, Harder, Curtis, Kraham, and Zikuski, and thus the claims against them should be dismissed for failure to state a claim. *Id.* at 11-12. Fourth, Magistrate Judge Lovric found that Defendants BPD, BCS, and UHS are not proper Section 1983 defendants. *Id.* at 12-13. Fifth, Magistrate Judge Lovric found that the 2023 Complaint does not allege a municipal policy or custom, failure to train, or deliberate indifference that would support liability with respect to Defendants Binghamton or Broome County. *Id.* at 13-14. And sixth, to the extent Plaintiff seeks to have certain property returned, Magistrate Judge Lovric found that Plaintiff has not shown that his remedy under state law is inadequate or unavailable. *Id.* at 14.

Finding no clear error in the above-described analysis and conclusions, the Court adopts the 2023 Action Report-Recommendation determination as to each claim in the 2023 Complaint. Further, upon a *de novo* review of the 2023 Complaint, the Court agrees with Magistrate Judge Lovric's conclusions for the reasons stated in the 2023 Action Report-Recommendation.

### B. The 2024 Action Report-Recommendation and Objections

In his Objections to the 2024 Action Report-Recommendation, Plaintiff contends, among other things, that Defendants are not immune from suit and that Magistrate Judge Lovric did not consider all of his claims. *See* 2024 Action, Dkt. No. 8 at 1-4. However, these objections are either not specific or merely assert disagreements without providing a basis to find otherwise. Accordingly, the Court reviews the 2024 Action Report-Recommendation for clear error. *See Mario*, 313 F.3d at 766; *O'Diah*, 2011 WL 933846, at *1.

In the 2024 Action Report-Recommendation, Magistrate Judge Lovric carefully considered the claims against the nine named Defendants and one unknown Defendant in light of the deference due to *pro se* pleadings, and found each claim lacking. *See* 2024 Action, Dkt. No. 7 at 6-14. First, Magistrate Judge Lovric considered the 2024 Complaint claims against Broome County Court Judge Cawley, noting the limitations on judicial immunity "when a judge takes action outside his or her judicial capacity" or " 'in the complete absence of all jurisdiction[,]' " *id.* at 6-7 (quoting *Mireles v. Waco*, 502 U.S. 9, 11-12 (1991)), and recommended that claims against Defendant Judge Cawley in his individual capacity be dismissed due to judicial immunity and in his official

capacity due to the Eleventh Amendment, *id.* (collecting cases). Second, Magistrate Judge Lovric considered the claims against the Broome County Clerk's Office, finding that such claims were barred "under the Eleventh Amendment because it is an arm of the State of New York." *Id.* at 7-8 (citing, *inter alia*, *Gollomp v. Spitzer*, 568 F.3d 355, 366 (2d Cir. 2009)). Third, Magistrate Judge Lovric properly determined that BPD, as a municipal department of Defendant Binghamton, is not a proper Section 1983 Defendant. *Id.* at 8 (collecting cases); *see Moulton v. Cnty. of Tioga, NY*, No. 3:22-cv-00340 (AMN/ML), 2023 WL 4627646, at *15 (N.D.N.Y. July 19, 2023). Fourth, Magistrate Judge Lovric considered Plaintiff's claims against Osburn, the Chief Clerk of Broome County Supreme Courts and County Clerks, and determined that she is immune from suit in her individual capacity as a quasi-judicial actor, the 2024 Complaint failed to allege her personal involvement in any of the alleged constitutional deprivations, and that she is immune from suit in her official capacity under the Eleventh Amendment. 2024 Action, Dkt. No. 7 at 9-10. Fifth, Magistrate Judge Lovric found that the body of the 2024 Complaint completely lacked allegations of wrongdoing by Defendants Kraham, Zikuski, and Unknown(s), and accordingly concluded that the claims against them should be dismissed for failure to state a claim. *Id.* at 10-11. Sixth, Magistrate Judge Lovric considered the claims against Binghamton and Broome County and concluded that the 2024 Complaint failed to state a claim because the acts alleged did not amount to a policy or custom sufficient to support municipal liability, nor did the allegations reflect a failure to train or deliberate indifference to the rights of Plaintiff or others considering the acts alleged. *Id.* at 11-12. Lastly, Magistrate Judge Lovric considered the claims against Defendant Sostowski, interpreting them as either a civil extortion claim, or more broadly as a procedural due process claim, and determined that the allegations were conclusory, extortion is not a cognizable civil claim, the Complaints do not allege or suggest a due process violation, and New York has adequate post-deprivation remedies that were available to Plaintiff. *Id.* at 12-14.

**\*4** Finding no clear error in the above-described analysis and conclusions, the Court adopts the 2024 Action Report-Recommendation determination as to each claim in the 2024 Complaint. Further, upon a *de novo* review of the 2024 Complaint, the Court agrees with Magistrate Judge Lovric's conclusions for the reasons stated in the 2024 Action Report-Recommendation.

### C. Leave to Amend

Finally, Magistrate Judge Lovric recommended that certain claims should be dismissed without leave to amend, while others, in an abundance of caution, should be dismissed with leave to amend. Magistrate Judge Lovric articulated the proper standard cautioning courts against dismissing claims filed by a *pro se* litigant without affording the opportunity to amend, and as a result only recommended dismissal without leave to amend claims for which better pleading could not cure the defects identified. *See* Dkt. No. 7 at 14-16; 2024 Action, Dkt. No. 7 at 14-16. Plaintiff's Objections do not specifically take issue with the amendment analysis contained in the Report-Recommendation, and the Court finds no clear error in the determination to dismiss certain futile claims without leave to amend, while permitting Plaintiff an additional opportunity to state his other claims. [4]

Accordingly, the Court adopts both Report-Recommendations in their entireties.

**IV. CONCLUSION**

For these reasons, the Court hereby

**ORDERS** that the 2023 Action Report-Recommendation, Case No. 3:23-cv-01337-AMN-ML (N.D.N.Y.), Dkt. No. 7, is **ADOPTED in its entirety**; and the Court further

**ORDERS** that the 2023 Complaint, Case No. 3:23-cv-01337-AMN-ML (N.D.N.Y.), Dkt. No. 1, is **DISMISSED with leave to amend claims against Defendants Negrelli in his individual capacity, Broome County, Harder, Hamilton, Curtis, Finley in his individual capacity, Binghamton, Kraham, Zikuski, Mushalla, Sostowski, UHS, Raymond, Unknown 1, Unknown 2, and Unknown 3**, and the remainder **DISMISSED without leave to amend**; and the Court further

**ORDERS** that the 2024 Action Report-Recommendation, Case No. 3:24-cv-00067-AMN-ML (N.D.N.Y.), Dkt. No. 7, is **ADOPTED in its entirety**; and the Court further

**ORDERS** that the 2024 Complaint, Case No. 3:24-cv-00067-AMN-ML (N.D.N.Y.), Dkt. No. 1, is **DISMISSED with leave to amend claims against Defendants Binghamton, Broome County, Kraham, Zikuski, and Unknown(s)**, and the remainder **DISMISSED without leave to amend**; and the Court further

**\*5** **ORDERS** that Plaintiff's Letter Requests, 2023 Action, Dkt. No. 6; 2024 Action, Dkt. No. 6, are **DENIED as moot**; and the Court further

**ORDERS** that Plaintiff shall file an amended complaint in either or both of his actions within **SIXTY (60) DAYS** of the date of this Order. Any amended complaint must be a complete pleading which will replace the current complaint in the respective case in total; and the Court further

**ORDERS** that if Plaintiff timely files an amended complaint in either or both of his actions, such complaint shall be referred to Magistrate Judge Lovric for review; and if Plaintiff fails to timely file an amended complaint, the Clerk is directed to close the applicable case without further order of this Court; and the Court further

**ORDERS** that the Clerk serve a copy of this Order on Plaintiff in accordance with the Local Rules.

**IT IS SO ORDERED.**

**All Citations**

Slip Copy, 2024 WL 3063674

## Footnotes

1   Citations to court documents utilize the pagination generated by CM/ECF, the Court's electronic filing system.

2   Additionally, on March 26, 2024, Plaintiff filed identical letters in both Actions requesting that the Court act on his pending Complaints and IFP motions. 2023 Action, Dkt. No. 6; 2024 Action, Dkt. No. 6 (collectively, "Plaintiff's Letter Requests").

3    To the extent Plaintiff attempts to incorporate his earlier-filed 2024 Action Objections into his 2023 Action Objections, *see* Dkt. No. 8 at 2, the Court considers those arguments below, *infra* § III.B.

4    The Court reiterates Magistrate Judge Lovric's admonition to Plaintiff that any amended complaint "will replace the existing complaint, and must be a wholly integrated and complete pleading," Dkt. No. 7 at 16, and must "contain some specific allegations of fact indicating a deprivation of rights," *id.* (quoting *Barr v. Abrams, 810 F.2d 358, 363 (2d Cir. 1987)*), "set forth facts that give rise to the claims, including the dates, times, and places of the alleged underlying acts," and "allege facts demonstrating the specific involvement of any of the named defendants in the constitutional deprivations alleged in sufficient detail to establish that they were tangibly connected to those deprivations[,]" *id.* (quoting *Bass v. Jackson, 790 F.2d 260, 263 (2d Cir. 1986)*). Finally, should Plaintiff wish to pursue this case as a single action, he may file an amended complaint compiling all of his related allegations in one of his cases, and not the other.

---

**End of Document**                                              © 2024 Thomson Reuters. No claim to original U.S. Government Works.

Case 3:24-cv-00477-BKS-ML Document 15 Filed 07/25/24 Page 81 of 126

Rich v. New York, Not Reported in Fed. Supp. (2022)

2022 WL 992885
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Benjamin Samuel RICH, formerly
known as Samuel Guillaume, Plaintiff,
v.
State of NEW YORK, New York City; New
York City Police Department; New York County;
New York County District Attorney's Office;
Detective Michael Miller, Vincent Corrando, John
Passementi, Cyrus Vance, Jr., Shipla Kalra, David
Nasar, and Does 1–100, Inclusive., Defendants.

21 Civ. 3835 (AT)
|
Signed 03/31/2022

**Attorneys and Law Firms**

Benjamin Samuel Rich, Staten Island, NY, Pro Se.

Gee Won Cha, Julinda A. Dawkins, New York State Office
of the Attorney General, New York, NY, for Defendant State
of New York.

Andrew B. Spears, New York City Law Department, New
York, NY, for Defendants City New York, Michael Miller,
Vincent Corrando, John Passementi.

Patricia Jean Bailey, New York County District Attorney's
Office, New York, NY, for Defendants Cyrus Vance, Jr.,
David Nasar.

**ORDER**

ANALISA TORRES, District Judge:

 *1 This action arises from a 2016 arrest and prosecution
of Plaintiff *pro se*, Benjamin Samuel Rich, in New York
County. He brings claims against the State of New York (the
"State"); former New York County District Attorney ("DA")
Cyrus R. Vance, Jr. and two Assistant District Attorneys
("ADAs"), Shilpa Kalra and David Nasar, (collectively, the
"DA Defendants"); and the City of New York (the "City"),
the New York City Police Department (the "NYPD"), and
NYPD officers Michael Miller, Vincent Corrando, and John
Passementi (collectively, the "City Defendants"), pursuant to,

*inter alia*, 42 U.S.C. §§ 1983, 1985, and 1986, the New York
State Constitution, and New York common law. *See generally*
Compl., ECF No. 1. Before the Court are three motions to
dismiss Plaintiff's complaint pursuant to Rules 12(b)(1) and
12(b)(6) of the Federal Rules of Civil Procedure, brought by
the State, ECF No. 20, the DA Defendants, ECF No. 22, and
the City Defendants, ECF No. 32.

For the reasons stated below, the State's motion to
dismiss is GRANTED, and Plaintiff's claims against the
State are DISMISSED. The DA Defendants' motion to
dismiss is GRANTED—Plaintiff's claims against Vance
are DISMISSED; and his claims against Kalra and Nasar
are DISMISSED except for Counts 3 and 4, which are
DISMISSED without prejudice to renewal in an amended
complaint. The City Defendants' motion to dismiss is
DENIED as to Count 4, and GRANTED in all other respects.
Plaintiff's claims against Passementi, the NYPD, and the City
are DISMISSED; and his claims against Miller and Corrando
are DISMISSED, except for Count 3, which is DISMISSED
without prejudice to renewal in an amended complaint.

**BACKGROUND** [1]

On January 6, 2016, Plaintiff was at the Highline Ballroom
("the Highline"), a nightclub in Manhattan, as an invited
guest of Wasief Quahtan, a Highline employee. Compl. ¶ 24.
Quahtan and the club owner began arguing over "Quahtan['s]
[having brought] Plaintiff to the party." *Id.* ¶ 25. Security
staff, and an individual named Avery Jackson, asked Plaintiff
to leave. *Id.* ¶ 26. Plaintiff alleges that he was "forcibly
escorted" from the club, and that Jackson became "belligerent
and aggressive" towards him. *Id.* ¶ 27. Shortly thereafter, a
shooting occurred outside the Highline. *Id.* ¶ 28.

Plaintiff believes that Jackson "ran down the street and
jumped into a black sedan ... at the time the shots were fired."
*Id.* ¶ 37. He also states that there were "numerous witnesses"
to the shooting, including a "female 911 caller," who lived
"next door" to the Highline. *Id.* ¶ 36. In that 911 call, the
witness stated that she had seen a "man jump into a black sedan
speeding down the street" after shots were fired. *Id.* Based
on this call, Plaintiff believes "it was more likely that it was
[ ] Jackson who fired the shots before jumping into the black
sedan to chase Plaintiff down." *Id.* ¶ 37.

 *2 The shooting was investigated by Detective Michael
Miller, who interviewed Jackson. *Id.* ¶¶ 29–30. Jackson told

Miller that he saw Plaintiff go to a car, "pull out a gun, and shoot in the direction of the Highline," and that Jackson "ran back into the club" when shots were fired. *Id.* ¶¶ 30, 37. But, Plaintiff alleges that many of Jackson's representations to Miller contradicted his initial statements to the NYPD officers who first responded to the shooting, as well as other eyewitness accounts. *See, e.g.*, ¶¶ 30–32. For instance, Plaintiff alleges that Jackson told the responding officers that Plaintiff was "escorted from the club because he was intoxicated," and that Plaintiff then "went to his car, [a Rolls Royce] removed a firearm ... and fired several shots." *Id.* ¶¶ 31, 46. But, Jackson told Miller that Plaintiff was "forcibly ejected from the club" after an altercation with its manager, that Plaintiff was "belligerent," and threatened that he had a gun. *Id.* ¶ 32. Plaintiff also contends that Jackson's statements were demonstrably false, because surveillance videos showed that Jackson "was the aggressor towards Plaintiff," and that Plaintiff was "calm, peaceful, and cooperative" when escorted from the club. *Id.* ¶¶ 32, 41.

Plaintiff alleges that Miller failed to conduct a thorough and complete investigation of the shooting, because he did not interview several witnesses, including the 911 caller. *Id.* ¶¶ 36–37, 39. Plaintiff also suggests that Miller obtained—but disregarded—surveillance video from the inside and the outside of the club that would have corroborated Plaintiff's version of events. *See id.* ¶¶ 40–43. Plaintiff also complains that Officer Vincent Corrando, Miller's supervisor, "approved all [of the] reports written" in the investigation and "should have notice[d] or known of all the inconsistencies and contradictory statements" in Miller's reports. *Id.* ¶ 95. And, Plaintiff alleges that Officer John Passementi "authorized DNA tests," which revealed that the DNA evidence recovered at the scene "did not match Plaintiff." *Id.* ¶ 96.

On January 9, 2016, Miller obtained a search warrant for Plaintiff's car, based on what Plaintiff contends were "false, misleading and/or embellished information" in the underlying affidavits. *Id.* ¶ 46. The next day, Jackson picked Plaintiff's mugshot out of a photo lineup. *Id.* ¶ 92. Plaintiff appears to argue that this lineup was unduly suggestive, because his "mugshot had a lighter background than the other photographs." *Id.* ¶ 92. The same day, Miller obtained a warrant for Plaintiff's arrest for attempted murder, assault, and weapons possession, and in February obtained additional search warrants for Plaintiff's cell phone and laptop, allegedly based, again, on false and misleading statements provided by Miller and Jackson. *Id.* ¶¶ 45, 47. According to Plaintiff, no "physical evidence [ ] tie[d] him to any part of the shooting,"

*id.* ¶ 81, and the police did not recover a gun or find gunshot residue in Plaintiff's car, *id.* ¶ 91.

On January 22, 2016, a grand jury indicted Plaintiff for second-degree attempted murder, first-degree assault, and two counts of criminal possession of a weapon. *See id.* ¶¶ 45, 51. On January 27, 2016, Plaintiff was arrested. *Id.* ¶ 51. He was incarcerated until February 18, 2016, when he was released on bail. *Id.* ¶ 52.

In November 2016, Plaintiff was taken back into custody on suspicion of witness tampering, after Jackson allegedly made a "false[ ]" report to the DA's Office that Plaintiff had tried to contact him. *Id.* ¶¶ 53, 103. Plaintiff remained in jail until his trial, which began in June 2017. *Id.* ¶¶ 54, 64; *see also* Trial Tr. at 1, ECF No. 22-3.[2]

On March 26, 2016, ADAs Shilpa Kalra and David Nasar provided surveillance videos from the Highline to Plaintiff's counsel. Compl. ¶ 64. Plaintiff alleges, however, that the relevant video showed only "one (1) camera angle [out] of 14 camera angles." *Id.* He alleges that prosecutors did not provide videos from the thirteen additional camera angles until a week after trial commenced, even though these videos were collected from the Highline eighteen months earlier. Compl. ¶ 64. The trial court accordingly granted counsel's request to review the additional videos before conducting Jackson's cross-examination. Trial Tr. at 3. On direct examination, Jackson testified that he did not participate in escorting Plaintiff out of the club. *Id.* at 47–48.

**\*3** On June 12, 2017, prior to Jackson's cross-examination, Plaintiff's counsel reported to the trial court that Jackson could be identified in the additional videos based on his clothing. *Id.* at 135. Nasar acknowledged that if Jackson was indeed visible in the videos, he was "doing a bunch of things contrary to what he testified about." *Id.*; *see also id.* at 136. The trial court then determined that Jackson should be questioned, under oath, outside the jury's presence, about his clothing on the night in question, and whether he could identify himself on the videos, among other matters. *See id.* at 146–50, 152–54. Jackson was brought in, and warned about perjury. *See id.* at 154–56. Jackson identified himself on the videos wearing a jacket and a light-colored shirt. *See id.* at 156–59. The court then adjourned the proceedings. *See id.* at 159. When the court resumed, Jackson, through counsel, invoked his Fifth Amendment right against self-incrimination, *id.* at 176, and the court declared a mistrial, *id.* at 186–88.

Plaintiff's counsel then moved to dismiss the indictment against Plaintiff on two grounds: first, that it was based on false testimony, and second, because of prosecutorial misconduct. Compl. ¶ 100. On October 17, 2017, Kalra consented to dismissal of the indictment on the first ground, but opposed the assertion of prosecutorial misconduct. Dismissal Tr. at 12–13, 15–16. The court dismissed the indictment, but the presiding judge stated he did not "see any prosecutorial misconduct." *Id.* at 16.

On March 12, 2021, over three years after the indictment was dismissed, Plaintiff commenced this action. Compl. Defendants move separately to dismiss the claims against them. ECF Nos. 20, 22, 32. The Court considers each motion in turn.

## DISCUSSION

### I. Legal Standard

#### A. Rule 12(b)(1)

An action should be dismissed pursuant to Rule 12(b)(1) where it is apparent that the court lacks subject matter jurisdiction—that is, the statutory or constitutional power—to adjudicate it. *See* Fed. R. Civ. P. 12(b)(1); *Thomas v. Metro. Corr. Ctr.*, No. 09 Civ. 1769, 2010 WL 2507041, at *1 (S.D.N.Y. June 21, 2010). "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). A district court must consider a challenge to subject matter jurisdiction before addressing other grounds for dismissal. *Rhulen Agency, Inc. v. Ala. Ins. Guar. Ass'n*, 896 F.2d 674, 678 (2d Cir. 1990).

On a Rule 12(b)(1) motion, the Court must accept all material factual allegations as true. *J.S. ex rel. N.S. v. Attica Cent. Schs.*, 386 F.3d 107, 110 (2d Cir. 2004). It may not, however, "draw inferences ... favorable to [the] plaintiff[ ]" on such a motion. *Id.* And, the Court may consider evidence outside the pleadings to resolve disputed factual issues relating to jurisdiction. *See id.*

#### B. Rule 12(b)(6)

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter ... to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A plaintiff is not required to provide

"detailed factual allegations" in the complaint, but must assert "more than labels and conclusions." *Twombly*, 550 U.S. at 555. The court must accept the allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *ATSI Commc'ns, Inc.*, 493 F.3d at 98. On a Rule 12(b)(6) motion, the court may consider only the complaint, documents attached to the complaint, matters of which a court can take judicial notice, or documents that the plaintiff knew about and relied upon. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002).

Additionally, because Plaintiff proceeds *pro se*, the Court is obligated to construe his submissions "liberally and interpret[ ] [them] to raise the strongest arguments they suggest." *Triestman v. Fed. Bur. of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (citation omitted). And, on a motion to dismiss, the Court may appropriately consider a *pro se* plaintiff's opposition papers to "supplement or clarify" the allegations in their complaint. *Sommersett v. City of N.Y.*, No. 09 Civ. 5916, 2011 WL 2565301, at *3 (S.D.N.Y. June 28, 2011) (citation omitted).

### II. Duplicative and Improper Claims

**\*4** Count 7 of the complaint asserts a claim under 18 U.S.C. § 245 for the deprivation of rights under the color of law. Compl. ¶¶ 148–51. But, no private right of action exists under this federal criminal statute, and accordingly, Plaintiff cannot raise a cognizable claim under it. *See Corrado v. State of N.Y. Univ. Stony Brook Police*, No. 15 Civ. 7443, 2016 WL 4179946, at *3 (E.D.N.Y. Aug. 5, 2016). Count 7 is, accordingly, DISMISSED with prejudice.

Further, the Court finds that Count 9 of the complaint—fraudulent misrepresentation under § 1983, Compl. ¶¶ 157–63—is duplicative of Count 4—deprivation of a fair trial under § 1983, *id.* ¶¶ 133–37—because both seek redress for violations of Plaintiff's liberty interests arising from the alleged "fabrication of evidence by a government officer." *See Zahrey v. Coffey*, 221 F.3d 342, 349–50 (2d Cir. 2000). Count 9 is, accordingly, DISMISSED with prejudice.

Finally, three of Plaintiff's claims—Counts 4, 5, and 6—include both federal constitutional claims and analogous state constitutional claims. Compl. ¶¶ 133–47. The New York State Constitution "provides a private right of action where remedies are otherwise unavailable at common law or under § 1983." *Allen v. Antal*, 665 F. App'x 9, 13 (2d Cir. 2016). But, where alternative remedies are available under the federal civil rights statutes, including § 1983, courts must

dismiss the plaintiff's state constitutional claims. *Id.* Because § 1983 provides a remedy for all of Plaintiff's alleged federal constitutional violations, any analogous state constitutional claims are duplicative. Accordingly, the state constitutional claims pleaded in Counts 4, 5, and 6 are DISMISSED with prejudice.

### III. The State's Motion

The State moves to dismiss the complaint under Rule 12(b)(1), on the ground that the Eleventh Amendment bars Plaintiff's claims against it by virtue of sovereign immunity. State Mem. at 3, ECF No. 21. The Court agrees.

The Eleventh Amendment bars federal courts from exercising jurisdiction over claims against states. U.S. CONST. AMEND. XI. This extends to a state sued by its own citizens, *see Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 72–73 (2000), and state agencies, *see Welch v. Texas Dep't of Highways & Pub. Transp.*, 483 U.S. 468, 480 (1987). There are only limited exceptions to this rule, none of which are applicable here.

First, a state may waive its Eleventh Amendment defense. *See Coll. Sav. Bank v. Fla. Prepaid Postsec. Educ. Expense Bd.*, 527 U.S. 666, 670 (1999). Here, the State has not explicitly waived its immunity, or consented to be sued. *See* State Mem. at 3. And, by filing a motion to dismiss, rather than an answer to the complaint, the State cannot be said to have taken actions inconsistent with an assertion of immunity. *Cf. Lapides v. Bd. of Regents of Univ. Sys. of Ga.*, 535 U.S. 613, 619 (2002) (finding waiver of immunity where state removed action to federal court, then asserted immunity).

Second, Congress may abrogate the states' immunity from suit through statute. *Kimel*, 528 U.S. at 80. But, Congress has not done so for claims brought under § 1983, *Dube v. State Univ. of N.Y.*, 900 F.2d 587, 594 (2d Cir. 1990), § 1985, *see Robinson v. Allstate Ins. Co.*, 508 F. App'x 7, 9 (2d Cir. 2013), or § 1986, *Medina v. Cuomo*, No. 15 Civ. 1283, 2015 WL 13744627, at *6–7 (N.D.N.Y. Nov. 9, 2015). In the "absence of [the State's] consent," accordingly, such claims are "proscribed by the Eleventh Amendment." *Pennhurst St. Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984); *see also Trotman v. Palisades Interstate Park Comm'n*, 557 F.2d 35, 40 (2d Cir. 1977).

**\*5** Finally, the Eleventh Amendment does not bar a "suit against a state official when that suit seeks prospective injunctive relief." *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 73 (1996); *see also Ex parte Young*, 209 U.S. 123 (1908). But here, Plaintiff seeks only money damages, and retrospective declaratory and equitable relief. Compl. § IX. And, Eleventh Amendment immunity shields states from claims for money damages, *Liner v. Hochul*, No. 21 Civ. 11116, 2022 WL 826342, at *1 (S.D.N.Y. Mar. 17, 2022), and "declaratory relief dealing solely with past violations," *Medina*, 2015 WL 13744627, at *7. Although Plaintiff demands "affirmative relief necessary to eradicate the effects of Defendants' unlawful practices," *see* Compl. § IX(B), he does not allege any present violations of his rights, *see id. See Medina*, 2015 WL 13744627, at *7 (noting that "declaratory relief where there is no present violation, is also barred under the Eleventh Amendment"). Accordingly, this exception does not preclude the State's immunity defense in this matter.

Where a defendant is found to have sovereign immunity from suit, the Court is deprived of subject-matter jurisdiction under Rule 12(b)(1). *McGinty v. New York*, 251 F.3d 84, 89, 101 (2d Cir. 2001). Accordingly, because the State is immune from liability on all of Plaintiff's claims under the Eleventh Amendment, its motion to dismiss is GRANTED. And, because amendment would be futile, Plaintiff's claims against the State are DISMISSED with prejudice to renewal.[3]

### IV. The DA Defendants' Motion

Plaintiff raises claims against the DA Defendants "in their individual capacities"[4] arising *inter alia* under § 1983, § 1985, and § 1986,[5] based on three main factual assertions. *See generally* Compl. First, Plaintiff alleges that Kalra and Nasar wrongfully chose to prosecute him, despite the lack of physical evidence tying him to the shooting. Compl. ¶ 81. Second, Plaintiff asserts that Kalra and Nasar intentionally withheld exculpatory surveillance videos until the middle of his trial, *see id.* ¶¶ 75–76, 78. Third, Plaintiff alleges that the "[p]rosecuting [a]ttorneys" "coached" Jackson to give false testimony to the grand jury that indicted him. *Id.* ¶¶ 50–51.

#### A. Absolute Immunity

**\*6** The DA Defendants argue that Plaintiff's claims are barred by absolute and qualified prosecutorial immunity. DA Defs. Mem. at 10–12, ECF No. 22-1. To the extent Plaintiff's claims are predicated on his allegations that Kalra and Nasar wrongfully chose to prosecute him and withheld allegedly exculpatory evidence, the Court agrees.

Rich v. New York, Not Reported in Fed. Supp. (2022)

Case 3:24-cv-00477-BKS-ML   Document 15   Filed 07/25/24   Page 85 of 126

### 1. Federal Claims

Although § 1983 has no immunities on its face, the Supreme Court has held that, when Congress initially enacted the statute, it did not intend to abrogate existing immunities established at common law. *See Imbler v. Pachtman*, 424 U.S. 409, 418 (1976). Thus, both absolute and qualified immunity are applicable defenses to § 1983 claims. *See Bernard v. Cty. of Suffolk*, 356 F.3d 495, 502 (2d Cir. 2004). Prosecutors are entitled to "absolute immunity" from liability when they function as advocates for the state in circumstances "intimately associated with the judicial phase of the criminal process." *Imbler*, 424 U.S. at 430. But, prosecutors are entitled only to "qualified immunity" when they perform "investigative functions" normally undertaken by a police officer. *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993). Under the doctrine of qualified immunity, an official is immune from liability "only when in light of clearly established law and the information the official possesses, it was objectively reasonable for him to think that his actions were lawful." *Hill v. City of N.Y.*, 45 F.3d 653, 663 (2d Cir. 1995).

Courts employ a "functional approach" to determine the availability of absolute immunity, looking to "the nature of the function performed, not the identity of the actor who performed it." *Buckley*, 509 U.S. at 269 (citations omitted). And, although the party claiming absolute immunity bears the burden of establishing its applicability, *see Doe v. Phillips*, 81 F.3d 1204, 1209 (2d Cir. 1996), if the court finds that that the conduct at issue is covered by absolute immunity, then the actor is shielded from liability for damages no matter "how[ ] erroneous the act ... and how[ ] injurious ... its consequences." *Cleavenger v. Saxner*, 474 U.S. 193, 199–200 (1985) (citation omitted); *see also Anilao v. Spota*, No. 19 Civ. 3949, 2022 WL 697663, at *4 (2d Cir. Mar. 9, 2022).

Plaintiff first alleges that Kalra and Nasar improperly chose to prosecute him, despite a lack of physical evidence tying him to the crime. Compl. ¶ 81. But, prosecutors are immune from suit for decisions regarding "whether and when to prosecute," *Imbler*, 424 U.S. at 430–31 n.32–33, even where they may prosecute an innocent individual, *Schmueli*, 424 F.3d at 237–39. Kalra and Nasar are, therefore, entitled to absolute immunity to the extent Plaintiff's claims are based on their decision to prosecute him. [6]

Second, Plaintiff alleges that Kalra and Nasar intentionally withheld exculpatory surveillance videos until the middle of trial, Compl. ¶¶ 75–76, 78. But again, prosecutors are entitled to absolute immunity for all decisions taken "in their prosecutorial capacity, including decisions regarding which evidence should be disclosed to a criminal defendant." *Newson v. City of N.Y.*, No. 16 Civ. 6773, 2019 WL 3997466, at *3 (E.D.N.Y. Aug. 23, 2019). This is true even where information was deliberately withheld, *Ying Li v. City of New York*, 246 F. Supp. 3d 578, 640 (E.D.N.Y. 2017), or where such withholding violated the defendant's constitutional rights, *see Warney v. Monroe Cnty.*, 587 F.3d 113, 125 (2d Cir. 2009). Accordingly, Kalra and Nasar have absolute immunity to the extent any of Plaintiff's claims are predicated on a violation under this factual allegation.

**\*7** Finally, Plaintiff alleges that the "Prosecuting Attorneys" coached Jackson to give false testimony to the grand jury, which then formed the basis for his indictment. Compl. ¶¶ 50–51. Prosecutors generally only have qualified immunity for actions taken before there is probable cause to arrest a defendant, because they are performing an investigative function, rather than acting as advocates. *See Hill*, 45 F.3d at 661; *Buckley*, 509 U.S. at 273. And, although "knowingly presenting evidence" to a grand jury is considered the "core of a prosecutor's role as an advocate," *Bernard*, 356 F.3d at 503, the Second Circuit has distinguished between a prosecutor's knowing presentation of false evidence to the grand jury—which is still entitled to absolute immunity—from a prosecutor's deliberate fabrication of evidence, *Hill*, 45 F.3d at 662–63 (finding that where prosecutor deliberately manufactured evidence to establish probable cause for plaintiff's arrest, his conduct was investigatory, regardless of whether, when the evidence was manufactured, the prosecutor intended to present it to the grand jury). In *Hill*, the Second Circuit also established that "when it may not be gleaned from the complaint whether the conduct objected to was performed by the prosecutor in an advocacy or an investigatory role, the availability of qualified immunity from claims based on such conduct cannot be decided as a matter of law on a motion to dismiss." *Id.* at 663.

As in *Hill*, Plaintiff alleges that the prosecutors deliberately participated in the fabrication of false evidence by coaching a material witness to give perjured testimony to the grand jury, so that the jury would return an indictment. Compl. ¶¶ 50–51. Allegations that the prosecution falsified evidence are distinct from allegations that the prosecution merely presented evidence they knew to be false. *Compare Hill*,

45 F.3d at 662–63, *with Urrego v. United States*, No. 00 Civ. 1203, 2005 WL 1263291, at *2 (E.D.N.Y. May 27, 2005) (prosecutors receive absolute immunity for claims predicated on "false presentation of evidence to a grand jury"). And, considering the Court's obligation to liberally construe Plaintiff's pleadings and afford every reasonable inference in his favor at this stage, the Court concludes the DA Defendants have not established that they were acting as "advocates," rather than "investigators," when they engaged in the challenged conduct. *Hill*, 45 F.3d at 660 (officials asserting absolute immunity bear the burden of establishing it for the action in question). And, accepting the facts in the complaint as true, the DA Defendants would not be entitled to even qualified immunity, because it is objectively unreasonable for them to have knowingly coached a witness to give false testimony before a grand jury. *See Cipolla v. Cty. of Rensselaer*, 129 F. Supp. 2d 436, 456 (N.D.N.Y. 2001) (not "objectively reasonable" to believe presenting or soliciting perjured testimony did not violate plaintiff's clearly established rights). Accordingly, to the extent that Counts 3, 4, 5, 6, and 8 are predicated on the claim that the DA Defendants coached Jackson to give false testimony, they are not entitled to either absolute or qualified immunity.

### 2. State Claims

Plaintiff raises state-law claims against the DA Defendants in Counts 10 and 14 of the complaint. Compl. ¶¶ 164–67, 182–85. As with federal law, under New York law, a district attorney prosecuting crime is performing a quasi-judicial function, and, as such, is entitled to absolute immunity. *Arteaga v. State*, 72 N.Y.2d 212, 217 n.1 (N.Y. 1988). But, unlike federal law, prosecutors are absolutely immune for official acts in both the prosecution and investigation of criminal charges. *See Moore v. Dormin*, 173 Misc. 2d 836, 843, (N.Y. Sup. Ct. 1997), *aff'd as modified*, 252 A.D.2d 421 (N.Y. App. Div. 1998). A prosecutor does not receive absolute immunity, however, "when knowingly acting in violation of law." *Id.* As with Plaintiff's federal claims, to the extent his state law claims against the DA Defendants are predicated on his allegations that they improperly targeted him for prosecution or deliberately withheld exculpatory evidence, the DA Defendants are entitled to absolute immunity. But, construing Plaintiff's third allegation liberally, he essentially claims that the prosecutors knowingly acted in violation of the law by suborning perjury. The Court cannot conclude, therefore, that the DA Defendants are entitled to absolute

immunity as a matter of state law to the extent Counts 10 and 14 rest on this allegation. [7]

### B. Time Bar

**\*8** The DA Defendants argue that Plaintiff's claims are untimely. DA Defs. Mem. at 6–8. With the exception of Counts 3 (§ 1983 malicious prosecution) and 4 (§ 1983 deprivation of a fair trial), the Court agrees.

### 1. Federal Claims

Claims arising under §§ 1983 and 1985, when brought in this district, are governed by New York's three-year statute of limitations for personal injury actions, N.Y. C.P.L.R. § 214; *Pearl v. City of Long Beach*, 296 F.3d 76, 79 (2d Cir. 2002) (citation omitted); *Hernandez-Avila v. Averill,* 725 F.2d 25, 27 n.3 (2d Cir. 1984). But, claims under § 1986 have a one-year statute of limitations. *See* 42 U.S.C. § 1986. Federal courts are also obligated to apply New York's tolling rules. *Bd. of Regents of Univ. of the State of N.Y. v. Tomanio*, 446 U.S. 478, 483 (1980).

On March 20, 2020, then-Governor Andrew Cuomo issued Executive Order 202.8, which tolled the statute of limitations in New York in light of the COVID-19 pandemic. 9 N.Y.C.R.R. § 8.202.8. Subsequent orders extended the tolling period until November 3, 2020. Exec. Order 202.67 (Oct. 4, 2020). Contrary to the DA Defendants' assertion, *see* DA Defs. Mem. at 7–8, other courts in this district have uniformly concluded that Executive Order 202.8 applies to federal cases applying New York's statute of limitations, including for § 1983 claims. *See, e.g.*, *Lewis v. Westchester Cnty.*, No. 20 Civ. 9017, 2021 WL 3932626, at *2 n.3 (S.D.N.Y. Sept. 2, 2021). [8] The Court concludes, therefore, that Executive Order 202.8 tolls the statute of limitations for Plaintiff's §§ 1983 and 1985 claims, which apply New York's three-year limitations period —but not Plaintiff's § 1986 claims, because the applicable statute of limitations for that claim is found in the federal statute itself.

Section 1983 claims based on malicious prosecution or deprivation of a fair trial accrue when the underlying criminal action against the plaintiff is "favorably" terminated, rather than at the time of arrest. *Sharp v. Cnty. of Putnam*, No. 18 Civ. 780, 2019 WL 2250412, at *4 (S.D.N. Y May 24, 2019); *Shabazz v. Kailer*, 201 F. Supp. 3d 386, 394 (S.D.N.Y. 2016). The dismissal of an indictment constitutes

the termination of a proceeding. *Sharp*, 2019 WL 2250412, at *4–5. Applying these principles, Plaintiff's § 1983 claims for malicious prosecution (Count 3) and denial of a fair trial (Count 4) accrued on October 17, 2017, the date the trial court dismissed the indictment against him. Dismissal Tr. at 5. And, although the statute of limitations would have expired on October 17, 2020, New York's COVID-19 tolling rule extended the limitations period until June 2, 2021.[9] Because Plaintiff commenced this suit on March 12, 2021, Counts 3 and 4 are timely.

**\*9** By contrast, a § 1983 abuse-of-process claim accrues when the criminal process is "set in motion—typically at arrest—against the plaintiff." *Hadid v. City of N.Y.*, No. 15 Civ. 19, 2015 WL 7734098, at *5 (E.D.N.Y. Nov. 30, 2015), *aff'd* 730 F. App'x 68 (2d Cir. 2018). Because Plaintiff was arrested on January 27, 2016, the relevant statute of limitations for Count 8, § 1983 abuse of process, expired on January 27, 2019, and COVID-19 tolling provisions are, therefore, inapplicable. Accordingly, this claim is DISMISSED with prejudice as untimely.

Section 1985(3) conspiracy claims accrue "at the time of the events that caused the injury." *Panetta v. Cassel*, 20 Civ. 2255, 2020 WL 2521533, at *5 (S.D.N.Y. May 18, 2020). The existence of a conspiracy "does not postpone the accrual of causes of action arising out of the conspirators' separate wrongs. It is the wrongful act, not the conspiracy, which is actionable, whether the act is labelled a tort or a violation of [federal civil rights statutes]." *Singleton v. City of N.Y.*, 632 F.2d 185, 192 (2d Cir. 1980) (citation omitted). As discussed, the single allegation that escapes absolute immunity—and therefore is the only remaining basis for Plaintiff's claims against the DA Defendants—is that those defendants suborned perjury in the grand jury proceedings by coaching Jackson to give false testimony, resulting in Plaintiff's indictment and arrest. Plaintiff's § 1985(3) claim—Count 5 of the complaint—accrued no later than January 27, 2016, the date of his arrest—which again, applying a three-year statute of limitations untouched by COVID-19 tolling provisions, renders it untimely. Count 5 is, accordingly, DISMISSED with prejudice.

Similarly, Count 6, Plaintiff's § 1986 conspiracy claim, accrued when Plaintiff knew, or had reason to know of the harm or injury. *Young v. Lord & Taylor, LLC*, 937 F. Supp. 2d 346, 354 (E.D.N.Y. 2013). Plaintiff knew of the injury by his arrest date. Applying § 1986's one-year statute of limitations, any § 1986 claim Plaintiff brought after January 27, 2017,

is untimely.[10] Accordingly, Count 6 is DISMISSED with prejudice.

### 2. State Claims

Counts 10 and 14 of the complaint—both state common-law claims—are also time-barred. "Under New York law, a plaintiff asserting tort claims against the City or its employees," as well as against municipal officials like district attorneys, "must file a notice of claim within [90] days after the incident giving rise to the claim and commence the action within a year and [90] days from the date of the incident." *Brown v. City of N.Y.*, No. 18 Civ. 3287, 2020 WL 1819880, at *7 (S.D.N.Y. Apr. 9, 2020) (citing N.Y. Gen. Mun. Law §§ 50-e(1)(a), 50-i(1)); *see also Gonzalez v. City of N.Y.*, No. 94 Civ. 7377, 1996 WL 227824, *2 (S.D.N.Y. May 3, 1996). Plaintiff asserts that he filed the requisite notice of claim with the City on January 16, 2018—720 days after his arrest, and 91 days after the dismissal of the indictment. Compl. ¶ 16. Plaintiff did not commence this action until March 12, 2021. *See* Compl. Therefore, Plaintiff neither timely filed a notice of claim within 90 days, nor did he commence this lawsuit within a year and 90 days after the date the indictment was dismissed—the last date that could possibly serve as the trigger for the statute of limitations. Failure to comply with the mandatory notice of claim requirements is a basis for dismissal of a plaintiff's claims. *Warner v. Vill. of Goshen Police Dep't*, 256 F. Supp. 2d 171, 175 (S.D.N.Y. 2003). The Court, accordingly, concludes that Counts 10 and 14 are also time-barred, and therefore, these claims are DISMISSED with prejudice.

### C. Personal Involvement

**\*10** Liability under § 1983 must be premised on a defendant's direct, personal involvement in the alleged violations. *See Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020). A defendant cannot be held vicariously liable under § 1983 for employing or supervising an employee that violated the plaintiff's rights—rather, a plaintiff must plead "that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

As to Vance, Plaintiff only alleges that he served as the DA of New York County. Compl. ¶ 11. Vance may not be held liable for merely employing or supervising Kalra and Nasar. *See Iqbal*, 556 U.S. at 676. And, Plaintiff neither pleads that Vance was personally involved in investigating the shooting

Case 3:24-cv-00477-BKS-ML   Document 15   Filed 07/25/24   Page 88 of 126

Rich v. New York, Not Reported in Fed. Supp. (2022)

or prosecuting him, nor is there any evidence in the record to support such a finding. Accordingly, Plaintiff's claims against Vance are DISMISSED with prejudice, because given the lack of evidence of Vance's personal involvement, the Court finds that granting leave to amend would be futile. *Hill v. Curcione*, 657 F.3d 116, 123–24 (2d Cir. 2011).

Plaintiff similarly fails to specify Kalra and Nasar's personal involvement in his claimed constitutional violations, stating only that the "Prosecuting Attorneys" coached Jackson to provide testimony. Compl. ¶ 50. But, given Plaintiff's position as a *pro se* litigant, the Court recognizes that there may be additional information made available to Plaintiff through discovery that would enable Plaintiff to assert claims directly against Kalra and Nasar, such as if, for example, either of them prepared Jackson to testify. By **April 15, 2022**, accordingly, the DA Defendants shall, through counsel, inform Plaintiff and the Court whether Kalra or Nasar prepared Jackson to testify before the grand jury with respect to any potential criminal charges against Plaintiff, and/or conducted an examination of Jackson before the grand jury. No later than **May 16, 2022**, Plaintiff shall file an amended complaint, alleging with specificity Kalra and Nasar's direct, personal involvement in either "coaching" Jackson to testify falsely before the grand jury, or deliberately eliciting false testimony from Jackson during the grand jury proceedings. In addition, because, as detailed *infra* at 25–26, the Court finds that Plaintiff's malicious prosecution claim is deficient because he failed to allege that the underlying criminal proceedings terminated in his favor, an argument raised by the City Defendants but not the DA Defendants, any amended malicious prosecution claim that Plaintiff wishes to assert against Kalra and Nasar should also address this issue. Failure to do so shall result in dismissal with prejudice of Plaintiff's remaining claims against Kalra and Nasar.

## V. City's Motion to Dismiss

Plaintiff brings claims against the City Defendants, on the grounds that (1) Miller failed to conduct a thorough and complete investigation of the shooting, by not interviewing several witnesses, including the 911 caller, Compl. ¶¶ 36–37, 39; (2) in his investigation, Miller obtained—but disregarded—surveillance video from both the inside and outside of Highline Ballroom, *id.* ¶¶ 40–43; (3) that Miller "used his own added facts and embellished statements" in his investigative reports to target Plaintiff as the sole suspect in the shooting, *id.* ¶ 44, *see also* ¶ 39; (4) that Corrando, as Miller's supervisor, approved his investigative reports but failed to notice the inconsistencies and contradictions therein, *id.* ¶ 95; and (5)

that Passamenti "authorized DNA tests," which revealed that the DNA evidence recovered at the scene "did not match Plaintiff," *id.* ¶ 96. The Court addresses each remaining [11] cause of action.

### A. Time Bar

#### 1. Section 1983 Claims

**\*11** Plaintiff brings claims under § 1983 for unlawful search and seizure (Count 1); false arrest (Count 2); malicious prosecution (Count 3); deprivation of a fair trial (Count 4); and abuse of process (Count 8). As noted, § 1983 claims are subject to a three-year statute of limitations in this district. *See supra* at 15. And, for the reasons discussed with respect to the DA Defendants, the Court concludes that Counts 3 and 4 were timely pleaded. *See supra* at 16–17.

A § 1983 unlawful search and seizure claim, however, accrues on the date the allegedly unlawful search occurred. *McClanahan v. Kelly*, No. 12 Civ. 5326, 2014 WL 1317612, at *4 (S.D.N.Y. Mar. 31, 2014). Plaintiff alleges that his property was searched on January 9, February 12, and February 15, 2016. Compl. ¶¶ 46–47. The applicable statute of limitations, therefore, expired no later than February 15, 2019, nearly two years before Plaintiff brought suit. Plaintiff's claims are, therefore, untimely, and Count 1 is DISMISSED with prejudice as time-barred.

Section 1983 false arrest claims and abuse-of-process claims accrue from the date of Plaintiff's arrest. *See Rivera v. City of N.Y.*, No. 16 Civ. 9709, 2019 WL 252019, at *4 (S.D.N.Y. Jan. 17, 2019) (false arrest); *Anderson v. Cnty. of Putnam*, No. 14 Civ. 7162, 2016 WL 297737, at *3 (S.D.N.Y. Jan. 22, 2016) (abuse-of-process). Plaintiff was arrested on January 27, 2016, and therefore, any such claims should have been brought no later than January 27, 2019. Counts 2 and 8 are, accordingly, DISMISSED with prejudice as untimely.

#### 2. Sections 1985(3) and 1986 Claims

Liberally construing the complaint, in Count 5, Plaintiff sets forth a conspiracy cause of action under § 1985(3), alleging that the City Defendants engaged in a conspiracy to have Plaintiff wrongfully convicted, *see* Compl. ¶ 97. This claim appears predicated on the NYPD investigation into the January 6, 2016 shooting, and Miller's alleged embellishment

Rich v. New York, Not Reported in Fed. Supp. (2022)

Case 3:24-cv-00477-BKS-ML    Document 15    Filed 07/25/24    Page 89 of 126

of information, and focus on Plaintiff as the sole suspect. *Id.* ¶¶ 36–37, 39, 46, 90. Plaintiff also raises a failure-to-intervene claim under § 1986 (Count 6), seemingly arising from Corrando's alleged failure to notice the inconsistencies and contradictory statements allegedly included in Miller's police reports. *Id.* ¶ 95.

Section 1985(3) claims accrue "at the time of the events that caused the injury," and are subject to a three-year statute of limitations, *Panetta*, 2020 WL 2521533, at *5. Section 1986 claims based on a failure to intervene accrue when the defendant fails to intervene, *Thomas v. City of Troy*, 293 F. Supp. 3d 282, 303 (N.D.N.Y. 2018), and must be brought within one year, *see* 42 U.S.C. § 1986. Plaintiff's claims each began accruing no later than January 27, 2016, the date of Plaintiff's arrest, because Plaintiff does not suggest that any investigation took place after that date. The applicable limitations period extends no later than January 27, 2019, for Plaintiff's § 1985(3) claim, and January 27, 2017 for Plaintiff's § 1986 claim, two and four years, respectively, before the complaint was filed. Counts 5 and 6 are, therefore, DISMISSED with prejudice as time-barred.

### 3. State Claims

To the extent Plaintiff's state common-law claims, asserting various types of negligence, arise from the NYPD investigation into the shooting on January 6, 2016; the searches of Plaintiff's property on January 9, February 12, and February 15, 2016; and Plaintiff's arrest on January 27, 2016, Plaintiff was required to file a notice of claim within 90 days of those events, *see* N.Y. Gen. Mun. L. § 50-e. As noted, Plaintiff did not file a notice of claim with the City until January 16, 2018—one year and eleven months after the latest of those dates. Compl. ¶ 16. Accordingly, each of Plaintiff's negligence claims (Counts 10–14) are DISMISSED with prejudice. [12]

### B. Claim Against the City [13]

**\*12** The Court reads Plaintiff's complaint as claiming, under *Monell v. Department of Social Services*, 436 U.S. 658, that the City is liable for the allegedly unlawful conduct of the named NYPD officers. *See* Compl. ¶ 179. The City Defendants argue that Plaintiff does not include sufficient factual allegations to support a municipal liability claim. City Defs. Mem. at 20–22, ECF No. 34. The Court agrees.

To bring a municipal liability claim under § 1983, the plaintiff must "prove the existence of a municipal policy or custom," then demonstrate a causal connection between the policy and the alleged constitutional deprivation. *Vippolis v. Vill. of Haverstraw*, 768 F.2d 40, 44 (2d Cir. 1985). Plaintiff pleads neither, offering only conclusory allegations that the City Defendants "engaged in a pattern and practice to commit the aforementioned unlawful acts," Compl. ¶ 179, and that a policy is "inferred" because the City Defendants "took no steps to reprimand or discharge the officers involved," ECF No. 39 at 27. These allegations cannot, without more, state a claim for municipal liability. *E.g.*, *Fleming v. City of New York*, No. 18 Civ. 4866, 2020 WL 5522871, at *6 (S.D.N.Y. July 23, 2020). Because Plaintiff offers no facts which suggest that the deficiencies in his *Monell* claim may be cured by amendment, any such claim is DISMISSED with prejudice. *Strong v. City of Syracuse*, No. 16 Civ. 1054, 2020 WL 137250, at *3–4 (N.D.N.Y. Jan. 13, 2020) (dismissing *Monell* claim, with prejudice, given "[p]laintiff's conclusory allegations are insufficient to plausibly infer a custom or policy to support municipal liability").

### C. Passamenti's Personal Involvement

Plaintiff's remaining claims are Counts 3 (malicious prosecution) and 4 (denial of a fair trial). As to Defendant Passamenti, Plaintiff alleges that Passamenti authorized DNA tests, which revealed that the DNA evidence recovered at the scene "did not match Plaintiff." Compl. ¶ 96. Plaintiff does not allege that Passamenti was involved in falsification of evidence, that he attempted to hide the results of the relevant DNA tests, or that he was otherwise responsible for, or even aware of, the alleged "embellishment" of statements in the NYPD's investigative reports. Plaintiff has not, therefore, sufficiently alleged Passamenti's direct, personal involvement in any constitutional violations under § 1983. *Tangreti*, 983 F.3d at 618. And, because the record does not establish that Plaintiff could cure this pleading defect by amendment, Plaintiff's claims against Passamenti are DISMISSED with prejudice.

### D. Malicious Prosecution

A claim for malicious prosecution under § 1983—Count 3 of the complaint—requires the plaintiff to show that the criminal proceedings against him were terminated "in his favor," typically by an acquittal or another form of dismissal of the charges on the merits. *Janetka v. Dabe*, 892 F.2d 187, 189–90 (1989). The City Defendants argue that Plaintiff has not made such a showing. City Defs. Mem. at 10, 14–17. The

Court agrees. Plaintiff asserts—citing no authority in support —that the dismissal of the indictment was a "termination in his favor" because dismissals that "include constitutional privilege assertions are considered favorable terminations." ECF No. 39 at 7, 10 (quotation marks omitted). It is not clear what Plaintiff means by this. And, from the Court's review of the state court transcript, it appears that, in dismissing the indictment, neither the prosecution, nor the court, made any statements indicating a belief in Plaintiff's innocence. *See Lanning v. City of Glens Falls*, 908 F.3d 19, 28 (2d Cir. 2018) (looking to the "reasons ... stated on the record for dismissing the charges" in determining whether the termination of the criminal case was in plaintiff's favor). Indeed, Kalra expressly declined to concede that Plaintiff was innocent, instead reaffirming her belief that Plaintiff "was the shooter." Dismissal Tr. at 15. The presiding judge similarly stated on the record that dismissal of the indictment was warranted even though he did not "see any prosecutorial misconduct." *Id.* at 16. The dismissal of the indictment, therefore, left open the question of Plaintiff's guilt or innocence, and Plaintiff cannot, accordingly, assert on that basis alone, that the proceedings were terminated in his favor.

**\*13** The Court notes, however, that because four years have passed since the dismissal of the indictment, Plaintiff may be able to plead additional facts from that time that support this relevant element of his claim. There is no information before the Court as to whether, for example, Plaintiff was ever informed by the prosecutors that he had been cleared of wrongdoing, whether Jackson or anyone else was later prosecuted for the shooting, or whether the state court made any further statements regarding the merits of the charges against Plaintiff. Count 3 is, accordingly, DISMISSED without prejudice, to provide Plaintiff with an opportunity to plead additional facts to support this claim.

E. Denial of Fair Trial

To state a claim under § 1983 for denial of a fair trial based on the fabrication of evidence by a police officer—Count 4 of the complaint—a plaintiff must allege that "an (1) investigating official (2) fabricates information (3) that is likely to influence a jury's verdict, (4) forwards that information to prosecutors, and (5) the plaintiff suffers a deprivation of life, liberty, or property as a result." *Garnett v. Undercover Officer C0039*, 838 F.3d 265, 277 (2d Cir. 2016) (citation omitted). The plaintiff need not show a favorable termination indicative of innocence to state such a claim. *Smalls v. Collins*, 10 F. 4th 117, 142–43 (2d Cir. 2021). The City Defendants argue that Plaintiff has failed to show a deprivation of his

liberty interests because there was probable cause for his prosecution, in the form of corroborative ballistics evidence. City Defs. Mem. at 16 (citing Dismissal Tr. at 15); City Defs. Reply at 6–7, ECF No. 46.

Probable cause is not a complete defense to a fair trial claim. *Torres v. City of N.Y.*, No. 16 Civ. 6719, 2017 WL 4325822, at \*5 (E.D.N.Y. Sept. 27, 2017) (noting that where "independent probable cause exists for the prosecution," a plaintiff must "show that the misconduct caused some deprivation above and beyond the fact of the prosecution itself." (citation omitted)). Plaintiff plausibly alleges that Miller fabricated and "embellished" Jackson's statements in his investigative report; that Miller provided these reports to prosecutors to secure Plaintiff's indictment and arrest; and that Corrando, as Miller's supervisor, reviewed and approved these reports without identifying any "embellishments" or obvious factual contradictions. *See* Compl. ¶¶ 44–49, 95. On a motion to dismiss, the Court cannot take as true the City Defendants' factual assertion that, regardless of any alleged fabrications in Miller's reports, the prosecution had independent ballistics evidence to satisfy the probable cause standard. *Compare* City Defs. Reply at 6–7, *with* ECF No. 39 at 9–12. It cannot, therefore, find as a matter of law, that the City Defendants had probable cause for Plaintiff's indictment and prosecution. *See Bullard v. City of N.Y.*, 240 F. Supp. 2d 292, 299 (S.D.N.Y. 2003). The Court concludes, therefore, that Plaintiff has sufficiently alleged a § 1983 denial of fair trial claim against Miller and Corrando. The City Defendants' motion to dismiss Count 4 of the complaint is, accordingly, DENIED.

CONCLUSION

For the reasons stated above, the State's motion to dismiss, ECF No. 20, is GRANTED, and Plaintiff's claims against the State are DISMISSED. The DA Defendants' motion to dismiss, ECF No. 22, is GRANTED—Plaintiff's claims against Vance are DISMISSED; and his claims against Kalra and Nasar are DISMISSED except for Counts 3 and 4, which are DISMISSED without prejudice to renewal in an amended complaint. By **April 15, 2022,** the DA Defendants shall make the disclosures directed in this order. The City Defendants' motion to dismiss is DENIED as to Count 4, and GRANTED in all other respects. Plaintiff's claims against Passamenti, the NYPD, and the City are DISMISSED; and his claims against Miller and Corrando are DISMISSED, except for Count 3, which is DISMISSED without prejudice to renewal in an amended complaint.

Case 3:24-cv-00477-BKS-ML   Document 15   Filed 07/25/24   Page 91 of 126

Rich v. New York, Not Reported in Fed. Supp. (2022)

**\*14** By **May 16, 2022**, Plaintiff shall file an amended complaint as to Counts 3 and 4, with the additional factual allegations detailed in this order. The Clerk of Court is directed to terminate the motions pending at ECF Nos. 20, 22, and 32, and mail a copy of this order to Plaintiff *pro se.* The Court shall separately provide Plaintiff with a copy of all unpublished cases cited herein.

SO ORDERED.

**All Citations**

Not Reported in Fed. Supp., 2022 WL 992885

## Footnotes

1   Unless otherwise stated, the following facts are taken from the complaint and assumed, for purposes of this motion, to be true. *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007).

2   The relevant state court trial transcripts were submitted by the DA Defendants in their motion to dismiss. *See* Trial Tr.; Dismissal Tr., ECF No. 22-4. The Court may take judicial notice of these transcripts as a matter of public record. *See Shmueli v. City of N.Y.*, 424 F.3d 231, 233 (2d Cir. 2005).

3   Because the Court concludes that it lacks jurisdiction over Plaintiff's claims against the State under Rule 12(b)(1), it need not reach the State's alternative ground for dismissal, that Plaintiff's § 1983 and § 1985 claims must be dismissed because the State is not a suable "person" within the meaning of those statutes. State Mem. at 3–4.

4   Plaintiff makes this clarification for the first time in his opposition papers. ECF No. 28 at 14. The Court notes that because, as discussed, the Eleventh Amendment bars suits against states, *see supra* at 8–10, when a defendant is sued in his official capacity, the court treats the suit as one against the "entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985) (quoting *Monell v. N.Y.C. Dep't of Soc. Serves*, 436 U.S. 658, 690 n.55 (1978)). And, where a "district attorney or an assistant district attorney acts as a prosecutor, she is an agent of the State, and therefore immune from suit in her official capacity." *D'Alessandro v. City of N.Y.*, 713 F. App'x 1, 8 (2d Cir. 2017). Accordingly, any claims Plaintiff may raise against the DA Defendants in their "official capacity" would be precluded by immunity under the Eleventh Amendment. *See id.*

5   Although Plaintiff asserts that he pleads each of his claims against "all Defendants," even a liberal read of the complaint makes clear that certain of Plaintiff's claims cannot implicate the DA Defendants' conduct, including counts 1 (unreasonable search and seizure); 2 (false arrest/imprisonment); 11 (personal injury); 12 (property damage) and 13 (negligent hiring, training, supervision, and discipline of officers). Compl. ¶¶ 117–27, 168–81. As the Court has already dismissed Counts 7 and 9, *see supra* at 7–8, it only considers Counts 3 (malicious prosecution); 4 (deprivation of fair trial); 5 (conspiracy); 6 (failure to intervene); 8 (abuse of process); 10 (negligent misrepresentation); and 14 (negligent infliction of emotional distress) against the DA Defendants.

6   Because the Court finds that the DA Defendants are entitled to absolute immunity on any claims arising from the withholding of exculpatory evidence, the Court does not reach their alternative argument that Plaintiff fails to state a claim for an alleged *Brady* violation, *see* DA Defs. Mem. at 12–15.

Rich v. New York, Not Reported in Fed. Supp. (2022)

Case 3:24-cv-00477-BKS-ML    Document 15    Filed 07/25/24    Page 92 of 126

7      As noted, the parallel state-law constitutional claims in Counts 4, 5, and 6 are dismissed with prejudice. *See supra* at 8.

8      The DA Defendants' reliance on *Johnson v. Fargione* is unavailing. In that case, the court found that the plaintiff's claims, which had expired weeks before the issuance of Executive Order 202.8, could not "be said to have been tolled" by that Executive Order, as the time for filing had already passed and the plaintiff had offered no excuse for the delay. 20 Civ. 764, 2021 WL 1406683, at *3 (N.D.N.Y. Feb. 17, 2021), *report and recommendation adopted* 2021 WL 1404554 (Apr. 14, 2021). Although *Johnson* is instructive with respect to how claims that may have expired *before* the issuance of Executive Order 202.8 (*i.e.*, before March 20, 2020) should be treated, it does not address the applicability of the Executive Order to federal claims that, like Plaintiff's, had not yet expired by that date.

9      Executive Order 202.8 tolled applicable limitations periods from March 20, 2020 to November 3, 2020. The order amounted to a "pause" in the limitations period—that is, during the duration of the toll, the clock to file [did] not run," but "[o]nce the toll end[ed,] the clock resume[d] from where it was when the toll began, and the plaintiff ha[d] the rest of his limitations period to file his complaint," *Johnston v. City of Syracuse*, No. 20 Civ. 1497, 2021 WL 3930703, at *6 (N.D.N.Y. Sept. 2, 2021). Because, as of March 20, 2020, when the clock was "paused," Plaintiff had 211 days remaining before the expiration of the limitations period on October 17, 2020, the Court calculates 211 days after November 3, 2020, as the end of the relevant limitations period when tolled—which is June 2, 2021.

10     Even assuming, *arguendo*, that Plaintiff would not have had reason to know of the harm or injury that was the basis of his Section 1986 claim until the date the indictment was dismissed (October 17, 2017), the claim would still be time-barred, because this would only extend the limitations period to October 17, 2018—nearly three years before the commencement of this action.

11     As noted, the Court dismissed Count 7 for relying on a statute that does not provide a private right of action, *see supra* at 7; Count 9 for being duplicative of Count 4, *see id.* at 8, and all the state constitutional claims Plaintiff asserts analogously to his federal constitutional claims, *see id.*

12     As discussed *supra* at 18–19, even if the Court construes Plaintiff's notice of claim as timely based on the dismissal of Plaintiff's criminal case on October 17, 2017, Plaintiff still failed to commence this action within one year and 90 days, as required by statute. This provides an alternative ground for dismissal.

13     Plaintiff also names the NYPD as a defendant. *See* Compl. But, the NYPD is a non-suable agency of the City, and thus, to the extent any of Plaintiff's claims are brought against it, they fail as a matter of law. *See Jenkins v. City of N.Y.*, 478 F.3d 76, 93 n.19 (2d Cir. 2007). Any such claims are, accordingly, DISMISSED with prejudice.

---

**End of Document**                                      © 2024 Thomson Reuters. No claim to original U.S. Government Works.

88 F.4th 418
United States Court of Appeals, Second Circuit.

E. Jean CARROLL, Plaintiff-
Counter-Defendant-Appellee,

v.

Donald J. TRUMP, in his personal capacity,
Defendant-Counter-Claimant-Appellant.

Nos. 23-1045-cv (L) & 23-1146-cv (Con)
|
August Term 2023
|
Argued: October 23, 2023
|
Decided: December 13, 2023

**Synopsis**
**Background:** Plaintiff filed state court action alleging that former United States President defamed her by claiming that she had fabricated her account of him sexually assaulting her years before he was elected President. Following removal, the United States District Court for the Southern District of New York, Lewis A. Kaplan, J., denied former President's motion for summary judgment or for leave to amend his answer, 2023 WL 4393067, and granted in part plaintiff's motion to strike defendant's affirmative defenses, 2023 WL 5017230. Former President appealed.

**Holdings:** The Court of Appeals, Cabranes, Circuit Judge, held that:

[1] it had appellate jurisdiction under collateral order doctrine to review district court's denial of President's claim of absolute immunity;

[2] as a matter of first impression, presidential immunity is waivable;

[3] President waived his presidential immunity defense;

[4] district court did not abuse its discretion when it denied President's request for leave to amend his answer to add defense of presidential immunity;

[5] plaintiff's filing of amended complaint did not revive President's presidential immunity defense;

[6] considerations of judicial economy and efficiency favored district court's retention of jurisdiction over action while appeal was pending; and

[7] it lacked appellate jurisdiction over district court's order denying President's summary judgment motion.

Affirmed in part, dismissed in part, and remanded.

**Procedural Posture(s):** Motion for Summary Judgment; Motion to Amend Pleading (Other than Complaint or Petition); Motion to Strike Affirmative Defenses; Interlocutory Appeal.

West Headnotes (29)

**[1]**   **Federal Civil Procedure** 🔑 Affirmative Defense or Avoidance

   **Federal Courts** 🔑 Waiver, estoppel, and consent

   Ordinarily, defendants are deemed to have waived or forfeited defenses that they did not raise at outset of litigation, but defenses based on subject-matter jurisdiction—courts' statutory or constitutional power to adjudicate case—are nonwaivable, and defendants can raise such defenses at any stage in litigation.

   1 Case that cites this headnote

**[2]**   **Estoppel** 🔑 Waiver Distinguished

   **Estoppel** 🔑 Nature and elements of waiver

   Term "waiver" is best reserved for litigant's intentional relinquishment of known right; where litigant's action or inaction is deemed to incur consequence of loss of right, or defense, term "forfeiture" is more appropriate.

   2 Cases that cite this headnote

**[3]**   **Constitutional Law** 🔑 Executive privilege and immunity

   **United States** 🔑 Judicial intervention; immunity

Presidential immunity is defense that stems from President's unique office, rooted in constitutional tradition of separation of powers and supported by Nation's history, and entitles President to absolute immunity from damages liability for acts within outer perimeter of his official responsibilities.

**[4]** **District and Prosecuting Attorneys** 👈 Liabilities for official acts, negligence, or misconduct

Prosecutorial immunity is form of absolute immunity that shields prosecutor acting in role of advocate in connection with judicial proceeding for all acts intimately associated with judicial phase of criminal process.

2 Cases that cite this headnote

**[5]** **Judges** 👈 Liabilities for official acts

Judges are entitled to absolute judicial immunity for acts committed within their judicial discretion.

1 Case that cites this headnote

**[6]** **Federal Courts** 👈 Immunity

Did abuse of discretion standard of review apply to interlocutory appeal?**Yes**
Court of Appeals reviews district court's determination that defendant waived his presidential immunity defense for abuse of discretion.

More cases on this issue

**[7]** **Federal Courts** 👈 Summary judgment
**Federal Courts** 👈 Immunity

Did de novo standard of review apply to interlocutory appeal?**Yes**
Court of Appeals reviews district court's denial of summary judgment and its determination that presidential immunity can be waived de novo.

More cases on this issue

**[8]** **Federal Courts** 👈 Immunity

Did court have appellate jurisdiction under collateral order doctrine?**Yes**
Court of Appeals had appellate jurisdiction under collateral order doctrine to review district court's determination that former United States President was not entitled to absolute immunity in defamation action.

More cases on this issue

**[9]** **United States** 👈 Judicial intervention; immunity

Presidential immunity is not jurisdictional defense, and thus is subject to waiver.

**[10]** **Civil Rights** 👈 Good faith and reasonableness; knowledge and clarity of law; motive and intent, in general

Qualified immunity shields officials from civil damages liability insofar as their conduct does not violate clearly established statutory or constitutional rights of which reasonable person would have known.

**[11]** **Public Employment** 👈 Absolute immunity

Absolute immunity confers public official with complete protection from civil suit.

**[12]** **Courts** 👈 Previous Decisions as Controlling or as Precedents

If decision simply states that court is dismissing for lack of jurisdiction when some threshold fact has not been established, it is understood as drive-by jurisdictional ruling that receives no precedential effect.

**[13]** **Federal Civil Procedure** 👈 Immunity

United States President waived his presidential immunity defense in defamation action against him by failing to invoke defense in his answer to plaintiff's original complaint against him.

**[14]**   **Federal Courts**  🔑  Pleading

Court of Appeals reviews district court's denial of leave to amend for abuse of discretion, unless denial was based on interpretation of law, such as futility, in which case Court of Appeals reviews legal conclusion de novo.

1 Case that cites this headnote

**[15]**   **Federal Civil Procedure**  🔑  Time for amendment

**Federal Civil Procedure**  🔑  New defense

District court did not err, much less abuse its discretion, when it denied United States President's request for leave to amend his answer in defamation action to add defense of presidential immunity on grounds of undue delay and prejudice; three years passed between President's answer and his request for leave to amend his answer, discovery had closed, and plaintiff would have engaged in discovery on whether President's actions fell within his official duties if he had raised presidential immunity before discovery closed, but declined to do so to avoid prolonging litigation and creating complex executive privilege fights.

More cases on this issue

**[16]**   **Federal Courts**  🔑  Abuse of discretion in general

"Abuse of discretion" is non-pejorative term of art that implies no misconduct on district court's part; term simply describes circumstance in which district court bases its ruling on erroneous view of law or on clearly erroneous assessment of evidence, or renders decision that cannot be located within range of permissible decisions.

**[17]**   **Federal Civil Procedure**  🔑  Injustice or prejudice

In gauging whether proposed amendment to pleading would prejudice party, court considers, among other factors, whether amendment would require opponent to expend significant additional resources to conduct discovery and prepare for trial or significantly delay resolution of dispute.

2 Cases that cite this headnote

**[18]**   **Federal Civil Procedure**  🔑  Time for amendment in general

**Federal Civil Procedure**  🔑  Injustice or prejudice

Although mere delay, absent showing of bad faith or undue prejudice, does not provide basis for district court to deny right to amend pleading, the longer the period of unexplained delay, the less will be required of nonmoving party in terms of showing of prejudice.

2 Cases that cite this headnote

**[19]**   **Federal Civil Procedure**  🔑  Time for amendment in general

**Federal Civil Procedure**  🔑  Injustice or prejudice

Requests to amend pleading that come at late stage of litigation, after discovery has closed and motion for summary judgment has been filed, are more likely to be prejudicial.

**[20]**   **Federal Courts**  🔑  Pleading

Court of Appeals reviews district court decision striking affirmative defense de novo.

**[21]**   **Federal Civil Procedure**  🔑  Effect of amendment

Although amended complaint ordinarily supersedes original, and renders it of no legal effect, amended complaint does not automatically revive all defenses and objections that defendant has waived in response to original complaint.

2 Cases that cite this headnote

**[22]**   **Alternative Dispute Resolution**  🔑  Waiver or Estoppel

**Federal Civil Procedure** 🗝️ Effect of
amendment

**Federal Courts** 🗝️ Waiver, estoppel, and
consent

**Federal Courts** 🗝️ Waiver, estoppel, and
consent

**Process** 🗝️ Waiver of defects and objections

Defenses that involve core issue of party's
willingness to submit dispute to judicial
resolution, such as lack of personal jurisdiction,
improper venue, insufficiency of process,
insufficiency of service, or existence of
arbitration agreement, are not automatically
revived by submission of amended complaint
if initially waived; to revive such claims, party
must show that amended complaint contains
charges that, in fairness, should nullify its earlier
waiver and allow it to reassess its strategy.

[23]    **Federal Civil Procedure** 🗝️ Effect of
amendment

**Federal Civil Procedure** 🗝️ Affirmative
Defense or Avoidance

Plaintiff's filing of amended complaint in
defamation action against United States
President did not revive President's previously-
waived presidential immunity defense, and thus
district court did not err in striking presidential
immunity as affirmative defense from his answer
to amended complaint, where President did
not identify any changes to complaint that, in
fairness, nullified his earlier waiver and allowed
him to reassess his strategy.

More cases on this issue

[24]    **Federal Courts** 🗝️ Effect of Transfer of
Cause or Proceedings Therefor

Filing of notice of appeal ordinarily divests
district court of jurisdiction over issues decided
in order being appealed, but its application is
guided by concerns of efficiency and is not
automatic.

1 Case that cites this headnote

[25]    **Federal Courts** 🗝️ Effect of Transfer of
Cause or Proceedings Therefor

District courts may retain jurisdiction over issues
decided in order being appealed if appeal is
frivolous.

3 Cases that cite this headnote

[26]    **Federal Courts** 🗝️ Interlocutory or defective
appeal

Considerations of judicial economy and
efficiency favored district court's retention of
jurisdiction over defamation action against
United States President during pendency of his
interlocutory appeal of district court's orders
denying him leave to amend his answer to
assert presidential immunity and striking his
amended answer, even if President's appeal was
not frivolous; to hold otherwise would require
district court on remand to possibly undertake
rather pointless exercise of re-adopting orders it
had issued since date President filed notice of
appeal.

1 Case that cites this headnote

More cases on this issue

[27]    **Federal Courts** 🗝️ Summary Judgment

Orders denying summary judgment are, in
general, not immediately appealable.

[28]    **Federal Courts** 🗝️ Interlocutory, Collateral,
and Supplementary Proceedings and Questions;
Pendent Appellate Jurisdiction

Collateral-order doctrine appeals do not render
other aspects of case immediately reviewable
unless they are inextricably intertwined or
necessary to ensure meaningful review of
collateral orders.

[29]    **Federal Courts** 🗝️ As to immunity

Did court have appellate jurisdiction over
order? **No**

District court's denial of United States President's
motion for summary judgment in defamation

action against him on ground that his statements about plaintiff were not defamatory per se under state law was not inextricably intertwined with or necessary to ensure meaningful review of district court's denial of presidential immunity, and thus Court of Appeals lacked appellate jurisdiction over district court's order denying President's summary judgment motion on interlocutory review of order denying immunity.

More cases on this issue

**\*421** On Appeal from the United States District Court for the Southern District of New York (Lewis A. Kaplan, *Judge*).

**Attorneys and Law Firms**

Joshua Matz (Kate Harris, Roberta A. Kaplan, Trevor W. Morrison, on the brief), Kaplan Hecker & Fink LLP, New York, NY, for Plaintiff-Counter-Defendant-Appellee E. Jean Carroll.

Michael T. Madaio (Alina Habba, on the brief), Habba Madaio & Associates LLP, Bedminster, NJ, for Defendant-Counter-Claimant-Appellant Donald J. Trump.

Before: Cabranes, Chin, and Kahn, Circuit Judges.

**Opinion**

José A. Cabranes, Circuit Judge:

**\*422** **[1]** **[2]** Ordinarily, defendants are deemed to have waived or forfeited defenses that they did not raise at the outset of the litigation.[1] But defenses based on subject-matter jurisdiction—"the courts' statutory or constitutional power to adjudicate the case"[2]—are nonwaivable. Defendants can raise such defenses "at any stage in the litigation."[3]

**[3]** **[4]** **[5]** Presidential immunity is a defense that stems from "the President's unique office, rooted in the constitutional tradition of the separation of powers and supported by our history," and entitles the President to "absolute ... immunity from damages liability for acts within the outer perimeter of his official responsibilities."[4] For example, the Supreme Court held in *Nixon v. Fitzgerald* that presidential immunity protected former President Richard Nixon from a lawsuit by an ex-Air Force employee who

alleged that Nixon fired him in retaliation for testifying before Congress about cost overruns.[5] Conversely, the Court held in *Clinton v. Jones* that presidential immunity did not shield President Clinton from civil liability for actions allegedly taken when he was Governor of Arkansas because they were not official presidential acts.[6]

**\*423** This case presents a vexing question of first impression: whether presidential immunity is waivable. We answer in the affirmative and further hold that Donald J. Trump ("Defendant") waived the defense of presidential immunity by failing to raise it as an affirmative defense in his answer to E. Jean Carroll's ("Plaintiff's") complaint, which alleged that Defendant defamed her by claiming that she had fabricated her account of Defendant sexually assaulting her in the mid-1990s.

Accordingly, we **AFFIRM** the July 5, 2023 order of the United States District Court for the Southern District of New York (Lewis A. Kaplan, *Judge*) denying Defendant's motion for summary judgment insofar as it rejected Defendant's presidential immunity defense and denied his request for leave to amend his answer to add presidential immunity as a defense. We likewise **AFFIRM** the District Court's August 7, 2023 order insofar as it struck Defendant's presidential immunity defense from his answer to Plaintiff's amended complaint. We **DISMISS** for lack of appellate jurisdiction the appeal of the District Court's July 5, 2023 order insofar as it determined that Defendant's statements about Plaintiff were defamatory per se. Finally, we **REMAND** the case to the District Court for further proceedings consistent with this opinion.

## I. BACKGROUND

The relevant facts in this appeal are undisputed. We summarize them below.

### A. Factual Background

On June 21, 2019, Plaintiff publicly accused Defendant of sexually assaulting her in the mid-1990s.[7] Defendant, who was President of the United States at the time of the accusations, denied Plaintiff's claims in a series of public statements. In the first, released that same day, he claimed that "it never happened," he "never met" Plaintiff, and that

"[s]he is trying to sell a new book—that should indicate her motivation." [8]  The next day, he stated that "[t]his is a woman who has also accused other men of things ... It is a totally false accusation." [9]

On November 4, 2019, Plaintiff responded by suing Defendant for defamation in New York State Supreme Court. Defendant filed his answer on January 23, 2020. On September 8, 2020, the United States removed the case to the United States District Court for the Southern District of New York pursuant to the Westfall Act. [10]

**\*424  B. Procedural Background**

On December 22, 2022, Defendant moved for summary judgment. [11]  In his reply brief, filed on January 19, 2023, he raised for the first time the argument that presidential immunity barred liability. On July 5, 2023, the District Court denied Defendant's motion for summary judgment after determining that Defendant waived presidential immunity and denied Defendant's request for leave to amend his answer to add presidential immunity as a defense ("July 5 Order"). [12] The Court denied Defendant's request for leave to amend on two independent grounds: first, that the request was futile, and second, that Defendant unduly delayed in raising the defense and granting the request would prejudice Plaintiff. [13]  The Court also rejected Defendant's argument that his statements were not defamatory per se. [14]  Defendant appealed the July 5 Order on July 19, 2023.

Meanwhile, on May 22, 2023, Plaintiff filed an amended complaint that added, *inter alia*, more statements by Defendant alleging that Plaintiff's accusations were false and politically motivated. Defendant filed his answer to Plaintiff's amended complaint on June 27, 2023. The amended answer for the first time raised presidential immunity as an affirmative defense. On August 7, 2023, the District Court struck Defendant's presidential immunity defense from his amended answer on the ground that it had been waived and, even if not, "would have been insufficient as a defense" ("August 7 Order"). [15]  On August 10, 2023, Defendant appealed the August 7 Order.

Defendant sought a stay from the District Court, arguing that his appeal of the District Court's July 5 Order, which rejected Defendant's presidential immunity defense, divested

the District Court of jurisdiction. On August 18, 2023, the District Court denied Defendant's stay motion upon determining his appeal to be frivolous. [16]  Defendant then sought an emergency  **\*425**  stay from our Court, which a motions panel denied on September 13, 2023. The same day, the motions panel ordered the consolidation of Defendant's appeals of the July 5 Order and the August 7 Order and set an expedited briefing schedule.

## II. DISCUSSION

This case concerns appeals from two related orders by the District Court. The July 5 Order denied Defendant's motion for summary judgment on the ground that Defendant waived his presidential immunity defense and further denied Defendant's request for leave to amend his answer to add presidential immunity as an affirmative defense. The August 7 Order struck Defendant's affirmative defense of presidential immunity from his answer to Plaintiff's amended complaint on the ground that Defendant had already waived this defense.

We hold that presidential immunity is waivable and that Defendant waived this defense. [17]  Thus, the District Court did not err in its order denying Defendant's motion for summary judgment, nor did it err, much less "abuse its discretion," in denying his belated request for leave to amend his answer to add presidential immunity as a defense. [18]  We also hold that the District Court did not err in striking Defendant's presidential immunity defense from his answer to Plaintiff's amended complaint. [19]  Nor did the District Court err in retaining jurisdiction after Defendant filed his notice of appeal on July 19, 2023. [20]  Finally, we hold that we lack appellate jurisdiction to consider whether Defendant's statements were defamatory per se. [21]

### A. Whether Defendant Waived Presidential Immunity [22]

**[6]**    **[7]**    **[8]**   Is presidential immunity waivable? And if so, did Defendant waive it? The answer to both questions is yes.

#### 1. Whether Presidential Immunity Is Waivable

**[9]**    **[10]**    **[11]**   Defendant argues that presidential immunity is a jurisdictional defense and is thus nonwaivable. [23]  We

disagree. The Supreme Court recognized in *Nevada v. Hicks* that "[t]here is no authority whatever for the proposition that absolute- and qualified-immunity defenses pertain to the court's jurisdiction." [24] And we have repeatedly **\*426** distinguished absolute immunity defenses from defenses based on subject-matter jurisdiction. [25]

 [12]  Rather than acknowledge *Hicks* or our precedents, Defendant points to scattered references to "jurisdiction" in Supreme Court cases involving presidential immunity. [26] But as we have recently been reminded by the Supreme Court, "[t]he mere fact that [the Supreme] Court previously described something without elaboration as jurisdictional ... does not end the inquiry." [27] We must ask if the prior decision addressed whether the provision or defense is " 'technically jurisdictional'—whether it truly operates as a limit on a court's subject-matter jurisdiction—and whether anything in the decision 'turn[ed] on that characterization.' " [28] Accordingly, "[i]f a decision simply states that 'the court is dismissing "for lack of jurisdiction" when some threshold fact has not been established,' it is understood as a 'drive-by jurisdictional ruling' that receives no precedential effect." [29]

None of the cases on which Defendant relies indicate that presidential immunity is jurisdictional—indeed, quite the opposite. Defendant relies primarily on the following passage in *Nixon*:

> [A] court, before exercising jurisdiction, must balance the constitutional weight of the interest to be served against the dangers of intrusion on the authority and functions of the Executive Branch. When judicial action is needed to serve broad public interests ... the exercise of jurisdiction has been held warranted. In the case of this merely private suit for damages based on a President's official acts, we hold it is not. [30]

But *Nixon* hurts, not helps, Defendant's case. The passage quoted above follows a threshold analysis of whether the Supreme Court had subject-matter jurisdiction over

the dispute. [31] Pursuant to the usual practice in the federal courts, [32] only once assured **\*427** of its subject-matter jurisdiction did the Supreme Court proceed to the "merits"—*i.e.*, to whether the President was entitled to immunity. [33]

Nor do the passing references to "jurisdiction" in *Mississippi v. Johnson* or in *Clinton v. Jones* support Defendant's position. In *Johnson*, the question was whether a state could obtain an injunction to prevent the President from carrying out an Act of Congress, not whether a President is liable for damages in a private civil suit. [34] And like *Nixon*, *Clinton* first held that the Supreme Court had subject-matter jurisdiction before proceeding to the immunity question. [35] Neither *Nixon* nor *Clinton* addressed whether presidential immunity is "technically jurisdictional," nor did "anything in the decision[s] turn[ ] on that characterization." [36] Thus, *Clinton*'s reference to "jurisdiction"—the Court's determination that "[t]he Federal District Court has jurisdiction to decide this case" [37]—is, like *Nixon*'s, best characterized as a "drive-by jurisdictional ruling" that "should be accorded no precedential effect" because it ultimately does not bear on the question of whether presidential immunity is jurisdictional. [38]

All in all, Defendant provides no case that turns on whether presidential immunity is jurisdictional, much less one holding that it *is* jurisdictional, and *Nixon*—described by Defendant's counsel at oral argument as the "main case" and "the only binding precedent" on presidential immunity—points in the opposite direction. [39]

Next, Defendant contends that "the separation-of-powers doctrine" renders presidential immunity nonwaivable because "an impermissible inter-branch conflict will always arise when a court seeks to impute civil liability on a President for the performance of his official acts." [40] But separation-of-powers considerations militate in favor of, not against, recognizing presidential immunity as waivable. A President's autonomy should be protected; thus, a President *should* be able to litigate if he chooses to do so. Indeed, at least one President has declined to invoke presidential immunity, opting instead to settle two civil suits out of court. [41] Recognizing presidential **\*428** immunity as a jurisdictional defense would, the District Court observed, "risk encroachment by the judiciary into the president's

domain by eliminating the president's ability to choose" whether to litigate. [42]

Moreover, avoiding undue judicial intrusion on the executive branch undergirds the doctrines of both prosecutorial immunity and presidential immunity. That said, Defendant does not dispute that prosecutorial immunity is waivable. Rather, he argues that the President's unique constitutional role distinguishes presidential immunity from other forms of absolute immunity such as prosecutorial immunity and judicial immunity. [43] But as Defendant acknowledges, [44] the Supreme Court has made clear that absolute immunity for prosecutors and judges, on the one hand, and presidential immunity on the other, are closely related. "As is the case with prosecutors and judges," the Court stated in *Nixon*, "a President must concern himself with matters likely to 'arouse the most intense feelings.' " [45] And the Court has recently reinforced the "careful analogy" it drew in *Nixon*, reasoning that "a President, like [judges and prosecutors], must ... not be made 'unduly cautious in the discharge of [his official] duties' by the prospect of civil liability for official acts." [46]

Nor do the Court's references in *Nixon* and *Harlow v. Fitzgerald*—*Nixon*'s companion case—to the President's unique status in comparison with other Government officials support Defendant's position. [47] Those passages contrasted the President to other *executive* officials—such as presidential aides and Cabinet officers—to conclude that, unlike the qualified immunity of these lower-level executive officials, presidential immunity is absolute. [48] And although the Supreme Court in *Nixon* recalled the "special solicitude due to claims alleging a threatened breach of essential Presidential prerogatives under the separation of powers," the passage in question concerned not whether presidential immunity was waivable, but whether the district court's order rejecting Nixon's immunity defense was a "serious and unsettled" **\*429** question that could be raised on interlocutory appeal. [49]

Finally, Defendant argues that Article III of the Constitution, which vests judicial power in the federal courts, makes presidential immunity nonwaivable. He reasons as follows. First, violations of Article III—for example, the improper exercise of federal judicial power by a non-Article III entity— are not waivable. Next, separation-of-powers considerations inform both Article III and presidential immunity. Thus, presidential immunity is not waivable. But apart from *Nixon* (discussed above), none of the cases Defendant draws to

our attention concern immunity at all, much less presidential immunity. [50] More to the point, it is not accurate to assert that separation-of-powers defenses or arguments are *ipso facto* nonwaivable. [51]

To summarize: notwithstanding scattered references to "jurisdiction" in some presidential immunity cases, the Supreme Court has indicated that immunity defenses are not jurisdictional, and that presidential immunity is to be treated like other forms of immunity that Defendant does not dispute are waivable. Moreover, *Nixon*—the leading presidential immunity case—treats presidential immunity as nonjurisdictional. Finally, recognizing presidential immunity as waivable reinforces, not undermines, the separation of powers and the President's decisionmaking authority by affording the President an opportunity to litigate if he so chooses. Accordingly, we hold that presidential immunity is waivable.

### 2. Whether Defendant Waived Presidential Immunity

**[13]** Having determined that presidential immunity is waivable, we reach the question: Did Defendant waive his presidential immunity defense? We hold that he did.

Defendant filed his answer to Plaintiff's original complaint in New York state court in January 2020. But the answer did not invoke presidential immunity. The District Court thus determined that Defendant had waived this defense, a holding Defendant does not challenge in this appeal. [52] Indeed, **\*430** Defendant's counsel conceded at oral argument that assuming the defense of presidential immunity is waivable, Defendant had waived that defense. [53]

Accordingly, the District Court did not err in denying Defendant's motion for summary judgment on the ground that he had waived his presidential immunity defense. We turn next to whether the District Court correctly rejected his attempt to revive it—first in his request for leave to amend his answer, then in his answer to Plaintiff's amended complaint.

### B. Defendant's Request for Leave to Amend

**[14]** **[15]** **[16]** "We review a district court's denial of leave to amend for abuse of discretion, unless the denial was based on an interpretation of law, such as futility, in which case we

review the legal conclusion *de novo*." [54] The District Court did not err, much less "abuse its discretion," [55] when it denied Defendant's request for leave to amend his answer to add the defense of presidential immunity on grounds of undue delay and prejudice. [56]

First, Defendant unduly delayed in raising presidential immunity as a defense. [57] Three years passed between Defendant's answer and his request for leave to amend his answer. A three-year delay is more than enough, under our precedents, to qualify as "undue." [58] And Defendant's excuse for not timely raising the defense—that the question of whether the Westfall Act immunized Defendant was pending before the District Court, this Court, and the **\*431** District of Columbia Court of Appeals between September 2020 and June 2023—is unpersuasive. [59] Defendant does not explain how the Westfall Act dispute precluded him from raising a defense of presidential immunity. Indeed, Defendant first raised presidential immunity in January 2023—that is, during the pendency of the Westfall Act dispute.

 **[17]**   **[18]**   **[19]**   We next conclude that Defendant's delay unduly prejudiced Plaintiff. "Prejudice," like "abuse of discretion," is a legal term of art. [60] In gauging whether a proposed amendment would prejudice a party, "we consider, among other factors, whether an amendment would require the opponent to expend significant additional resources to conduct discovery and prepare for trial or significantly delay the resolution of the dispute." [61] Although "mere delay, absent a showing of bad faith or undue prejudice, does not provide a basis for a district court to deny the right to amend," "the longer the period of an unexplained delay, the less will be required of the nonmoving party in terms of a showing of prejudice." [62] Finally, requests to amend that come at a late stage of the litigation, after discovery has closed and a motion for summary judgment has been filed, are more likely to be prejudicial. [63]

Had Defendant raised presidential immunity before discovery closed, Plaintiff claims, she would have engaged in discovery on whether Defendant's actions fell within his official duties. [64] First, Plaintiff would have asked Defendant for more detail on the process through which he issued and prepared the June 2019 statements, including how the process compared to his pre- and post-presidential processes. [65] Second, Plaintiff would have sought third-party discovery

from White House personnel allegedly involved in preparing and issuing the statements. [66] Third, Plaintiff would have sought expert testimony from former White House officials and requested internal White House documents from the National Archives regarding former presidents' processes for issuing statements denying wrongdoing. [67] Plaintiff's counsel represents that they avoided doing so because "the risk of prolonging the litigation and creating complex executive privilege fights did not seem worth it to us, as measured against the absence of an absolute immunity defense, which Mr. Trump had not raised." [68]

Against all this, Defendant contends that the discovery Plaintiff would have pursued regarding presidential immunity (whether the statements fell within the President's official duties) was already explored **\*432** by Plaintiff in the discovery she pursued regarding the Westfall Act (whether the statements fell within the President's scope of employment). [69] But as counsel for Defendant concedes, the two tests are different. [70] The Westfall Act's scope-of-employment test is subjective, while presidential immunity's official-duties test is objective. [71] And Defendant has no response to Plaintiff's contention that Defendant's failure to timely raise presidential immunity informed her decision not to engage in discovery on whether Defendant's actions fell within his official duties.

In sum, three years passed before Defendant raised the defense of presidential immunity, significant additional resources to conduct discovery would be required were Defendant to amend his answer, and the request arose at a late stage of litigation—after discovery closed and Defendant moved for summary judgment. Under these circumstances, we hold that the District Court did not "abuse its discretion" in denying Defendant's request for leave to amend his answer on grounds of undue delay and prejudice.

### C. Defendant's Answer to Plaintiff's Amended Complaint

After the District Court denied Defendant's request for leave to amend his answer, Plaintiff filed an amended complaint. In response, Defendant filed an answer to the amended complaint asserting presidential immunity. The District Court struck Defendant's presidential immunity defense from his amended answer, reasoning that "[t]here is nothing new in the amended complaint that would make Mr. Trump's presidential

immunity defense any more viable or persuasive now than it would have been before." [72]

[20]  [21]  [22]  We review a district court decision striking an affirmative defense *de novo*. [73] Although "an amended complaint ordinarily supersedes the original, and renders it of no legal effect," an amended complaint "does not automatically revive all of the defenses and objections that a defendant has waived in response to the original complaint." [74] Defenses that "involve[ ] the core issue of a party's willingness to submit a dispute to judicial resolution," such as lack of personal jurisdiction, improper venue, insufficiency of process, insufficiency of service, or the existence of an arbitration agreement, are "not automatically revived by the submission of an amended complaint" if initially waived. [75] To revive such claims, a party "must show that the amended complaint contains charges that, in fairness, should nullify its earlier waiver and allow it to reassess its strategy." [76]

[23]  Presidential immunity involves the party's willingness to submit the dispute to **433** judicial resolution and is distinguishable from revivable, merits-based defenses. [77] Indeed, the only reason we have jurisdiction over this appeal is that the denial of presidential immunity is a collateral order, a requirement of which is that the issue on appeal be "completely separate from the merits of the action." [78] What's more, Defendant does not identify any changes to the complaint "that, in fairness, should nullify [his] earlier waiver and allow [him] to reassess [his] strategy." [79] Accordingly, in the unusual circumstances presented here, we hold that the District Court did not err in striking presidential immunity as an affirmative defense from Defendant's answer to Plaintiff's amended complaint.

### D. Whether the District Court Retained Jurisdiction After Defendant Appealed

[24]  [25]  "The filing of a notice of appeal ordinarily divests the district court of jurisdiction over issues decided in the order being appealed." [80] We have previously noted that "[t]he divestiture of jurisdiction rule is, however, not a per se rule. It is a judicially crafted rule rooted in the interest of judicial economy, designed to avoid confusion or waste of time resulting from having the same issues before two courts at the same time. Hence, its application is guided by concerns

of efficiency and is not automatic." [81] For example, district courts may retain jurisdiction notwithstanding appeal if the appeal is frivolous. [82]

[26]  The District Court determined that it retained jurisdiction because Defendant's appeal was frivolous. We need not decide whether Defendant's appeal is frivolous, for we conclude that under the singular circumstances presented here, considerations of judicial economy and efficiency favor the District Court's retention of jurisdiction. To hold otherwise would require the District Court on remand to possibly undertake the rather pointless exercise of re-adopting the orders it has issued since July 19, 2023, the date Defendant appealed the July 7 Order. [83] "[O]ur application of the divestiture **434** rule must be faithful to the principle of judicial economy from which it springs," [84] and "it should not be employed to defeat its purposes or to induce endless paper shuffling." [85] This Court has declined to apply the divestiture rule under similar circumstances in the past, and we reach the same result here. [86]

### E. Whether We May Consider Whether Defendant's Statements Were Defamatory Per Se

[27]  [28]  Apart from appeals taken under the collateral order doctrine, [87] orders denying summary judgment are, in general, not immediately appealable. [88] And collateral-order doctrine appeals—such as Defendant's appeals of the July 5 Order and the August 7 Order—do not render other aspects of the case immediately reviewable unless they are "inextricably intertwined" or "necessary to ensure meaningful review" of the collateral orders. [89]

Defendant argues that none of his statements about Plaintiff were defamatory per se under New York law because they did not tend to cause injury to her trade, business, or profession, and that the District Court applied the wrong legal standard to his statements. [90]

[29]  Far from being inextricably intertwined with or necessary to ensure meaningful review of the District Court's denial of presidential immunity, whether Defendant's statements fell within the outer perimeter of his official presidential duties has nothing to do with whether the statements qualify as defamatory per se. Because we have no appellate jurisdiction over the District Court's determination

that Defendant's statements were defamatory per se, we do not consider Defendant's argument that the District Court erred in this respect.

### III. CONCLUSION

To summarize, we hold that:

(1) Presidential immunity is a waivable defense.

(2) Defendant waived the defense of presidential immunity by failing to raise it as an affirmative defense in his answer.

(3) The District Court did not err in denying Defendant's motion for summary judgment insofar as it rejected Defendant's presidential immunity defense on the ground that he had waived this defense.

(4) Defendant unduly delayed in raising presidential immunity as a defense, **\*435** and permitting Defendant to amend his answer to add the defense would unduly prejudice Plaintiff. Thus, the District Court did not err, much less "abuse its discretion," in denying Defendant's request for leave to amend his answer to add presidential immunity as a defense.

(5) Presidential immunity is not a defense that is automatically revived by the submission of an amended complaint if initially waived. Thus, the District Court did not err in striking Defendant's presidential immunity defense from his answer to Plaintiff's amended complaint.

(6) Under the singular circumstances presented here, considerations of judicial economy and efficiency favor the District Court's retention of jurisdiction after Defendant's notice of appeal was filed on July 19, 2023. Thus, the District Court did not err in retaining jurisdiction after July 19, 2023.

(7) Whether Defendant's statements about Plaintiff were defamatory per se is neither inextricably intertwined with nor necessary to ensure meaningful review of the District Court's denial of presidential immunity. Thus, we lack appellate jurisdiction to consider whether Defendant's statements about Plaintiff were defamatory per se.

Accordingly, we **AFFIRM** the July 5, 2023 order of the District Court denying Defendant's motion for summary judgment insofar as it rejected Defendant's presidential immunity defense and denied his request for leave to amend his answer to add presidential immunity as a defense. We likewise **AFFIRM** the District Court's August 7, 2023 order insofar as it struck Defendant's presidential immunity defense from his answer to Plaintiff's amended complaint. We **DISMISS** for lack of appellate jurisdiction the appeal of the District Court's July 5, 2023 order insofar as it determined that Defendant's statements about Plaintiff were defamatory per se. Finally, we **REMAND** the case to the District Court for further proceedings consistent with this opinion.

### All Citations

88 F.4th 418

## Footnotes

1    *See Kaplan v. Bank Saderat PLC*, 77 F.4th 110, 117 (2d Cir. 2023). "While the terms 'waiver' and 'forfeiture' are often used interchangeably because they have similar effects, they have slightly different meanings." *Id.* at 117 n.10. "The term 'waiver' is best reserved for a litigant's intentional relinquishment of a known right. Where a litigant's action or inaction is deemed to incur the consequence of loss of a right, or, as here, a defense, the term 'forfeiture' is more appropriate." *Doe v. Trump Corp.*, 6 F.4th 400, 409 n.6 (2d Cir. 2021) (quotation marks and comma omitted). E. Jean Carroll ("Plaintiff"), Donald J. Trump ("Defendant"), and the District Court refer to Defendant's failure to raise presidential immunity as "waiver." For purposes of this consolidated appeal, whether Defendant forfeited rather than waived presidential immunity matters not. Thus, "[w]e use the term ['waiver'] in this opinion for ease of discussion," but we express no view on whether Defendant intended to relinquish his presidential immunity defense, "which is a question of fact reserved for the district court." *Kaplan*, 77 F.4th at 117 n.10; *see, e.g., LCS Grp., LLC v. Shire Dev. LLC*, No. 20-2319, 2022 WL 1217961,

at *5 n.2 (2d Cir. Apr. 26, 2022) (summary order) ("Although it may be more accurate to refer to [Appellant] as having forfeited, rather than waived, many of the arguments it raises here, for convenience we refer to both their action and inaction here in terms of 'waiver.' ").

2    *Lightfoot v. Cendant Mortg. Corp.*, 580 U.S. 82, 92, 137 S.Ct. 553, 196 L.Ed.2d 493 (2017) (quotation marks omitted).

3    *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506, 126 S.Ct. 1235, 163 L.Ed.2d 1097 (2006); *see also* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

4    *Nixon v. Fitzgerald*, 457 U.S. 731, 749, 756, 102 S.Ct. 2690, 73 L.Ed.2d 349 (1982) (quotation marks omitted). Other Government officials are likewise protected by absolute immunity under certain circumstances. For example, prosecutorial immunity is a form of absolute immunity that shields "[a] prosecutor acting in the role of an advocate in connection with a judicial proceeding ... for all acts 'intimately associated with the judicial phase of the criminal process.' " *Simon v. City of New York*, 727 F.3d 167, 171 (2d Cir. 2013) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 430, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976)). And judges are entitled to absolute judicial immunity "for acts 'committed within their judicial discretion.' " *Peoples v. Leon*, 63 F.4th 132, 138 (2d Cir. 2023) (quoting *Cleavinger v. Saxner*, 474 U.S. 193, 199, 106 S.Ct. 496, 88 L.Ed.2d 507 (1985)).

5    *See Nixon,* 457 U.S. at 733-40, 756-58, 102 S.Ct. 2690.

6    *Clinton v. Jones*, 520 U.S. 681, 694-95, 117 S.Ct. 1636, 137 L.Ed.2d 945 (1997).

7    *See* E. Jean Carroll, *Hideous Men: Donald Trump Assaulted Me in a Bergdorf Goodman Dressing Room 23 Years Ago. But He's Not Alone on the List of Awful Men in My Life*, THE CUT (June 21, 2019), https://www.thecut.com/2019/06/donald-trumpassault-e-jean-carroll-other-hideous-men.html [https://perma.cc/HX9T-8MPK].

8    Appellant's Appendix ("A") 573.

9    *Id.* at 580. On June 24, 2019, Defendant further stated that "she's not my type" and that it "never happened." *Id.* at 590. As of November 15, 2023, Defendant's June 24 statement is no longer the subject of Plaintiff's defamation claim, although Plaintiff contends it remains relevant to the question of punitive damages. *See* Def. 28(j) Letter, *Carroll v. Trump*, No. 23-1045 (Nov. 17, 2023), ECF No. 121; Pl. Letter, *Carroll v. Trump*, No. 23-1045 (Nov. 20, 2023), ECF No. 124. We take judicial notice of this development, *see Liberty Mut. Ins. Co. v. Rotches Pork Packers, Inc.*, 969 F.2d 1384, 1388 (2d Cir. 1992), but it does not alter our analysis.

10   The Westfall Act immunizes federal employees acting within the scope of their office or employment from tort liability. *See* 28 U.S.C. § 2679(b)(1). Under the Act, the United States may remove a state court civil case to federal court upon certification by the Attorney General that the employee was acting within the scope of his employment at the time of the alleged incident. *See id.* § 2679(d)(2); *Osborn v. Haley*, 549 U.S. 225, 229-30, 127 S.Ct. 881, 166 L.Ed.2d 819 (2007). Whether the Westfall Act immunizes Defendant is not before us today. *Cf. Carroll v. Trump*, 66 F.4th 91 (2d Cir. 2023) (recounting the procedural history of this case's Westfall Act dispute and remanding to the District Court). After we remanded to the District Court, the Government decided not to issue Defendant a new Westfall Act certification in light of the filing of Plaintiff's amended complaint.

11   One month before Defendant moved for summary judgment, Plaintiff filed a separate lawsuit against Defendant for sexual assault and defamation. The defamation claim arose out of an October 2022 statement by Defendant denying Plaintiff's assault allegation. *See* Complaint, *Carroll v. Trump*, No. 22-cv-10016 ("*Carroll II*") (S.D.N.Y. Nov. 24, 2022). In May 2023, the *Carroll II* jury awarded Plaintiff $5 million in damages.

The verdict is the subject of a separate appeal currently pending before this Court. *See Carroll II, appeal docketed*, No. 23-793 (2d Cir. May 11, 2023).

12    Memorandum Opinion Denying Defendant's Motion for Summary Judgment (Corrected), *Carroll v. Trump* ("*Carroll I*"), No. 20-cv-7311, --- F.Supp.3d ——, 2023 WL 4393067 (S.D.N.Y. July 5, 2023) ("July 5 Order").

13    *Id.* at —— – ——, 2023 WL 4393067, at \*9-13.

14    *Id.* at —— – ——, 2023 WL 4393067, at \*13-14.

15    Memorandum Opinion Granting Plaintiff's Motion to Dismiss Defendant's Counterclaim and Certain Purported Affirmative Defenses, *Carroll v. Trump*, No. 20-cv-7311, —— F.Supp.3d at ——, 2023 WL 5017230, at \*9 (S.D.N.Y. Aug. 7, 2023) ("August 7 Order"). The August 7 Order also dismissed Defendant's counterclaim that Plaintiff defamed him by accusing him of rape. *Id.* at —— – ——, 2023 WL 5017230, at \*5-8. The District Court's dismissal of Defendant's counterclaim is not before us today.

16    Memorandum Opinion Denying Defendant's Motion to Stay, *Carroll I*, No. 20-cv-7311, —— F.Supp.3d at —— – ——, 2023 WL 5312894, at \*7-8 (S.D.N.Y. Aug. 18, 2023).

17    *See* Section II.A, *post.*

18    *See* Sections II.A-II.B, *post.*

19    *See* Section II.C, *post.*

20    *See* Section II.D, *post.*

21    *See* Section II.E, *post.*

22    We review the District Court's determination that Defendant waived his presidential immunity defense for "abuse of discretion." *See Amara v. Cigna Corp.*, 53 F.4th 241, 256 (2d Cir. 2022). We review the District Court's denial of summary judgment and its determination that presidential immunity can be waived *de novo*. *See Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012); *Berg v. Kelly*, 897 F.3d 99, 105 (2d Cir. 2018). We have appellate jurisdiction under the collateral order doctrine to review the District Court's determination that Defendant is not entitled to absolute immunity. *See Shmueli v. City of New York*, 424 F.3d 231, 236 (2d Cir. 2005) ("As the existence of absolute immunity protects an official not only from liability but also from suit, the validity of the defense should be determined at an early stage. Hence, an interlocutory order rejecting the defense is immediately appealable under the collateral order doctrine to the extent that the rejection turned on an issue of law.").

23    *See* Def. Br. at 12-34; *see also* notes 1-6, *ante* (explaining concepts of waiver and presidential immunity).

24    533 U.S. 353, 373, 121 S.Ct. 2304, 150 L.Ed.2d 398 (2001); *see also Smith v. Scalia*, 44 F. Supp. 3d 28, 40 n.10 (D.D.C. 2014) (Jackson, *J.*) ("[A]bsolute judicial immunity is a non-jurisdictional bar."), *aff'd*, No. 14-cv-5180, 2015 WL 13710107 (D.C. Cir. 2015). Qualified immunity shields officials from civil damages liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Absolute immunity, by contrast, "confers complete protection from civil suit." *Tulloch v. Coughlin*, 50 F.3d 114, 116 (2d Cir. 1995). The parties do not dispute that presidential immunity is a form of absolute, rather than qualified, immunity.

25    *See, e.g.*, *Chen v. Garland*, 43 F.4th 244, 252 n.6 (2d Cir. 2022); *Mitchell v. Fishbein*, 377 F.3d 157, 165 (2d Cir. 2004); *see also Beechwood Restorative Care Ctr. v. Leeds*, 436 F.3d 147, 154 n.3 (2d Cir. 2006) (holding absolute immunity defense to be waived because not adequately preserved for appellate review).

26    *See* Def. Br. at 15-16, 19, 22, 31 (quoting *Mississippi v. Johnson*, 71 U.S. 475, 500-01, 4 Wall. 475, 18 L.Ed. 437 (1867); *Nixon*, 457 U.S. at 754, 102 S.Ct. 2690; and *Clinton*, 520 U.S. at 710, 117 S.Ct. 1636).

27    *Wilkins v. United States*, 598 U.S. 152, 159-60, 143 S.Ct. 870, 215 L.Ed.2d 116 (2023) (quotation marks omitted).

28    *Id.* at 160, 143 S.Ct. 870 (quoting *Arbaugh*, 546 U.S. at 512, 126 S.Ct. 1235) (some quotation marks omitted).

29    *Id.* (quoting *Arbaugh*, 546 U.S. at 511, 126 S.Ct. 1235) (alteration adopted).

30    *Nixon*, 457 U.S. at 754, 102 S.Ct. 2690 (citations omitted); *see* Def. Br. at 19, 22-23, 30-31, 33.

31    *Nixon*, 457 U.S. at 741-43, 102 S.Ct. 2690; *see also id.* at 741, 102 S.Ct. 2690 ("Before addressing the merits of this case, we must consider two challenges to our jurisdiction.").

32    *See, e.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662, 671, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) ("We first address whether the Court of Appeals had subject-matter jurisdiction ...."); *In re Clinton Nurseries, Inc.*, 53 F.4th 15, 22 (2d Cir. 2022) ("At the outset, we must consider whether this Court has subject matter jurisdiction ...."); *Lanier v. Bats Exch., Inc.*, 838 F.3d 139, 146 (2d Cir. 2016) ("As a threshold matter, we must first satisfy ourselves that we have subject matter jurisdiction."); *Rogers v. Petroleo Brasileiro, S.A.*, 673 F.3d 131, 137 (2d Cir. 2012) ("Notwithstanding our grave concerns regarding the merits of the complaint, we proceed, as we must, first to determine issues of subject matter jurisdiction.").

33    *Nixon*, 457 U.S. at 741, 743 n.23, 102 S.Ct. 2690.

34    *See generally Johnson*, 71 U.S. 475.

35    *See Clinton*, 520 U.S. at 685, 117 S.Ct. 1636.

36    *Wilkins*, 598 U.S. at 160, 143 S.Ct. 870 (quotation marks omitted).

37    *Clinton*, 520 U.S. at 710, 117 S.Ct. 1636.

38    *Wilkins*, 598 U.S. at 160-61, 143 S.Ct. 870 (quotation marks omitted and alteration adopted).

39    Oral Arg. Audio Recording at 4:14-22; *cf. Blassingame v. Trump*, Nos. 22-7030, 22-7031, 87 F.4th 1 (D.C. Cir. Dec. 1, 2023) (affirming district court's order denying Defendant's presidential immunity defense without analyzing whether the defense is jurisdictional).

40    Def. Br. at 12-13.

41    *See* Answer to Complaint, *Bailey v. Kennedy,* No. 757,200 (Cal. Super. Ct. Jan. 19, 1961); Answer to Complaint, *Hills v. Kennedy,* No. 757,201 (Cal. Super. Ct. Jan. 19, 1962); *see also Clinton*, 520 U.S. at 692, 117 S.Ct. 1636 (summarizing the Kennedy litigation). In addition, lawsuits filed against Presidents Franklin D. Roosevelt and Harry S. Truman were dismissed without, it appears, either President invoking presidential immunity. *See Jones v. Clinton*, 72 F.3d 1354, 1362 n.10 (8th Cir. 1996), *aff'd*, 520 U.S. 681, 117 S.Ct. 1636, 137 L.Ed.2d 945.

42    July 5 Order, *Carroll I*, ––– F.Supp.3d at ––––, 2023 WL 4393067, at *8.

43    Def. Br. at 28-30.

44    *Id.* at 28-29.

45    *Nixon*, 457 U.S. at 751-52, 102 S.Ct. 2690 (quoting *Pierson v. Ray*, 386 U.S. 547, 554, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967)); *see also id.* at 758, 102 S.Ct. 2690 ("For the President, as for judges and prosecutors, absolute immunity merely precludes a particular private remedy for alleged misconduct in order to advance compelling public ends.").

46    *Trump v. Vance*, ––– U.S. ––––, 140 S. Ct. 2412, 2426, 207 L.Ed.2d 907 (2020) (quoting *Nixon*, 457 U.S. at 752 n.32, 102 S.Ct. 2690).

47    *See Nixon*, 457 U.S. at 750, 102 S.Ct. 2690 ("The President's unique status under the Constitution distinguishes him from other executive officials."); *Harlow v. Fitzgerald*, 457 U.S. 800, 811 n.17, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982) ("As we explained in [*Nixon*], the recognition of absolute immunity for all of a President's acts in office derives in principal part from factors unique to his constitutional responsibilities and station. Suits against other officials—including Presidential aides—generally do not invoke separation-of-powers considerations to the same extent as suits against the President himself.").

48    *Nixon*, 457 U.S. at 750, 102 S.Ct. 2690; *Harlow*, 457 U.S. at 811 & n.17, 102 S.Ct. 2727. For the difference between qualified immunity and absolute immunity, see note 24, *ante*.

49    *Nixon*, 457 U.S. at 743, 102 S.Ct. 2690 (quotation marks omitted).

50    *See* Def. Br. at 23-27 (citing *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 133 S.Ct. 1138, 185 L.Ed.2d 264 (2013); *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992); *Commodity Futures Trading Comm'n v. Schor*, 478 U.S. 833, 106 S.Ct. 3245, 92 L.Ed.2d 675 (1986); *Lo Duca v. United States*, 93 F. 3d 1100 (2d Cir. 1996); *Austin v. Healey*, 5 F.3d 598 (2d Cir. 1993); *Samuels, Kramer & Co. v. Comm'r*, 930 F.2d 975 (2d Cir. 1991); *Wellness Int'l Network, Ltd. v. Sharif*, 575 U.S. 665, 682, 135 S.Ct. 1932, 191 L.Ed.2d 911 (2015); *Kuretski v. Comm'r*, 755 F.3d 929, 937 (D.C. Cir. 2014); *Nixon*, 457 U.S. at 731, 102 S.Ct. 2690, 73 L.Ed.2d 349; *Nixon*, 457 U.S. at 731, 102 S.Ct. 2690, 73 L.Ed.2d 349 (Burger, C.J., concurring); *Johnson*, 71 U.S. 475).

51    *See Wellness Int'l Network*, 575 U.S. at 682 n.11, 135 S.Ct. 1932 ("The proposition that legal defenses based upon doctrines central to the courts' structural independence can never be waived simply does not accord with our cases.") (alteration adopted) (quoting *Plaut v. Spendthrift Farm, Inc.*, 514 U.S. 211, 231, 115 S.Ct. 1447, 131 L.Ed.2d 328 (1995)); *United States v. Donziger*, 38 F.4th 290, 303 (2d Cir. 2022) ("[S]tructural constitutional claims ... have no special entitlement to review. A party forfeits the right to advance on appeal a nonjurisdictional claim, structural or otherwise, that he fails to raise at trial.") (quoting *Freytag v. Comm'r*, 501 U.S. 868, 893-94, 111 S.Ct. 2631, 115 L.Ed.2d 764 (1991) (Scalia, *J.*, concurring in part and concurring in judgment)), *cert. denied*, ––– U.S. ––––, 143 S. Ct. 868, 215 L.Ed.2d 288 (2023); *United States v. Nelson*, 277 F.3d 164, 206 (2d Cir. 2002) ("[W]e do not imply that all claims of structural error ... are unwaivable.").

52    *See* July 5 Order, *Carroll I*, ––– F.Supp.3d at ––––– n.18, 2023 WL 4393067, at *5 n.18 ("It accordingly is clear that Mr. Trump does not dispute that if absolute presidential immunity can be waived, he in fact waived it in this case."). *See generally* Def. Br.

53    Oral Arg. Audio Recording at 9:59-10:33, 11:53-12:18.

54    *Empire Merchs., LLC v. Reliable Churchill LLLP*, 902 F.3d 132, 139 (2d Cir. 2018) (quotation marks omitted).

55    " '[A]buse of discretion' ... is a nonpejorative term of art" that "implies no misconduct on the part of the district court." *United States v. Bove*, 888 F.3d 606, 607 n.1 (2d Cir. 2018). "The term simply describes the

circumstance in which a district court bases its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence, or renders a decision that cannot be located within the range of permissible decisions." *Id.* (quotation marks omitted and alterations adopted).

56   That the amendment would have been futile constituted an independent basis for the District Court's decision. *See* July 5 Order, *Carroll I*, ––– F.Supp.3d at –––– – ––––, 2023 WL 4393067, at *9-11. Because we affirm the District Court's determination on grounds of undue delay and undue prejudice, we do not reach the question whether the proposed amendment would have been futile.

57   Black's Law Dictionary defines "undue" as "[e]xcessive or unwarranted." *Undue*, BLACK'S LAW DICTIONARY (11th ed. 2019); *see also Groff v. DeJoy*, 600 U.S. 447, 469, 143 S.Ct. 2279, 216 L.Ed.2d 1041 (2023) (holding that, in the context of the phrase "undue hardship," "the modifier 'undue' means ... 'excessive' or 'unjustifiable' ") (quoting RANDOM HOUSE DICTIONARY OF THE ENGLISH LANGUAGE 1547 (1966)).

58   *See, e.g.*, *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 202 (2d Cir. 2007) (1 year and 9 months); *Zahra v. Town of Southold*, 48 F.3d 674, 686 (2d Cir. 1995) (2 years and 3.5 months); *Evans v. Syracuse City Sch. Dist.*, 704 F.2d 44, 47 (2d Cir. 1983) (2 years and 9 months); *AEP Energy Servs. Gas Holding Co. v. Bank of Am., N.A.*, 626 F.3d 699, 726 (2d Cir. 2010) (3 years); *see also City of New York v. Grp. Health Inc.*, 649 F.3d 151, 158 (2d Cir. 2011) (3 years and 2 months). To be sure, we have allowed amendments to pleadings when similar or longer lengths of time have passed. *See Rachman Bag Co. v. Liberty Mut. Ins. Co.*, 46 F.3d 230, 235 (2d Cir. 1995) ("more than four years"); *Richardson Greenshields Sec., Inc. v. Lau*, 825 F.2d 647, 653 n.6 (2d Cir. 1987) (collecting cases). But those cases did not involve a finding of prejudice to the non-moving party.

59   *See* note 10, *ante* (describing the Westfall Act); *Carroll v. Trump*, 66 F.4th 91 (2d Cir. 2023) (discussing the procedural history of this case's Westfall Act dispute).

60   *See Prejudice*, BLACK'S LAW DICTIONARY (11th ed. 2019) (defining "prejudice" as "[d]amage or detriment to one's legal rights or claims"); *see also* note 55, *ante* ("defining abuse of discretion").

61   *Ruotolo v. City of New York*, 514 F.3d 184, 192 (2d Cir. 2008) (quotation marks omitted).

62   *Pasternack v. Shrader*, 863 F.3d 162, 174 (2d Cir. 2017) (quotation marks omitted and alterations adopted); *Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993) (quotation marks omitted).

63   *See AEP Energy Servs.*, 626 F.3d at 727.

64   Pl. Br. at 45; Oral Arg. Audio Recording at 26:06-30:02.

65   Oral Arg. Audio Recording at 26:06-27:44.

66   *Id.* at 27:45-28:22.

67   *Id.* at 28:23-29:20.

68   *Id.* at 28:57-29:04.

69   *Id.* at 39:40-40:28.

70   *Id.* at 39:50-40:05.

71    *Compare Trump v. Carroll*, 292 A.3d 220, 234 (D.C. 2023) (Westfall Act inquiry's "focus is on the subjective state of mind of the tortfeasor-employee"), *with Nixon*, 457 U.S. at 756, 102 S.Ct. 2690 (presidential immunity analysis rejecting "inquiry into the President's motives").

72    August 7 Order, *Carroll I*, ––– F.Supp.3d at ––––, 2023 WL 5017230, at *9.

73    *See Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994).

74    *Id.* (quotation marks omitted).

75    *Gilmore v. Shearson/Am. Exp. Inc.*, 811 F.2d 108, 112 (2d Cir. 1987), *abrogated in part on other grounds by Gulfstream Aerospace Corp. v. Mayacamas Corp.*, 485 U.S. 271, 108 S.Ct. 1133, 99 L.Ed.2d 296 (1988).

76    *Id.* at 113.

77    *See, e.g.*, *Shields*, 25 F.3d at 1128 (failure to plead fraud with particularity is a revivable defense).

78    *Will v. Hallock*, 546 U.S. 345, 349, 126 S.Ct. 952, 163 L.Ed.2d 836 (2006) (quotation marks omitted). Defendant suggests that the only non-revivable defenses are those listed in Federal Rule of Civil Procedure 12(b)(2)-(5). Def. Br. at 42; Reply Br. at 27-29. Defendant is mistaken. A motion to compel arbitration, for instance, is non-revivable, even though it is not listed as a defense in Rule 12. *See Gilmore*, 811 F.2d at 112.

79    *Gilmore*, 811 F.2d at 113.

80    *Mead v. Reliastar Life Ins. Co.*, 768 F.3d 102, 113 (2d Cir. 2014) (alteration adopted) (quoting *Webb v. GAF Corp.*, 78 F.3d 53, 55 (2d Cir. 1996)).

81    *United States v. Rodgers*, 101 F.3d 247, 251 (2d Cir. 1996) (quotation marks and citations omitted).

82    *See, e.g.*, *United States v. Salerno*, 868 F.2d 524, 539-40 (2d Cir. 1989); *see also Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 629, 129 S.Ct. 1896, 173 L.Ed.2d 832 (2009) ("Appellate courts can ... authorize the district court's retention of jurisdiction when an appeal is certified as frivolous.").

83    *See United States v. Rodríguez-Rosado*, 909 F.3d 472, 478 (1st Cir. 2018) ("We think applying the bench-made divestiture rule today would surely short-circuit its aim of judicial efficiency .... [W]ith jurisdiction back in its hands, the district court, undoubtedly, would again deny [defendant's] motion, like every other time it has confronted—and denied—the motion. And then, chances are that [defendant] would once more appeal his case to us. Which would present to us [another] variation on the original theme of this case, like an encore, featuring the very same parties, the very same motion, the very same denial order, and the very same arguments on the merits. That seems to us too much to ask of a rule fashioned to ferret imprudence out of the courts."); *see also United States v. Hickey*, 580 F.3d 922, 927 (9th Cir. 2009) ("[B]ecause [defendant's] interlocutory appeal was ultimately a losing one, any claimed error in proceeding with limited pretrial matters was harmless and no useful purpose would be served by requiring that court to redecide the pre-trial motions." (quotation marks omitted)).

84    *Rodgers*, 101 F.3d at 251.

85    20 MOORE'S FEDERAL PRACTICE - CIVIL § 303.32 (3d ed. 2023).

86    *See Rodgers*, 101 F.3d at 251-52 (collecting cases).

87    *See* note 22, *ante* (explaining that we have appellate jurisdiction under the collateral order doctrine to review the District Court's determination that Defendant is not entitled to absolute immunity).

88    *See Tarpon Bay Partners LLC v. Zerez Holdings Corp.*, 79 F.4th 206, 221 (2d Cir. 2023).

89    *Bolmer v. Oliveira*, 594 F.3d 134, 141 (2d Cir. 2010).

90    Def. Br. at 56-61.

---

**End of Document**                                              © 2024 Thomson Reuters. No claim to original U.S. Government Works.

2024 WL 1701980
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

David J. CAMPBELL, Plaintiff,

v.

CITY OF BINGHAMTON, NY, City of New York;
Jared M. Kraham, the Mayor of Binghamton, New York;
Binghamton Police Dep't, a Department of Binghamton,
New York; Chief Joseph Zikuski, Chief of Binghamton
Police Dep't; Detective Bryan Sostowski, a Detective
of Binghamton Police Dep't; Broome County, a County
of New York; Broome County Clerk's Office, a Dep't
of Broome County; Judith E. Osburn, Chief Clerk of
Broome County Supreme Courts and County Courts;
Honorable Judge Joseph A. Cawley, a 6th Dist. Judge
of Broome County; and Unknown(s), Defendants.

3:24-CV-0067 (AMN/ML)
|
Signed April 19, 2024

**Attorneys and Law Firms**

DAVID JOHN CAMPBELL, Plaintiff, Pro Se, 5 Bradley
Street, Binghamton, New York 13904.

## ORDER and REPORT-RECOMMENDATION

MIROSLAV LOVRIC, United States Magistrate Judge

**\*1** The Clerk has sent a complaint in the above captioned
action together with an amended application to proceed
*in forma pauperis* and letter motion, filed by David John
Campbell ("Plaintiff") to the Court for review. (Dkt. Nos.
1, 5, 6.) For the reasons discussed below, I (1) grant
Plaintiff's amended *in forma pauperis* application (Dkt. No.
5), (2) recommend that Plaintiff's Complaint (Dkt. No. 1) be
dismissed (a) in part with leave to amend, and (b) in part
without leave to amend, and (3) recommend that Plaintiff's
Letter Request/Motion (Dkt. No. 6) be denied as moot.

## I. INTRODUCTION

Construed as liberally [1] as possible, Plaintiff's Complaint
alleges that his rights were violated by Defendants
City of Binghamton, Jared M. Kraham, Binghamton

Police Department, Chief Joseph Zikuski, Detective Bryan
Sostowski, Broome County, Broome County Clerk's Office,
Judith E. Osburn, Honorable Judge Joseph A. Cawley, and
Unknown(s) (collectively "Defendants"). (*See generally* Dkt.
No. 1.)

As best as the undersigned can decipher, the Complaint
alleges that on January 13, 2023, Plaintiff attempted to
report a crime against his private property and vehicle in
Binghamton, New York. (Dkt. No. 1 at 4.) The Complaint
alleges that when Binghamton police officer Mushalla (not a
party to this action) responded to Plaintiff's report, he seized
items from Plaintiff's home. (*Id.*) The Complaint alleges that
on January 17, 2023, Defendant Sostowski sought judicial
intervention and obtained two TERPOs and two ERPOs
without proper notice or due process. [2] (*Id.* at 4-5.) The
Complaint alleges that all orders have since expired and
Defendants have not returned Plaintiff's seized property. (*Id.*
at 5.)

Based on these factual allegations, Plaintiff asserts the
following two causes of action: (1) a claim that Defendant
Cawley conspired with Defendant Sostowski to deprive
Plaintiff of his due process rights; (2) a claim that Defendant
Sostowski extorted Plaintiff by obtaining a second TERPO
and seizing Plaintiff's wife's rifle and ammunition without
just cause. (Dkt. No. 1 at 5-7.) As relief, Plaintiff seeks, *inter
alia*, (1) a declaration that Defendants violated Plaintiff's and
his wife's constitutional rights, (2) removal of Defendants
from their positions with an apology to the community,
Plaintiff, and his wife for their actions, (3) compensatory
damages in the amount of $20,000 per item seized from
Plaintiff's residence per day beginning on January 13, 2024,
and continuing until the present day, (4) punitive damages in
the amount of $2,000,000, and (5) an order that Defendants
"be added to *BRADY LIST.*" (Dkt. No. 1 at 7-9.)

## II. PLAINTIFF'S AMENDED APPLICATION TO
PROCEED *IN FORMA PAUPERIS*

**\*2** When a civil action is commenced in a federal district
court, the statutory filing fee, currently set at $405, must
ordinarily be paid. 28 U.S.C. § 1914(a). A court is authorized,
however, to permit a litigant to proceed *in forma pauperis*
status if a party "is unable to pay" the standard fee for
commencing an action. 28 U.S.C. § 1915(a)(1). [3] After
reviewing Plaintiff's amended *in forma pauperis* application
(Dkt. No. 5), the Court finds that Plaintiff meets this standard.

Therefore, Plaintiff's amended application to proceed *in forma pauperis* is granted. [4]

### III. LEGAL STANDARD FOR INITIAL REVIEW OF THE COMPLAINT

"Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that ... the action ... (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2).

In determining whether an action is frivolous, the court must consider whether the complaint lacks an arguable basis in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Dismissal of frivolous actions is appropriate to prevent abuses of court process as well as to discourage the waste of judicial resources. *Neitzke*, 490 U.S. at 327; *Harkins v. Eldridge*, 505 F.2d 802, 804 (8th Cir. 1974); *see Fitzgerald v. First East Seventh Street Tenants Corp.*, 221 F.3d 362, 364 (2d Cir. 2000) (a district court "may dismiss a frivolous complaint *sua sponte* even when the plaintiff has paid the required filing fee[.]"); *see also Pflaum v. Town of Stuyvesant, Columbia Cnty., N.Y.*, 11-CV-0335, 2016 WL 865296, at *1, n.2 (N.D.N.Y. Mar. 2, 2016) (Suddaby, C.J.) (finding that the Court had the power to address and dismiss additional theories of the plaintiff's retaliation claim *sua sponte* because those theories were so lacking in arguable merit as to be frivolous).

In order to state a claim upon which relief can be granted, a complaint must contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The requirement that a plaintiff "show" that he or she is entitled to relief means that a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is *plausible* on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasis added) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 [2007]). "Determining whether a complaint states a plausible claim for relief ... requires the ... court to draw on its judicial experience and common sense.... [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not shown–that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (internal citation and punctuation omitted).

**\*3** "In reviewing a complaint ... the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

Courts are "obligated to construe a pro se complaint liberally." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009); *see also Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990) (per curiam) (reading the plaintiff's *pro se* complaint "broadly, as we must" and holding that the complaint sufficiently raised a cognizable claim). "[E]xtreme caution should be exercised in ordering sua sponte dismissal of a pro se complaint before the adverse party has been served and [the] parties ... have had an opportunity to respond." *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983).

### IV. ANALYSIS

In addressing the sufficiency of a plaintiff's complaint, the court must construe his pleadings liberally. *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008). Having reviewed Plaintiff's Complaint with this principle in mind, I recommend that it be dismissed.

#### A. Claims Against Defendant Judge Cawley

I recommend that Plaintiff's claims against Defendant Judge Cawley be dismissed based on the doctrine of judicial immunity.

Under this doctrine, judges are absolutely immune from suit for claims seeking damages for any actions taken within the scope of their judicial responsibilities. *See Mireles v. Waco*, 502 U.S. 9, 11-12 (1991). Generally, "acts arising out of, or related to, individual cases before [a] judge are considered judicial in nature." *Bliven v. Hunt*, 579 F.3d 204, 210 (2d Cir. 2009). "[E]ven allegations of bad faith or malice cannot overcome judicial immunity." *Bliven*, 579 F.3d at 209.

Judicial immunity does not apply when a judge takes action outside his or her judicial capacity, or when a judge takes action that, although judicial in nature, is taken "in the complete absence of all jurisdiction." *Mireles* 502 U.S. at 11-12; *see also Bliven,* 579 F.3d at 209-10 (describing actions that are judicial in nature). However, "the scope of [a] judge's

jurisdiction must be construed broadly where the issue is the immunity of the judge." *Stump v. Sparkman*, 435 U.S. 349, 356 (1978).

Plaintiff asserts claims that appear to arise from the efforts of Defendant Judge Cawley, in his capacity as a Broome County Court Judge, to assess whether Plaintiff was a danger to himself or others. Defendant Judge Cawley is therefore immune from suit under the doctrine of judicial immunity. As a result, I recommend that Plaintiff's claims against Defendant Cawley in his individual capacity be dismissed based on the doctrine of judicial immunity.

Moreover, I recommend that Plaintiff's claims against Defendant Cawley in his official capacity be dismissed pursuant to the Eleventh Amendment. *See Sundwall v. Leuba*, 28 F. App'x 11, 12 (2d Cir. 2001) (citing *K & A Radiologic Tech. Servs., Inc. v. Comm'r of the Dep't of Health*, 189 F.3d 273, 278 (2d Cir. 1999)) (holding that "state officers, if sued in their official capacities, are immunized from suit by private citizens under the Eleventh Amendment."); *King v. New York State*, 23-CV-3421, 2023 WL 5625440, at *4 (E.D.N.Y. Aug. 31, 2023) (citing *Thomas v. Martin-Gibbons*, 857 F. App'x 36, 37 (2d Cir. 2021) (affirming dismissal of *pro se* Section 1983 claims against the State of New York and a state court judge in his official capacity based on Eleventh Amendment immunity)) ("Eleventh Amendment immunity extends to state officials acting in their official capacities, including state court judges."); *Aron v. Becker*, 48 F. Supp. 3d 347, 366-67 (N.D.N.Y. 2014) (McAvoy, J.) (dismissing the plaintiff's claims against a state court judge in his official capacity based on the doctrine of Eleventh Amendment immunity).

## B. Claims Against Defendant Broome County Clerk's Office

**\*4** "The Eleventh Amendment to the Constitution bars suits against a state in federal court unless that state has consented to the litigation or Congress has permissibly enacted legislation specifically overriding the state's immunity." *Russell v. Dunston*, 896 F.2d 664, 667 (2d Cir. 1990) (citations omitted); *see also Bd. of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001).

Defendant Broome County Clerk's Office is immune from suit under the Eleventh Amendment because it is an arm of the State of New York. *See Gollomp v. Spitzer*, 568 F.3d 355, 366 (2d Cir. 2009) (finding that the New York State Unified Court System, of which a county court is a part,

is an "arm of the State," and therefore entitled to Eleventh Amendment immunity); *Manko v. Steinhardt*, 11-CV-5430, 2012 WL 213715, at *3 (E.D.N.Y. Jan. 24, 2012) (dismissing claim against the Kings County Supreme Court of the State of New York Clerk's Office because it was barred by Eleventh Amendment immunity as an arm of the State of New York).

As a result, I recommend that Plaintiff's claims against Defendant Broome County Clerk's Office be dismissed as it is immune pursuant to the Eleventh Amendment.

## C. Claims Against Defendant Binghamton Police Department

Defendant Binghamton Police Department—which is merely a department of municipal Defendant City of Binghamton, NY—is not amenable to suit. *See White v. Syracuse Police Dep't*, 18-CV-1471, 2019 WL 981850, at *3 (N.D.N.Y. Jan. 7, 2019) (Peebles, M.J.) (citing *Krug v. Cnty. of Rennselaer*, 559 F. Supp. 2d 223, 247 (N.D.N.Y. 2008) (McAvoy, J.); *Turczyn ex rel. McGregor v. City of Utica*, 13-CV-1357, 2014 WL 6685476, at *2 (N.D.N.Y. Nov. 26, 2014) (Sharpe, J.); *Hoisington v. Cnty. of Sullivan*, 55 F. Supp. 2d 212, 214 (S.D.N.Y. 1999) ("Under New York law, a department of a municipal entity is merely a subdivision of the municipality and has no separate legal existence. Therefore, municipal departments like the Department of Social Services are not amenable to suit and no claims lie directly against the Department.")) ("Although a municipality is subject to suit pursuant to Section 1983, *see Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978), a municipal ... department does not have the capacity to be sued as an entity separate from the municipality in which it is located."), *report and recommendation adopted*, 2019 WL 974824 (N.D.N.Y. Feb. 28, 2019) (Suddaby, C.J.). As a result, I recommend that Plaintiff's claims against Defendant Binghamton Police Department be dismissed because it is not an entity amenable to suit.

## D. Claims Against Defendant Judith E. Osburn

Absolute immunity extends to nonjudicial officers who perform acts that "are integrally related to an ongoing judicial proceeding." *Mitchell v. Fishbein*, 377 F.3d 157, 172-73 (2d Cir. 2004). Plaintiff's Complaint identifies Defendant Osburn as "Chief Clerk of Broome County Supreme Courts and County Courts." (Dkt. No. 1 at 4.) Quasi-judicial immunity protects court clerks and sheriffs from suit "for performance of tasks which are judicial in nature and an integral part of the judicial process." *Garcia v. Hebert*, 08-CV-0095, 2013 WL

1294412, at *12 (D. Conn. Mar. 28, 2013) (quoting *Rodriguez v. Weprin*, 116 F.3d 62, 66 (2d Cir. 1997)), *aff'd*, 594 F. App'x 26 (2d Cir. 2015) (summary order), *cert. denied*, No. 14-9720 (Oct. 5, 2015).

**\*5**  As a result, I recommend that Plaintiff's claims against Defendant Osburn in her individual capacity be dismissed, because she is immune from suit. [5]  *See Leftridge v. Judicial Branch*, 22-CV-0411, 2023 WL 4304792, at *9 (D. Conn. June 30, 2023) (dismissing the plaintiff's claims against the state court clerks of court based on the doctrine of quasi-judicial immunity where "their alleged actions arose out of or related to [plaintiff]'s child support and child custody proceedings."); *Braithwaite v. Tropea*, 23-CV-1431, 2023 WL 4207907, at *4 (E.D.N.Y. June 27, 2023) (citing *Jackson v. Pfau*, 523 F. App'x 736, 737-38 (2d Cir. 2013) (affirming dismissal pursuant to Section 1915(e)(2)(B) of pro se plaintiff's Section 1983 claims against the Chief Clerks of several state courts based on the doctrine of judicial immunity)) (dismissing as frivolous the plaintiff's claims against the clerk of the court because he was entitled to absolute immunity); *Mendez v. Johnson*, 22-CV-6811, 2022 WL 3587600, at *2 (S.D.N.Y. Aug. 22, 2022) (citing *inter alia, Chmura v. Norton, Hammersley, Lopez & Skokos Inverso PA*, 17-CV-2164, 2018 WL 2138631, at *2 (D. Conn. May 9, 2018) (extending judicial immunity to a clerk of court); *Manko v. Ruchelsman*, 12-CV-4100, 2012 WL 4034038, at *2 (E.D.N.Y. Sept. 10, 2012) (same)) (noting that courts have routinely granted judicial immunity to "government officials, including clerks of court and other court employees, for their acts that assist a judge in the performance of his or her judicial duties.").

Moreover, I recommend that Plaintiff's claims against Defendant Osburn in her official capacity as Chief Clerk of Broome County Supreme Court and County Courts be dismissed because the Broome County Supreme Court and County Courts are an arm of the New York state court system and New York State is immune from suit pursuant to the Eleventh Amendment. *Braithwaite*, 2023 WL 4207907, at *4 (collecting cases) (holding that the plaintiff's claims against the Chief Clerk of the Suffolk County Court in his official capacity are barred by the Eleventh Amendment).

### E. Claims Against Defendants Kraham, Zikuski, and Unknown(s)

The Complaint failed to allege the personal involvement of Defendants Kraham, Zikuski, and Unknown(s) in any alleged

constitutional deprivation, which is a prerequisite to an award of damages under 42 U.S.C. § 1983. *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991)); *see Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986) (holding that in order to prevail on a section 1983 cause of action against an individual, a plaintiff must show "a tangible connection between the acts of a defendant and the injuries suffered."); *Provost v. City of Newburgh*, 262 F.3d 146, 155 (2d Cir. 2001) (internal quotation marks omitted) ("[D]irect participation as a basis of liability in this context requires intentional participation in the conduct constituting a violation of the victim's rights by one who knew of the facts rendering it illegal."). The Second Circuit has made clear that "there is no special rule for supervisory liability," and a "plaintiff must plead and prove 'that each Government-official defendant, through the official's own individual actions, had violated the Constitution.' " *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020). Here, although Plaintiff names Defendants Kraham, Zikuski, and Unknown(s) as defendants, the body of the Complaint lacks any allegations of wrongdoing by them. (*See generally* Dkt. No. 1.) As a result, I recommend that Plaintiff's claims against Defendants Kraham, Zikuski, and Unknown(s) be dismissed for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2)(B).

### F. Claims Against Defendants City of Binghamton and Broome County

**\*6**  The Complaint fails to allege facts plausibly suggesting that municipal Defendants City of Binghamton and Broome County violated Plaintiff's constitutional rights through the execution of their policies. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978) (outlining the limited circumstances under which a municipality may be liable under Section 1983 and holding that only when the municipality, through the execution of its policies, actually deprives an individual of his constitutional rights, is it liable for the injury); *see also Connick v. Thompson*, 563 U.S. 51, 61 (2011) (holding that official policy includes the decisions of a government's lawmakers, the acts of policymaking officials, and practices that are so widespread as to "practically have the force of law."). A municipality may not be held liable solely because it employs a tortfeasor. *Los Angeles Cnty., Cal. v. Humphries*, 562 U.S. 29, 36 (2010).

Here, there is no basis for municipal liability alleged in the Complaint. Plaintiff essentially complains of discrete incidents, during which an officer or officers employed by

Defendants City of Binghamton and Broome County did not act properly. There is no indication that Plaintiff can assert a policy or custom which would support municipal liability based on these facts. In addition, none of Plaintiff's allegations reflect a failure to train or "deliberate indifference" to the rights of persons who would come into contact with employees of Defendants City of Binghamton and Broome County.

As a result, I recommend that Plaintiff's claims against Defendants City of Binghamton and Broome County be dismissed for failure to state a claim upon which relief may be granted. *See Flagg v. NYS Division of Parole*, 19-CV-0886, 2019 WL 5002215, at *5 (N.D.N.Y. Aug. 15, 2019) (Baxter, M.J.) (citing *DeCarlo v. Fry*, 141 F.3d 56, 61 (2d Cir. 1998)) ("A single incident, particularly if it involved individuals below the policy-making level is insufficient to state a *Monell* claim."), *report and recommendation adopted*, 2019 WL 4963112 (N.D.N.Y. Oct. 8, 2019) (McAvoy, J.).

### G. Claims Against Defendant Sostowski

First, the undersigned recommends that, to the extent the Complaint is construed as asserting an "extortion" claim against Defendant Sostowski, it be dismissed. (Dkt. No. 1 at 6.) The Complaint's bare heading stating "**Extortion**" under the second cause of action, is simply a legal conclusion that fails to suggest a plausible legal claim. (Dkt. No. 1 at 6.) Moreover, "the claim[ ] for ... extortion ... [is] not [a] cognizable civil claim[ ]." *Murphy v. Certain*, 217 A.D.3d 455, 456 (N.Y. App. Div. 1st Dep't 2023) (citing *Arts4All, Ltd. v. Hancock*, 5 A.D.3d 106, 111 (N.Y. App. Div. 1st Dep't 2004); *Minnelli v. Soumayah*, 41 A.D.3d 388, 388-89 (N.Y. App. Div. 1st Dep't 2007), *lv dismissed* 9 N.Y.3d 1028 (N.Y. 2008)); *see Perez v. de la Cruz*, 09-CV-0264, 2013 WL 2641432, at *13-14 (S.D.N.Y. June 12, 2013) (holding that "the law simply does not recognize a civil claim premised on tortious extortion.").

Second, to the extent that the Complaint is construed as asserting a procedural due process claim, I recommend it also be dismissed.

To sustain a procedural due process claim under the Fourteenth Amendment, a plaintiff must allege "that he: (1) had a protected liberty or property interest and (2) was deprived of that interest without due process." *Johnson v. City of New York*, 16-CV-2879, 2018 WL 1175139, at *3 (E.D.N.Y. Mar. 5, 2018) (citation and internal quotation marks omitted); *Roman-Malone v. City of New York*, 11-CV-8560,

2013 WL 3835117, at *3 (S.D.N.Y. July 25, 2013) ("To state a claim for a violation of procedural due process, Plaintiff must allege that [ ]he was deprived [of] a protected interest in liberty or property, without adequate notice or opportunity to be heard."). "Deprivation of property by a state actor, whether intentional or negligent, does not give rise to a claim under [Section] 1983 so long as the law of that state provides for an adequate post-deprivation remedy and the deprivation was the result of a 'random and unauthorized' act." *David v. N.Y.P.D. 42nd Precinct Warrant Squad*, 02-CV-2581, 2004 WL 1878777, at *5 (S.D.N.Y. Aug. 23, 2004) (collecting cases); *see also Davis v. New York*, 311 F. App'x 397, 400 (2d Cir. 2009) (summary order); *Johnson*, 2018 WL 1175139, at *3.

**\*7** Here, the Complaint does not allege that the deprivation of Plaintiff's firearms was due to an established state procedure (*see generally* Dkt. No. 1), nor are there any facts plausibly "suggesting that there is any infirmity in the established procedures used by [the New York State Courts] in seizing property from [Plaintiff] at the time [the TERPO and ERPOs were issued]." *Watts v. N.Y.C. Police Dep't*, 100 F. Supp. 3d 314, 329 (S.D.N.Y. 2015). Therefore, "when a plaintiff brings a procedural due process claim '[b]ased on random unauthorized acts by state employees,' the state satisfies procedural due process requirements so long as it provides a meaningful post-deprivation remedy." *Ahmed v. Town of Oyster Bay*, 7 F. Supp. 3d 245, 254 (E.D.N.Y. 2014) (citing *Hellenic Am. Neighborhood Action Comm. v. City of New York*, 101 F.3d 877, 880 (2d Cir. 1996)). "Accordingly, the only remaining question is whether New York has provided an adequate post-deprivation remedy." *Watts*, 100 F. Supp 3d at 329.

The undersigned finds that New York has adequate post-deprivation remedies that Plaintiff could have used to retrieve his personal belongings—or to receive monetary compensation in the event that his belongings were lost. *Winters v. New York*, 20-CV-8128, 2020 WL 6586364, at *4 (S.D.N.Y. Nov. 9, 2020) (citing *Hudson v. Palmer*, 468 U.S. 517, 533 (1984); *Marino v. Ameruso*, 837 F.2d 45, 47 (2d Cir. 1988); *Love v. Coughlin*, 714 F.2d 207, 208-09 (2d Cir. 1983)). Plaintiff's "failure to take advantage of the state procedures does not convert his cause of action into a constitutional due process claim." *Watts v. New York City Police Dep't*, 100 F. Supp. 3d 314, 329 (S.D.N.Y. 2015).

As a result, I recommend that Plaintiff's claims against Defendant Sostowski be dismissed for failure to state a claim upon which relief may be granted.

## V. OPPORTUNITY TO AMEND

Generally, a court should not dismiss claims contained in a complaint filed by a *pro se* litigant without granting leave to amend at least once "when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir. 1991); *see also* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires."). An opportunity to amend is not required, however, where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *see also Cortec Indus. Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice."). Stated differently, "[w]here it appears that granting leave to amend is unlikely to be productive, ... it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993); *accord, Brown v. Peters*, 95-CV-1641, 1997 WL 599355, at *1 (N.D.N.Y. Sept. 22, 1997) (Pooler, J.). [6]

Here, an amended pleading cannot cure the defects outlined above with respect to Plaintiff's claims against Defendants (1) Crawley, Osburn, and Broome County Clerk's Office, because they are immune from suit, and (2) Binghamton Police Department because it is not an entity amenable to suit. As a result, I recommend that the claims against those defendants be dismissed without prejudice but without leave to amend.

**\*8** Although I have serious doubts about whether Plaintiff can replead to assert actionable claims against Defendants (1) Kraham, (2) Zikuski, (3) Unknown(s), (4) City of Binghamton, and (5) Broome County, given that this is the Court's first review of Plaintiff's pleading, out of an abundance of caution and in light of Plaintiff's status as a *pro se* litigant, I recommend that he be permitted leave to amend.

If Plaintiff chooses to file an amended complaint, he should note that the law in this circuit clearly provides that " 'complaints relying on the civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany

of general conclusions that shock but have no meaning.' " *Hunt v. Budd*, 895 F. Supp. 35, 38 (N.D.N.Y. 1995) (McAvoy, J.) (quoting *Barr v. Abrams*, 810 F.2d 358, 363 (2d Cir. 1987)); *accord Pourzancvakil v. Humphry*, 94-CV-1594, 1995 WL 316935, at *7 (N.D.N.Y. May 22, 1995) (Pooler, J.). Therefore, in any amended complaint, Plaintiff must clearly set forth facts that give rise to the claims, including the dates, times, and places of the alleged underlying acts, and each individual who committed each alleged wrongful act. In addition, the revised pleading should allege facts demonstrating the specific involvement of any of the named defendants in the constitutional deprivations alleged in sufficient detail to establish that they were tangibly connected to those deprivations. *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986). Finally, Plaintiff is informed that any such amended complaint will replace the existing complaint, and must be a wholly integrated and complete pleading that does not rely upon or incorporate by reference any pleading or document previously filed with the Court. *See Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994) ("It is well established that an amended complaint ordinarily supersedes the original and renders it of no legal effect.").

## VI. PLAINTIFF'S LETTER REQUEST/MOTION

On March 26, 2024, Plaintiff filed a Letter Request/ Motion. (Dkt. No. 6.) To the extent that the Court adopts the recommendations contained herein which recommend dismissal of the Complaint, I recommend that Plaintiff's Letter Request/Motion be dismissed as moot.

In the alternative, as best as the undersigned can glean from Plaintiff's Letter Request/Motion, Plaintiff is merely requesting that the Court rule on his motion for IFP. (Dkt. No. 6.) This Order and Report-Recommendation rules on Plaintiff's amended IFP application and thus, Plaintiff's Letter/Motion is moot.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's amended application to proceed *in forma pauperis* (Dkt. No. 5) is **GRANTED**; and it is further respectfully

**RECOMMENDED** that the Court **DISMISS WITH LEAVE TO REPLEAD** Plaintiff's Complaint (Dkt. No. 1) to the extent that it asserts claims against Defendants (1) Kraham, (2) Zikuski, (3) Unknown(s), (4) City of Binghamton, and (5) Broome County, because it is fails to

state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2)(B); and it is further respectfully

**RECOMMENDED** that the Court **DISMISS WITHOUT PREJUDICE BUT WITHOUT LEAVE TO REPLEAD** Plaintiff's Complaint (Dkt. No. 1) to the extent that it asserts claims against Defendants (1) Crawley, Osburn, and Broome County Clerk's Office, because they are immune from suit, and (2) Binghamton Police Department because it is not an entity amenable to suit, pursuant to 28 U.S.C. § 1915(e)(2)(B); and it is further respectfully

**\*9 RECOMMENDED** that the Court **DENY** Plaintiff's Letter Request/Motion (Dkt. No. 6) as moot; and it is further

**ORDERED** that the Clerk of the Court shall file a copy of this Order and Report-Recommendation on the docket of this case and serve a copy upon the parties in accordance with the local rules. [7]

**NOTICE:** Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. [8] Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. 28 U.S.C. § 636(b)(1) (Supp. 2013); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)).

**All Citations**

Slip Copy, 2024 WL 1701980

---

### Footnotes

1    The court must interpret *pro se* complaints to raise the strongest arguments they suggest. *Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)).

2    New York law provides for the issuance of a temporary emergency risk protection order ("TERPO") "upon a finding that there is probable cause to believe the respondent is likely to engage in conduct that would result in serious harm to himself, herself or others." N.Y. C.P.L.R. § 6342(1). In addition, New York law provides for the issuance of a final emergency risk protection order ("ERPO") upon a finding by "clear and convincing evidence, that the respondent is likely to engage in conduct that would result in serious harm to himself, herself or others." N.Y. C.P.L.R. § 6343(2).

3    The language of that section is ambiguous because it suggests an intent to limit availability of *in forma pauperis* status to prison inmates. *See* 28 U.S.C. § 1915(a)(1) (authorizing the commencement of an action without prepayment of fees "by a person who submits an affidavit that includes a statement of all assets such prisoner possesses"). The courts have construed that section, however, as making *in forma pauperis* status available to any litigant who can meet the governing financial criteria. *Hayes v. United States*, 71 Fed. Cl. 366, 367 (Fed. Cl. 2006); *Fridman v. City of N.Y.*, 195 F. Supp. 2d 534, 536 n.1 (S.D.N.Y. 2002).

4    Plaintiff is reminded that, although his application to proceed *in forma pauperis* has been granted, he is still required to pay fees that he may incur in this action, including copying and/or witness fees.

5    In the alternative, I recommend that Plaintiff's claims against Defendant Osburn be dismissed because the Complaint fails to allege the personal involvement of her in any alleged constitutional deprivation, which is a prerequisite to an award of damages under 42 U.S.C. § 1983. *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991)). Here, although Plaintiff names Defendant Osburn as a party to the action, the body of the Complaint lacks any allegations of wrongdoing by her. (*See generally* Dkt. No. 1.) As a result, I recommend that, in the alternative, Plaintiff's claims against

Defendant Osburn be dismissed for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2)(B).

6    *See also Carris v. First Student, Inc.,* 132 F. Supp. 3d 321, 340-41 n.1 (N.D.N.Y. 2015) (Suddaby, C.J.) (explaining that the standard set forth in *Gomez v. USAA Fed. Sav. Bank,* 171 F.3d 794, 796 (2d Cir. 1999)— that the Court should grant leave to amend "unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would be successful in stating a claim"—is likely not an accurate recitation of the governing law after *Bell Atl. Corp. v. Twombly,* 550 U.S. 544 (2007)), *rev'd on other grounds,* 682 F. App'x 30.

7    The Clerk shall also provide Plaintiff with copies of all unreported decisions cited herein in accordance with *Lebron v. Sanders,* 557 F.3d 76 (2d Cir. 2009) (per curiam).

8    If you are proceeding *pro se* and served with this report, recommendation, and order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date that the report, recommendation, and order was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(1)(C).

---

**End of Document**                               © 2024 Thomson Reuters. No claim to original U.S. Government Works.

2024 WL 3063674
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

David John CAMPBELL, Plaintiff,
v.
NEW YORK STATE POLICE, et al., Defendants.
David J. Campbell, Plaintiff,
v.
City of Binghamton, NY, et al., Defendants.

3:23-cv-01337 (AMN/ML), 3:24-cv-00067 (AMN/ML)
|
Signed June 20, 2024

**Attorneys and Law Firms**

DAVID J. CAMPBELL, Binghamton, NY 13904, Plaintiff
pro se

**MEMORANDUM-DECISION AND ORDER**

Anne M. Nardacci, United States District Judge:

**I. INTRODUCTION**

**\*1** On October 30, 2023, Plaintiff *pro se* David John
Campbell ("Plaintiff"), filed a civil rights complaint pursuant
to 42 U.S.C. § 1983 ("Section 1983") against Defendants
New York State Police ("NYSP"), Steven A. Negrelli,
Broome County, Broome County Sheriff's Office ("BCSO"),
David Harder, Mark Hamilton, Brian Curtis, Broome County
District Attorney's Office ("BCDA"), Lucas Finley, City of
Binghamton ("Binghamton"), Jared M. Kraham, Binghamton
Police Department ("BPD"), Chief Jospeh Zikuski, Nicholas
Mushalla, Bryan Sostowski, UHS Binghamton General
Hospital ("UHS"), Jessica R. Raymond, Unknown 1,
Unknown 2, and Unknown 3. Case No. 3:23-cv-01337-AMN-
ML (N.D.N.Y.) (the "2023 Action"), Dkt. No. 1 (the "2023
Complaint"). [1] In the 2023 Complaint, Plaintiff asserts nine
claims, which generally allege the mistreatment of Plaintiff
and his property in violation of his First, Fourth, Fifth,
Sixth, Seventh, and Fourteenth Amendment rights, and seeks
declaratory, injunctive, and monetary relief. *See id.* at 12-15.
Plaintiff also sought leave to proceed *in forma pauperis*
("IFP"), 2023 Action, Dkt. No. 2, which motion was denied,
2023 Action, Dkt. No. 4, and on March 25, 2024, Plaintiff
filed a second IFP motion, 2023 Action, Dkt. No. 5.

On January 16, 2024, Plaintiff filed a second civil rights suit
pursuant to Section 1983 against Defendants Binghamton,
Jared M. Kraham, BPD, Chief Joseph Zikuski, Detective
Bryan Sostowski, Broome County, Broome County Clerk's
Office, Judith E. Osburn, Honorable Judge Joseph A.
Cawley, and Unknown(s). Case No. 3:24-cv-00067-AMN-
ML (N.D.N.Y.) (the "2024 Action"), Dkt. No. 1 (the "2024
Complaint"). In the 2024 Complaint, Plaintiff asserts two
claims related to the allegations in the 2023 Complaint for
violations of Plaintiff's own and his wife's due process rights,
and seeks declaratory, injunctive, and monetary relief. *See id.*
at 5-7. Plaintiff also sought leave to proceed IFP, 2024 Action,
Dkt. No. 2, which motion was denied, 2024 Action, Dkt. No.
4, and on March 22, 2024, Plaintiff filed a second IFP motion,
2024 Action, Dkt. No. 5. [2]

Both actions were referred to United States Magistrate
Judge Miroslav Lovric, who, on April 19, 2024, issued
an Order and Report-Recommendation in the 2023 Action
(1) granting Plaintiff's IFP motion; (2) recommending
that Plaintiff's claims against Defendants Negrelli in his
individual capacity, Broome County, Harder, Hamilton,
Curtis, Finley in his individual capacity, Binghamton,
Kraham, Zikuski, Mushalla, Sostowski, UHS, Raymond,
Unknown 1, Unknown 2, and Unknown 3 be dismissed with
leave to replead; and (3) recommending that Plaintiff's claims
against Defendants NYSP, BCDA, Negrelli in his official
capacity, Finley in his official capacity, BPD, and BCS be
dismissed without leave to replead. 2023 Action, Dkt. No. 7 at
16-18 (the "2023 Action Report-Recommendation"). Also on
April 19, 2024, Magistrate Judge Lovric issued an Order and
Report-Recommendation in the 2024 Action (1) granting the
IFP Motion; (2) recommending that Plaintiff's claims against
Defendants Binghamton, Broome County, Kraham, Zikuski,
and Unknown(s) be dismissed with leave to replead; and
(3) recommending that Plaintiff's claims against Defendants
Crawley, Osburn, Broome County Clerk's Office, and BPD be
dismissed without leave to replead. 2024 Action, Dkt. No. 7 at
16-18 (the "2024 Action Report-Recommendation"). Finally,
in light of the above recommendations, Magistrate Judge
Lovric recommended denying Plaintiff's Letter Requests as
moot. 2023 Action, Dkt. No. 7 at 17-18; 2024 Action, Dkt.
No. 7 at 17-18.

**\*2** Magistrate Judge Lovric advised Plaintiff that under
28 U.S.C. § 636(b)(1), he had fourteen days to file written
objections to the Report-Recommendations and failure to
object within fourteen days would preclude appellate review.
2023 Action, Dkt. No. 7 at 18; 2024 Action, Dkt. No. 7 at

18. On April 26, 2024, Plaintiff timely filed Objections to the 2024 Action Report-Recommendation, 2024 Action, Dkt. No. 8 (the "2024 Action Objections"), and on April 29, 2024, Plaintiff timely filed Objections to the 2023 Action Report-Recommendation, 2023 Action, Dkt. No. 8 (the "2023 Action Objections").

For the reasons set forth below, the Court adopts the Report-Recommendations in their entireties.

## II. STANDARD OF REVIEW

This Court reviews *de novo* those portions of a magistrate judge's report-recommendation that have been properly preserved with a specific objection. 28 U.S.C. § 636(b)(1) (C). "To be 'specific,' the objection must, with particularity, 'identify [1] the portions of the proposed findings, recommendations, or report to which it has an objection and [2] the basis for the objection.' " *Petersen v. Astrue*, 2 F. Supp. 3d 223, 228-29 (N.D.N.Y. 2012) (alteration in original) (quoting N.D.N.Y. Local Rule 72.1(c)). If no specific objections have been filed, this Court reviews a magistrate judge's report-recommendation for clear error. *See id.* at 229 (citing Fed. R. Civ. P. 72(b), Advisory Committee Notes: 1983 Addition). Similarly, when a party files "[g]eneral or conclusory objections, or objections which merely recite the same arguments [previously] presented to the magistrate judge," the district court reviews a magistrate judge's report-recommendations for clear error. *O'Diah v. Mawhir*, No. 9:08-CV-322 (TJM) (DRH), 2011 WL 933846, at *1 (N.D.N.Y. Mar. 16, 2011) (citations omitted); *accord Mario v. P & C Food Markets, Inc.*, 313 F.3d 758, 766 (2d Cir. 2002) (a "statement, devoid of any reference to specific findings or recommendations to which [the plaintiff] objected and why, and unsupported by legal authority, was not sufficient to preserve" a claim); *Petersen*, 2 F. Supp. 3d at 228-29 & n.6 (collecting cases). "When performing [ ] a 'clear error' review, 'the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.' " *Dezarea W. v. Comm'r of Soc. Sec.*, No. 6:21-CV-01138 (MAD/TWD), 2023 WL 2552452, at *1 (N.D.N.Y. Mar. 17, 2023) (quoting *Canady v. Comm'r of Soc. Sec.*, No. 1:17-CV-0367 (GTS/WBC), 2017 WL 5484663, at *1 n.1 (N.D.N.Y. Nov. 14, 2017)).

"[I]n a *pro se* case, the court must view the submissions by a more lenient standard than that accorded to 'formal pleadings drafted by lawyers.' " *Govan v. Campbell*, 289 F. Supp. 2d 289, 295 (N.D.N.Y. 2007) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)) (additional citations omitted).

The Second Circuit has held that courts are obligated to "make reasonable allowances to protect *pro se* litigants" from inadvertently forfeiting legal rights merely because they lack a legal education. *Id.* (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)). That said, "even a *pro se* party's objections to a Report and Recommendation must be specific and clearly aimed at particular findings in the magistrate's proposal ...." *Machicote v. Ercole*, No. 06 Civ. 13320 (DAB) (JCF), 2011 WL 3809920, at *2, (S.D.N.Y. Aug. 25, 2011) (citation omitted); *accord Caldwell v. Petros*, No. 1:22-cv-567 (BKS/CFH), 2022 WL 16918287, at *1 (N.D.N.Y. Nov. 14, 2022). After appropriate review, "the court may accept, reject or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C).

## III. DISCUSSION

### A. The 2023 Action Report-Recommendation and Objections

**\*3** In his Objections to the 2023 Action Report-Recommendation, Plaintiff contends, among other things, that he has standing to bring his action, it is of major public concern, and it addresses prohibited official acts which would nullify his immunity defenses. 2023 Action, Dkt. No. 8 at 1-2. Notably, Plaintiff does not cite to or quote from the 2023 Action Report-Recommendation, does not cite to any additional allegations from the 2023 Complaint that support his claims, does not cite any allegations Magistrate Lovric allegedly overlooked or misinterpreted, and cites only one case. *See id.* (citing *Ex Parte Young*, 209 U.S. 123 (1908)). Read in the light most favorable to Plaintiff, the Court finds that these objections are not specific, [3] and accordingly the Court reviews the 2023 Action Report-Recommendation for clear error. *See Mario*, 313 F.3d at 766; *O'Diah*, 2011 WL 933846, at *1.

The 2023 Action Report-Recommendation details the factual allegations contained in the 2023 Complaint, *see* 2023 Action, Dkt. No. 7 at 2-6, before undertaking a reasoned analysis and concluding that the 2023 Complaint should be dismissed for one overarching reason, *see id.* at 8-10, or alternatively, for five claim- and Defendant-specific reasons, *see id.* at 10-14. Magistrate Judge Lovric first concluded that the 2023 Complaint should be dismissed for frivolousness. *Id.* at 9-10. Second, Magistrate Judge Lovric also found that Defendants NYSP, BCDA, Negrelli in his official capacity, and Finley in his official capacity are immune from the claims asserted under the Eleventh Amendment and 28 U.S.C. § 1915(e)(2)(B), and should be dismissed from the action.

*Id.* at 10-11. Third, Magistrate Judge Lovric found that the 2023 Complaint lacks any allegations of wrongdoing by Defendants Negrelli, Harder, Curtis, Kraham, and Zikuski, and thus the claims against them should be dismissed for failure to state a claim. *Id.* at 11-12. Fourth, Magistrate Judge Lovric found that Defendants BPD, BCS, and UHS are not proper Section 1983 defendants. *Id.* at 12-13. Fifth, Magistrate Judge Lovric found that the 2023 Complaint does not allege a municipal policy or custom, failure to train, or deliberate indifference that would support liability with respect to Defendants Binghamton or Broome County. *Id.* at 13-14. And sixth, to the extent Plaintiff seeks to have certain property returned, Magistrate Judge Lovric found that Plaintiff has not shown that his remedy under state law is inadequate or unavailable. *Id.* at 14.

Finding no clear error in the above-described analysis and conclusions, the Court adopts the 2023 Action Report-Recommendation determination as to each claim in the 2023 Complaint. Further, upon a *de novo* review of the 2023 Complaint, the Court agrees with Magistrate Judge Lovric's conclusions for the reasons stated in the 2023 Action Report-Recommendation.

### B. The 2024 Action Report-Recommendation and Objections

In his Objections to the 2024 Action Report-Recommendation, Plaintiff contends, among other things, that Defendants are not immune from suit and that Magistrate Judge Lovric did not consider all of his claims. *See* 2024 Action, Dkt. No. 8 at 1-4. However, these objections are either not specific or merely assert disagreements without providing a basis to find otherwise. Accordingly, the Court reviews the 2024 Action Report-Recommendation for clear error. *See Mario*, 313 F.3d at 766; *O'Diah*, 2011 WL 933846, at *1.

In the 2024 Action Report-Recommendation, Magistrate Judge Lovric carefully considered the claims against the nine named Defendants and one unknown Defendant in light of the deference due to *pro se* pleadings, and found each claim lacking. *See* 2024 Action, Dkt. No. 7 at 6-14. First, Magistrate Judge Lovric considered the 2024 Complaint claims against Broome County Court Judge Cawley, noting the limitations on judicial immunity "when a judge takes action outside his or her judicial capacity" or " 'in the complete absence of all jurisdiction[,]' " *id.* at 6-7 (quoting *Mireles v. Waco*, 502 U.S. 9, 11-12 (1991)), and recommended that claims against Defendant Judge Cawley in his individual capacity be dismissed due to judicial immunity and in his official

capacity due to the Eleventh Amendment, *id.* (collecting cases). Second, Magistrate Judge Lovric considered the claims against the Broome County Clerk's Office, finding that such claims were barred "under the Eleventh Amendment because it is an arm of the State of New York." *Id.* at 7-8 (citing, *inter alia*, *Gollomp v. Spitzer*, 568 F.3d 355, 366 (2d Cir. 2009)). Third, Magistrate Judge Lovric properly determined that BPD, as a municipal department of Defendant Binghamton, is not a proper Section 1983 Defendant. *Id.* at 8 (collecting cases); *see Moulton v. Cnty. of Tioga, NY*, No. 3:22-cv-00340 (AMN/ML), 2023 WL 4627646, at *15 (N.D.N.Y. July 19, 2023). Fourth, Magistrate Judge Lovric considered Plaintiff's claims against Osburn, the Chief Clerk of Broome County Supreme Courts and County Clerks, and determined that she is immune from suit in her individual capacity as a quasi-judicial actor, the 2024 Complaint failed to allege her personal involvement in any of the alleged constitutional deprivations, and that she is immune from suit in her official capacity under the Eleventh Amendment. 2024 Action, Dkt. No. 7 at 9-10. Fifth, Magistrate Judge Lovric found that the body of the 2024 Complaint completely lacked allegations of wrongdoing by Defendants Kraham, Zikuski, and Unknown(s), and accordingly concluded that the claims against them should be dismissed for failure to state a claim. *Id.* at 10-11. Sixth, Magistrate Judge Lovric considered the claims against Binghamton and Broome County and concluded that the 2024 Complaint failed to state a claim because the acts alleged did not amount to a policy or custom sufficient to support municipal liability, nor did the allegations reflect a failure to train or deliberate indifference to the rights of Plaintiff or others considering the acts alleged. *Id.* at 11-12. Lastly, Magistrate Judge Lovric considered the claims against Defendant Sostowski, interpreting them as either a civil extortion claim, or more broadly as a procedural due process claim, and determined that the allegations were conclusory, extortion is not a cognizable civil claim, the Complaints do not allege or suggest a due process violation, and New York has adequate post-deprivation remedies that were available to Plaintiff. *Id.* at 12-14.

**\*4** Finding no clear error in the above-described analysis and conclusions, the Court adopts the 2024 Action Report-Recommendation determination as to each claim in the 2024 Complaint. Further, upon a *de novo* review of the 2024 Complaint, the Court agrees with Magistrate Judge Lovric's conclusions for the reasons stated in the 2024 Action Report-Recommendation.

### C. Leave to Amend

Finally, Magistrate Judge Lovric recommended that certain claims should be dismissed without leave to amend, while others, in an abundance of caution, should be dismissed with leave to amend. Magistrate Judge Lovric articulated the proper standard cautioning courts against dismissing claims filed by a *pro se* litigant without affording the opportunity to amend, and as a result only recommended dismissal without leave to amend claims for which better pleading could not cure the defects identified. *See* Dkt. No. 7 at 14-16; 2024 Action, Dkt. No. 7 at 14-16. Plaintiff's Objections do not specifically take issue with the amendment analysis contained in the Report-Recommendation, and the Court finds no clear error in the determination to dismiss certain futile claims without leave to amend, while permitting Plaintiff an additional opportunity to state his other claims. [4]

Accordingly, the Court adopts both Report-Recommendations in their entireties.

## IV. CONCLUSION

For these reasons, the Court hereby

**ORDERS** that the 2023 Action Report-Recommendation, Case No. 3:23-cv-01337-AMN-ML (N.D.N.Y.), Dkt. No. 7, is **ADOPTED in its entirety**; and the Court further

**ORDERS** that the 2023 Complaint, Case No. 3:23-cv-01337-AMN-ML (N.D.N.Y.), Dkt. No. 1, is **DISMISSED with leave to amend claims against Defendants Negrelli in his individual capacity, Broome County, Harder, Hamilton, Curtis, Finley in his individual capacity, Binghamton, Kraham, Zikuski, Mushalla, Sostowski, UHS, Raymond, Unknown 1, Unknown 2, and Unknown 3**, and the remainder **DISMISSED without leave to amend**; and the Court further

**ORDERS** that the 2024 Action Report-Recommendation, Case No. 3:24-cv-00067-AMN-ML (N.D.N.Y.), Dkt. No. 7, is **ADOPTED in its entirety**; and the Court further

**ORDERS** that the 2024 Complaint, Case No. 3:24-cv-00067-AMN-ML (N.D.N.Y.), Dkt. No. 1, is **DISMISSED with leave to amend claims against Defendants Binghamton, Broome County, Kraham, Zikuski, and Unknown(s)**, and the remainder **DISMISSED without leave to amend**; and the Court further

**\*5** **ORDERS** that Plaintiff's Letter Requests, 2023 Action, Dkt. No. 6; 2024 Action, Dkt. No. 6, are **DENIED as moot**; and the Court further

**ORDERS** that Plaintiff shall file an amended complaint in either or both of his actions within **SIXTY (60) DAYS** of the date of this Order. Any amended complaint must be a complete pleading which will replace the current complaint in the respective case in total; and the Court further

**ORDERS** that if Plaintiff timely files an amended complaint in either or both of his actions, such complaint shall be referred to Magistrate Judge Lovric for review; and if Plaintiff fails to timely file an amended complaint, the Clerk is directed to close the applicable case without further order of this Court; and the Court further

**ORDERS** that the Clerk serve a copy of this Order on Plaintiff in accordance with the Local Rules.

**IT IS SO ORDERED.**

**All Citations**

Slip Copy, 2024 WL 3063674

## Footnotes

1    Citations to court documents utilize the pagination generated by CM/ECF, the Court's electronic filing system.

2    Additionally, on March 26, 2024, Plaintiff filed identical letters in both Actions requesting that the Court act on his pending Complaints and IFP motions. 2023 Action, Dkt. No. 6; 2024 Action, Dkt. No. 6 (collectively, "Plaintiff's Letter Requests").

3       To the extent Plaintiff attempts to incorporate his earlier-filed 2024 Action Objections into his 2023 Action Objections, *see* Dkt. No. 8 at 2, the Court considers those arguments below, *infra* § III.B.

4       The Court reiterates Magistrate Judge Lovric's admonition to Plaintiff that any amended complaint "will replace the existing complaint, and must be a wholly integrated and complete pleading," Dkt. No. 7 at 16, and must "contain some specific allegations of fact indicating a deprivation of rights," *id.* (quoting *Barr v. Abrams, 810 F.2d 358, 363 (2d Cir. 1987)*), "set forth facts that give rise to the claims, including the dates, times, and places of the alleged underlying acts," and "allege facts demonstrating the specific involvement of any of the named defendants in the constitutional deprivations alleged in sufficient detail to establish that they were tangibly connected to those deprivations[,]" *id.* (quoting *Bass v. Jackson, 790 F.2d 260, 263 (2d Cir. 1986)*). Finally, should Plaintiff wish to pursue this case as a single action, he may file an amended complaint compiling all of his related allegations in one of his cases, and not the other.

---

**End of Document**

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

Case 3:24-cv-00477-BKS-ML    Document 15    Filed 07/25/24    Page 124 of 126

**Wellington v. Foland, Not Reported in Fed. Supp. (2020)**

2020 WL 6822945
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Kennard WELLINGTON, Plaintiff,

v.

Scott FOLAND, Patrolman; Nicholas Crandall, Sergeant; Brian Shaver, Patrolman; Aaron Smith, Patrolman; Sergeant Williams; Daniel Gavin, Patrolman; Joshua Bilek; Douglas Eddy, Patrolman; Jay Peets, Patrolman; and Michael Helper, Patrolman, Defendants.

3:19-CV-0457, 3:19-CV-0615 (GTS/ML)
|
Signed 11/20/2020

**Attorneys and Law Firms**

KENNARD WELLINGTON, Plaintiff, Pro Se, 3104 Buckingham Road, Endwell, NY 13760.

OF COUNSEL: FRANK HUMPHREY FOSTER, ESQ., LILY A. OCKERT, ESQ., MORRIS DUFFY ALONSO & FALEY, Counsel for Defendants, 2 Rector Street, 22 nd Floor, New York, NY 10006.

## **DECISION and ORDER**

Glenn T. Suddaby, Chief U.S. District Judge

**\*1** Currently before the Court, in these consolidated *pro se* civil rights actions filed by Kennard Wellington ("Plaintiff") against the above-listed ten law enforcement defendants ("Defendants"), is Defendants' motion to dismiss Plaintiff's Complaints pursuant to Fed. R. Civ. P. 37. (Dkt. No. 41.) For the reasons set forth below, Defendants' motion is granted.

## **I. RELEVANT BACKGROUND**

### **A. Plaintiff's Complaint**

Generally, in his Complaints, Plaintiff asserts a number of civil rights-related claims, including those for wrongful arrest, violation of the First, Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments of the United States Constitution, and conspiracy to violate his constitutional rights. (See, e.g., Dkt. No. 1, Attach. 1 [Pl.'s Compl.].) These claims arise from alleged conduct by Defendants at two traffic stops

and subsequent arrests that occurred on October 25, 2018, and November 11, 2018. (Dkt. No. 12, at 2-4 [Report-Recommendation filed July 24, 2019].)

On July 24, 2019, U.S. Magistrate Judge Miroslav Lovric issued a report-recommendation in which he recommended that, among other findings, Plaintiff's claims against various defendants and his First, Fourth, Ninth, and Twelfth Claims be dismissed with leave to file a proposed amended complaint, and that his claims against another defendant and his Sixth, Seventh, Eighth, Tenth, and Eleventh Claims be dismissed without leave to amend. (Dkt. No. 12, at 23-25 [Report-Recommendation filed July 24, 2019].) Magistrate Judge Lovric also recommended that Action No. 3:19-CV-0457 be consolidated with Action No. 3:19-CV-0615. (*Id.* at 23, 25.) On December 3, 2019, the undersigned adopted the report-recommendation in its entirety. (Dkt. No. 18, at 7-8 [Decision and Order filed Dec. 3, 2019].)

As a result of these decisions (and based on Plaintiff's failure to file a proposed amended complaint), the only claims remaining are Plaintiff's Second Claim (for use of excessive force in violation of the Fourth Amendment and 42 U.S.C. § 1983), Third Claim (for failure to intervene during the use of excessive force in violation of the Fourth Amendment and 42 U.S.C. § 1983), and Fifth Claim (for illegal search and seizure in violation of the Fourth Amendment and 42 U.S.C. § 1983) against the remaining Defendants.

### **B. Parties' Briefing on Defendants' Motion to Dismiss**

#### **1. Defendants' Memorandum of Law**

Generally, in their motion to dismiss, Defendants argue that Plaintiff's Complaints should be dismissed because of Plaintiff's deliberate and willful noncompliance with the Court's Orders and his discovery obligations. (Dkt. No. 41, Attach. 14, at 10-12 [Defs.' Mem. of Law].) More specifically, Defendants argue as follows: (a) Plaintiff has engaged in willful bad faith conduct by repeatedly disregarding the Court's Orders and has been adamant that he will not comply with either those Orders or his discovery obligations, even going so far as to telling Defendants' counsel that they are not allowed to contact him further; (b) lesser sanctions would not be sufficient based on Plaintiff's demonstrated unwillingness to comply with his obligations despite previous admonishments by this Court, the fact that he would not have the resources to pay any monetary

sanction, and the fact that precluding him from submitting any evidence to prove his claims would, under the circumstances, essentially amount to a finding that Plaintiff's Complaint must be dismissed (given that he has not yet provided any evidence that would establish all of the elements of any of his claims); (c) the duration of Plaintiff's noncompliance (at the time of the filing of Defendants' motion) is four months as to discovery obligations and two months as to compliance with the Court's Orders; and (d) Plaintiff has been warned repeatedly that the consequences of his continued failure to comply with Orders and discovery obligations could include dismissal of his claims. (*Id.*)

### 2. Plaintiff's Failure to Respond

**\*2** According to the Court's briefing schedule, Plaintiff was provided until September 15, 2020, to file a response in opposition to Defendants' motion. (Text Notice filed Aug. 14, 2020.) As of the date of this Decision and Order, Plaintiff has not filed any response, and the time to do has passed. (*See generally* Docket Sheet.)

### II. GOVERNING LEGAL STANDARDS

Rule 37(b)(2)(A) of the Federal Rules of Civil Procedure states that, where a party "fails to obey an order to provide or permit discovery," the Court is permitted to issue "further just orders," including

(i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;

(ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;

(iii) striking pleadings in whole or in part;

(iv) staying further proceedings until the order is obeyed;

(v) dismissing the action or proceeding in whole or in part;

(vi) rendering a default judgment against the disobedient party; or

(vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

Fed. R. Civ. P. 37(b)(2)(A).

Courts must consider the following relevant factors when determining whether dismissal is appropriate under Fed. R. Civ. P. 37(b): (a) the willfulness of the non-compliant party and the reason for the non-compliance; (b) the efficacy of lesser sanctions; (c) the duration of the period of non-compliance; and (d) whether the non-compliant party has been warned of the consequences of non-compliance. *Agiwal v. Mis Island Mortg. Corp.*, 555 F.3d 298, 302 (2d Cir. 2009). Notably, in order to impose the extreme sanction of dismissal, the court must find willfulness, bad faith, or fault on the part of the individual from who discovery is sought. *Bobal v. Rensselaer Polytechnic Inst.*, 916 F.2d 759, 764 (2d Cir. 1990).

### III. ANALYSIS

After carefully considering whether Plaintiff's Complaints should be dismissed based on his failure to comply with multiple Orders of this Court and with his discovery obligations, the Court answers this question in the affirmative for the reasons stated in Defendants' memorandum of law. (Dkt. No. 41, Attach. 14 [Defs.' Mem. of Law].) To those reasons, the Court adds the following analysis.

First, the Court finds that the available evidence establishes that Plaintiff's noncompliance is both willful and in bad faith. At the telephone conference held on May 19, 2020, "Plaintiff informed the Court that he does not intend to supplement his discovery response," despite the fact that the response he had provided was not responsive to Defendants' demands. (Minute Entry filed May 19, 2020.) The Court ordered Plaintiff "to respond and produce all materials in his possession or control that are responsive to Defendants' demands" by June 9, 2020. (*Id.*; Dkt. No. 34.) At the telephone conference held on June 11, 2020, it was noted that Plaintiff "continues to refuse to engage in discovery and has not complied with this Court[']s Text Order 34," and the Court issued another Order requiring Plaintiff to comply with the previous Order by June 25, 2020. (Minute Entry filed June 11, 2020; Dkt. No. 36.) At the telephone conference held on June 29, 2020, the Court noted that Plaintiff continued to refuse to engage in discovery and had failed to comply with the Court's two previous Orders. ([Minute Entry filed June 29, 2020].) The Court issued a final Order requiring Plaintiff to comply with the two previous Orders and to produce all materials in his possession or control that were responsive to Defendants' demands. (Dkt. No. 38.) Defendants' status report letter filed July 14, 2020, indicates that Plaintiff still had not provided Defendants with any additional discovery response. (Dkt.

No. 39.) Additionally, a copy of an email exchange between Plaintiff and Defendants' counsel attached to Defendants' motion indicates that Plaintiff had sent Defendants' counsel a "cease-and-desist" letter that purported to make Defendants' counsel subject to a monetary fine should they contact Plaintiff again, which Plaintiff asserted counsel had now violated by emailing Plaintiff a copy of the July 2020 status report letter that was filed with the Court. (Dkt. No. 41, Attach. 13, at 1.)

 **3** Overall, the evidence and the history of this case establishes that Plaintiff was well-aware of his obligation to provide responsive material to Defendants' discovery requests through his participation in multiple telephone conferences and receipt of multiple Orders from this Court, and yet he purposefully chose to ignore his obligations. The Court therefore finds that Plaintiff's failure to comply was willful and represents bad faith.

Second, the Court agrees with Defendants that lesser sanctions would not cause Plaintiff to remedy his conduct. The level of intractable willfulness in Plaintiff's noncompliance thus far (despite being informed that it could result in the dismissal of his Complaints) indicates that Plaintiff would not be compelled to comply with the Court's Orders or his obligations if faced with any of the lesser sanctions allowed by Fed. R. Civ. P. 37(b).

Third, the Court finds that the duration of the noncompliance is sufficient to merit dismissal when combined with the nature of the noncompliance as already discussed above. Notably, although three or four months is not an excessively long time by itself, in the span of those months, the Court held three telephone conferences and issued three separate Orders

related to Plaintiff's noncompliance. Plaintiff failed to comply with any of those Orders by failing to provide the specified information to Defendants by the dates dictated in each Order. The Court finds that the blatant and willful refusal to comply with these multiple Orders over the course of three or so months weighs heavily in favor of the sanction of dismissal. *Cf. Georgiadis v. First Boston Corp.*, 167 F.R.D. 24, 25 (S.D.N.Y. 1996) (finding four months to be sufficient delay for dismissal under Fed. R. Civ. P. 41).

Lastly, Plaintiff has been warned multiple times that his continued failure to comply with the Court's Orders and his discovery obligations could result in dismissal of his Complaint. (Minute Entry filed May 19, 2020 [cautioning Plaintiff that failure to comply with the Court's orders could result in sanctions being imposed, including dismissal of the action]; Minute Entry filed June 11, 2020 [same]; Minute Entry filed June 29, 2020 [same].) Thus, the Court is assured that Plaintiff has been provided with adequate warning of the consequences of his choice to continue to ignore the Court's Orders and his obligations.

**ACCORDINGLY**, it is

**ORDERED** that Defendants' motion to dismiss (Dkt. No. 41) is **GRANTED**; and it is further

**ORDERED** that Plaintiff's Complaints in Action Nos. 3:19-CV-0457 and 3:19-CV-0615 are **DISMISSED with prejudice**.

**All Citations**

Not Reported in Fed. Supp., 2020 WL 6822945

---

**End of Document**                    © 2024 Thomson Reuters. No claim to original U.S. Government Works.